## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PENGCHENG SI | ) | |
| 3712 Powell Lane | ) | |
| | ) | |
| Falls Church, VA 22041 | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| Lead Plaintiff, | ) | **FOR VIOLATIONS OF THE** |
| | ) | **FEDERAL SECURITIES LAWS** |
| | ) | **& BREACH OF FIDUCIARY DUTY** |
| v. | ) | |
| | ) | |
| BED BATH & BEYOND CORPORATION | ) | **DEMAND FOR JURY TRIAL** |
| 650 Liberty Avenue | ) | |
| City Union, New Jersey 07083 | ) | |
| | ) | |
| JP Morgan Securities LLC | ) | |
| 270 Park Ave, Fl 12 | ) | |
| New York, New York 10017 | ) | |
| | ) | |
| RC Ventures LLC | ) | |
| PO BOX 25250, PMB 30427 | ) | |
| Miami, Florida 33102 | ) | |
| | ) | |
| Ryan Cohen | ) | |
| PO BOX 25250, PMB 30427 | ) | |
| Miami, Florida 33102 | ) | |
| | ) | |
| Arnal Gustavo | ) | |
| 650 Liberty Avenue | ) | |
| City Union, New Jersey | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Lead Plaintiff Pengcheng Si ("Plaintiff" or "Lead Plaintiff"), individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff's own acts, and on information and belief as to all other matters. The within allegations are based upon, *inter alia*, the investigation conducted by and through Plaintiff, which included, among other things, a review and analysis of: (i) Bed Bath & Beyond Corporation, Cohen Ryan, and Arnal Gustavo's public filings with the Securities and Exchange Commission ("SEC"); (ii) company press releases and presentations; (iii) public reports and news articles; (iv) research reports by securities and financial analysts; (v) economic analyses of securities movement and pricing data; (vi) transcripts of BBBY's investor calls; and (vii) other publicly available material and data defined herein. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action brought on behalf of a class consisting of all persons or entities, other than Bed Bath & Beyond Corporation, J.P. Morgan Securities LLC, RC Ventures LLC, Ryan Cohen, and Arnal Gustavo and their affiliates (together, "Defendants"), who purchased or otherwise acquired BBBY common stock from March 25, 2022 to August 18, 2022, inclusive, (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws (the "Class").

2. Plaintiff also brings this action as a derivative action within the meaning of Rule 23.1 of the Federal Rules of Civil Procedure on behalf of Bed Bath & Beyond Corporation to enforce the rights of the Company.

## JURISDICTION AND VENUE

3. The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

4. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa), 28 U.S.C. § 1331, and 28 U.S.C. § 1332. This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

5. Venue is proper in this District pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)), as a substantial part of the events and omissions giving rise to the claims occurred here and the Company conducts extensive business in this District.

## **PARTIES**

6. Lead Plaintiff Pengcheng Si honestly and reasonably believed defendants' financial statements and SEC filings, closed short position and opened long position on BBBY. During the Class Period, Plaintiff and her spouse acquired a total of 8,020 shares of BBBY common stock at artificially inflated prices and have suffered realized and market losses of approximately $106,480.

7. Bed Bath & Beyond Corporation ("Defendant BBBY" or the "Company") is a District of Columbia corporation, registered with the Department of Consumer and Regulatory Affairs, with its principal office in Union, New Jersey. Throughout the Class Period, BBBY stock was actively traded on the NASDAQ Global Select Market ("NASDAQ") under the symbol BBBY.

8. Defendant Ryan Cohen ("Cohen" or "Defendant Cohen"), with an address in Miami, Florida, is a Canadian citizen called by media as meme-stock champion. Cohen has historically employed pump and dump schemes to raise much needed capital and has ignited several meme stocks to jaw-dropping heights. Cohen has served as chairman of GameStop's board since January 2021 and throughout the Class Period.

9. JP Morgan Securities LLC ("JPM" or "Defendant JPM") is a Delaware corporation with its corporate headquarters based in New York and its retail division based in Chicago. JPM has served as BBBY's financial advisor at all times relevant to this lawsuit. JPM is also a stock broker employed by Cohen with respect to all his BBBY stocks transactions at issue involving misrepresentation of the stock sold.

