# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| PENGCHENG SI, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>BED BATH & BEYOND CORPORATION, RYAN COHEN, RC VENTURES LLC, and JP MORGAN SECURITIES LLC,<br><br>         Defendants. | Case No.: 1:22-cv-02541-TNM<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ALLEN GALLEGLY FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL** |

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................... i

I.   INTRODUCTION ........................................................................................................... 1

II.  SUMMARY OF THE ACTION ..................................................................................... 2

III. ARGUMENT .................................................................................................................. 4

    A.  The PSLRA Standard for Appointing Lead Plaintiff ............................................ 4

    B.  Gallegly Is the "Most Adequate Plaintiff" ............................................................ 5

        1.  Gallegly Has Satisfied the PSLRA's Procedural Requirements ...................... 6

        2.  Gallegly Has the Largest Financial Interest in the Relief Sought by the Class .......................................................................................... 6

    C.  Gallegly Is Qualified Under Rule 23 ..................................................................... 6

        1.  Gallegly's Claims Are Typical of the Claims of the Class ............................. 7

        2.  Gallegly Will Fairly and Adequately Represent the Class's Interests ............ 8

        3.  This Court Should Approve Gallegly's Choice of Counsel ........................... 9

IV.  CONCLUSION ............................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

Other Authorities

*In re XM Satellite Radio Holdings Sec. Litig.*,
    237 F.R.D. 13 (D.D.C. 2006) .................................................................................................. 7, 9

*Shenk v. Mallinckrodt PLC*,
    300 F. Supp. 3d 279 (D.D.C. 2018) ........................................................................................ 7, 8

**Statutes**

15 U.S.C. § 78u-4(a)(1) ................................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(A) ..................................................................................................... 2, 5, 6

15 U.S.C. § 78u-4(a)(3)(B) ..................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 6(a)(1)(C) ................................................................................................................ 6

Fed. R. Civ. P. 23 ........................................................................................................... 5, 6, 7, 8, 9

Putative class member Allen Gallegly ("Gallegly"), by his counsel, respectfully submits this Memorandum of Law pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an order: (i) appointing Gallegly as lead plaintiff pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B); (ii) approving Gallegly's selection of the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to serve as Lead Counsel under 15 U.S.C. § 78u-4(a)(3)(B)(v); and (iii) granting such other and further relief as the Court may deem just and proper.

Gallegly believes that he has the largest financial interest in the outcome of this litigation and is thus presumptively entitled to be appointed Lead Plaintiff and that his choice of counsel should be approved. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

## I.     INTRODUCTION

This Action brings claims pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, as well as clams under Sections 9(a), 18(a), 20A, and 20(a) of the Exchange Act, 15 U.S.C. §§ 78i, 78r(a), and 78t-1, seeking to recover compensable damages caused by Bed Bath & Beyond Corporation ("BBBY" or "Bed Bath") and the other defendants' violations of federal securities laws on behalf of all persons who purchased or otherwise acquired Bed Bath common stock (including those who bought to cover a short position) or Bed Bath call options, or sold Bed Bath put options, from August 12, 2022 through August 18, 2022, inclusive, and who were damaged thereby (the "Class Period")[1].

---

[1]     The initial complaint alleged a class period of March 25, 2022 through August 18, 2022. An Amended Complaint was filed on November 2, 2022, which shortened the period to the Class Period. The Amended Complaint also removed Arnal Gustavo as a defendant, removed certain claims and added others.

1

Pursuant to the PSLRA, this Court must appoint the member or members of the class "most capable of adequately representing the interests of class members" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). Gallegly believes that he is the movant with the largest financial interest that otherwise meets the applicable requirements under Rule 23.

Gallegly respectfully requests that the Court approve Kaplan Fox as Lead Counsel for the Class. *See* § III.C.3., *infra*; 15 U.S.C. § 78u-4(a)(3)(B)(v) ("the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").

## II.   SUMMARY OF THE ACTION

On August 23, 2022, the Action was filed and on September 8, 2022 notice was published to class members on Accesswire, as required by 15 U.S.C. § 78u-4(a)(3)(A)(i) of the Exchange Act (the "Notice"). *See* Declaration of Frederic S. Fox in Support of the Motion of Gallegly for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel (the "Fox Decl."), Ex. A. The Notice advised purchasers of BBBY common stock of the existence of a lawsuit against Defendants and the nature of Defendants' statements, omissions and conduct that allegedly damaged investors. *Id*. The Notice further advised class members of their right to move the Court to be appointed Lead Plaintiff by November 7, 2022, 60 days from the publication of the Notice. *Id.*

