**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| PENGCHENG SI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BED BATH & BEYOND CORPORATION, RYAN COHEN, RC VENTURES LLC, and JP MORGAN SECURITIES LLC,<br><br>Defendants. | Case No.  1:22-cv-02541-TNM |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF BRATYA SPRL**
**FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF SELECTION OF COUNSEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 2

ARGUMENT .................................................................................................................................. 4

    I.      BRATYA SHOULD BE APPOINTED LEAD PLAINTIFF ................................. 4

           A.      Bratya Is Willing to Serve as a Class Representative and Has Timely Filed This Motion to Be Appointed Lead Plaintiff. .................................... 6

           B.      Bratya Has the "Largest Financial Interest" in the Action. ........................ 6

           C.      Bratya Otherwise Satisfies the Requirements of Rule 23. .......................... 7

           D.      Bratya Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses. ....................................................... 9

    II.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ................................................................................................... 10

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chamblee v. Terraform Power, Inc.*,
   No. PX 16-981, 2016 U.S. Dist. LEXIS 98619 (D. Md. July 28, 2016) ...................................7

*Duncan et. al v. Joy Global Inc.*,
   No. 2:16-cv-1229-pp (E.D. Wis.) .............................................................................................11

*Hirtenstein v. Cempra, Inc.*,
   Nos. 1:16cv1303 *et al.*, 2017 U.S. Dist. LEXIS 103799
   (M.D.N.C. July 5, 2017) ............................................................................................................7

*In re CBD Energy Limited Securities Litigation*,
   No. 4:15-cv-01668 (S.D. Tex.) ................................................................................................11

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)........................................................................................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878
   (E.D.N.Y. Mar. 2, 2007) ................................................................................................7, 10, 11

*In re Flint, Mich. Water Crisis Litigation*,
   No. 16-CV-10444 (E.D. Mich.) ...............................................................................................11

*In re Microstrategy Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) .......................................................................................10

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ............................................................................................7

*In re Petrobras Securities Litigation*,
   No. 14-cv-09662 (S.D.N.Y.).....................................................................................................10

*In re Spectrum Pharm., Inc. Inc. Sec. Litigation*,
   No. 16-CV-02279 (D. Nev.) .....................................................................................................11

*In re: XM Satellite Radio Holdings Sec. Litig.*,
   237 F.R.D. 13 (D.D.C. Aug. 1, 2006)........................................................................................8

*Johnson v. Pozen, Inc.*,
   No. 1:07CV599, 2008 U.S. Dist. LEXIS 12004 (M.D.N.C. Feb. 15, 2008) ............................8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ..............................................................................................10

*Lax v. First Merchants Acceptance Corp.*,
    Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997). ........................6

*Lerman v. Apple, Inc.*,
    No. 15-CV-07381 (E.D.N.Y.)................................................................................................11

*M&M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc.*,
    No. 17-cv-1479-PA (C.D. Cal.)..............................................................................................11

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    No. 10-cv-00302-MRPMAN (C.D. Cal.) ...............................................................................11

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
    No. 08-cv-8781 (HB) (S.D.N.Y.) ...........................................................................................12

*New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Group, plc*,
    No. 08-cv-05310-DAB-HBP (S.D.N.Y.)................................................................................11

*Plumbers Local #200 Pension Fund v. The Washington Post Co.*,
    274 F.R.D. 33 (D.D.C. 2011)....................................................................................................5

*Rice v. Genworth Fin. Inc.*,
    No. 3:17cv59, 2017 U.S. Dist. LEXIS 137110 (E.D. Va. Aug. 25, 2017) ...............................8

*Rubin v. MF Global, Ltd.*,
    No. 08-cv-2233 (VM) (S.D.N.Y.)...........................................................................................12

*Tchatchou v. India Globalization Capital, Inc.*,
    No. 8:18-cv-03396-PWG, 2019 U.S. Dist. LEXIS 33329
    (D. Md. Feb. 28, 2019) .............................................................................................................7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)............................................................................10

