**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE BED BATH & BEYOND CORPORATION SECURITIES LITIGATION | Case No. 1:22-cv-2541-TNM |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Oral Argument Requested |

**DEFENDANT SUE E. GOVE'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF HER MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page</u></div>

TABLE OF AUTHORITIES ................................................................................. iv

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ....................................................................................................... 2

I.      THE OPPOSITION PRESENTS NO BASIS FOR
CONVERTING GOVE'S MOTION TO DISMISS INTO
A MOTION FOR SUMMARY JUDGMENT........................................... 4

II.     THE OPPOSITION IDENTIFIES NO CHALLENGED
STATEMENT MADE BY GOVE AND NO
ACTIONABLY FALSE STATEMENT MADE BY BED
BATH...................................................................................................... 5

        A.     The Opposition's Conclusory Assertions That Gove
Was A Maker Of The Challenged Statements
Plainly Fail To State A Claim ........................................... 5

        B.     In Any Event, The Opposition's Contrived
Arguments About Bed Bath's Challenged
Statements Fail To Show They Were False Or
Misleading ........................................................................ 7

                1.    The Opposition Misrepresents The
Challenged Statements By Bed Bath And
Ignores The Arguments Made In The Bed
Bath Defendants' Brief ....................................... 7

                2.    The Opposition Fails To Meaningfully
Address That The Challenged Statements
Are Inactionable Puffery And Statements Of
Opinion ............................................................ 12

III.   THE OPPOSITION FAILS TO IDENTIFY
PARTICULARIZED FACTS RAISING A STRONG
INFERENCE OF SCIENTER AGAINST EITHER GOVE
OR BED BATH ................................................................................... 14

        A.     The Opposition Cites No Factual Allegations
Regarding Gove's Scienter ............................................ 15

B.     To The Extent Relevant To The Control Person Claim Against Gove, Plaintiff Does Not Raise A Strong Inference Of Scienter Against Bed Bath ............................ 16

     1.     The Opposition Advances No Valid Motive And Opportunity Allegations Against Bed Bath ...................................................................... 17

     2.     The Opposition Fails To Identify Any Strong Circumstantial Evidence That Bed Bath Acted With Scienter ................................... 18

     3.     The Opposition Simply Ignores That, When Considered Collectively, Plaintiff's Inference Of Scienter Against Bed Bath Makes No Sense ................................................. 21

IV.     THE OPPOSITION IMPROPERLY ATTEMPTS TO AMEND THE SECOND AMENDED COMPLAINT TO PLEAD RELIANCE ................................................................ 22

A.     The Opposition Ignores That The Allegations Of Market Inefficiency In The Second Amended Complaint Defeat Any Entitlement To The Fraud-On-The-Market Presumption of Reliance ...................................... 22

B.     The Opposition's Arguments About The *Affiliated Ute* Presumption of Reliance Misstate Applicable Law ................................................................................ 23

V.     THE OPPOSITION CONFIRMS THAT THE CONTROL PERSON CLAIM AGAINST GOVE MUST BE DISMISSED ........................................................................ 24

CONCLUSION .................................................................................... 25

## TABLE OF AUTHORITIES[*]

**Page(s)**

**Cases**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
    19 F.4th 145 (2d Cir. 2021) ..................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................6

*Boykin v. K12, Inc.*,
    54 F.4th 175 (4th Cir. 2022) ...........................................................9–10

*City of Birmingham Firemen's & Policemen's Supplemental*
    *Pension Sys. v. Ryanair Holdings plc*,
    2020 WL 2834857 (S.D.N.Y. June 1, 2020)  ...............................19–20

*City of Harper Woods Emps.' Ret. Sys. v. Olver*,
    589 F.3d 1292 (D.C. Cir. 2009) ........................................................25

*City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
    8 F.4th 592 (7th Cir. 2021) .............................................................20–21

* *Davis v. World Sav. Bank, FSB*,
    806 F. Supp. 2d 159 (D.D.C. 2011) ...................................................11

*Fidel v. Farley*, 392 F.3d 220 (6th Cir. 2004),
    *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)...........................................................................19

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) .....................................................3, 11, 12

* *Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ...........................................................6–7

*In re Adient plc Sec. Litig.*,
    2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ..................................13–14

---

[*] Asterisks identify those authorities on which Defendant Sue E. Gove chiefly relies in this Reply Memorandum.

*In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021),
   *cert. denied sub nom. Alphabet Inc. v. Rhode Island*, 142 S. Ct. 1227 (2022) .......................18

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
   390 F. Supp. 3d 432 (S.D.N.Y. 2019) ......................................................................................24

\* *In re Danaher Corp. S'holder Derivative Litig.*,
   549 F. Supp. 3d 59 (D.D.C. 2021) ........................................................................................8–9

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.*,
   503 F. Supp. 2d 25 (D.D.C. 2007) ..........................................................................................16

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
   667 F.3d 1331 (10th Cir. 2012) ...............................................................................................21

*In re Synchrony Fin. Sec. Litig.*,
   988 F.3d 157 (2d Cir. 2021) .....................................................................................................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   2 F.4th 1199 (9th Cir. 2021) ....................................................................................................24

*In re XM Satellite Radio Holdings Sec. Litig.*,
   479 F. Supp. 2d 165 (D.D.C. 2007) ...........................................................................................4

*Ind. Public Ret. System v. Pluralsight, Inc.*,
   45 F.4th 1236 (10th Cir. 2022) ................................................................................................17

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004) ...................................................................................................4

*Lea v. TAL Educ. Grp.*,
   837 F. App'x 20 (2d Cir. 2020) ...........................................................................................15–16

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
   876 F.3d 541 (4th Cir. 2017) ...................................................................................................16

*Medehkar v. U.S. Dist. Ct. for the N. Dist. of Cal.*,
   99 F.3d 325 (9th Cir. 1996) ........................................................................................................5

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*,
   761 F.3d 1109 (10th Cir. 2014) ...............................................................................................13

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ...................................................................................................22

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).................................................................................19, 20

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
    58 F.4th 195 (5th Cir. 2023) ..............................................................................3

* *Omnicare, Inc. v. Laborers Dist. Couns. Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)..........................................................................................9, 14

*Phelps v. Stomber*,
    883 F. Supp. 2d 188 (D.D.C. 2012) ...................................................................2–3

*Ross v. Walton*,
    668 F. Supp. 2d 32 (D.D.C. 2009) .....................................................................3

*SEC v. Levin*,
    2014 U.S. Dist. LEXIS 197845 (S.D. Fla. Oct. 6, 2014) ......................................7

*SEC v. Rio Tinto plc*,
    2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019) ...................................................13

* *Smith-Haynie v. D.C.*,
    155 F.3d 575 (D.C. Cir. 1998) .........................................................................23

