**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE BED BATH & BEYOND CORPORATION SECURITIES LITIGATION | Case No. 1:22-cv-02541-TNM |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF RC VENTURES LLC AND RYAN COHEN'S MOTION TO DISMISS**

VINSON & ELKINS LLP

Ephraim (Fry) Wernick
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6730
Facsimile: (202) 879-8830
Email: ewernick@velaw.com

Justin C. Beck*
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716
Email: jbeck@velaw.com

Clifford Thau*
Marisa Antonelli*
1114 Avenue of Americas
New York, NY 10036
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
Email: cthau@velaw.com
Email: mantonelli@velaw.com

*Attorneys for RC Ventures LLC and  Ryan Cohen*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.    ARGUMENT ...................................................................................... 3

    A.    Plaintiff's Section 10(b) and Rule 10b-5(b) Claims Fail. ........................ 3

        1.    Plaintiff Pleads No False or Misleading Statement or Omission................ 3

            a.    The Moon Emoji Tweet Is Not False or Misleading. .................... 3

            b.    The Statements in RCV's August 16th 13D/A Are Not Actionable. .................................................................................. 8

            c.    RCV's Form 144 Complied Fully With All Applicable Laws. ........................................................................................ 10

        2.    The Complaint Does Not Establish A Strong Inference of Scienter. ....... 13

        3.    Reliance Is Not Pleaded and Cannot Be Presumed. ................................ 16

        4.    Plaintiff's Loss Causation Theory Is Implausible.................................... 17

    B.    Plaintiff's Complaint Does Not Plead Scheme Liability. ...................... 19

    C.    Plaintiff's Other Claims Also Fail. ...................................................... 21

        1.    Section 9(a)(2) ...................................................................................... 21

        2.    Section 9(a)(3) ...................................................................................... 22

        3.    Section 9(a)(4) ...................................................................................... 23

        4.    Section 20(a) Control Person Liability .................................................. 23

        5.    Section 20A............................................................................................ 23

III.    CONCLUSION................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ................................................................................. 8

*\*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ...................................................................... 20

*Chechele v. Standard General L.P.*,
  No. 20 Civ. 3177, 2021 WL 2853438 (S.D.N.Y. July 8, 2021) ............................. 13

*\*Doe v. Roman Cath. Diocese of Greensburg*,
  581 F. Supp. 3d 176 (D.D.C. 2022) ................................................................. 18

*\*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................. 19

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ................................................................................. 21

*Exch. Comm'n v. RPM Int'l, Inc.*,
  282 F. Supp. 3d 1 (D.D.C. 2017) ................................................................. 18

*Feder v. Frost*,
  220 F.3d 29 (2d Cir. 2000) ...................................................................... 16

*\*Freeland v. Iridium World Commc'ns, Ltd.*,
  545 F. Supp. 2d 59 (D.D.C. 2008) ...................................................... 6, 19, 20

*Ganske v. Mensch*,
  480 F. Supp. 3d 542 (S.D.N.Y. 2020) ........................................................... 18

*\*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011) ........................................................... 11

*\*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ................................................................................. 3

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
  422 F. Supp. 3d 821 (S.D.N.Y. 2019) ........................................................... 7

*Howard v. Liquidity Servs., Inc.*,
  177 F. Supp. 3d 289 (D.D.C. 2016) ......................................................... 6, 15

*Hurd v. D.C., Gov't*,
  864 F.3d 671 (D.C. Cir. 2017) ................................................................. 18

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ................................................................. 19

*\*In re Harman Int'l Indus., Inc. Sec. Litig.*,
  791 F.3d 90 (D.C. Cir. 2015) .......................................................... 5, 7, 24

*In re Interbank Funding Corp. Sec. Litig.,*
    629 F.3d 213 (D.C. Cir. 2010) ............................................................................. 17

*In re January 2021 Short Squeeze Trading Litig.,*
    No. 21-2989-MDL, 2022 WL 3682083 (S.D. Fla. Aug. 11, 2022) .......................... 22

*In re Omnicare, Inc. Sec. Litig.,*
    769 F.3d 455 (6th Cir. 2014) ................................................................................. 6

*In re Openwave Sys. Sec. Litig.,*
    528 F. Supp. 2d 236 (S.D.N.Y. 2007) ................................................................... 24

*In re Overstock Sec. Litig.,*
    No. 2:19-CV-709-DAK-DAO, 2020 WL 5775845 (D. Utah Sept. 28, 2020) ........... 5

*In re Oxford Health Plans, Inc.,*
    187 F.R.D. 133 (S.D.N.Y. 1999) ........................................................................... 15

*In re Philip Morris Int'l Inc. Sec. Litig.,*
    437 F. Supp. 3d 329 (S.D.N.Y. 2020) ................................................................... 7

*In re Scholastic Corp. Sec. Litig.,*
    252 F.3d 63 (2d Cir. 2001) ................................................................................... 15

*In re SLM Corp. Sec. Litig.,*
    740 F. Supp. 2d 542 (S.D.N.Y. 2010) ................................................................... 15

*In re SunEdison, Inc. Sec. Litig.,*
    300 F. Supp. 3d 444 (S.D.N.Y. 2018) ................................................................... 13

*In re Suprema Specialties, Inc. Sec. Litig.,*
    438 F.3d 256 (3d Cir. 2006) ................................................................................. 8

*In re Synchrony Fin. Sec. Litig.,*
    988 F.3d 157 (2d Cir. 2021) ......................................................................... 4, 7, 22

*In re Willis Towers Watson plc Proxy Litig.,*
    937 F.3d 297 (4th Cir. 2019) ................................................................................. 6

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.,*
    45 F.4th 1236 (10th Cir. 2022) .......................................................................... 6, 15

*Issen v. GSC Enters., Inc.,*
    508 F. Supp. 1278 (N.D. Ill. 1981) ........................................................................ 8

*Kamerman v. Steinberg,*
    891 F.2d 424 (2d Cir. 1989) ................................................................................. 8

*Koch v. SEC,*
    793 F.3d 147 (D.C. Cir. 2015) ............................................................................. 21

*Kusnier v. Virgin Galactic Holdings, Inc.,*
    No. 21-CV-03070-ARR-TAM, 2022 WL 16745512 (E.D.N.Y. Nov. 7, 2022) ........ 15

*Lagandaon v. Ashcroft,*
    383 F.3d 983 (9th Cir. 2004) ............................................................................... 12

*Loomis v. Slendertone Distribution, Inc.,*
    420 F. Supp. 3d 1046 (S.D. Cal. 2019) ................................................................. 18

*Lorenzo v. SEC*,
  139 S. Ct. 1094 (2019) ................................................................................................... 20

*\*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ..................................................................................... 16

*Motient Corp. v. Dondero*,
  529 F.3d 532 (5th Cir. 2008) ........................................................................................... 8

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) ......................................................................................... 15

*Noto v. 22nd Century Grp., Inc.*,
  35 F.4th 95 (2d Cir. 2022) ............................................................................................. 20

*Onel v. Top Ships, Inc.*,
  806 F. App'x 64 ............................................................................................................. 22