10. Defendant RC Ventures LLC ("RC" or "Defendant RC") is a Delaware corporation with its principal business address in Miami, Florida. RC was founded and managed by Defendant Cohen. Cohen and RC Ventures bought a nearly 10% stake in BBBY in March 2022.

11. Defendant Arnal Gustavo ("Gustavo" or "Defendant Gustavo") has served as the Company's Executive Vice President, Chief Financial Officer & Treasurer since May 2020 and throughout the Class Period. Upon information and knowledge, Gustavo is a resident of New Jersey.

12. Together, Defendants Cohen and Gustavo are sometimes referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

13. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

14. Plaintiff will fairly and adequately protect the interests of the members of the Class and will engage counsels more seasoned and sophisticated in class and securities litigation. A subsequent application for approval of lead counsel will be filed later.

15. The Class is so numerous that joinder of all members is impracticable. As of August 22, 2022, BBBY has 79.96 million shares of common stock issued and outstanding,

and such shares were publically traded on NASDAQ NMS during the Class Period. The exact members of the Class is not known at this time, but is believed to number in thousands.

**SUBSTANTIVE ALLEGATIONS**

16. This action concerns Defendants' materially misleading statements and omissions made to investors regarding BBBY's strategic company plans, financial condition, cooperation with Cohen and RC, and reports of shares holding and selling during the Class Period.

**A.  Overview of the Cohen,  Gustavo, and JPM's Fraud and Breaches of Fiduciary Duty**

17. At all times Gustavo, as BBBY's Executive Vice President, Chief Financial Officer & Treasurer, controlled day to day affairs of BBBY, while Cohen,  the largest BBBY shareholder who appointed three directors to BBBY's board, a controlling person pursuant to Section 20(a) of the Exchange Act, has extensive involvement in management and decision making process through his ownership stake in BBBY and his appointed directors. JPM has served as BBBY financial advisor and stock sales agent for Cohen at all times relevant to this lawsuit.

18. Through mid-August 2022, BBBY appeared – from the Company's public statements and financial reporting – to be a successful turning-around company. The company appeared to be moving rapidly towards growth and profitability through "fundamentally reshaping" strategies and spinning off Buybuy Baby business.

19. The picture, however, was almost entirely a fiction. From March 2022 through August 2022, Cohen, in conspiracy with Gustavo, JPM, and others, engaged in a fraudulent scheme to artificially inflate the price of BBBY publicly traded stock. More specifically, Cohen, Gustavo, and others, with JPM's aiding and abetting, blatantly misrepresented the value and profitability of BBBY, *inter alia*, causing BBBY to (a) report revenues that was

fictitious, and (b) announce publicly that the Company is successfully on the way spinning off Buybuy Baby to "unlock[] full value" of this "tremendous asset", when, in reality, the Buybuy Baby business were small, with minimal revenues, and outside companies would pay BBBY only a small fraction of the announced prices.

20. Upon information and belief, there has been heavy communications and interactions concerning creating a buying frenzy of BBBY stock to raise much needed capital between Gustavo, Cohen, and JPM.

21. Upon further information and belief, Cohen approached Gustavo about his plan to accumulate shares of BBBY and to assume command of the company's public float. Cohen convinced Gustavo that their plan would be a mutually beneficial one. With control over a significant portion of the public float, Cohen would essentially act as a price support for the stock while Gustavo would act in a similar capacity by controlling the sale of shares by Insiders. Under this arrangement, defendants would profit handsomely from the rise in price and could coordinate their selling of shares to optimize their returns.

22. Upon information and belief, Cohen offered to purchase a large stake in BBBY including far out-of money call options on more than 1.6 million BBBY shares with strike price between $60 and $80, in a classic attempt to spark a gamma squeeze, in exchange for Gustavo's assurance that Insiders would not flood the market with stock. Gustavo agreed to regulate all insider sales by BBBY's officers and directors to ensure that the market would not be inundated with a large number of BBBY shares at given time and provided the information to its financial adviser JPM for its assistance with the "pump" of the stock.

23. With the fraudulent scheme firmly established and investor interest beginning to surface as a result of increasing trading volumes, defendants began to aggressively promote BBBY shares.