As alleged in the Action, in March 2022, Defendant Ryan Cohen ("Cohen"), through his investment firm Defendant RC Ventures LLC ("RC Ventures"), bought nearly a 10% stake in Bed Bath, which he successfully used to obtain three seats on Bed Bath's board of directors and a commitment from the Company to study his proposal to turn around the company by, among other things, selling or spinning off Bed Bath's more successful Buy Buy Baby chain. ¶ 3. Over the next five months, however, Bed Bath's stock price plummeted amid a stream of bad news, as the Company announced record losses, dwindling cash on hand, and soaring debt. *Id*. By August,

Bed Bath had also rejected Cohen's turnaround strategy, electing to seek new loans backed, in part, by the Buy Buy Baby assets, along with the issuance of millions in new shares of stock that would dilute Cohen's holdings. *Id.* As a result, Cohen's investment in Bed Bath securities was underwater by tens of millions of dollars with little prospect of improving anytime soon. *Id.*

According to the Action, other investors in Cohen's position would have chosen between maintaining their investment or selling at a loss. ¶ 4. But Cohen instead orchestrated a market manipulation scheme to artificially inflate the price and trading volume of Bed Bath securities so that he could secretly sell his holdings at a profit at the expense of Bed Bath's public investors. *Id.*

According to the Action, to carry out his scheme, Cohen needed to drive up the stock price and flood the market with trading activity so that he could sell his shares quickly, secretly, and at a profit. Cohen accomplished that goal by leveraging his loyal following among retail investors, many of whom closely followed his every public statement, filing, or social-media post to guide their own investment decisions. ¶ 5. Since Cohen seized control of GameStop in 2021, many retail investors who traded in so-called "meme stocks"—like GameStop, AMC, and Bed Bath—viewed Cohen as their de facto leader, dissecting his public statements on social-media platforms such as Reddit, Discord, and Twitter. *Id.* Delivering targeted messages that he knew would appeal to and resonate with these retail investors, Cohen deceived them into believing that he was holding onto his investment in Bed Bath and was projecting that the price of Bed Bath's stock would soar to as much as $60 to $80 per share—a feat that Bed Bath had not achieved in years. *Id.* In online discussion forums, these retail investors amplified Cohen's misleading statements and further promoted the value of investing in Bed Bath, despite the near-universal agreement among analysts that the Company's stock was worth less than $5 per share. *Id.*

As alleged in the Action, Cohen's scheme worked perfectly. ¶ 6. In a matter of days, the market for Bed Bath securities was flooded with retail investors who bought the Company's stock at higher and higher prices, sending Bed Bath's stock price to an intraday high of $30 on August 17, with the highest daily trading volume in more than a decade. *Id*. While retail investors bought Bed Bath's stock in record numbers, Cohen secretly sold his entire holdings of the Company's securities, earning about $178.1 million in proceeds and $58 million in illicit profits from the scheme. *Id*.

According to the Action, more than a day after Cohen had dumped his remaining holdings, he finally disclosed his sales to the public in a filing with the SEC on August 18, after the markets had closed. Bed Bath's stock price plunged on the news, dropping by 45% in after-hours trading. ¶ 7. Later that day, Bed Bath announced that it had hired a restructuring expert as it pursued its new turnaround strategy. *Id*. On August 31, Bed Bath formally announced its new strategic plan that involved shutting stores, taking on new debt, and issuing millions of new shares of stock. By mid-October, Bed Bath's stock price had dropped to under $5 per share. *Id*. As a result, retail investors who acquired Bed Bath securities based on Cohen's manipulative and deceptive acts have suffered hundreds of millions of dollars in losses. *Id*.

### III. ARGUMENT

#### A. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). Specifically, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

>   (I)  of the pendency of the action, the claims asserted therein, and the purported class period; and
>   (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as Lead Plaintiff in response to any such notice within 90 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. 15 U.S.C. § 78u-4(a)(3)(B).

Under the relevant sections of the Exchange Act, the Court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person which:

>   (aa) has either filed the complaint or made a motion in response to a notice . . .;
>   (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>   (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### B. Gallegly Is the "Most Adequate Plaintiff"

Gallegly respectfully submits that he is the "most adequate plaintiff" because he has complied with the PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements. In addition, Gallegly has duly signed and filed a certification stating that he is willing to serve as the representative party on behalf of the class. *See* Fox Decl., Ex. B. Finally, Gallegly has selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See id.*, Ex. D

5

(Kaplan Fox Firm Resume). Accordingly, Gallegly satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff and therefore should be appointed Lead Plaintiff.

### 1. Gallegly Has Satisfied the PSLRA's Procedural Requirements

The Action was filed on August 23, 2022 and Notice was published over Accesswire, a national wire service, on September 8, 2022. *See id.*, Ex. A. Accordingly, the time period in which class members may move to be appointed lead plaintiff in this case expires on November 7, 2022. *See* 15 U.S.C. § 78u-4(a)(3)(A); *see also* Fed. R. Civ. P. 6(a)(1)(C) ("if the last day [of the period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, Gallegly timely moved this Court to be appointed lead plaintiff on behalf of all members of the class.