*Weiss v. York Hosp.*,
    745 F.2d 786, 810 n.36 (3d Cir. 1984).....................................................................................8

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................................ *passim*

Private Securities Litigation Reform Act of 1995 ............................................................1, 6, 7, 9

Securities Exchange Act of 1934.............................................................................................1, 6

**Rules**

Fed. R. Civ. P. 23.................................................................................................................. *passim*

Bratya SPRL ("Bratya") respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Bratya as Lead Plaintiff on behalf of all purchasers of Bed Bath & Beyond Corporation ("Bed Bath" or the "Company") common stock (including those who bought to cover a short position) or Bed Bath call options, or sold Bed Bath put options, from August 12, 2022 through August 18, 2022, inclusive (the "Class Period") (the "Class"); and (2) approving proposed Lead Plaintiff's selections of Pomerantz LLP ("Pomerantz") and Bronstein, Gewirtz & Grossman, LLC ("BG&G") as Co-Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

The amended complaint (the "Amended Complaint") in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Bed Bath investors, including Bratya, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of Bed Bath securities to fall sharply, damaging Bratya and other Bed Bath investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, Bratya purchased 227,311 shares of Bed Bath stock, expended $10,726,059 on its purchases of Bed Bath stock and options contracts, retained 150,000 shares of Bed Bath stock and 1,131 open options contracts, and, as a result of the disclosures revealing the misrepresentations and/or omissions during the Class Period, incurred losses of approximately $4,350,426 in connection with its purchases of Bed Bath stock and options

1

contracts. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A.  Accordingly, Bratya believes that it has the largest financial interest in the relief sought in the Action.

Beyond its considerable financial interest, Bratya also meets the applicable requirements of Rule 23 because its claims are typical of absent Class members and because it will fairly and adequately represent the interests of the Class.

To fulfill its obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Bratya has selected Pomerantz and BG&G as Co-Lead Counsel, and Cohen Milstein as Liaison Counsel, for the Class.  These firms and their attorneys are highly experienced in the area of securities litigation and class actions and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Accordingly, based on its significant financial interest, its satisfaction of the applicable requirements of Rule 23, and its commitment to overseeing this litigation, Bratya respectfully requests that the Court enter an order appointing it as Lead Plaintiff for the Class and approving its selections of Co-Lead Counsel and Liaison Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Amended Complaint (Dkt. No. 8), this case involves a scheme to manipulate the securities markets orchestrated by Cohen, the billionaire co-founder and former CEO of the pet e-commerce company Chewy, Inc.  Cohen's scheme was made possible through and with the willing participation of Bed Bath and JP Morgan, a U.S. broker-dealer based in New York, who provided Cohen with access to the U.S. securities markets to execute the scheme and otherwise assisted in carrying out the scheme.

In March 2022, Cohen, through his investment firm Defendant RC Ventures, bought nearly a 10% stake in Bed Bath, which he successfully used to obtain three seats on Bed Bath's board of directors and a commitment from the Company to study his proposal to turn around the company by, among other things, selling or spinning off Bed Bath's more successful Buy Buy Baby chain. Over the next five months, however, Bed Bath's stock price plummeted amid a stream of bad news, as the Company announced record losses, dwindling cash on hand, and soaring debt. By August, Bed Bath had also rejected Cohen's turnaround strategy, electing to seek new loans backed, in part, by the Buy Buy Baby assets, along with the issuance of millions in new shares of stock that would dilute Cohen's holdings. As a result, Cohen's investment in Bed Bath securities was underwater by tens of millions of dollars with little prospect of improving anytime soon.

Other investors in Cohen's position would have chosen between maintaining their investment or selling at a loss. But Cohen instead orchestrated a market manipulation scheme to artificially inflate the price and trading volume of Bed Bath securities so that he could secretly sell his holdings at a profit at the expense of Bed Bath's public investors.