* *Stevens v. InPhonic, Inc.*,
    662 F. Supp. 2d 105 (D.D.C. 2009) ..................................................................2, 3

* *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)..........................................................................................15

*Thakker v. Renaud*,
    2021 WL 1092269 (D.D.C. Mar. 22, 2021)........................................................11

**Statutes**

15 U.S.C. § 78j(b) ...........................................................................................7, 16–17

15 U.S.C. § 78t(a) ............................................................................................1, 24

15 U.S.C. § 78u-4 ............................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 8.................................................................................................6

Fed. R. Civ. P. 9(b) ..................................................................................................2–3, 11

Fed. R. Civ. P. 12(b) ..................................................................................................11, 23

Defendant Sue E. Gove respectfully submits this reply memorandum in further support of her motion to dismiss with prejudice Plaintiff's Second Amended Complaint (ECF No. 66).[1]

## PRELIMINARY STATEMENT

Plaintiff's Opposition confirms that Gove (like Bed Bath more generally) has no place in this action.[2] As with the Second Amended Complaint itself, the Opposition is overwhelmingly devoted to Plaintiff's assertions that Cohen defrauded Bed Bath investors and manipulated the market for Bed Bath's securities in order to sell his shares at a $68 million profit. *See* Opp'n at 1–42, 59–65. It is only 50 pages into the Opposition that Plaintiff first substantively addresses the challenged statements made by Bed Bath—and purportedly "ratified" in some unspecified way by its then interim-CEO Gove—which consist of a string of generic corporate pleasantries and platitudes, including that the Company was "pleased to have reached a constructive agreement with RC Ventures in March" without say anything about Cohen's then-current (and unknowable) holdings in August. Recognizing that the Second Amended Complaint contains nothing more than unsupported speculation—rather than the type of particularized facts required

---

[1] All capitalized terms not defined herein have the meaning ascribed to them in Defendants Bed Bath & Beyond Inc. And Sue E. Gove's Memorandum Of Law In Support Of Their Motion To Dismiss (ECF No. 72) ("BBBY Def. Br." or the "Bed Bath Defendants' Brief"). The "Opposition" or "Opp'n" refers to Plaintiff's Consolidated Memorandum of Points And Authorities In Opposition To Defendants' Motions To Dismiss (ECF No. 79). Unless indicated otherwise, all internal quotation marks and citations are omitted. Citations to "Ex." are to the exhibits attached to the Declaration of Jared Gerber filed on March 15, 2023 (ECF No. 72-1) or the Declaration of Jared Gerber filed concurrently with this Reply Memorandum.

[2] On April 23, 2023, Bed Bath filed a voluntary bankruptcy petition. ECF No. 83 at 1. As a result, this action is automatically stayed as against Bed Bath. *Id.* at 2. Plaintiff, however, has asserted that the action should not be stayed as against any other defendant, including Bed Bath's CEO Gove. ECF No. 81 at 1. As such, this reply brief is filed solely on behalf of Gove, while reserving all rights to seek a further stay of the action against her, rather than on behalf of all of the Bed Bath Defendants. The arguments previously made by Bed Bath, however, remain relevant to the extent that the control person claim asserted against Gove under Section 20(a) requires Plaintiff to plead an underlying violation by the Company. *See* BBBY Def. Br. at 35.

by the applicable heightened pleading standards—that these generic statements were misleading (let alone knowingly or recklessly so), the Opposition routinely resorts to understating Plaintiff's pleading burden, misrepresenting the statements made by Bed Bath, improperly lumping the Bed Bath Defendants together with Cohen, and liberally supplementing the allegations in the Second Amended Complaint with new assertions raised for the first time in the Opposition.  As discussed in more detail below, each of these tactics fails and the unsupported (and entirely implausible) claims asserted against Gove should be dismissed with prejudice.

## **ARGUMENT**

Unable to point to any particularized factual allegations in the Second Amended Complaint supporting the speculative assertions that Gove must have known that Cohen had secretly sold his Bed Bath shares at the time of the challenged statements because Bed Bath signed an amended credit agreement two weeks later, BBBY Def. Br. at 1–2, Plaintiff prefaces all of the legal arguments in the Opposition by contending that "Defendants" in this action— without specifying which ones—have "misstate[d] the applicable standards or exaggerate[d] the requirements of the PSLRA," Opp'n at 15, in some unexplained way.  Plaintiff's failure to explain how Gove exaggerated those standards is no accident:  the heightened pleading requirements set forth in the Bed Bath Defendants' Brief were quoted from Supreme Court precedent, which itself quotes from the language of the PSLRA.  *See* BBBY Def. Br. at 11 (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81–82 (2006) (quoting the PSLRA, 15 U.S.C. § 78u-4)).  As courts in this circuit have repeatedly recognized, this language imposes a "higher pleading standard in order to survive a motion to dismiss than the standard that applies to a typical motion to dismiss brought under the Federal Rules," *Stevens v. InPhonic, Inc.*, 662 F. Supp. 2d 105, 114 (D.D.C. 2009), and "exceeds even the standard set

2

forth in Rule 9(b)," *Phelps v. Stomber*, 883 F. Supp. 2d 188, 205 (D.D.C. 2012).  In other words, the PSLRA imposes "exacting heightened standards of pleading," *Ross v. Walton*, 668 F. Supp. 2d 32, 37 (D.D.C. 2009), and an "enhanced pleading standard" that "impose[s] special burdens on plaintiffs," *Stevens*, 662 F. Supp. 2d at 114, 119.  Plaintiff's attempts to minimize this burden as only requiring courts to dismiss "sham litigation," Opp'n at 15, must therefore be rejected.

Moreover, the cases cited in the Opposition in support of the proposition that "heightened pleading standards" are not "impossible ones," *id.*, only underscore the shortcomings of the meager allegations here.  Unlike the Second Amended Complaint, which relies on a string of speculation that Gove should have known that Cohen "secretly" sold his shares, BBBY Def. Br. at 13–14, 23, the complaints in the cases cited in the Opposition contained significantly more detailed allegations, such as statements from 20 confidential former employees at the relevant company detailing the ways in which the company's internal situation allegedly differed from its public disclosures, including based on specific conversations with relevant executives.  *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 769 (9th Cir. 2023).[3]

As explained in more detail below, the Second Amended Complaint's unsupported speculation concerning Gove and Bed Bath plainly falls short under these standards.

---

[3] *See also Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 204–05, 208–09 (5th Cir. 2023) (in action alleging misstatements about timeline for opening of amusement parks in China, citing anonymous former employee who "was responsible for overseeing the construction of the China parks and reporting on their progress internally," including detailing specific meetings he attended with executives and reports he made to senior management); *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 148 (2d Cir. 2021) (citing a confidential witness who alleged he had "attended a department meeting where [an individual defendant] directed the attendees that they needed to keep a low profile concerning the [allegedly misstated information] and should not release this information outside the company").