*\*Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., NA*,
  943 F. Supp. 2d 428 (S.D.N.Y. 2013) ........................................................................... 12

*Raab v. Gen. Physics Corp.*,
  4 F.3d 286 (4th Cir. 1993) ............................................................................................... 7

*Sanders v. Thrall Car Mfg. Co.*,
  582 F. Supp. 945 (S.D.N.Y. 1983) .................................................................................. 8

*Schwab v. E\*Trade Fin. Corp.*,
  285 F. Supp. 3d 745 (S.D.N.Y.), aff'd, 752 F. App'x 56 (2d Cir. 2018) ...................... 17

*SEC v. Fassari*,
  No. SACV21403JVSADSX, 2021 WL 2290576 (C.D. Cal. May 5, 2021) ....................... 5

*SEC v. Lek*,
  276 F. Supp. 3d 49 (SDNY 2017) .................................................................................. 22

*SEC v. Recycle Tech, Inc.*,
  No. 12-21656-CIV, 2013 WL 12063952 (S.D. Fla. Sept. 26, 2013) ................................ 9

*Set Cap. LLC v. Credit Suisse Grp. AG*,
  996 F.3d 64 (2d Cir. 2021) ............................................................................................. 20

*\*Shenk v. Mallinckrodt plc*,
  No. 17-CV-00145 (DLF), 2019 WL 3491485 (D.D.C. July 30, 2019) ........................... 6

*Sierra v. Hayden*,
  254 F. Supp. 3d 230 (D.D.C. 2017) ............................................................................... 18

*Singletary v. Howard Univ.*,
  939 F.3d 287 (D.C. Cir. 2019) ....................................................................................... 18

*Skiadas v. Acer Therapeutics, Inc.*,
  1:19-cv-6137-GHW, 2020 U.S. Dist. LEXIS 105814 (S.D.N.Y. June 16, 2020) ........... 4

*Staffin v. Greenberg*,
  672 F.2d 1196 (3d Cir. 1982) ........................................................................................... 5

*\*Takata v. Riot Blockchain, Inc.*,
  No. 18 Civ. 2293, 2022 WL 1058389 (D.N.J. Apr. 8, 2022) ..................................... 8, 9

iv

*Tang Cap. Partners, LP. v. BRC Inc.*,
   No. 22 Civ. 3476, 2023 WL 2396635 (S.D.N.Y. Mar. 8, 2023) ............................................ 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...................................................................................................... 15

*Tesla Securities Litigation*,
   477 F. Supp. 3d 903 (N.D. Cal. 2020) ............................................................................ 4

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
   444 U.S. 11 (1979) ........................................................................................................ 9

*United States v. Will*,
   449 U.S. 200 (1980) ...................................................................................................... 12

*Utah v. United States*,
   406 U.S. 128 (1972) ...................................................................................................... 17

*Wilson v. Merrill Lynch & Co., Inc.*,
   671 F.3d 120 (2d Cir. 2011) .......................................................................................... 10

## Statutes

15 U.S.C. § 78i(a)(3) ............................................................................................................ 23

15 U.S.C. § 78u–4(b)(1) ........................................................................................................ 3

## Other Authorities

*Compliance and Disclosure Interpretations*, U.S. Securities and Exchange Comission, Apr.
   28, 2023, https://www.sec.gov/divisions/corpfin/cfguidance ................................................ 11

SEC, Div. Corp. Fin., Compliance and Disclosure Interpretations, Securities Act Rules, Q.
   136.09 (Mar. 4, 2011) ........................................................................................................ 11

## Rules

17 C.F.R. § 240.10b5–1(c)(1)(i)(A)(3) .................................................................................. 12

Fed. R. Civ. P. 201(b)(2) ........................................................................................................ 17

The Cohen Defendants submit this reply memorandum of points and authorities in support of their motion to dismiss the Second Amended Complaint (the "Motion" or "Mot at ___").[1]

## I.     INTRODUCTION

Plaintiff's core theory in this securities fraud action is that the Cohen Defendants misled BBBY investors with a single tweet and two required SEC filings containing accurate information that was essentially already available to the market.   But as the Cohen Defendants have demonstrated, this theory is implausible on its face and, more importantly, fails to support with the requisite facts the basic elements of any of the claims alleged.  Plaintiff's discursive memorandum of points and authorities in opposition to the Motion (the "Opposition" or "Opp.") contains nothing to change this conclusion.

Plaintiff has failed to plead facts showing that any of the purported "misstatements" are false or misleading.   The August 12th tweet—which consists of a smiling moon emoji and six words describing a picture from a negative article—contains no clear message about BBBY stock. The public filings on which Plaintiff founds its other claims, moreover, contain nothing but facts. As the Schedule 13D/A confirms, RCV did not buy or sell any BBBY securities in the sixty days leading up to August 16th nor since the filing of the previous Schedule 13D/A in March 2022.  The August 16th filing clearly disclosed to the market that RCV might sell some or all of its stock later (even though Plaintiff, in any case, fails to allege facts showing that the Cohen Defendants had any plan to do so at the time of that filing).  And despite Plaintiff's attempt to characterize the filing of RCV's Form 144 as improper or delayed, the uncontested facts show that it was filed in compliance with every applicable requirement.  Even if Plaintiff could show falsity (and it cannot),

---

[1] Capitalized terms and abbreviations not otherwise defined herein have the meanings ascribed to them in the Motion.

the Complaint fails to plead that any of the statements were material because Plaintiff cannot explain how any reasonable investor could have made an investment decision on the basis of any of them, particularly given widespread and detailed public reports that the Company was in financial distress.

The Complaint also does not plead a strong inference of scienter. Even if the Cohen Defendants' statements affected the market (which is itself implausible), Plaintiff does not plausibly plead facts to support that Mr. Cohen possessed material nonpublic information or could have predicted the effect of his statements such that he could have planned the trades in advance. Nor is profit from a sale alone sufficient to plead scienter. And Plaintiff's allegations of reliance and loss causation are full of contradictions that the Opposition fails to explain. For example, Plaintiff asks the Court to assume market efficiency for purposes of reliance, and yet argues that an SEC filing with no new information would have convinced rational investors to buy stock. These inconsistencies (which negate at least one element) are fatal to Plaintiff's 10b-5 claims.

Plaintiff's other claims fare no better. The Complaint pleads no facts showing a manipulative act on which to predicate its claim for scheme liability and no series of transactions on which to base a Section 9(a)(2) claim. It also fails to allege facts showing an actionable "prophecy" under Section 9(a)(3) and cannot succeed on its Section 9(a)(4) claims for the same reason it fails under Section 10(b). The rest of the claims require a predicate securities violation, which Plaintiff has failed to establish. The Cohen Defendants respectfully submit that the Court should dismiss the Complaint with prejudice.[2]

_____

[2] Plaintiff also brings claims against the Company, which has since filed for Chapter 11 bankruptcy. Although bankruptcy may affect how Plaintiff's claims against the Company are adjudicated, Plaintiff's claims against the Cohen Defendants still must be dismissed for all of the reasons set forth here and in the Motion.