24. On March 25, 2022, BBBY announced that it reached a cooperation agreement with Cohen giving him three board seats. The statement confirmed BBBY's primary focus during the Class Period was "fundamentally reshaping Bed Bath & Beyond for our customers while driving growth and profitability across its banners" and "unlock greater value from the Company's buybuy BABY banner."

25. For a period of four months, the BBBY stock climbed from its lowest price of $4.38 per share on July 1, 2022 to the price of $30 per share on August 17, 2022.

26. Upon information and belief, at least on several occasions from March to August 2022, Cohen, Gustavo, and JPM discussed their plan of hyping the stock and exiting their positions of BBBY shares at some point.

27. On August 16, 2022, a Schedule 13D was filed to the SEC, on which Cohen stated that "[a]s of the date hereof, RC Ventures directly beneficially owned 9,450,100 Shares, including 1,670,100 Shares underlying certain call options, constituting approximately 11.8% of the Shares outstanding. Mr. Cohen, as the Manager of RC Ventures, may be deemed to beneficially own the 9,450,100 Shares directly beneficially owned by RC Ventures, constituting approximately 11.8% of the Shares outstanding." (See Cohen's Schedule 13D, attached hereto as Exhibit 1.) The filing also revealed Cohen had held on to his April call options that would only begin to pay out should the stock hit $60 a share before January 20, 2023.

28. The submission was made via SEC's EDGAR electronic filing system and was available to the public immediately.

29. The filing was signed by Cohen, whom knew that the information contained in the filing was false. Indeed, Cohen did not hold 9,450,100 Shares on August 16, 2022 when he submitted the Schedule 13D.

30. The Schedule 13D filing was materially false and constitutes a false written filing because (a) upon information and belief, Cohen sold most of the 9,450,100 Shares when the filing was submitted; (b) Cohen submitted Schedule 13D for the purpose of creating buying frenzy of BBBY stocks so that Cohen can finish selling his shares at artificially inflated price on the public; and (c) Cohen actually dumped most of his shares "as of the date hereof," on August 16, 2022.

31. Investors, not knowing that Cohen's filing was false and misleading, continued to buy millions of shares of BBBY stock. Spurred by Cohen's filing, BBBY stock price has swung 75 percent from $15.36 to $28.6 later that day.

32. Also on August 16, 2022, with Schedule 13D in place, despite Cohen having almost liquidated all his BBBY positions, Cohen filed Form 144 on paper providing notice of his intent to sell up to all his shares and additional call options. This filing was not disclosed to the public until the market closed the next day, August 17, 2022, at 5:07 pm, when Cohen finished his dumping of BBBY shares. Right after the disclosure of the filing, BBBY shares tumbled after hours from record high $30 per share to around $22.5 per share.

34. On August 18, 2022, Defendants Cohen and Gustavo, respectively, filed Form 4 with the SEC reporting that they had sold all their BBBY shares on August 16, 2022. (See Cohen and Gustavo's Form 144, attached hereto as Exhibits 2-3.) In reaction to this news, BBBY Stock dives to $16.16, or over 45%, on unusually heavy trading volume.

35. On August 19, 2022, BBBY stock plunged to a new low of $9.68, dropping another 52.6% from the previous day.

36. BBBY's stock price continued to decline over the next two trading days, falling an additional 16.23%, to close at $9.24 per share on August 22, 2022, and falling another 4.98% to close at $8.78 on August 23, 2022, dropping over 70% from August 17's highest price of $30 per share in five trading days after Defendants dumped their shares. Attached hereto as

Exhibit 4 and the BBBY Price /Volume History chart (Source: New York Post, August 19, 2022) below. This reflects less than a $800 million market capitalization for the Company, after its Insiders profits at least 110 million dollars alone from their Insider sales from August 16 to August 17, 2022.



37. Defendant Cohen pocketed $110 million profit from the sale of his BBBY stocks, all at the cost of the shareholders. Other defendants also profited immensely from this scheme.

**B.  Materially False and Misleading BBBY Statement Issued on August 18, 2022**

38. On August 18, 2022, BBBY filed Form 8K announcing that "[on August 17, 2022, in response to certain media inquiries, Bed Bath & Beyond Inc. (the 'Company') made the following statement: 'We were pleased to have reached a constructive agreement with RC Ventures in March and are committed to maximizing value for all shareholders'." Still,

BBBY made no mention of the buying frenzy pumping up the price of BBBY stock and then the share-dumping crash created by Cohen, Gustavo, and JPM's collusion.