### 2. Gallegly Has the Largest Financial Interest in the Relief Sought by the Class

Under the relevant sections of the Exchange Act, a rebuttable presumption exists whereby the plaintiff with the largest financial interest in the litigation and who otherwise satisfies the requirements of Rule 23 is presumed to be the most adequate plaintiff to lead the action. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Here, Gallegly suffered substantial losses of approximately $297,955 in BBBY securities artificially inflated during the Class Period. *See* Fox Decl., Exs. B and C. Gallegly is not aware of any other movant with a larger financial interest and believes he has the largest financial interest of any lead plaintiff movant. Therefore, Gallegly believes he is presumptively entitled to appointment as Lead Plaintiff.

### C. Gallegly Is Qualified Under Rule 23

The PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule

23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representatives. *See Shenk v. Mallinckrodt PLC*, 300 F. Supp. 3d 279, 281 (D.D.C. 2018) ("To satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, a movant seeking to be appointed lead plaintiff need only make a preliminary showing that it meets the typicality and adequacy requirements.") (citation omitted). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification. As detailed below, Gallegly satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying his appointment as Lead Plaintiff for the Action.

### 1. Gallegly's Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a) is generally satisfied "when the plaintiff's claims arise from the same course of conduct, series of events, or legal theories as the claims of other class members." *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 18 (D.D.C. 2006) (internal citations omitted); *see also Shenk*, 300 F. Supp. 3d at 282 ("To satisfy the typicality requirement, a movant's claims need not be identical with the absent class members, but they must be reasonably coextensive with the class as a whole.").

7

The claims asserted by Gallegly are based on the same legal theory and arise out of the same course of events as the other putative class members' claims. Gallegly purchased BBBY securities, as did each member of the proposed class, at prices artificially inflated by Defendants' false and misleading statements and was damaged thereby. Thus, Gallegly satisfies the typicality requirement of Rule 23(a).

### 2. Gallegly Will Fairly and Adequately Represent the Class's Interests

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In assessing this requirement, courts generally consider whether a movant has the ability and incentive to represent the claims of the class vigorously, whether the movant has obtained adequate counsel, and whether there is a conflict of interest between the movant's claims and those asserted on behalf of the class." *Shenk*, 300 F. Supp. 3d at 282. Here, Gallegly's interests are clearly aligned with the members of the proposed class, and there is no evidence of any antagonism between Gallegly's interests and those of the class. As detailed above, Gallegly's claims raise similar questions of law and fact as claims of the members of the class, and Gallegly's claims are typical of the members of the class.

Further, Gallegly has demonstrated his adequacy and willingness to serve as and assume the responsibilities of a lead plaintiff. *See* Fox Decl., Ex. B. Having suffered substantial losses, Gallegly will be a zealous advocate on behalf of the class. In addition, Gallegly has selected Kaplan Fox – counsel highly experienced in prosecuting securities class actions – to represent him. *See* Fox Decl., Ex. D. Thus, the close alignment of interests between Gallegly and other class members, and Gallegly's strong desire to prosecute the Action on behalf of the class, provide ample reason to grant Gallegly's motion for appointment as Lead Plaintiff in the Action. Accordingly, Gallegly satisfies the prerequisites for appointment as Lead Plaintiff pursuant to the Exchange Act.

### 3. This Court Should Approve Gallegly's Choice of Counsel

The Exchange Act vests authority in the lead plaintiff to select and retain lead counsel, subject only to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. at 21. Gallegly has retained Kaplan Fox to file moving papers on behalf of Gallegly seeking appointment as Lead Plaintiff and to serve as lead counsel to pursue this litigation on behalf of himself and the class. Kaplan Fox possesses extensive experience in the area of securities litigation and for decades has successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Fox Decl., Ex. D. Thus, the Court may be assured that, in the event the instant motion is granted, the members of the class will receive the highest caliber of legal representation available.

### IV. CONCLUSION

For all of the foregoing reasons, Gallegly respectfully requests that the Court: (1) appoint Gallegly as Lead Plaintiff; (2) approve Gallegly's selection of Kaplan Fox as Lead Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated: November 7, 2022

Respectfully submitted,

*/s/ Frederic S. Fox*
Frederic S. Fox (D.C. Bar # 1014115)
Donald R. Hall
Pamela Mayer
Jason A. Uris
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
ffox@kaplanfox.com
dhall@kaplanfox.com
pmayer@kaplanfox.com
juris@kaplanfox.com

*Attorneys for Movant Allen Gallegly and Proposed Lead Counsel for the Proposed Class*

**CERTIFICATE OF SERVICE**

    I, Frederic S. Fox, hereby certify that, on November 7, 2022, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

    */s/ Frederic S. Fox*
    Frederic S. Fox