To carry out his scheme, Cohen needed to drive up the stock price and flood the market with trading activity so that he could sell his shares quickly, secretly, and at a profit. Cohen accomplished that goal by leveraging his loyal following among retail investors, many of whom closely followed his every public statement, filing, or social-media post to guide their own investment decisions. Since Cohen seized control of GameStop in 2021, many retail investors who traded in so-called "meme stocks"—like GameStop, AMC, and Bed Bath—viewed Cohen as their de facto leader, dissecting his public statements on social-media platforms such as Reddit, Discord, and Twitter. Delivering targeted messages that he knew would appeal to and resonate with these retail investors, Cohen deceived them into believing that he was holding onto his

3

investment in Bed Bath and was projecting that the price of Bed Bath's stock would soar to as much as $60 to $80 per share—a feat that Bed Bath had not achieved in years. In online discussion forums, these retail investors amplified Cohen's misleading statements and further promoted the value of investing in Bed Bath, despite the near-universal agreement among analysts that the Company's stock was worth less than $5 per share.

Cohen's scheme worked perfectly. In a matter of days, the market for Bed Bath securities was flooded with retail investors who bought the Company's stock at higher and higher prices, sending Bed Bath's stock price to an intraday high of $30 on August 17, with the highest daily trading volume in more than a decade. While retail investors bought Bed Bath's stock in record numbers, Cohen secretly sold his entire holdings of the Company's securities, earning about $178.1 million in proceeds and $58 million in illicit profits from the scheme.

More than a day after Cohen had dumped his remaining holdings, he finally disclosed his sales to the public in a filing with the SEC on August 18, after the markets had closed. Bed Bath's stock price plunged on the news, dropping by 45% in after-hours trading. Later that day, Bed Bath announced that it had hired a restructuring expert as it pursued its new turnaround strategy. On August 31, Bed Bath formally announced its new strategic plan that involved shutting stores, taking on new debt, and issuing millions of new shares of stock. By mid-October, Bed Bath's stock price had dropped to under $5 per share. As a result, retail investors who acquired Bed Bath securities based on Cohen's manipulative and deceptive acts have suffered hundreds of millions of dollars in losses.

## ARGUMENT

### I. BRATYA SHOULD BE APPOINTED LEAD PLAINTIFF

There is a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15

4

U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). "Congress sought to attract lead plaintiffs with a significant financial stake in the litigation on the assumption that they would be more likely to play an active role in directing and overseeing the litigation." *Plumbers Local #200 Pension Fund v. The Washington Post Co.,* 274 F.R.D. 33, 35 (D.D.C. 2011).

Bratya should be appointed Lead Plaintiff because, to the best of its knowledge, it has the largest financial interest in the Action and otherwise strongly satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i)-(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Bratya satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff among Class members and, therefore, should be appointed Lead Plaintiff for the Class.

### A. Bratya Is Willing to Serve as a Class Representative and Has Timely Filed This Motion to Be Appointed Lead Plaintiff.

On September 6, 2022, a notice was caused to be published over *Legal Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities class action had been filed against Defendants, and which advised investors in Bed Bath securities that they had 60 days from the date of the PSLRA Notice—*i.e.*, until November 7, 2022—to file a motion to be appointed as Lead Plaintiff. *See* Lieberman Decl., Ex. B.

Bratya has timely filed the instant motion pursuant to the PSLRA Notice, and has attached a sworn Certification executed on its behalf by its gérant[1], David Coti ("Coti"), attesting that it is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Bratya satisfies the first requirement to serve as Lead Plaintiff of the Class.

### B. Bratya Has the "Largest Financial Interest" in the Action.

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of its knowledge, Bratya has the largest financial interest of any Bed Bath investor seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6,

---

[1] "Gérant" is a French term which translates to "manager" in English.