I.    **THE OPPOSITION PRESENTS NO BASIS FOR CONVERTING GOVE'S MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT**

Again seeking to avoid any scrutiny of the generic allegations in the Second Amended Complaint, and improperly lumping together arguments about all of the Defendants, Plaintiff's first substantive argument in the Opposition is that the Court should deny "Defendants' request for judicial notice" or, in the alternative, convert "their motion to dismiss . . . into a motion for summary judgment." Opp'n at 15–16. This argument—which is little more than an admission that Plaintiff is unable to state a claim in the absence of discovery that is explicitly prohibited by the PSLRA, 15 U.S.C. § 78u-4(b)(3)(B)—clearly does not apply to Gove, as she did not submit a request for judicial notice and the Opposition points to no extraneous material introduced by her. *Id.* at 16–18 (only identifying examples where Cohen supposedly "cite[d] external materials neither referenced in the SAC nor appropriate for judicial notice"). In fact, the material exhibits submitted in support of Gove's motion were referenced throughout the Second Amended Complaint and therefore may properly be considered at this stage. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) ("It is . . . clear that these documents—which were appended to [defendant's] motion to dismiss and whose authenticity is not disputed—may be considered here because they are referred to in the complaint and are integral to [plaintiff's] claim."); *In re XM Satellite Radio Holdings Sec. Litig.*, 479 F. Supp. 2d 165, 174 n.8 (D.D.C. 2007) ("It is well-established that a court may consider the full text of the SEC filings, prospectus, analysts' reports and statements integral to the complaint, even if not attached, without converting the motion into one for summary judgment under Fed. R. Civ. P. 56.").

The Opposition identifies no authority supporting the conversion of one defendant's motion to dismiss into a motion for summary judgment just because another defendant purportedly cited materials outside of the complaint, and doing so under the circumstances here

would directly conflict with the PSLRA's aim to require plaintiffs to state a claim before receiving access to burdensome discovery. *See Medehkar v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 99 F.3d 325, 328 (9th Cir. 1996) ("Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed."). Accordingly, the Court should deny Plaintiff's request to the extent it seeks to convert Gove's entirely proper motion to dismiss into a premature motion for summary judgment.

## II.   THE OPPOSITION IDENTIFIES NO CHALLENGED STATEMENT MADE BY GOVE AND NO ACTIONABLY FALSE STATEMENT MADE BY BED BATH

As shown in the Bed Bath Defendants' Brief, the Bed Bath disclosures challenged in the Second Amended Complaint—including generic statements that Bed Bath was "pleased to have reached a constructive agreement with RC Ventures in March" and "committed to maximizing value for all shareholders"—were true and non-actionable, did not give rise to a duty for Bed Bath to speak about Cohen's then-current stock holdings, and were not made by Gove. BBBY Def. Br. at 11–22. Unable to seriously dispute these points, the Opposition instead resorts to mischaracterizing the challenged disclosures, misrepresenting the sources cited in the Second Amended Complaint, and failing to meaningfully address these dispositive arguments. The Opposition therefore confirms that the Second Amended Complaint does not adequately allege an actionable misrepresentation by the Bed Bath Defendants.

### A.   The Opposition's Conclusory Assertions That Gove Was A Maker Of The Challenged Statements Plainly Fail To State A Claim

The Opposition concedes, as it must, BBBY Def. Br. at 21 (citing *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011)), that Gove can only be liable as a "maker" of the challenged statements if she had "ultimate authority over the statement[s]," Opp'n at 58. Plaintiff nonetheless contends that it has satisfied this standard because the Second Amended

Complaint contains a conclusory assertion that Gove "had ultimate authority over the [relevant] [s]tatements" and alleges that the Company entered into a settlement agreement "acknowledging" that its CEO (like all CEOs) has a generic "responsibility to oversee the accuracy" of disclosures.  *Id.* (citing SAC ¶ 181).[4]  These arguments fail.

*First*, the Second Amended Complaint's unsupported assertion that "Gove had ultimate authority over the [challenged] statements," SAC ¶ 181, is nothing more than "a formulaic recitation of the elements of a cause of action" that is insufficient even under Rule 8, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), let alone the heightened pleading standards that apply here.

*Second*, the Opposition's assertion that Bed Bath "acknowledged" that its CEO has "responsibility to oversee" disclosures, Opp'n at 58, also does nothing to plead that Gove was a maker of the specific statements at issue here.  Every CEO has a general responsibility to oversee their company's disclosures, and therefore accepting this argument would lead to a conclusion that all CEOs have ultimate authority over every statement released by their company, a result that courts have directly rejected under *Janus*.  BBBY Def. Br. at 21–22 (citing *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426–27 (7th Cir. 2015)).  Indeed, the Opposition itself concedes that its argument would deem Gove the maker "of all material public disclosures" by Bed Bath, a result "[t]hat wouldn't square with the [*Janus*] Court's reminder about the narrow

---

[4] In another transparent attempt to avoid the Court's consideration of the meager allegations in the Second Amended Complaint, the Opposition curiously argues that "Gove's motion fails to address these allegations and the Court should treat them as conceded."  Opp'n at 58.  This argument is incorrect, as Gove directly addressed the specific allegations identified in the Opposition, stating that "Plaintiff contends that Gove had ultimate authority over the statements solely because she was the interim CEO of the Company and had responsibility to oversee its disclosures," BBBY Def. Br. at 21, citing the very complaint paragraph identified by Plaintiff.

scope that we must give the implied private right of action under Rule 10b-5." *Glickenhaus*, 787 F.3d at 427 (finding CEO to be maker only of statement he personally drafted).[5]

Accordingly, Plaintiff fails to adequately allege that Gove was a maker of the challenged statements, requiring the Section 10(b) and Rule 10b-5 claims against her to be dismissed.

### B.    In Any Event, The Opposition's Contrived Arguments About Bed Bath's Challenged Statements Fail To Show They Were False Or Misleading

The Opposition does not dispute, and therefore concedes, that the challenged statements by Bed Bath were literally truthful. Opp'n at 51. Nonetheless, the Opposition claims that, "in context," Bed Bath's truthful statements "would mislead a reasonable investor" about Cohen's holdings. Opp'n at 52. This argument fails, however, because the Opposition asks the Court to misread the challenged disclosures, ignores the arguments made in the Bed Bath Defendants' Brief, relies on factual assertions not set forth in the Second Amended Complaint, and does not show that the generic statements at issue could be actionable.