## II.     ARGUMENT

### A.     Plaintiff's Section 10(b) and Rule 10b-5(b) Claims Fail.

Plaintiff's Section 10(b) and Rule 10b-5(b) claims must be dismissed because Plaintiff fails to plead facts showing the required elements of a material misrepresentation or omission, scienter, reliance, and loss causation.  *See* Mot. at 15-33; *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).  Nothing alleged in Plaintiff's Opposition can cure each of these fatal deficiencies.

#### 1.     Plaintiff Pleads No False or Misleading Statement or Omission.

##### a.     The Moon Emoji Tweet Is Not False or Misleading.

The August 12th smiling moon emoji tweet (the "Tweet") was not false or misleading, is not objectively verifiable, and would not have "significantly altered the 'total mix' of information" available to the reasonable investor.  And, even accepting Plaintiff's unsupported interpretation of the Tweet, it would have been mere puffery, which does not give rise to a securities fraud claim.[3] Mot. at 16-18.

*First*, Plaintiff fails to allege that the Tweet was false or misleading in the first place. Plaintiff's theory—that the Tweet meant BBBY stock was going "to the moon"—is not supported by the Tweet itself, which makes no discernible prediction about BBBY's stock price.  The alleged message is a cartoon, subject to interpretation.  With no clear truth claim, it cannot be "false." Notably, Mr. Cohen's tweet reacts to a news article predicting that the BBBY stock price was "headed to $1"—exactly the opposite of what Plaintiff alleges the Tweet meant.  And the text itself

---

[3] Despite suggesting that the Cohen Defendants "misunderstand[ ]" the PSLRA standard, *see* Opp. at 19, Plaintiff restates the exact same standard set forth in the Motion, which is clearly set out by statute: A defendant must "specify each statement alleged to have been misleading," the "reasons why the statement is misleading," and, for allegations based on "information and belief," he must "state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u–4(b)(1).  As explained in the Motion at pages 15-36 and below at pages 3-21, Plaintiff fails this standard.

contains no clear message: just a comment about the accompanying picture ("[a]t least her cart is full") and a tiny cartoon depicting a smiling moon (which is inherently ambiguous, *see* Mot. at 17 n.6).

Relying on this Tweet to demonstrate its securities fraud narrative, Plaintiff cannot overcome this inherent ambiguity or that the article to which Mr. Cohen replied says the opposite of what Plaintiff alleges Mr. Cohen intended. Plaintiff makes the conclusory assertion that investors "understood" the Tweet according to Plaintiff's interpretation and claims that any ambiguity must be read in Plaintiff's favor. *See* Opp. at 3, 11, 20, 21, 22 (citing *Skiadas v. Acer Therapeutics, Inc.*, 19-cv-6137, 2020 U.S. Dist. LEXIS 105814, at *26-27, *32-35 (S.D.N.Y. June 16, 2020)). But the Complaint pleads no facts to support this supposed common understanding (which is implausible, in any event), and Plaintiff is wrong on the law. *See In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 168 (2d Cir. 2021) (affirming dismissal of "vague expression[s] of opinion" and reversing dismissal of statement containing a "concrete description" and "factual representation") (citations omitted).[4]

Plaintiff's reliance on *Friel* and *Fassari* to support the implausible interpretation of the Tweet is misplaced. As explained in the Motion, the facts of *Friel* presented a clear case of what the emojis there meant—*i.e.,* a CEO promising "profits" in conjunction with ***three*** emojis all pointing to the same message. *See* Mot. at 18 n.7. The Complaint here—which describes a single emoji and no corroborating facts to support Plaintiff's implausible interpretation of the message—

---

[4] Nor is trading volume, by itself, enough to support Plaintiff's interpretation. In the *Tesla Securities Litigation* case, unlike here, the court found the tweet misleading because it contained "highly-specific" facts about a potential transaction and because the complaint pleaded that other significant players—including Tesla's Senior Director of Investor Relations and representatives from JP Morgan—interpreted the tweet consistent with Plaintiff's interpretation. 477 F. Supp. 3d 903, 929 (N.D. Cal. 2020). The Tweet here contains no specific facts—and Plaintiff alleges none—to support Plaintiff's implausible interpretation.

does not and cannot plead the same specificity that led to the decision in *Friel*. And *Fassari* is inapposite. The defendant in that case made substantive material misstatements (using words, not emojis) and the court agreed with the SEC that defendant's "use of emojis . . . does not change the substance of what he posted." *SEC v. Fassari*, No. 21-403, 2021 WL 2290576, at *6 (C.D. Cal. May 5, 2021). In other words, the alleged fraud was based on the substance of the **words**, and the emojis did not detract from that substance. Here, according to Plaintiff, the **emoji** is the alleged fraud.

Plaintiff also asserts liability based on Mr. Cohen's alleged failure "to disclose that he had already soured on his investment" prior to the Tweet. Opp. at 20. But such conduct, even if true, cannot give rise to liability.[5] Significantly, there is no general duty under the securities laws to disclose one's internal feelings or "future intent" to sell stock. *See, e.g., Staffin v. Greenberg*, 672 F.2d 1196, 1205 (3d Cir. 1982) (directors' failure to disclose internal "feelings" about majority shareholder not actionable); *In re Overstock Sec. Litig.*, No. 19-cv-709, 2020 WL 5775845, at *11 n.1 (D. Utah Sept. 28, 2020) ("Arguing that the intent to sell stock is itself material information that must be disclosed to avoid insider trading is circular and unsupported by any cited authority."). Plaintiff cites no case to the contrary. Indeed, "the law only requires executives to disclose stock sales two business days after they happened." *Id.* Mr. Cohen, who was not even an executive of BBBY, disclosed his sales within two days. The Cohen Defendants thus complied with the only disclosure obligations applicable to them.

---

[5] Nor do the Cohen Defendants "concede[]" (*see* Opp. at 20) that Mr. Cohen had "soured" on the investment. *See* Mot. at 25 (explaining that fraud is not a plausible inference based on the facts as alleged). Given the frequency with which Plaintiff claims that the Motion "concedes" or "does not contest" facts in the Complaint, the Cohen Defendants reiterate that, for purposes of the Motion, all alleged facts are assumed true, as required at this procedural stage. *See* Mot. at 4 n.2.

*Second*, the Tweet is not material because, as an inherently ambiguous emoji, it is not "capable of objective verification." *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 109 (D.C. Cir. 2015) (citation omitted). As an initial matter, Plaintiff claims that materiality "cannot be resolved on the pleadings." Opp. at 23. This is not an accurate description of applicable authority. Courts in this Circuit have dismissed securities fraud claims premised on immaterial statements. *See, e.g., Shenk v. Mallinckrodt plc*, No. 17-CV-00145 (DLF), 2019 WL 3491485, at *10 (D.D.C. July 30, 2019) (dismissing because alleged misstatements were "immaterial as a matter of law and cannot serve as the basis of a 10b-5 action") (citations omitted); *Howard v. Liquidity Servs., Inc.*, 177 F. Supp. 3d 289, 309 (D.D.C. 2016) (dismissing 10b-5 claim because "plaintiffs have not sufficiently alleged that these misrepresentations are material").[6]

To argue that the moon emoji here is material, Plaintiff relies first on *criminal* cases from *state* jurisdictions (and one litigant's post-trial brief in an out-of-circuit federal case) in which the courts were considering vastly different pleading standards and legal issues—none of which govern here. In any event, neither of the two court decisions expressly relies on or discusses the effect of the emojis at issue, much less expresses an opinion about their objective verification. That two non-binding criminal cases mention the word "emoji" does not help Plaintiff's case.