39. The filing was signed by Gustavo, whom personally had the knowledge that Cohen and himself had closed all their BBBY position. However, the statement was insufficiently clear to infer that BBBY cooperation with Cohen fell apart, while that BBBY (and Gustavo) knew or should have known already that Cohen's fraudulent filings of Schedule 13D and Form 144 and Cohen's selling of BBBY stocks long before the public did.

40. Indeed, Gustavo and JPM knew or should have known that Cohen and RC exited all their stock positions of BBBY at the time the filing was made. Notably, JPM, as BBBY's financial advisor, dumped those sizable shares for Cohen on August 26, 2022.

41. Upon further information and belief, Cohen, Gustavo, and JPM discussed their BBBY stock exit strategy before Cohen and Gustavo dumped their shares.

42. Notably, pursuant to a binding agreement, which governed purchasing and disposing of BBBY securities, executed on March 25, 2022 between BBBY and Cohen and RC, Cohen and RC was bound to "update and advise the Company of its beneficial ownership of Common Stock as of such date as any New Director (or Replacement Director) ceases to be a director."

43. BBBY's conduct with respect to August 18, 2022 announcement constitutes acts of fraud, dishonesty and furtherance of Cohen and Gustavo's criminal activities. Upon information and belief, Gustavo, Cohen, and JPM discussed when to exit their trade positions and therefore the August 17, 2022 statement was materially false and constitute a false statement. Defendants had concealed material facts and misled investors when they liquidated the Company's stocks.

44. Upon information and belief, BBBY intentionally provided the materially false statement knowing that it would have a material impact on the market value of BBBY.

45. Up till the filing of this complaint, there were widespread media reports concerning the pump and dump and other fraudulent activities by Cohen. By way of example, on August 18, 2022, Fortune Magazine published an article titled "calls for SEC probe mount after memo stock king's potential pump-and-dump of Bed Bath & Beyond shares." The article reported that "this is so obviously being manipulated, but no one knows who is a member of the group that is doing the manipulation and I do not have subpoena power … I will say this about Primatologist-in-chief Ryan Cohen: he has ridden a wave of Jane Goodall's fineset all the way to the bank."

### C.  JPM and Gustavo's Knowledge of, and Participation in, Cohen and RC's Money Laundering and Breaches of Their Fiduciary Duties

46. As a result of materially false statements regarding the financial condition and holding situation of BBBY during the Class Period, the stock price of BBBY was artificially inflated. The defendants, knowing that the information they disclosed was false, took advantage of the inflated stock price and used fraudulent and misleading SEC filings to sell all their BBBY shares and options at artificially inflated prices to unsuspecting and innocent public investors and then retained control of the profits.

47. Upon information and belief, despite knowing or having information which would cause one to know that Cohen and Gustavo was engaged in illegal insider trading and fraudulent SEC reporting, JPM actively aided and abetted Cohen and Gutavo's activities by enabling Cohen to use JPM's accounts to effectuate such transactions and otherwise launder the proceeds of their criminal conduct.

48. Upon information and belief, to conceal their dump schemes, the defendants agreed that Cohen would file a Schedule 13D late in an attempt to mislead public investors into believing that the stock was bullish.

49. At the time that Cohen instructed JPM to sell all BBBY shares owned under his and RC's name, JPM knew, and pursuant to Federal regulations and New York banking laws was required to know, that Cohen and Gustavo was corporate insider of BBBY, and that the purposes of the SEC Form 144 and Schedule 13D filings were to mislead the public and hide their ongoing dumping of BBBY shares.

50. JPM, consistent with its duties and obligations under Federal regulations and New York law, as BBBY's financial advisor, should have recognized these characteristics, question Cohen and Gustavo about the economic justification of such transactions and procured additional information regarding the transactions which resulted in crash of his client BBBY's stock. Had JPM done this, it would have learned that Cohen and Gustavo were engaging in illegal insider trading.

51. JPM not only made it possible, and in many instances easy for Cohen, RC, and Gustavo to launder the proceeds of their fraudulent conduct through JPM's accounts, but JPM, based on information and knowledge, misrepresented material information that it knew would be relied on by BBBY and its auditors in reporting the Company's financial condition and thereby perpetuated Cohen and Gustavo's fraud and crimes against the Company.