1997); *see Tchatchou v. India Globalization Capital, Inc.*, No. 8:18-cv-03396-PWG, 2019 U.S. Dist. LEXIS 33329, at *11-12 (D. Md. Feb. 28, 2019); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878, at *22-25 (E.D.N.Y. Mar. 2, 2007).

During the Class Period, Bratya: (1) purchased 227,311 shares of Bed Bath stock; (2) expended $10,726,059 on its purchases of Bed Bath stock and options contracts; (3) retained 150,000 shares of Bed Bath stock and 1,131 open options contracts; and (4) as a result of the disclosures of the fraud, suffered losses of $4,350,426 in connection with its Class Period transactions in Bed Bath stock and options contracts. *See* Lieberman Decl., Ex. A.  To the extent that Bratya possesses the largest financial interest in the outcome of this litigation, it is the presumptive "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C. Bratya Otherwise Satisfies the Requirements of Rule 23.

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, at this stage of the litigation, only a *prima facie* showing of typicality and adequacy is required.  *Chamblee v. Terraform Power, Inc.*, No. PX 16-981, 2016 U.S. Dist. LEXIS 98619, at *4-5 (D. Md. July 28, 2016); *Hirtenstein v. Cempra, Inc.*, Nos. 1:16cv1303 *et al.*, 2017 U.S. Dist. LEXIS 103799, at *8-9 (M.D.N.C. July 5, 2017).

The typicality requirement "asses[es] whether the action can be efficiently maintained as a class and whether the [movant has] incentives that align with those of absent class members so as

7

to assure that the absentees' interests will be fairly represented." *In re: XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 18 (D.D.C. Aug. 1, 2006) (quotations and citations omitted).

"The typicality requirement of the rule requires that a Lead Plaintiff suffer the same injuries as the class as a result of the defendant's conduct and has claims based on the same legal issues." *Johnson v. Pozen, Inc.*, No. 1:07CV599, 2008 U.S. Dist. LEXIS 12004, at *5 (M.D.N.C. Feb. 15, 2008) (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 810 n.36 (3d Cir. 1984)). Bratya's claims are typical of those of the Class. Bratya alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning Bed Bath. Bratya, as did all Class members, purchased Bed Bath securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Bed Bath's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"Adequate representation requires a finding that the purported class representative and its attorney are capable of pursuing the litigation and that neither has a conflict of interest with other class members." *Pozen*, 2008 U.S. Dist. LEXIS 12004, at *5; *see also Rice v. Genworth Fin. Inc.*, No. 3:17cv59, 2017 U.S. Dist. LEXIS 137110, at *19-20 (E.D. Va. Aug. 25, 2017). As set forth in greater detail below, Bratya has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits its choices of Pomerantz and BG&G, and Cohen Milstein to the Court for approval as Co-Lead Counsel and Liaison Counsel, respectively, for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is

no evidence of antagonism or conflict between Bratya's interests and the interests of the Class. Bratya has submitted a Certification executed on its behalf declaring its commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and the significant losses incurred by Bratya demonstrate that it has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating its adequacy, Bratya has submitted a Declaration executed by Coti, in his capacity as gérant, attesting to, *inter alia*, his background, his investing experience, his experience retaining and overseeing counsel, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek Bratya's appointment as Lead Plaintiff, and the steps that he is prepared to take on Bratya's behalf to prosecute this litigation on behalf of the Class. *See id.*, Ex. D.

### D. Bratya Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses.

The presumption in favor of appointing Bratya as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Bratya's ability and desire to fairly and adequately represent the Class has been discussed above. Bratya is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class. Accordingly, Bratya should be appointed Lead Plaintiff for the Class.

## II. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 438 (E.D. Va. 2000) ("[A] district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources . . . ."); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))).