### 1.    *The Opposition Misrepresents The Challenged Statements By Bed Bath And Ignores The Arguments Made In The Bed Bath Defendants' Brief*

The Opposition confirms that Plaintiff's far-fetched claim in this action is that Bed Bath supposedly defrauded investors for a single trading day in August 2018 by stating "[w]e were pleased to have reached a constructive agreement with RC Ventures in March and are committed to maximizing value for all shareholders," which purportedly was "misleading because [it] omitted to disclose that Cohen had already formed a plan to liquidate his interest and, in fact, had already liquidated the vast majority, if not all of his interests before these statements were

---

[5] The Opposition cites no case for the proposition that a CEO can be considered a maker "of all material public disclosures" by a company because they have a generic "responsibility to oversee" disclosures. Opp'n at 58. *SEC v. Levin*, the only case that Plaintiff cites in its *Janus* arguments, did not so hold, and only concluded that *Janus* was satisfied because the defendant explicitly stipulated that he "had ultimate authority over the content" of the relevant disclosures, 2014 U.S. Dist. LEXIS 197845, at *57 (S.D. Fla. Oct. 6, 2014), which is not the case here.

made." Opp'n at 50–51.[6]  For several reasons, the Opposition's cursory arguments in support of this theory do not salvage the Second Amended Complaint's insufficient allegations.

*First*, the Opposition does not deny that the challenged disclosure only "referred, in the past tense, to the cooperation agreement reached in March, without any reference to Cohen's past, present, or future holdings of Bed Bath stock," and therefore by itself "could not give rise to an obligation to disclose that Cohen had 'secretly' sold that stock."  BBBY Def. Br. at 14 & n.3 (citing cases holding that a company does not need to disclose every fact on a subject just because it reveals one).  Instead, the Opposition only attempts to argue that Bed Bath's statements were misleading when considered in context, because they were supposedly "issued in direct response to media inquiries about Cohen's intention to sell [his] shares," Opp'n at 51–52, or in "the context of the media inquiry, which [was] directly related to questions about whether Cohen had sold," *id.* at 52.  But this belated attempt to construct a theory under which Bed Bath's statement about "the cooperation agreement reached in March" could be interpreted as implying something about Cohen's stock holdings in August is insufficient as a matter of law.

As an initial matter, Plaintiff's newfound assertion that the challenged statements were made in response to direct questions about whether Cohen had sold is raised for the first time in the Opposition and is not alleged in the Second Amended Complaint, which only vaguely asserts that the media "reached out to Bed Bath for comment on Cohen's Form 144."  SAC ¶ 179.  Plaintiff's attempt to introduce these new allegations for the first time in opposition to a motion to dismiss are improper and must be rejected.  *See In re Danaher Corp. S'holder Derivative*

[6] The Opposition makes no meaningful attempt to respond to Bed Bath's prior showing that the statements that the Company was "working . . . on strengthening [its] balance sheet" and "enhanc[ing] liquidity" did not give rise to a duty to disclose the Company's future credit agreement, BBBY Def. Br. at 15−17, instead only repeating its argument in a passing footnote, Opp'n at 51 n.15.  The Opposition therefore concedes that this theory fails to state a claim.

*Litig.*, 549 F. Supp. 3d 59, 74 n.9 (D.D.C. 2021) ("[Plaintiffs] cannot amend their Complaint through an opposition brief.").  Moreover, these new allegations are contradicted by the documents containing the alleged misstatements, which nowhere indicate what specific questions Bed Bath was responding to.  *See* Ex. A at 3 (CNBC article not identifying any questions to Bed Bath); Ex. B. at 3 (stating disclosure was made "in response to certain media inquiries").

But even if the Court were to credit this new and unsupported assertion, Plaintiff would still fail to plead falsity.  No reasonable investor would conclude from that supposed back-and-forth manufactured in the Opposition—Bed Bath responding to a "direct" question asking "whether Cohen had sold" in August by stating only that it was "pleased to have reached a constructive agreement with [him] in March," Opp'n at 51–52—that the Company was representing that Cohen still held shares in August.  A reasonable investor would understand that Bed Bath could have said "no, Cohen did not sell his shares" if it wanted to create that impression, and would have viewed the Company's failure to do so as an indication that it was making no such representation.  Tellingly, the Opposition makes no effort to explain how a reasonable investor could interpret Bed Bath's statement in the way Plaintiff proposes, and instead only contends that a small number of anonymous posters on Reddit did so.  Opp'n at 52 (citing SAC ¶ 183).  But "whether a statement is misleading depends on the perspective of a reasonable investor" because "[t]he inquiry (like the one into materiality) is objective." *Omnicare, Inc. v. Laborers Dist. Couns. Constr. Indus. Pension Fund*, 575 U.S. 175, 186–87 (2015).  Thus, merely alleging that a small number of posters on Reddit—who apparently unreasonably engaged in trading in response to moon emojis, SAC ¶ 9—interpreted the statement this way fails to plead that a reasonable investor would have done so.  *See Boykin v. K12, Inc.*, 54 F.4th 175, 185 (4th Cir. 2022) (declining to adopt plaintiff's proposed reading of

challenged disclosure, despite argument that "[t]wo financial analysts covering the company"

read it that way, because "[t]he falsity element of a Rule 10b-5 claim boils down to the

reasonable investor's view of [the] statements, [] not *any* individual investor's reaction").

      Moreover, Plaintiff's description of these posters' comments on Reddit is exceptionally

misleading, and only further underscores that no reasonable investor would have interpreted Bed

Bath's reference to the agreement with Cohen in March as false.  In particular, Plaintiff

conveniently omits from the Second Amended Complaint and its Opposition that the original

post on the relevant Reddit thread did not fully quote the challenged statement by Bed Bath:



Instead, as reflected above, that post incorrectly quoted Bed Bath as stating (in the present tense)

"Bed Bath and Beyond are pleased to have reached constructive agreement with RC Ventures,"

rather than saying that it "was" pleased to have reached that agreement "in March."  Exs. L, M.

      It was this misleading post—not the underlying challenged statement by Bed Bath—that

led to the comments relied upon by Plaintiff in the Second Amended Complaint.  *See* SAC ¶ 183.

In fact, several other Reddit users on the same thread specifically pointed out this inaccuracy and

noted that the original post was misleading, stating:  (1) "You literally cut out the words 'in

March' which makes this misleading for no reason";  (2) "you omitted the 'in March' part of the

quote"; (3) "Exactly! Why did OP [Original Poster] change the phrase?"; and (4) "It says the agreement was in March.  From RC's filing, doubt it is still in tact [sic].  So good of you to copy all that except the March part lol."  Ex. N.  Where (as here) a plaintiff's allegations are inconsistent with the underlying document on which it relies—whether that be a contract, a corporate disclosure, or a Reddit thread—the court need not accept the plaintiff's misrepresentation.  *See Davis v. World Sav. Bank, FSB*, 806 F. Supp. 2d 159, 172 (D.D.C. 2011) ("when the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail"); *see also Thakker v. Renaud*, 2021 WL 1092269, at *4 (D.D.C. Mar. 22, 2021) ("When considering a Rule 12(b)(6) motion, courts may consider . . . documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.").  In short, Plaintiff cannot state a securities fraud claim by misleading the Court about the sources cited in the Second Amended Complaint.