*Third*, the Tweet is immaterial because it would not have "significantly altered the 'total mix' of information" available to reasonable investors. Mot. at 18. The Opposition fails to explain how an ambiguous comment and a moon emoji could have plausibly persuaded any reasonable

---

[6] Plaintiff's authorities do not say otherwise. *See In re Omnicare*, *Inc. Sec. Litig.*, 769 F.3d 455, 471 (6th Cir. 2014) ("[Plaintiff] will have to allege facts that satisfy § 10(b)'s materiality component."); *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 304 (4th Cir. 2019) (dismissing on materiality grounds is appropriate where "no reasonable jury could find it substantially likely that a reasonable investor would find the fact at issue material") (citation omitted); *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 96 (2d Cir. 2016) (same).

investor to purchase BBBY stock given the wealth of publicly available information informing the investing public that the Company was suffering from severe financial problems. *See Freeland v. Iridium World Commc'ns, Ltd.*, 545 F. Supp. 2d 59, 77 (D.D.C. 2008) ("[W]hether information is material also depends on other information already available to the market; unless the statement 'significantly altered the total mix of information' available, it will not be considered material.") (citation omitted).

Plaintiff likewise fails to explain how the alleged misstatements are not mere puffery. Plaintiff contends that "puffery" means "corporate optimism," and that the Cohen Defendants thus cannot argue the Tweet was puffery because the Motion claims it was "corporate pessimism." Opp. at 24-25.   But the lack of objective verification is what makes "puffery" immaterial, not whether it is optimistic or pessimistic. *See Harman*, 791 F.3d at 109.   Plaintiff makes no effort to show how the moon emoji—or even Plaintiff's own translation of the picture: "to the moon!"— can be objectively verified. *Id.* at 109-10 (giving examples of inactionable statements, such as that "a company had achieved 'substantial success'" or was "optimistic" and "should deliver income growth consistent with its historically superior performance") (citation omitted).

The other puffery cases cited in the Motion stand for the proposition—directly applicable here—that statements of belief or predictions about the future, devoid of any factual misrepresentations, are not generally actionable. *See In re Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d 329, 357-58 (S.D.N.Y. 2020) (statement "framed as a vague 'belief' rather than a guarantee or a statement of fact" not actionable because no "reasonable investor would rely" on it); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 845 (S.D.N.Y. 2019) (while there is "no definitive test," courts are more likely to find a statement to be "puffery" where it is "imprecise[e]" and "relate[s] to future expectations")

(citations omitted); *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993) ("statements such as these generally lack materiality because the market price of a share is not inflated by vague statements predicting growth").   *Cf. Synchrony*, 988 F.3d at 168 (reversing dismissal because alleged misstatement contained "a 'concrete' description and a 'factual representation'"). Plaintiff's attempt to distinguish some of these cases on the ground that they denied or reversed the dismissal of securities fraud suits fails to grapple with the courts' substantive legal analysis and rigorous pleading burdens, which uniformly support the Cohen Defendants.   *See* Opp. at 24 n.4.

> **b.     The Statements in RCV's August 16th 13D/A Are Not Actionable.**

Plaintiff cannot state a claim based on statements contained in the August 16th 13D/A either.   As the Cohen Defendants explained in the Motion, such statements are not actionable as a matter of law.   Mot. at 19.   But even if they were, the alleged "misstatement" here (that RCV had not transacted in BBBY stock in the sixty days prior to the Schedule 13D/A filing) was demonstrably true, and the alleged omission of a plan to sell was not plausibly pleaded with facts.

Statements in a Schedule 13D are not actionable under Section 10(b) because Section 18(a) provides "the sole basis for a private right of action for damages resulting from a violation of Section 13(d)."   *Motient Corp. v. Dondero*, 529 F.3d 532, 536 (5th Cir. 2008); *Kamerman v. Steinberg*, 891 F.2d 424, 430 (2d Cir. 1989) ("One complaining of a false or misleading statement in a Schedule 13D may seek damages only under Section 18(a) of the Act."); *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 960 (S.D.N.Y. 1983) (same); *Issen v. GSC Enters., Inc.*, 508 F. Supp. 1278, 1295 (N.D. Ill. 1981) (same).   This includes actions for "damages resulting from the purchase or sale of a security in reliance upon a false or misleading statement" contained within a Schedule 13D.   *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 283 (3d Cir. 2006).

For this reason, *Takata* declined to imply another right of action under Section 10(b). *See* Mot. at 19 (citing *Takata v. Riot Blockchain, Inc.*, No. 18-cv-2293, 2022 WL 1058389, at \*10 (D.N.J. Apr. 8, 2022)). *See also Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress."); *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979) ("[I]t is highly improbable that 'Congress absentmindedly forgot to mention an intended private action'" when it passed the Williams Act.) (citation omitted). The Court should apply the *Takata* rule here.

Even if Schedule 13D statements were actionable, however, the alleged statement and omission here were not false or misleading. The Complaint suggests that it was false for RCV to state in its August 16th 13D/A that it had not transacted in BBBY stock in the sixty days prior to the filing. Compl. ¶¶ 160-61. But as the Motion establishes, it is demonstrably ***true*** that RCV had not transacted in BBBY stock in the sixty days prior to the Schedule 13D/A filing. *See* Mot. at 20. The statement in RCV's Schedule 13D/A to that effect therefore cannot form the basis of a Section 10(b) misstatement claim.

The Complaint also fails to plead facts showing that the Cohen Defendants omitted a plan or proposal to sell that was formed prior to filing the August 16th 13D/A. To the contrary, the filing twice disclosed that RCV could sell some or all of its shares at any time. Mot. at 20-21. Plaintiff mischaracterizes the clear language of this required disclosure as "boilerplate" and contends that similar disclosures have been rejected as insufficient. Opp. at 27 (citing *SEC v. Recycle Tech, Inc.*, No. 12-cv-21656, 2013 WL 12063952, at \*5 (S.D. Fla. Sept. 26, 2013)). But *Recycle Tech* is distinguishable. The plaintiff in that case alleged an elaborate scheme involving Recycle Tech executives and two third-party marketing firms who worked together to publish a series of misleading statements to pump Recycle Tech stock before a pre-planned sale. The court

held that, in context, the marketing firms' statements in newsletters that they "may sell part or all" of their stock were misleading.  *Id.*  The context here—which attempts to cobble together an alleged "scheme" based on a single tweet and required filings—does not warrant the same conclusion.  Other courts, moreover, have concluded that similar language is not misleading.  *See, e.g., Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 133 (2d Cir. 2011) (disclosure that broker-dealer "may routinely" place bids on auction rate securities was not misleading).