52. During the Class Period, investors continued to buy millions of shares of BBBY stock not knowing that its financial results and financial statements were false and misleading.

**D.  Damages to the Plaintiff and Loss Causation**

53. By the time this lawsuit was filed on August 23, 2022, BBBY shareholders, along with the Company's interests, represented thereby, had sustained losses of approximately $1,200 million.

54. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and his family and other Class members.

55. During the Class Period, Plaintiff and his family and other Class members purchased or acquired BBBY securities at artificially inflated prices in reliance on Defendants' material misrepresentations and/or omissions. The price of those securities declined significantly when information was disclosed to the market for the first time during the Class Period, thereby revealing those material misrepresentations and/or omissions.

**E.  Additional Scienter Allegations**

56. During the Class Period, Defendants had both the motive and opportunity to commit fraud. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the Federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding BBBY, which made them privy to confidential proprietary information concerning BBBY, participated in the fraudulent scheme alleged herein.

57. Each misrepresentation and/or omission of materials fact alleged herein was made with reckless disregard for, or knowledge of its false and misleading nature. At all relevant times, Cohen, Gustavo, and JPM was in a position to know, and did in fact know the material facts regarding the Company as set forth herein. The defendants were engaged in a purposeful, intentional manipulation of the market for BBBY's stock at all times during the Class Period.

**F. Applicability of Presumption of Reliance**

58. Plaintiff are entitled to a presumption of reliance under the fraud-on-the-market doctrine because the market for BBBY's publicly traded stock was open, well-developed and

efficient at all times during the Class Period. As a result of the materially false and misleading statements alleged herein, BBBY common stock traded at artificially inflated prices during the Class Period. Further, Plaintiff and other members of the Class purchased BBBY common stock in reliance on the integrity of the market price of the common stock and the market information relating to BBBY, and were damaged thereby.

59. At all relevant times, the market for BBBY stock was an efficient market for the following reasons, among others:

(a) BBBY common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient, electronic stock market;

(b) as a regulated issuer, BBBY filed periodic public reports with the SEC and the NASDAQ;

(c) BBBY regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) BBBY was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

60. As a result of the foregoing, the market for BBBY common stock promptly digested current information regarding BBBY from all publicly available sources and reflected such information in the price of the common stock. Under these circumstances, all purchasers of BBBY common stock during the Class Period suffered similar injury through their purchase of BBBY common stock at artificially inflated prices and a presumption of reliance applies.

61. Plaintiff are also entitled to a presumption of reliance under <u>Affiliated Ute</u> <u>Citizens of Utah v. United States</u>, 406 U.S. 128 (1972), because the claims asserted herein are predicated in part upon omissions of material fact for which there was a duty to disclose. Specifically, Plaintiff are entitled to a presumption of reliance throughout the Class Period because, as more fully alleged above, Defendants failed to disclose material information regarding the Company's operations, forecasts, business prospects, and shares holding situation.

**G. No Safe Harbor**

62. Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

63. Defendants are also liable for any false or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the presenter knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of BBBY who knew that the statement was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

**CAUSES OF ACTION**

**COUNT I – Breach of Fiduciary Duty to BBBY**
**(Derivative Suit Against All Defendants)**

64. As a derivative claim brought on behalf of the Company, BBBY, Plaintiff hereby each and every allegation contained above as if fully set forth herein.

65. Having been serving as CFO, financial advisor, and majority stockholders of BBBY,  respectively, Defendants are fiduciaries toward BBBY and its stockholders and owe to them the duty of faithfully, loyally, diligently, prudently, honestly, and carefully conducting BBBY's business. As fiduciaries, they are bound to act toward and deal with BBBY and its other stockholders with the utmost fidelity, loyalty, care and good faith.

66. Defendants have violated their fiduciary duty by making false filings, issuing misleading statements, and pumping and dumping BBBY shares.

67. Defendants have done so for self-serving, improper and bad-faith reasons, namely, a desire to profit from the sales of their BBBY shares. There is no legitimate business justification for the Defendants' actions. Defendants have acted wilfully, wantonly and with reckless disregard for the well-being of BBBY.