Here, Bratya has selected Pomerantz and BG&G as Co-Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Lieberman Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf

of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

BG&G has served as co-lead or executive positions in: *Lerman v. Apple, Inc.*, No. 15-CV-07381 (E.D.N.Y.) (co-lead counsel; $20 million settlement of class action by New York and New Jersey iPhone 4S owners); *In re Flint, Mich. Water Crisis Litigation*, No. 16-CV-10444 (E.D. Mich.) (Plaintiff Exec. Comm. Member;  global settlement with State of Michigan for approx. $600 million); *In re Spectrum Pharm., Inc. Inc. Sec. Litigation*, No. 16-CV-02279 (D. Nev.) (co-lead counsel; case settled for approx. $3 million); *M&M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc.*, No. 17-cv-1479-PA (C.D. Cal.) (co-lead counsel in securities class action); *Duncan et. al v. Joy Global Inc.*, No. 2:16-cv-1229-pp (E.D. Wis.) (co-lead counsel in securities class action; $20 million settlement for the class); *In re CBD Energy Limited Securities Litigation*, No. 4:15-cv-01668 (S.D. Tex.) (co-lead counsel in securities class action).  *See* Lieberman Decl., Ex. F.

Cohen Milstein is also well-qualified to serve as Liaison Counsel for the Class in the Action.  As its firm resume reflects, Cohen Milstein has worldwide expertise as counsel for U.S. and non-U.S. institutional investors who have been the victims of securities fraud.  *See* Lieberman Decl., Ex. G.  By applying innovative legal theories and litigation strategies, it has recovered billions of dollars for its clients in some of the largest and most complex securities class actions. Significant securities settlements obtained by Cohen Milstein, acting as lead or co-lead counsel, include a $500 million settlement in the Countrywide mortgage-backed securities ("MBS") class action (*Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-00302-MRPMAN (C.D. Cal.)); a $275 million settlement in an MBS class action against the Royal Bank of Scotland (*New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Group, plc*, No. 08-cv-05310-DAB-HBP

(S.D.N.Y.)); $335 million in settlements in a class action against Residential Accredit Loans, Inc. and various investment banks (*New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (HB) (S.D.N.Y.)); and a $90 million settlement in a class action against MF Global (*Rubin v. MF Global, Ltd.*, No. 08-cv-2233 (VM) (S.D.N.Y.)), among others. *See id*. Additionally, Cohen Milstein's attorneys have experience in achieving substantial recoveries in class actions, and they have extensive familiarity with the Local Civil Rules and practice norms of this Judicial District.

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, Bratya's choice of counsel have the skill, knowledge, expertise, resources, and experience that will enable them to prosecute this Action effectively and expeditiously. The Court may be assured that by approving Bratya's selection of Pomerantz and BG&G as Co-Lead Counsel and Cohen Milstein as Liaison Counsel, the Class members will receive the best legal representation available. Thus, Bratya respectfully urges the Court to appoint Pomerantz and BG&G and Cohen Milstein to serve as Co-Lead Counsel and Liaison Counsel, respectively, for the Class.

## CONCLUSION

For the foregoing reasons, Bratya respectfully requests that the Court issue an Order: (1) appointing Bratya as Lead Plaintiff for the Class; and (2) approving Bratya's selections of Pomerantz and BG&G as Co-Lead Counsel and Cohen Milstein as Liaison Counsel for the Class.

Dated: November 7, 2022          Respectfully submitted,

*/s/ Steven J. Toll*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (D.C. Bar No. 225623)
Daniel S. Sommers (D.C. Bar No. 416549)
Jan E. Messerschmidt (D.C. Bar No. 1031488)
1100 New York Avenue, N.W., Fifth Floor
Washington, D.C. 20005

Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

*Counsel for Lead Plaintiff Movant Bratya SPRL and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
Eitan Kimelman
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com
Email: eitank@bgandg.com

*Counsel for Lead Plaintiff Movant Bratya SPRL and Proposed Co-Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I certify that on this 7th day of November 2022 I electronically filed the foregoing document and that it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Steven J. Toll*
Steven J. Toll