*Second*, Plaintiff also does not meaningfully address the line of cases holding that a complaint can only state a claim if it adequately alleges that any misrepresented facts "both existed, and were known or knowable, at the time" of the challenged statement.  BBBY Def. Br. at 13–14.  Instead, the Opposition cites a single case for the uncontroversial proposition that falsity is a separate element from scienter, and not subject to the same "strong inference" standard.  Opp'n at 52–53 (citing *Forescout*, 63 F.4th at 766).  But that point is irrelevant here, given that the only portions of the Second Amended Complaint asserting that Cohen's sales were known or knowable to Bed Bath rely on a string of speculation that fails even under the typical Rule 9(b) pleading standards.  BBBY Def. Br. at 23–24.

*Finally*, the Opposition's even more cursory discussion, Opp'n at 53, of the separate line of cases holding that "companies do not have an obligation to characterize their relationships with third parties in negative terms" fails to distinguish that directly on-point authority.  BBBY Def. Br. at 15 & n.4 (collecting cases holding there is no duty to disclose that relationships with third parties had "deteriorated" even where company made positive statements about those relationships).  Instead, Plaintiff merely repeats its unsupported assertion that Bed Bath was "not allow[ed] [] to mislead investors," Opp'n at 53, apparently relying on the same list of speculative and unparticularized allegations discussed above, which plainly fail to satisfy the heightened pleading standards applicable here.[7]

> **2.**       ***The Opposition Fails To Meaningfully Address That The Challenged Statements Are Inactionable Puffery And Statements Of Opinion***

The Opposition's passing arguments, Opp'n at 53–54, in response to the Bed Bath Defendant's extensive showing that the challenged statements were inactionable puffery and statements of opinion, BBBY Def. Br. at 18–21, likewise fail to establish that the Second Amended Complaint identifies any actionable misrepresentations by Bed Bath.

*Puffery.*  Unable to address the plethora of cases cited in the Bed Bath Defendants' Brief rejecting vague statements substantially similar to those at issue here as puffery, BBBY Br. at 18–20, the Opposition merely reasserts in a two-sentence paragraph that the generic assertions challenged here—including that Bed Bath was "pleased to have reached a constructive

---

[7] The Opposition's citation to *Forescout*, Opp'n at 53, again provides no support for this argument.  As mentioned above, the complaint in *Forescout* included allegations from 20 former employees at the relevant company, rather than the unsupported speculation advanced here.  *See supra* at 3.  Moreover, with respect to the specific portion of the decision raised in the Opposition, which addressed whether risk warnings accompanying forward-looking statements were sufficient where they failed to disclose the risk that a counterparty would back out of a merger, the complaint cited the defendants' own admissions that the counterparty informed it during a phone call prior to the challenged disclosure that the counterparty was "considering not closing the merger."  63 F.4th at 779−81.  No similar particularized facts are alleged here.

agreement" with Cohen "in March" and "committed to maximizing value"—somehow do not

constitute puffery because "reasonable investors did, in fact, interpret the Company's statements

as a highly significant endorsement of its positive relationship with Cohen and an indication that

Cohen continued to hold his shares."  Opp'n at 53 (citing SAC ¶ 183).  As discussed above,

however, Plaintiff does not cite any well-pleaded allegations that a reasonable investor would

have interpreted Bed Bath's actual statements in that manner, and instead relies on

misrepresentations about how a small number of Reddit posters responded to a misleading

summary of those disclosures.  *See supra* at Part II.B.1.  Again, Plaintiff cites no authority

allowing it to state a securities fraud claim by misleading the Court.[8]

    ***Statements of Opinion.***  The Opposition's arguments that the statements of opinion

contained in the challenged disclosures are adequately alleged to be false, Opp'n at 53–54, are

similarly insufficient.  As an initial matter, Plaintiff is incorrect that a disclosure can only be

considered a statement of opinion if "qualified" by words like "we believe."  Opp'n at 53–54.

The law appropriately recognizes that disclosures reflecting subjective judgment—like whether

an agreement is "constructive"—are statements of opinion (rather than objective fact) even if not

accompanied by the words "I believe."  *See MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill

& Partners, L.P.*, 761 F.3d 1109, 1120 (10th Cir. 2014) (Gorsuch, J.) ("statements not preceded

by the word 'opinion' can nevertheless represent opinions rather than facts"); *In re Adient plc*

---

[8] The single case cited in the Opposition in support of Plaintiff's puffery argument, *SEC v. Rio Tinto plc*, 2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019), only further confirms the pleading defects in the Second Amended Complaint.  In that case, the court found that a complaint adequately alleged the statement that a project had "significant potential going forward" was false where it was made after a specifically identified meeting where the individual defendants were provided with information that the project "was worth negative $680 million."  2019 WL 1244933 at *4, *11.  The vague speculation at issue here is nothing like those allegations.

*Sec. Litig.*, 2020 WL 1644018, at *16 (S.D.N.Y. Apr. 2, 2020) (disclosure that "[w]e're very pleased with what we've seen from an operational standpoint" was a statement of opinion).

Additionally, the Opposition's further contention that Bed Bath's expressed belief—that its agreement with Cohen in March was "constructive"—is actionable because it "did not fairly align[] with the information in [Bed Bath's] possession at the time," likewise fails.  *See* Opp'n at 54.  Again, Plaintiff does not identify any allegation that the Company's agreement with Cohen was not constructive in March, which is all that the challenged statement represented.  BBBY Def. Br. at 13.  Instead, the Opposition relies on its distortion of the statement as representing something about Cohen's stock holdings in August, which is not supported by any well-pleaded facts in the Second Amended Complaint.  *See supra* at Part II.B.1.  Moreover, even if that statement could be read that way, Plaintiff also fails to allege any facts about what a reasonable investor would have understood about the inquiry that Bed Bath undertook to support that opinion, let alone that Bed Bath's inquiry was different from that understanding, and therefore fails to allege that Bed Bath's statement of opinion was misleading under controlling law.  *See Omnicare*, 575 U.S. at 194 (to establish omission liability about a statement of opinion, an "investor must identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context," which "is no small task for an investor").

## III.   THE OPPOSITION FAILS TO IDENTIFY PARTICULARIZED FACTS RAISING A STRONG INFERENCE OF SCIENTER AGAINST EITHER GOVE OR BED BATH

Unable to satisfy the "exacting heightened standards of pleading" applicable to its scienter allegations, *supra* at 2–3—which require it to "state with particularity facts" raising a "cogent" and "compelling" inference of scienter, BBBY Def. Br. at 22—Plaintiff again attempts

to minimize and misstate its burden.  Contrary to the Opposition's assertion that "[w]eighing facts is inappropriate" when considering scienter, Opp'n at 32, courts must specifically weigh "competing inferences rationally drawn from the facts alleged," and may allow the claim to proceed "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314, 324 (2007).  The Opposition does nothing to overcome the Second Amended Complaint's numerous failures to plead scienter against Gove or Bed Bath under these standards.