Plaintiff also fails to plead facts to support the naked assertion that Mr. Cohen had a "plan to sell."  *See* Opp. at 26 (failing to cite a single paragraph in the Complaint in support of the claim that Plaintiff alleges "detailed factual allegations" that Mr. Cohen "had formed a plan to sell").  The conjecture that Mr. Cohen "soured" on the investment (even if true), or was motivated to sell in the event of a price spike, does not demonstrate a "plan to sell" prior to the spike.  Indeed, such a plan cannot be inferred from the allegations made in the Complaint.  The much more plausible explanation—given the undisputed state of the Company's finances at the time and the lack of any facts pleaded to show a predetermined plan—is that Mr. Cohen sold after witnessing the rapid stock price increase.

### c.      RCV's Form 144 Complied Fully With All Applicable Laws.

Plaintiff's attempt to ground a Section 10(b) misstatement claim in RCV's Form 144 also falls short.  As the Motion explained, SEC Rule 144(h) requires a Form 144 to be filed "***concurrently***" with the execution of a sale order (or placing of an order with a broker).  Mot. at 13.  SEC guidance has clarified that "concurrently" here means "on the same day."  *Id*.  And while Plaintiff suggests that RCV's decision to file its Form 144 by email (rather than through EDGAR) was somehow improper, paper and email filings were not only permitted in August 2022 but were far more common than EDGAR filings (which comprised less than 1% of all filings during the

previous year).[7]  *Id.* at 22.  Plaintiff fails to even address this dispositive point in the Opposition. RCV's Form 144, in short, complied with every applicable law, rule, and guideline.

It is undisputed that the Cohen Defendants submitted their Form 144 by email on August 16, 2022, the same day RCV executed the sale plan disclosed therein.  Compl. ¶ 10.  Plaintiff's theory of liability, however, is founded on the idea that the Cohen Defendants sold their shares early in the day on August 16 and intentionally delayed filing the Form 144 until later to prevent the news from hitting the market sooner.  This delay was misleading, Plaintiff argues, and the form's reference to a "potential" sale was false because the sale had already occurred at the time of the filing.  This theory fails for several reasons.

Plaintiff's argument, first, requires a wholesale rejection of the SEC's guidance[8] that a Form 144 filed on the same day as a sale is filed "concurrently" with that sale as a matter of law. Relying on *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573 (S.D.N.Y. 2011), Plaintiff argues that the Form 144 "must be filed ***before*** a defendant sells his shares."  Opp. at 28.  But this is inconsistent with the plain language of the rule: "***concurrently***" does not mean "***before***."  And *Glaser* says no such thing in any event.  Aside from being dicta from a case in which the timing of the Form 144 filing was not even at issue, the single sentence on which Plaintiff relies relates to the filing of a

---

[7] Plaintiff argues that the SEC guidance on which the Cohen Defendants rely is applicable only to mail-in filings.  Opp. at 30.  This is incorrect.  The guidance uses mail-in filings as an example, but the plain terms of the rule apply to any filing method.  *See* Div. of Corp. Fin., Compliance & Disclosure Interpretations, *Securities Act Rules*, U.S. SECURITIES AND EXCHANGE COMMISSION, Q. 136.09 (Mar. 4, 2011), https://www.sec.gov/corpfin/securities-act-rules ("Q: Does 'concurrently' mean that the Form 144 should be transmitted for filing on the same day as the placing of a sale order or the execution of the sale? A: Yes. For example, ….").

[8] The authors of this guidance—to whom Plaintiff refers as "unidentified members of SEC 'staff'"—are clearly identified on the SEC's website as staff of the SEC's Division of Corporation Finance, which frequently provides Compliance and Disclosure Interpretations to guide market participants.  *See* Div. of Corp. Fin., Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (Mar. 17, 2023), https://www.sec.gov/divisions/corpfin/cfguidance.

Form 144 prior to a sale **made pursuant to a trading plan** under 17 C.F.R. § 240.10b5–1(c)(1)(i)(A)(3).  More problematic, however, is the fact that Plaintiff's theory would disregard published SEC guidance on which Mr. Cohen and other investors reasonably rely, effectively asking this Court to impose liability despite compliance with every rule and guideline available to the investing public.[9]  This would set an untenable precedent.

Nor is it supported by the one case Plaintiff cites for the proposition that courts may ignore SEC guidance.  *See* Opp. at 30 (citing *Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., NA*, 943 F. Supp. 2d 428, 439 n.10 (S.D.N.Y. 2013)).  In *Policemen's Annuity*, the court declined to follow the SEC's "informal interpretation" of the Trust Indenture Act (which had already been called into question by "another case" and "the SEC itself") because the specific facts presented in that case had not been considered at the time of the SEC's guidance.  943 F. Supp. at 439 n.10 ("The SEC's guidance was issued in 1997, temporally distant from the events and development of the kinds of [mortgage-backed securities] here" at issue.).  Here, Plaintiff cites no subsequent case or guidance questioning the SEC guidance relied upon by the Cohen Defendants and offers no reason to think that the guidance (published in 2011) has become outdated or obsolete by recent developments.[10]  The Court should rely on the SEC guidance here, as courts routinely do.  *See,*

---

[9] This SEC guidance is also consistent with the general rule in the Anglo-American legal tradition going back hundreds of years, which holds that events occurring on the same day are deemed to be simultaneous regardless of which event occurred at an earlier hour.  *See* 2 William Blackstone, Commentaries on the Laws of England 141 (1769) ("In the space of a day all the twenty four hours are usually reckoned; the law generally rejecting all fractions of a day, in order to avoid disputes.");  *see, e.g., United States v. Will*, 449 U.S. 200, 225 n.29 (1980) ("It is correct that the law generally rejects all fractions of a day, in order to avoid disputes …." ) (internal quotation marks omitted);  *Lagandaon v. Ashcroft*, 383 F.3d 983, 990–91 (9th Cir. 2004) ("[C]ommon law legal systems have long reckoned periods of legal significance by the calendar, not by the clock.").

[10] For the reasons discussed in the previous section, Plaintiff is also wrong that materiality cannot be a basis for dismissal.  Plaintiff argues the Form 144 must be material because the stock price decreased immediately after its filing.  Opp. at 30.  But this ignores the standard, which requires that the statement "significantly alter the total mix of information available to investors."

*e.g., Tang Cap. Partners, LP. v. BRC Inc.*, No. 22-cv-3476, 2023 WL 2396635, at *12 (S.D.N.Y. Mar. 8, 2023) (finding SEC guidance "persuasive, particularly in light of the absence of any contrary precedent put forth by" the opposing party) (citations omitted); *Chechele v. Standard Gen. L.P.*, No. 20-cv-3177, 2021 WL 2853438, at *7 (S.D.N.Y. July 8, 2021) (same); *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 485 n.6 (S.D.N.Y. 2018) (affording weight to SEC guidance because of the SEC's "expertise, the longevity of its statements and registrants' need for clear guidance as to their filing obligations").