68. As a result of the Defendants' actions, BBBY has been deprived of significant amounts of capital and is moving swiftly toward insolvency.

69. To remedy the Defendants' breach of fiduciary duties to BBBY, the Company is entitled to the imposition of a constructive trust on the proceeds of all of the stock sales concluded by the defendant in violation of their fiduciary obligations to the Company.

## COUNT II – Aiding and Abetting Breach of Fiduciary Duty
### (Against Defendant JPM)

70. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71. JPM, as BBBY's financial advisor, caused the Company's public filing to include false financial statements that misrepresented the Company's cash position, which also resulted in further investor losses, and deepened the Company's own insolvency.

72. In addition, JPM  knew, and pursuant to Federal rules and regulations and New York banking laws that Gustavo and Cohen was corporate insider of BBBY and control shareholder, and that in those capacities Gustavo and Cohen owed fiduciary duties to both BBBY and its shareholders. These duties include the duties to exercise due care, good faith, and loyalty which mandate that the best interest of the corporation and its shareholders takes precedence over any interest possessed by Cohen and Gustavo and not shared by the shareholders generally.

73. Under Delaware law, by having engaged in insider trading and fraud, Gustavo and Cohen breached the fiduciary duties they owed to the shareholders and the Company. Moreover, under the Delaware law, Gustavo and Cohen are liable to the company to disgorge the entirety of their insider trading profits.

74. JPM aided and abetted Gustavo and Cohen's breaches of fiduciary duty by knowingly participating in Gustavo and Cohen's scheme to conceal their fraud by engaging in covert activities to frustrate the time of Cohen and RC's stock dumping. For example, JPM allowed Cohen and RC's transaction to go through and did not perform its duty as BBBY's financial advisor. JPM further aided and abetted Cohen and Gustavo's breaches of fiduciary duty by knowingly permitting tens of millions of dollars to be funneled through the banks' account when JPM knew that the funds were the result of insider trading of BBBY stock.

75. Upon information and belief, JPM further aided and abetted Cohen and Gustavo's breach of fiduciary duty by assisting in creating the Schedule 13D filing which misrepresented the stock position of Cohen and which it knew would be relied on by the company and its shareholders.

76. As a foreseeable consequence of JPM's aiding and abetting the insiders' breach of fiduciary duty, the Company and its investors, both as represented by Plaintiff, suffered substantial harm and damage proximately caused by JPM's wrongful conduct.

## COUNT III – Aiding and Abetting Fraud
### (Against Defendant JPM)

77. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78. BBBY, Gustavo and his co-conspirators, Cohen and others, bluntly misrepresented the value and profitability of BBBY. The effect of the numerous and misleading statements and other fraud was that the perceived value and turning around expectation was unrealistically elevated, with the result that the BBBY shares being traded on the open market were artificially inflated in price. In further breach of his fiduciary duty to the Company and its shareholders, JPM, in conspiracy with Cohen and Gustavo, took advantage of the ensuing inflated stock price by illegally engaging in insider trading. Cohen, Gustavo, and JPM thereby reaped huge profits at the expenses of the Company and its shareholders by selling their BBBY shares at inflated prices. By using fraudulent Schedule 13D and Form 144 filings, Cohen, Gustavo, and JPM misled the investing public into thinking that the Company was turning around and there were huge investor interests, and at the same time they dumped the shares of their BBBY stock. Cohen then and Gustavo, with the participation of JPM, laundered more than $110 million in furtherance of the fraudulent scheme.

79. JPM aided and abetted Cohen, RC, and Gustavo's fraud by knowingly aiding Cohen and RC to use accounts at JPM to launder over $110 million worth of illegal insider trading proceeds and aiding creating the fraudulent Schedule 13D report.

80. As a foreseeable consequence of JPM's aiding and abetting the insiders' fraud, the Company and its investors, both as represented by Plaintiff, suffered substantial harm and damage proximately caused by JPM's wrongful conduct.

## COUNT IV – Fraud
### (Against Defendants Cohen and RC)

81. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82. In order to be complied with SEC requirements, Cohen and RC created a false and misleading filing by falsely affirming that they still hold 9,450,100 BBBY shares as of August 16, 2022 when they submitted Schedule 13D and further, intentionally not disclosing that the 9,450,100 BBBY shares was sold at the time of the Schedule 13D submission.