### A.    The Opposition Cites No Factual Allegations Regarding Gove's Scienter

To put it charitably, the Opposition's scienter arguments about Gove are sparse.  The Opposition does not dispute that the Second Amended Complaint contains no allegations that Gove engaged in any stock sales or had any other motive to defraud.  Opp'n at 34 n.9.  Instead, the Opposition merely contends in a two-sentence paragraph that "the Court need not assume that [Gove], as CEO, was unaware of the basic financial conditions of [Bed Bath] . . . and its implications for Cohen."  Opp'n at 57.  However, this generic assertion—which asks the Court to assume that a strong inference of scienter exists based solely on Gove's position—fails under a wealth of case law in this circuit, which the Opposition does not dispute.  BBBY Def. Br. at 25 (citing authority holding "[a] vague assertion that a defendant must have known about the fraud by virtue [of] a position of authority does not result in a strong inference of scienter").[9]

---

[9] Ignoring this directly on-point authority from this circuit, the Opposition only cites a single unreported, out-of-circuit case in support of its assertion that the Court can assume scienter based on a defendant's position.  Opp'n at 57 (citing *Lea v. TAL Educ. Grp.*, 837 F. App'x 20 (2d Cir. 2020)).  However, the facts in that case are inapposite, as the court found a strong inference of scienter with respect to the founder, chairman, and CEO of a company that entered into multiple "entirely fictitious" mergers that "were sham transactions that lacked economic substance, and were executed with the purpose of fraudulently inflating [the company's] income."  *TAL Educ.*,

Regardless, even if the Court were to assume that Gove knew from her position that Cohen was unhappy with Bed Bath's "basic financial conditions," Opp'n at 57, that does not raise any inference that Gove further knew that Cohen had "secretly" sold his shares at the time of the challenged statements or intended to mislead investors on that subject.  The Opposition makes no attempt to argue that the Second Amended Complaint contains any particularized facts in support of these points, and instead appears to rely on unsupported speculation advanced with the benefit of hindsight that Gove should have known about Cohen's "secret" sales, which fails to raise a strong inference of scienter.  BBBY Def. Br. at 23–25; *see also Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017) ("A plaintiff may not stack inference upon inference to satisfy the PSLRA's pleading standard.").

Accordingly, the Opposition's arguments about Gove fail to raise a strong inference that she possessed scienter, requiring the Section 10(b) and Rule 10b-5 claims against her to be dismissed regardless of the sufficiency of the Second Amended Complaint's scienter allegations against any other Defendant.  *See In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.*, 503 F. Supp. 2d 25, 37–42 (D.D.C. 2007) (separately considering whether scienter allegations about individual defendants are sufficient because the "plain language of the PSLRA" requires "a showing of scienter on the part of *each* defendant").

### B.   To The Extent Relevant To The Control Person Claim Against Gove, Plaintiff Does Not Raise A Strong Inference Of Scienter Against Bed Bath

To the extent that the Section 10(b) and Rule 10b-5 claims asserted against Bed Bath remain relevant to the control person claims asserted against Gove, *see supra* at 1 n.2, the

---

837 F. App'x at 23, 27.  That case therefore only found a CEO's knowledge with respect to their own company's activities, and provides no support for Plaintiff's argument here that the Court should assume Gove possessed scienter about how a third-party investor would respond to the financial challenges faced by the Company.

Opposition's generic scienter arguments concerning the Company—which also rely on little more than unsupported speculation rather than any particularized facts—likewise fail to raise the requisite strong inference of scienter.

**1.     *The Opposition Advances No Valid Motive And Opportunity Allegations Against Bed Bath***

As demonstrated in the Bed Bath Defendants' Brief, Plaintiff's motive allegations are entirely illogical:  they ask the Court to assume that Bed Bath as a whole possessed scienter in making the alleged misstatements in August 2022, because a single individual at the company sold a small fraction of his holdings before those statements were even made, pursuant to automatic trading plans entered into months before any of the alleged wrongdoing.  BBBY Def. Br. at 27–29.  Unable to construct any coherent narrative that these facts raise an inference of scienter, the Opposition instead makes a half-hearted attempt to cite cases finding that certain of these points when considered individually may not defeat a showing of motive.  Opp'n at 34 & n.9.[10]  However, this argument fails, as the Opposition itself concedes that courts must examine scienter allegations "holistically" rather than looking at any "individual allegation, scrutinized in

---

[10] For example, Plaintiff's reliance on *Indiana Public Retirement System v. Pluralsight, Inc.*, 45 F.4th 1236 (10th Cir. 2022), for the propositions that trading plans "do not rebut an inference of scienter" and that "retention of most of a defendant's holdings cuts against scienter," Opp'n at 34, is both wrong and irrelevant here.  *Pluralsight* did not hold that arguments about trading plans are "unavailable at the pleading stage," as Plaintiff misleadingly contends.  *Id.*  Instead, *Pluralsight* merely held that such plans "do not per se rebut an inference of scienter" because they "do not prevent an officer from setting up automatic trades and then making false statements to artificially inflate the stock price to trigger those automatic trades."  45 F.4th at 1266.  But that observation is irrelevant here, where the only trades occurred before the alleged misstatements by Bed Bath.  *See* BBBY Def. Br. at 29.  Nor did *Pluralsight* "reject[]" a claim that "retention of most of defendant's holdings cuts against scienter," as Plaintiff wrongly asserts.  Opp'n at 34.  Instead, *Pluralsight* acknowledged that this point "potentially mitigat[ed] the suspicion surrounding [defendants'] trades," but found they were not enough in light of numerous other factors, including multiple individuals' sales, including one who sold "nearly 40% of his holdings" and another who "sold $22 million in shares."  45 F.4th at 1267.  No such countervailing factors are present here, where only one individual sold 18% of his shares for $1.4 million through trades that occurred before the challenged statements.  BBBY Def. Br. at 28–29.

isolation."  Opp'n at 31 (emphasis omitted).  The Opposition makes no attempt to explain how the sales identified by Plaintiff raise any inference of scienter under this standard in light of the collective facts alleged here, effectively conceding there is no such argument.