Finally, the Cohen Defendants did not "lie" on the Form 144 by certifying that RCV possessed no "material adverse information in regard to the current and prospective operations of the Issuer . . . which has not been publicly disclosed." *See* Thau Decl. Exh. 10.  As demonstrated below, the Complaint fails to plead that Mr. Cohen possessed any material nonpublic Company information.  *See infra* Section II.A.2.

### 2. The Complaint Does Not Establish A Strong Inference of Scienter.

Plaintiff asks the Court to conclude that Mr. Cohen's Tweet and RCV's two required filings were intended to mislead investors based on three allegations: (1) Mr. Cohen "knew" how the market would react to his comments and filings; (2) Mr. Cohen possessed material, nonpublic information regarding the state of the Company; and (3) Mr. Cohen profited from the sale.  These allegations, however, are not plausibly supported by facts and do not give rise to a strong inference of scienter.

Assuming (without conceding) any relationship between Mr. Cohen's alleged misstatements and the market activity that came afterwards, no facts are pleaded showing how Mr. Cohen could have predicted that the market would react to his statements—the vast majority of which contained no new information—in the way that it did.  As demonstrated in the Motion, in a portion of an interview cited by Plaintiff, Mr. Cohen said that activity following his filings was

"impossible to predict." Mot. at 24. The Opposition dismisses this critical portion of the interview otherwise relied on by Plaintiff as somehow "irrelevant" (Opp. at 38), but fails to address the fact that Plaintiff's Complaint expediently omits that portion of the interview in an effort to push a false narrative.

The Complaint also does not adequately plead facts showing that Mr. Cohen had access to material nonpublic information. Plaintiff's speculation is based on (i) the supposedly "suspicious" timing of RCV's trades (Opp. at 33; Compl. ¶ 188); (ii) two media reports that Mr. Cohen "communicated" with the Board and BBBY executives (Opp. at 33-35; Compl. ¶¶ 113, 124); and (iii) the fact that Mr. Cohen had suggested the appointment of three directors (Opp. at 35; Compl. ¶ 122). But none of these three points give rise to a plausible inference that Mr. Cohen received material nonpublic information. There is nothing "suspicious" about selling stock when it increases in value beyond a price justified by an investor's evaluation of the stock's fundamentals. That is Investing 101. And the media reports Plaintiff relies on are based exclusively on anonymous sources (*i.e.*, "persons familiar with the matter") who do not even claim that Mr. Cohen's communications involved material nonpublic information—Plaintiff unjustifiably jumps from "communications" to "communications *containing material nonpublic information*" without any factual support. *See, e.g.,* Compl. ¶ 113 (alleging Mr. Cohen's communications with the Board demonstrates that he "was privy to inside information"). In the same way, Plaintiff ignores that the directors RCV suggested for appointment to the BBBY Board were bound by confidentiality and simply asserts that it is "not conceivable" that the directors would have adhered to their ethical obligations. Opp. at 35. But Plaintiff alleges no facts to support how, when, or by whom this confidentiality requirement was breached. In short, an inference of intentional wrongdoing is far less plausible on the facts alleged than the more straightforward explanation: that Mr. Cohen

(through RCV), as a rational and self-interested investor observing market conditions available to the public, decided to sell his shares, as he previously disclosed he might, when he saw the stock price unexpectedly increase. This defeats Plaintiff's claim. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (A complaint is sufficient "only if a reasonable person would deem the inference of scienter cogent and ***at least as compelling as any opposing inference one could draw from the facts alleged***.") (emphasis added).

Finally, the fact that Mr. Cohen (through RCV) profited from his sales does not support an inference of scienter. *See* Mot. at 23. Plaintiff claims that "large, disproportionate, and suspiciously timed" stock sales are sufficient to plead scienter. But the cases Plaintiff cites, without exception, involve undisputed corporate ***insiders***—*i.e.,* officers, directors, and controlling shareholders. *See, e.g., In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 67 (2d Cir. 2001) (VP for finance); *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 938 (9th Cir. 2003) (officers, directors, controlling shareholders); *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1242 (10th Cir. 2022) (CEO and CFO); *Kusnier v. Virgin Galactic Holdings, Inc.*, No. 21-cv-03070, 2022 WL 16745512, at *1 (E.D.N.Y. Nov. 7, 2022) (Board chairman and controlling shareholder); *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 548 (S.D.N.Y. 2010) (CEO and director); *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 136 (S.D.N.Y. 1999) (officers and directors); *Howard*, 177 F. Supp. 3d at 294 (officers). Here, the Cohen Defendants were not officers, directors, or controlling shareholders.[11]   And for the reasons

---

[11] RCV was a shareholder, but Plaintiff does not allege facts showing that it was a "controlling shareholder." *See Feder v. Frost*, 220 F.3d 29, 34 (2d Cir. 2000) (a "controlling shareholder" is "a shareholder with the power to exercise control over the corporation by virtue of his or her securities holdings"). Nor would such an allegation be plausible as RCV at no time owned a controlling interest in the Company or even appointed a controlling number of directors to the Board.

discussed above, Plaintiff has failed to plead facts showing that they received any material, nonpublic information.

### 3.     Reliance Is Not Pleaded and Cannot Be Presumed.

Plaintiff misunderstands the Cohen Defendants' argument on market efficiency.  The Cohen Defendants do not contend that the NASDAQ is an inefficient market.  The issue, rather, is that the efficiency of the market (which Plaintiff must allege to plead reliance) is at odds with the rest of Plaintiff's case.  The disclosure of already-public information would not affect the stock price of a security in an efficient market.  Yet Plaintiff alleges that it did.  Compl. ¶ 63.  A single, ambiguous tweet containing a smiling moon cartoon would not, in an efficient market, convince rational investors to buy a stock when the Company's public filings suggest that it has severe financial problems.  Yet Plaintiff alleges that it did.  Compl. ¶¶ 147-56.  The market is either efficient or it is not—Plaintiff cannot have it both ways.  *See Meyer v. Greene*, 710 F.3d 1189 1198-99 (11th Cir. 2013) (Plaintiff "cannot contend that the market is efficient for purposes of reliance and then cast the theory aside when it no longer suits their needs for purposes of loss causation.").  That Plaintiff seeks to argue that the market is efficient for purposes of reliance and inefficient for purposes of materiality and loss causation and scienter means that its claims either fail to establish reliance or the other elements.  Either way, Plaintiff's claim cannot succeed.

Plaintiff is also not entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, which applies only to claims based on "primarily a failure to disclose."  406 U.S. 128, 153-54 (1972).  Plaintiff's allegations are that RCV affirmatively misrepresented (1) in its Schedule 13D, that it did not have a plan to sell shares, and (2) in its Form 144, that it had sold

no shares in the previous three months.[12]   Plaintiff's attempt to recharacterize these alleged misrepresentations into omissions is an expedient strategy that courts do not accept.  *See, e.g., In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 221 (D.C. Cir. 2010) (Defendant made "express attestations, which were affirmative misrepresentations that encompassed the alleged omissions cited in the appellants' complaint. The *Affiliated Ute* presumption is therefore inapplicable."); *Schwab v. E\*Trade Fin. Corp.*, 285 F. Supp. 3d 745, 753 (S.D.N.Y.) ("The failure to disclose the alleged falsity of a representation does not transform a misrepresentation case into an omission case and allow a plaintiff to seek refuge in the *Affiliated Ute* presumption."), *aff'd*, 752 F. App'x 56 (2d Cir. 2018).  The Court should reject it here as well.