83. Cohen and RC knew their false and misleading information would be relied on by BBBY shareholders and the public, and they intended to mislead the public so as to reap huge gains on dumping their shares.

84. As a foreseeable consequence of Cohen and RC's material misrepresentations, the Company and its investors, both as represented by Plaintiff, suffered substantial harm and damage proximately caused by JPM's fraudulent conduct.

**COUNT V – Negligent Misrepresentation**
**(Against All Defendants)**

85. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

86. As CFO, financial advisor, and control shareholders of BBBY, respectively, Gustavo, JPM, and Cohen and RC undertook a duty, with BBBY together, to BBBY and its shareholder to state truthfully and accurately when submitting Schedule 13D and issuing statements relating to BBBY's operations and holding situation. Defendants failed in their duty. By way of example, when submitting Schedule 13D, Cohen and RC negligently and carelessly made statements that, by reason of material omissions as set forth above, were false and misleading.

87. Defendants' false and misleading filing caused losses of the company and its shareholders.

88. As a foreseeable consequence of Defendants' false and misleading representations, the Company and its investors, both as represented by Plaintiff, suffered substantial harm and damage proximately caused by Cohen and RC's fraudulent conduct.

**COUNT VI – Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**(Against All Defendants)**

89. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

90. This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

91. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of common stock. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of BBBY common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire BBBY common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each Defendant took the actions set forth herein.

92. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly reports, SEC filings, press releases and other statements and documents described

above, including statements made to securities analysts and the media that were designed to influence the market for BBBY common stock. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about BBBY finances and business prospects.

93. By virtue of their positions at BBBY, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to them. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, Individual Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

94. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the CFO, financial advisor and majority stockholders of BBBY, respectively, Defendants had knowledge of the details of BBBY's internal affairs.

95. The Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Defendants were able to and did, directly or indirectly, control the content of the statements of BBBY. As officers and/or directors and/or control shareholders of a publicly-held company, the Defendants had a duty to disseminate timely, accurate, and truthful information with respect to BBBY's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of BBBY common stock was artificially inflated throughout the

Class Period. In ignorance of the adverse facts concerning BBBY's business and financial condition, which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired BBBY common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

96. During the Class Period, BBBY common stocks were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of BBBY common stock at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of BBBY common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of BBBY common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

97. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

98. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT VII – Violations of Section 20(a) of the Exchange Act
### (Against All Individual Defendants)

99. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

100. During the Class Period, Individual Defendants participated in the operation and management of BBBY and conducted and participated, directly and indirectly, in the conduct of BBBY's business affairs. Because of their senior positions, they knew the adverse nonpublic information about BBBY's current financial position and future business prospects.

101. As officers and control shareholders of a publicly owned company, the Defendants had a duty to disseminate accurate and truthful information with respect to BBBY's business practices, and to correct promptly any public statements issued by BBBY which had become materially false or misleading.

102. Because of their positions of control and authority, Defendants Cohen and Gustavo were able to, and did, control the contents of the various reports, press releases and public filings which BBBY disseminated in the marketplace during the Class Period concerning the Company's business, operational and accounting policies. Throughout the Class Period, Individual Defendants exercised their power and authority to cause BBBY to engage in the wrongful acts complained of herein. The Defendants therefore, were "controlling persons" of BBBY within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of BBBY common stock.

103. Each of the Defendants, therefore, acted as a controlling person of BBBY. By reason of their senior management positions and/or being control shareholders of BBBY, each of the Defendants had the power to direct the actions of, and exercised the same to

cause, BBBY to engage in the unlawful acts and conduct complained of herein. Each of the Defendants exercised control over the general operations of BBBY and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

104. By reason of the above conduct, Defendants Cohen and Gustavo are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by BBBY.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a) Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

(b) Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

(c) Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as his reasonable attorneys' fees, expert fees and other costs; and

(d) Awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demand a trial by jury with respect to each claim in this Complaint.

Dated: August 23, 2022

Respectfully submitted,

___/s/_____
Pengcheng Si

3712 Powell Lane
Falls Church, VA 22041
Tel:  (202) 505-4768
Fax: (202) 688-3892
Email: sipc.dcfiling@gmail.com
*Lead Plaintiff for Proposed Plaintiff Class*