       **2.**      ***The Opposition Fails To Identify Any Strong Circumstantial Evidence That Bed Bath Acted With Scienter***

Although the Opposition generically alleges that Bed Bath and Gove "misstate the standard for scienter and seek to improperly elevate Plaintiff's burden," Opp'n at 54, it tellingly does not dispute (and thereby concedes) several points that are dispositive here:  (1) scienter requires at least "extreme recklessness," which "is not merely a heightened form of ordinary negligence" but an "extreme departure from the standards of ordinary care," BBBY Def. Br. at 22; (2) the PSLRA requires a plaintiff to "state with particularity" facts supporting an inference of scienter and "[a] claim of securities fraud cannot rest on . . . speculation," *id.* at 23−24; (3) "securities fraud claims may not be based on fraud by hindsight," *id.* at 24; and (4) recklessness in this context "is not a 'should have known' standard," *id.* at 26.[11]  The generic theories and unparticularized allegations advanced in the Opposition plainly fail to raise a strong inference of scienter under these conceded standards.

---

[11] At most, the Opposition seems to take issue with any implication that a "confidential witness" or "internal documents" are required to plead scienter, Opp'n at 54, but regardless of whether these types of allegations are required in every case, the foregoing standards plainly establish that a complaint must contain some particularized facts regarding scienter, rather than the litany of speculation advanced here.  And, again, all of the cases cited for these points in the Opposition contained much more detailed allegations than those present here.  *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 705−06 (9th Cir. 2021) (finding scienter adequately pled based on citations to specific internal document informing defendants of undisclosed issue and the consequences of disclosure), *cert. denied sub nom. Alphabet Inc. v. Rhode Island*, 142 S. Ct. 1227 (2022); *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 164, 168−70 (2d Cir. 2021) (when addressing falsity, and without addressing scienter, the court considered allegations from a financial publication that were "corroborated" by "[s]everal former employees").

*First*, the Opposition confirms that the scienter theory advanced in the Second Amended Complaint relies on equal parts speculation and hindsight, asserting (without any particularized factual support) that because "the 2022 Credit Agreement was only two weeks from execution" and the Company experienced "dire financial conditions in the weeks following the [challenged] Statements," Cohen must have been previously informed that "the financing arrangement [] would preclude [his] turnaround strategy," which the Company knew would "destroy Cohen's incentive to retain his shareholdings."  Opp'n at 56−57.  These conclusory assertions are the very definition of unsupported speculation advanced with the benefit of hindsight that fails to raise a strong inference of scienter under well-settled law.  *See* BBBY Def. Br. at 24; *see also Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004) (declining to accept scienter theory under which "the court must blend hindsight, speculation and conjecture to forge a tenuous chain of inferences"), *abrogated on other grounds by Tellabs*, 551 U.S. 308.[12]

*Second*, the Opposition cannot overcome these defects by baldly asserting that Cohen's loss of interest in the Company was "the obvious result" of the Company's decision to enter into an agreement that "precluded the sale of buybuy BABY."  Opp'n at 57.  This argument amounts to little more than a speculative assertion that Bed Bath "should have known" its statements were misleading, which does not establish scienter in this circuit, BBBY Def. Br. at 26, or elsewhere. *See City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair*

---

[12] The Opposition's assertion that "Cohen himself admits the relationship between himself and the Company broke down 'long before'" the 2022 Credit Agreement was signed, Opp'n at 57 (citing Cohen Br. at 25), again misrepresents the cited language and is irrelevant.  The referenced language from Cohen's brief does not address his "relationship" with the Company, and instead states only that his "views of the business began to sour long before August 12."  Cohen Br. at 25.  Regardless, this assertion does nothing to plead Bed Bath's scienter, as there are no well-pled allegations that Cohen ever expressed these views to the Company.  *See Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[c]orporate officials need not be clairvoyant").

*Holdings plc*, 2020 WL 2834857, at *7 (S.D.N.Y. June 1, 2020) (rejecting as insufficient the "flimsy evidence" that company understood it to be a "foregone conclusion" that unionization would lead to "adverse consequences").  In any event, even assuming that Bed Bath knew Cohen had lost interest in the Company at the time of the challenged statements, that assertion does nothing to show that Bed Bath knew he had actually sold his shares at that time, as necessary to allege that Bed Bath was extremely reckless in misleading investors on that subject.

*Finally*, the Opposition's only attempt to make that leap—from Bed Bath's purported knowledge of Cohen's loss of interest in the Company to scienter about whether he had already sold his shares—by asserting that Bed Bath was "reckless" in not "verif[ying]" with Cohen whether he sold his shares, Opp'n at 55, misrepresents the cited law and fails to raise a strong inference of scienter.  Significantly, Plaintiff does not identify any case supporting its stated proposition that a company acts recklessly whenever it makes statements "without verification" from an independent third party.  The single case that Plaintiff cites with respect to this argument, *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000), says no such thing.  While *Novak* recognized that "[u]nder certain circumstances" a plaintiff can plead recklessness where "defendants failed to review or check information that they had a *duty to monitor*," 216 F.3d at 308, Plaintiff concedes that there was no such duty for Bed Bath to monitor Cohen's holdings here.  Opp'n at 55.  Moreover, in a passage that the Opposition ignores, *Novak* specifically recognized that "[c]orporate officials . . . are only responsible for revealing those material facts reasonably available to them" and "there are limits to the scope of liability for failure adequately to monitor the allegedly fraudulent behavior of others."  216 F.3d at 309; *see also City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592, 596 (7th Cir. 2021) (declining to find scienter with respect to statement made about another company because "[e]xecutives possess

only limited information about the internal operations of other corporations").  Plaintiff makes no attempt to explain how information about Cohen's "secret" sales was "reasonably available" to Bed Bath or how imputing scienter to Bed Bath would be consistent with the limits on the scope of liability for failure to monitor the behavior of others.  And, of course, all the foregoing assumes that Bed Bath could recklessly mislead investors about whether Cohen still held shares in August by saying that it was pleased to have reached an agreement with him "in March," which Plaintiff has not adequately alleged.  *See supra* at Part II.B; *see also In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1345 (10th Cir. 2012) (fact that challenged statement was "open to multiple interpretations" and "ambigu[ous] count[s] against inferring scienter").

Given that the Opposition fails to identify any authority for the proposition that a defendant must always "verif[y]" information from third parties before making disclosures, Bed Bath's alleged failure to do so here cannot constitute an "extreme departure from the standards of ordinary care," as required to plead recklessness.  BBBY Def. Br. at 27.