### 4.   Plaintiff's Loss Causation Theory Is Implausible.

As noted above and in the Motion, the Complaint is premised on the attenuated idea that a single tweet (replying to an article criticizing the Company) and two required SEC filings caused investors to believe—against an abundance of contrary, publicly-available data—that the BBBY stock price was going to increase and, in turn, caused them to go on a buying frenzy.  This theory is indefensible given the undisputed facts alleged in the Complaint and available to the Court by judicial notice.[13]

---

[12] Plaintiff concedes that the Tweet was not an alleged omission and therefore not subject to any presumption of reliance under *Affiliated Ute*.  Opp. at 49.

[13] Judicial notice of the public exhibits and Reddit posts cited in the Motion is also proper.  Courts can take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Civ. P. 201(b)(2).  The existence of Internet pages and public documents therefore can be and are judicially noticed with regularity.  *See, e.g., Doe v. Roman Cath. Diocese of Greensburg*, 581 F. Supp. 3d 176, 195 (D.D.C. 2022) (Internet website); *SEC v. RPM Int'l, Inc.*, 282 F. Supp. 3d 1, 11 (D.D.C. 2017) (SEC filings).

Plaintiff's only objection to judicial notice here is premised on a mischaracterization of the request.  The Cohen Defendants do not, as Plaintiff suggests, ask the Court to "assume as a matter of law the truth" of the content of each document or post at issue.  *See* Opp. at 16.  They ask the Court to take judicial notice of the *existence* of such documents—*i.e.*, the fact of their publication.  Plaintiff does not (and cannot) contend that such notice is improper where, as here, the documents

BBBY was already experiencing wild fluctuations in price due to investment activity, long before Mr. Cohen invested in the Company. Public posts in the r/WallStreetBets Reddit forum[14] confirm that BBBY was a popular topic of discussion leading up to the price swings ***before Mr. Cohen sent out his tweet***. Attributing subsequent fluctuations to Mr. Cohen's Tweet and RCV's SEC filings—based on cherry-picked comments from random Reddit and Twitter users attempting to intuit Mr. Cohen's intent—is an exercise in pure speculation. It cannot establish causation for a securities fraud claim. The theory becomes even more implausible in the context of other public information available at the time. Market participants would have known that BBBY was suffering severe financial difficulties and had reportedly hired Kirkland & Ellis to advise on a potential bankruptcy filing. *See* Compl. ¶ 130. No reasonable investor could have concluded otherwise based on a tweet and a couple of required SEC forms.

---

and posts are all publicly accessible. *See Hurd v. Dist. of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017).

Considering material by judicial notice, moreover, does not convert a Rule 12(b)(6) motion into a motion for summary judgment. *See Singletary v. Howard Univ.*, 939 F.3d 287, 293 n.1 (D.C. Cir. 2019) (On a 12(b)(6) motion, courts may consider facts "from the proposed complaint, documents attached to or incorporated by reference in that complaint, and ***matters of which the court may take judicial notice***.") (emphasis added); *Sierra v. Hayden*, 254 F. Supp. 3d 230, 237 (D.D.C. 2017) ("Because the Court need only look to documents to which it can take judicial notice or that Plaintiff references in her complaint, conversion to a motion for summary judgment is unnecessary.").

[14] Moreover, all of the same issues Plaintiff raises with respect to considering out-of-context comments from random users (*see* Opp. at 41) apply in full force to the litany of similar comments Plaintiff included in its Complaint. Compl. ¶¶ 149-55. For the sake of completeness, the Court should consider not just those handpicked by Plaintiff for the Complaint but also the public comments that cut the other way. *See Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020) (taking judicial notice of tweets not included in plaintiff's complaint because, "to look only at the Tweet" raised by plaintiff "would not provide the necessary or proper context"); *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1062 (S.D. Cal. 2019) (taking judicial notice of exhibits attached to defendant's motion to dismiss "to give the full picture of Defendant's website and Amazon.com listing in the Complaint").

Plaintiff argues that the burden of showing loss causation is "not a heavy one," likening it to providing "notice" of "how Plaintiff contends that [the] misrepresentations . . . caused investor losses." Opp. at 39. But the burden is heavier than Plaintiff lets on, as its own cases confirm. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347-48 (2005) (finding the plaintiffs' complaint "legally insufficient" for failing to plead a "causal connection"); *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020) (holding that plaintiff must "show that the disclosure of the truth caused the company's stock price to decline" because a "decline in price could be attributable to factors unrelated to the fraud" and "securities laws do not protect against ordinary investment losses of that sort"). Here, as in *Broudo*, the claims are insufficient because they do not plead a plausible "causal connection" between the alleged misstatements and the purported harm.

Nor can Plaintiff overcome these loss causation challenges by labeling the Cohen Defendants' arguments "a disguised truth-on-the-market defense." Opp. at 40. *Freeland*, the case on which Plaintiff relies, was a summary judgment case, and the defendant there was attempting to rehash disputed factual issues that the court had already held—at that late stage—were reserved for the jury (and which, presumably, had already been plausibly pleaded). *Freeland*, 545 F. Supp. 2d at 80. The court rejected the defendant's effort to revisit already-decided issues. This case is much different. The issue here is whether the allegations made by Plaintiff—and facts judicially noticed by the Court—are sufficient to plead causation. That is a proper inquiry on a motion to dismiss, even if it was not at summary judgment in *Freeland*. And for the reasons already discussed, the facts pleaded in the Complaint here fail this basic test.

### B.    Plaintiff's Complaint Does Not Plead Scheme Liability.

Plaintiff's scheme liability claim is founded on the same underlying conduct as its misstatement claims, and it fails for many of the same reasons. As discussed in the Motion and

above, the Complaint does not plead loss causation, a strong inference of scienter, or that the Cohen Defendants "injected inaccurate information into the marketplace," *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 106 (2d Cir. 2022), all of which are required to establish market manipulation under Section 10(b) and Rule 10b-5(a) and (c).  *See* Mot. at 35.

Plaintiff also fails to allege a "manipulative act" within the meaning of the statute because it alleges no "market activity."   Mot. at 34.   Plaintiff argues that the dissemination of a false statement ***made by another person*** is sufficient to establish market activity and impose scheme liability on the statement's disseminator.  *See* Opp. at 59 (citing *Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019)).  True, but that rule does not apply here.  Unlike *Lorenzo*, which involved a defendant who could not be liable under Rule 10b-5, this case is brought against the ***maker*** of the alleged misstatements, Mr. Cohen.  As the Second Circuit has long held, pleading scheme liability in such cases requires some "market activity."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) ("A market manipulation claim, however, cannot be based solely upon misrepresentations or omissions.").  That requirement continues to be applied post-*Lorenzo* and should be applied here.  *See Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 76 (2d Cir. 2021).