### 3. *The Opposition Simply Ignores That, When Considered Collectively, Plaintiff's Inference Of Scienter Against Bed Bath Makes No Sense*

Even though controlling law requires the Court to consider the competing inferences that arise from the Second Amended Complaint's scienter allegations, *see supra* at Part III, the Opposition does not meaningfully address the contrary inference of nonfraudulent intent advanced in the Bed Bath Defendants' Brief, under which Bed Bath attempted to honestly respond to press inquiries without knowing about Cohen's "secret" sales.  BBBY Def. Br. at 30−31.  Nor does the Opposition make any attempt to explain the many illogical assumptions underlying its scienter theory, including why Bed Bath would mislead investors about Cohen's sales for just a single day, by obliquely stating it was pleased to previously reach an agreement with him in March, without making any attempt to profit off of that fraud in the interim.  BBBY

Def. Br. at 30.  This failure is telling:  Plaintiff does not advance any defense of the unsupported and illogical speculation underlying its scienter theory because there is no way to defend that theory, and it therefore fails to give rise to a "cogent" and "compelling" inference of scienter.  *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (rejecting scienter theory that defendants would mislead the market "for a time and then face the inevitable fallout once [the relevant] problem was revealed" without "s[eeking] to profit from this scheme in the interim" because it "does not make a whole lot of sense," "does not resonate in common experience," and "the PSLRA neither allows nor requires [courts] to check [their] disbelief at the door").

## IV.   THE OPPOSITION IMPROPERLY ATTEMPTS TO AMEND THE SECOND AMENDED COMPLAINT TO PLEAD RELIANCE

Unable to defend the boilerplate allegations of reliance contained in the Second Amended Complaint, BBBY Def. Br. at 31–35, Plaintiff resorts to inappropriately amending its pleading in the Opposition, ignoring the evidence of inefficiency that appears on the face of its complaint, and otherwise misstating applicable law.  The Court should reject each of these arguments.

### A.  The Opposition Ignores That The Allegations Of Market Inefficiency In The Second Amended Complaint Defeat Any Entitlement To The Fraud-On-The-Market Presumption of Reliance

As demonstrated in the Bed Bath Defendants' Brief, the Second Amended Complaint's generic invocation of the fraud-on-the-market presumption of reliance is defeated by its own factual allegations that Bed Bath's stock price behaved inefficiently during the class period, including by trading in response to emojis and social media posts devoid of any information about the Company, experiencing extreme reactions to previously disclosed information, and moving in ways that had no relation to the Company's economic prospects.  BBBY Def. Br. at 32–34.  The Opposition's various attempts to avoid this common-sense conclusion fail.

*First*, Plaintiff's assertion that whether the fraud-on-the-market presumption applies "generally" should not be decided on a motion to dismiss, Opp'n at 42, is irrelevant.  As shown in the Bed Bath Defendants' Brief, courts routinely address that issue at the pleading stage where (as here) market efficiency is not adequately supported with particularized facts or where the alleged facts actually demonstrate inefficiency.  *See* BBBY Def. Br. at 32, 34.  Indeed, under controlling authority, even "an affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. D.C.*, 155 F.3d 575, 578 (D.C. Cir. 1998).  The Opposition provides no reason why the same is not true of the reliance element, which is Plaintiff's burden to plead and prove.

*Second*, Plaintiff's inclusion of a host of new allegations in the Opposition that are not set forth in the Second Amended Complaint, including citing an unpublished research paper not contained in its pleading and advancing three pages of allegations on topics like "indicia of arbitrage" and a "cause-and-effect relationship between the disclosure of company-specific news and responses in the stock price," Opp'n at 4–5, 44−46, represent another improper attempt to amend the complaint, which must be rejected.  *See supra* at 8–9.

*Third*, even accepting those attempted amendments as true, those allegations at most indicate that the market for Bed Bath stock could be efficient, and do nothing to rebut the numerous specific examples of actual market inefficiency that are affirmatively alleged in the Second Amended Complaint.  BBBY Def. Br. at 32−33.

### B.  The Opposition's Arguments About The *Affiliated Ute* Presumption of Reliance Misstate Applicable Law

The Opposition's arguments about the *Affiliated Ute* presumption similarly misrepresent the allegations in the Second Amended Complaint and the relevant law.  Notwithstanding the Opposition's self-serving characterization of the challenged statements by Bed Bath as

"omissions," Opp'n at 49, those statements are plainly alleged to be misrepresentations.  Unlike

the affirmative disclosure requirements in Form 13D, which Plaintiff contends impose a duty to

disclose that can be actionable if the required information is omitted, Opp'n at 26−27, Plaintiff

does not identify any freestanding duty for Bed Bath to disclose Cohen's holdings.  Instead, the

Opposition only contends that Bed Bath was required to disclose that information because its

affirmative statements supposedly became misleading by failing to disclose that "Cohen had

already formed a plan to liquidate his interest."  Opp'n at 50−51.  This is the precise type of

allegation that courts, including the D.C. Circuit, routinely hold is not subject to the *Affiliated

Ute* presumption.  BBBY Def. Br. at 35 (citing D.C. Circuit authority that *Affiliated Ute* does not

apply where defendants made "express attestations"); *see also In re Volkswagen "Clean Diesel"

Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2 F.4th 1199, 1206 (9th Cir. 2021) (holding complaint

does not qualify for *Affiliated Ute* where it contains "affirmative misrepresentations" that

"Plaintiff alleges it relied upon," even where the statements allegedly omitted information,

because "the *Affiliated Ute* presumption should be limited to situations in which a plaintiff would

be forced to prove a speculative negative").[13]

## V.      THE OPPOSITION CONFIRMS THAT THE CONTROL PERSON CLAIM AGAINST GOVE MUST BE DISMISSED

The Opposition does not deny that the control person claim against Gove under Section

20(a) must be dismissed if the Second Amended Complaint fails to plead either:  (1) an

underlying primary violation against Bed Bath; or (2) scienter against Gove.  BBBY Def. Br. at

---

[13] The single authority cited by Plaintiff is entirely distinguishable.  That case involved an alleged "market manipulation" scheme, under which stock exchanges allowed high-frequency trading firms to execute trading strategies in a way that harmed investors, rather than being primarily focused on affirmative statements.  *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 439 (S.D.N.Y. 2019).  That theory is nothing like the one advanced here, where Plaintiff only contends Bed Bath's affirmative statements misled investors.

35.  Because the Second Amended Complaint pleads neither for the reasons discussed above, its control person claims against Gove must also be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the claims asserted against Gove in the Second Amended Complaint should be dismissed.  Moreover, because the Opposition only contains a passing request for leave to replead without specifying how it would overcome the many defects identified above, the Second Amended Complaint should be dismissed with prejudice.  *See City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1304 (D.C. Cir. 2009) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion to amend.").

Dated: May 3, 2023

<div style="margin-left:40%">

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP


*/s/ Jared M. Gerber*
Victor L. Hou (*pro hac vice*)
Jared M. Gerber (*pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (202) 225-2507
Email: vhou@cgsh.com
Email: jgerber@cgsh.com

Nowell D. Bamberger (D.C. Bar No. 989157)
2112 Pennsylvania Avenue
Washington, D.C. 20037
Telephone: (202) 974-1752
Email: nbamberger@cgsh.com

*Counsel for Defendant Sue E. Gove*

</div>