Separately, the purportedly manipulative acts that Plaintiff alleges cannot support its scheme liability claim.  Plaintiff contends, first, that RCV's sale of BBBY stock is a manipulative act.  But this is inconsistent with Plaintiff's pump-and-dump theory.  In a manipulation claim, the "act" must serve to "deceive or defraud investors by controlling or artificially affecting the price of securities."  *Koch v. SEC*, 793 F.3d 147, 152 (D.C. Cir. 2015) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976)).  In other words, the act is what artificially "pumps" the stock by convincing investors to buy.  But here, RCV's sale of BBBY stock occurred at the end of

the alleged scheme and could not have served to manipulate investors.   It therefore cannot be the predicate act forming the basis of Plaintiff's manipulation claim.

Second, Plaintiff claims that the filing of required SEC forms is also a manipulative act. But as the Cohen Defendants have demonstrated in the Motion and above, Plaintiff has failed to plausibly allege with facts that any of the statements in any of the forms were false or misleading. And Plaintiff does not (and cannot) cite any case in which scheme liability was imposed on a defendant for the filing of required forms that contain no material misstatements.  The Court should decline Plaintiff's invitation to impose such liability here.

### C.    Plaintiff's Other Claims Also Fail.

#### 1.    Section 9(a)(2)

Plaintiff does not state a claim under Section 9(a)(2) because the Complaint does not allege any "series of transactions" executed by the Cohen Defendants for the purpose of inducing the sale or purchase of BBBY securities.[15]   The only things done for that purpose were the alleged misstatements (which, of course, are not "transactions" under 9(a)(2)), and the only transactions executed by the Cohen Defendants were alleged to have occurred *after* the purported manipulation. *See* Mot. at 37.  These allegations do not support a Section 9(a)(2) manipulation claim.

Relying on *Lek* and *In re January 2021*, Plaintiff argues that the filing of a Form 3, Form 144, and Schedule 13D constitute a "series of transactions" under Section 9(a)(2).  *See* Opp. at 63-64 (citing *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 62 (SDNY 2017), and *In re Jan. 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL, 2022 WL 3682083, at *9 (S.D. Fla. Aug. 11, 2022)). But neither case supports such an expansive definition of that phrase.  Rather, both held that "a 'series of transactions' includes not only completed purchases or sales *but also bids and orders to*

---

[15] It also does not allege scienter, for all of the same reasons already discussed.

*purchase or sell securities*." *Lek*, 276 F. Supp. 3d at 62 (emphasis added). *See also In re January*, 2022 WL 3682083, at *9 (same). Because the filing of SEC forms also is not a "bid[]" or an "order[] to purchase or sell securities," Plaintiff fails to state a Section 9(a)(2) claim even under *Lek* and *In re January*.

Plaintiff also claims the Motion's reliance on *Onel v. Top Ships, Inc.*, 806 F. App'x 64, 66 (2d Cir. 2020), is "misplaced" because "[t]hat decision never addressed Section 9." That is not accurate. In *Onel*, "Count III allege[d] market manipulation in violation of Sections 9(a)(2) and (4)," *id.*, and after finding the plaintiff had pleaded no manipulative act for purposes of Section 10(b), the court held that dismissal was therefore appropriate under Section 9(a)(2) for the same reason, *id.* at 66 n.1. This is the exact proposition for which it is cited in the Motion.

### 2. Section 9(a)(3)

Plaintiff does not state a claim under Section 9(a)(3) either because the Complaint does not adequately allege that the Cohen Defendants disseminated a "prophecy" within the meaning of the statute or that they were broker-dealers who did so "in the ordinary course" of their business. *See* Mot. at 38 (quoting the statutory language). The only statement alleged to have made a claim about BBBY's future stock price is the Tweet. But that statement is not actionable under Section 9(a)(3) because, as discussed above, Plaintiff fails to plausibly allege that it communicates a prediction or that Mr. Cohen published the Tweet with a manipulative purpose. *See infra* Sections II.A.1.a, II.A.2.

Plaintiff claims Section 9(a)(3) applies not just to broker-dealers but to any "person." Opp. at 64. But this ignores the plain statutory text. Section 9(a)(3) limits its application to predictions made by a "dealer, broker, security-based swap dealer, major security-based swap participant" (*i.e.*, persons in the business of dealing securities) "*or other person* selling or offering for sale or purchasing or offering to purchase the security . . . *in the ordinary course of business*." 15 U.S.C.

§ 78i(a)(3) (emphasis added).   Reading the phrase "*or other person*" to broaden the statute's applicability to literally *any person* would render superfluous both the preceding list of persons to whom the statute applies and the subsequent qualifier ("in the ordinary course of business").   The Court should reject Plaintiff's strained reading.   Rather, the phrase "other person"—combined with the qualifier—encompasses other types of broker-dealers who may have been omitted from the list.   The Cohen Defendants are not broker-dealers, and thus cannot be liable under this statute.

### 3.      Section 9(a)(4)

Plaintiff concedes that the failure to plead the elements of a 10b-5 claim—material misstatement, scienter, reliance, and loss causation—will likewise foreclose the possibility of a claim under Section 9(a)(4).   Opp. at 65.   For the reasons discussed in the Motion and above, Plaintiff has failed to plausibly plead facts sufficient to establish any of the elements of his 10b-5 claim.   The Section 9(a)(4) claim therefore fails for the same reasons.

### 4.      Section 20(a) Control Person Liability

Plaintiff's Section 20(a) claim for "control person" liability against Mr. Cohen based on his management of RCV fails because it requires a predicate securities fraud violation against RCV.   *See Harman*, 791 F.3d at 111.   For the reasons discussed in the Motion and above, Plaintiff has failed to state a claim for any predicate violation against RCV.   *See supra* Sections II.A, II.B; Mot. at 16-40.

### 5.      Section 20A

Like control person liability claims, insider trading claims under Section 20A also require a "predicate violation" of the Exchange Act.   *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 255 (S.D.N.Y. 2007) (citation omitted).   For the reasons discussed in the Motion and above, Plaintiff has failed to state a claim for any predicate violation.   *See supra* Section II.A, II.B; Mot. at 16-40 (discussing why alleged violations of Rule 10b-5, Section 13(d), Rule 144, Section 16(a),

and Section 9 all fail).  The Complaint also fails to plead that Mr. Cohen possessed material, nonpublic information.  *See supra* Section II.A.2; Mot. at 25-26.

## III.    CONCLUSION

For these reasons, the Court should dismiss the Complaint in its entirety with prejudice.

Dated:  May 3, 2023

Respectfully submitted,

VINSON & ELKINS LLP

*/s/ Clifford Thau*

Ephraim (Fry) Wernick (D.C. Bar No. 497158)
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6730
Facsimile: (202) 879-8830
Email: ewernick@velaw.com

Justin C. Beck (CA Bar No. 313757)
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716
Email: jbeck@velaw.com

Clifford Thau (NY Bar No. 1786102)
Marisa Antonelli (NY Bar No. 4789848)
1114 Avenue of Americas
New York, NY 10036
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
Email: cthau@velaw.com
Email: mantonelli@velaw.com

*Attorneys for RC Ventures LLC and Ryan Cohen*