**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE BED BATH & BEYOND CORPORATION SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) **CIVIL ACTION** **Case No. 1:22-cv-02541-TNM** **CLASS ACTION** |

**DEFENDANT BED BATH & BEYOND INC.'S OBJECTION TO LEAD PLAINTIFF'S
MOTION TO LIMIT THE AUTOMATIC STAY TO BED BATH & BEYOND INC.**

# TABLE OF AUTHORITIES[*]

**Page(s)**

**Cases**

*\* AC&S Inc. v. Travelers Cas. & Sur. Co.*,
  435 F.3d 252 (3d Cir. 2006) ................................................................................................... 9

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) ........................................................................................... 7–8, 9

*\* Arnold v. Garlock, Inc.*,
  278 F.3d 426 (5th Cir. 2001) ................................................................................................. 8

*\* Belcufine v. Aloe*,
  112 F.3d 633 (3d Cir. 1997) .................................................................................................. 8

*Dupree v. Jefferson*,
  666 F.2d 606 (D.C. Cir. 1981) ............................................................................................... 3

*Federal Housing Finance Agency v. Raines*,
  725 F. Supp. 2d 159 (D.D.C. 2010) ....................................................................................... 3

*In re American Film Technologies, Inc.*,
  175 B.R. 847 (Bankr. D. Del 1994) ....................................................................................... 7

*In re Bed Bath & Beyond Inc., et al.*,
  Case No. 23-13359 (VFP) (Bankr. D.N.J Apr. 23, 2023) ................................................. 1, 3

*\* In re Calpine Corp.*,
  354 B.R. 45 (Bankr. S.D.N.Y. 2006) ............................................................................. 10, 12

*In re Coram Healthcare Corp.*,
  315 B.R. 321 (Bankr. D. Del. 2004) ................................................................................ 9–10

*In re Halo Wireless, Inc.*,
  684 F.3d 581 (5th Cir. 2012) ................................................................................................. 6

---

[*] Asterisks identify those authorities on which Defendant Sue E. Gove chiefly relies in this Reply Memorandum.

*In re Lazarus Burman Associates*,
   161 B.R. 891 (Bankr. E.D.N.Y. 1993) .................................................................................. 7

*In re Lion Capital Grp.*,
   44 B.R. 690 (Bankr. S.D.N.Y. 1984) .................................................................................. 12

*In re LTL Mgmt., LLC*,
   2023 WL 3136666 (Bankr. D.N.J. Apr. 27, 2023) ............................................................... 9

*In re Steven P. Nelson*,
   140 B.R. 814 (Bankr. M.D. Fla. 1992) ................................................................................. 7

*In re VistaCare Group, LLC*,
   678 F.3d 218 (3d Cir. 2012) ................................................................................................. 7

*Maritime Elec. Co. v. United Jersey Bank*,
   959 F.2d 1194 (3d Cir. 1991) ............................................................................................... 7

\* *McCartney v. Integra Nat. Bank North*,
   106 F.3d 506 (3d Cir. 1997) ......................................................................................... 7, 8, 9

*Midatlantic Nat'l Bank v. N..J. Dep't of Envtl. Prot.*,
   474 U.S. 494 (1986) .............................................................................................................. 6

*Nat'l Oilwell Varco v. Mud King Prods., Inc.*,
   2013 WL 1948766 (S.D. Tex. May 9, 2013) .................................................................... 8–9

*Raudonis as trustee for Walter J. Raudonis 2016 Revocable Tr. v. RealtyShares, Inc.*,
   507 F. Supp. 3d 378 (D. Mass. 2020) ............................................................................. 9, 10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   443 B.R. 295 (Bankr. S.D.N.Y. 2011) ................................................................................ 10

\* *Thompson v. Magnolia Petroleum Co.*,
   309 U.S. 478 (1940) .............................................................................................................. 1

**Statutes**

11 U.S.C. § 510(b) .................................................................................................................... 13

11 U.S.C. § 502(e) .................................................................................................................... 13

**Other Authorities**

Fed. R. Evid. 201(b) ............................................................................................................. 3

H.R.Rep No. 95-595 ........................................................................................................... 7

In light of this Court's April 26, 2023 minute order directing defendants to object by May 8, 2023 to Plaintiff's attempt to limit the stay of the proceedings solely to Bed Bath & Beyond Inc. ("BBBY," or the "Company"), BBBY files this Objection seeking a determination that, under relevant Third Circuit case law,[1] the bankruptcy court's automatic stay applies to this action as prosecuted against defendant Sue Gove, or, alternatively, an order extending the stay to cover claims against Ms. Gove during the pendency of BBBY's chapter 11 cases.

## PRELIMINARY STATEMENT

Along with BBBY, Ms. Gove is named as a defendant in this pending putative class action (the "Pending Action") arising from defendant Ryan Cohen's investment in BBBY stock. Pursuant to section 362(a) of the Bankruptcy Code, the filing of BBBY's chapter 11 petition automatically stayed the Pending Action against BBBY. The purpose of the automatic stay is to provide debtors with a breathing spell and channel competing claims for a debtor's assets into a single forum to provide a platform for the debtor's reorganization. However, section 362(a) does not automatically stay the Pending Action against any non-debtor defendants, including Sue Gove. Nonetheless, because the continued prosecution of the Pending Action against Ms. Gove effectively continues the prosecution of the Pending Action against BBBY, this Court should find that the automatic stay extends to her.

---

[1] Defendant Bed Bath & Beyond, Inc. and its debtor-affiliates filed for chapter 11 relief in the United States Bankruptcy Court for the District of New Jersey. *See In re Bed Bath & Beyond Inc., et al.*, Case No. 23-13359 (VFP) (Bankr. D.N.J Apr. 23, 2023), ECF No. 1. Because the bankruptcy court has exclusive jurisdiction over the debtors' estates during the pendency of their chapter 11 cases, Third Circuit case law determines whether the automatic stay applies. *See Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481 (1940) ("A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession").

As an initial matter, the Pending Action against Ms. Gove depends on, and inextricably intertwines with, the Debtors' alleged conduct. To prevail on Counts I and III as pleaded against Ms. Gove, Plaintiff must first establish underlying wrongdoing by BBBY. As a result, the continued prosecution of Plaintiff's claims against Ms. Gove will drain BBBY's resources as it attempts to preserve them in its chapter 11 case. Moreover, the demands of this litigation will distract Ms. Gove—and, in all likelihood, other critical members of BBBY's management—as she attempts to navigate the Company through a multi-billion-dollar bankruptcy. Accordingly, this Court should find that the automatic stay extends to the prosecution of this case against Ms. Gove, or alternatively, issue a stay of the Pending Action during the pendency of BBBY's chapter 11 case for at least six reasons.

*First*, the continued prosecution of the Pending Action against Ms. Gove will distract Ms. Gove—BBBY's CEO and a member of its board—from her restructuring-related responsibilities at a critical time for BBBY and its stakeholders. As the company's CEO, Ms. Gove's time and attention is imperative to the success of BBBY's restructuring efforts. Hence, further developments in the Pending Action threaten to impair BBBY's efforts to maximize the value of its estate. Moreover, because BBBY and its debtor affiliates possess much of the information relevant to the Pending Action, Plaintiff will inevitably seek discovery from BBBY's management—including depositions—which will consume significant time and resources, threaten further distraction, and effectively eliminate the benefits of the automatic stay. A debtor's management team should not be distracted by ongoing litigation at a time when their focus on restructuring efforts is paramount. Simply put, BBBY and its tens of thousands of stakeholders will suffer irreparable harm if this suit proceeds against Sue Gove.

*Second*, BBBY and its affiliated debtors anticipate a swift chapter 11 process, with a 120-day target, [2] ameliorating any risk that a stay of proceedings against Ms. Gove could prejudice Plaintiff. Federal court litigation takes years to reach a final disposition. Plaintiff and the putative class can wait four more months while Ms. Gove and her team pursue confirmation of a plan to maximize value for all stakeholders.

*Third*, certain developments in BBBY's chapter 11 case may result in complete subordination or a global release of securities claims against Ms. Gove, thereby mooting the Pending Action. At this point, it is unclear whether BBBY's business will emerge from chapter 11 as a going concern or will otherwise be subject to an orderly and value-maximizing wind down through chapter 11 processes. In either event, some general unsecured claimants—for instance, security claimants—may not recover under a confirmed chapter 11 plan. Moreover, because an ongoing risk of litigation will preclude a restructured BBBY from emerging with a "fresh start," the Company will need to reach an agreement with existing creditors—potentially including Plaintiff—to resolve all pending and potential future claims. Hence, allowing this case to proceed against Ms. Gove risks wasting judicial resources. On the other hand, given BBBY's expectation

---

[2] Pursuant to Federal Rule of Evidence 201(b), this Court may take judicial notice of public records, including documents filed on another court's docket. *See* Fed. R. Evid. 201(b); *Federal Housing Finance Agency v. Raines*, 725 F. Supp. 2d 159, 162 n.1 (D.D.C. 2010); *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981). On April 4, 2023 the bankruptcy court entered an "Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief," *In re Bed Bath & Beyond Inc., et al*, No. 23-13359 (D.N.J. Bankr. Apr. 24, 2023), ECF No. 76 ("Cash Collateral Order"). BBBY asks this Court to take judicial notice that the order states that: "[a]s a condition to the DIP Facility and the use of Cash Collateral, the Debtors have agreed to the milestones set forth on Exhibit C hereto (the "Milestones")[,]" and, pursuant to the milestone schedule, that "[o]n or before one-hundred twenty (120) days after the Petition Date, the Bankruptcy Court shall have entered an order confirming the Plan." *Id.* at 61, 266.

3

for a 120-day restructuring process, staying the Pending Action poses little risk of prejudice to Plaintiff's interests to the extent such claims are not resolved in the Bankruptcy Court.

*Fourth*, due to the BBBY's indemnification and advancement obligations to Ms. Gove, permitting Plaintiff to continue pursuing related claims against Ms. Gove threatens to drain BBBY's estate. BBBY's bylaws require the advancement of expenses to and indemnification of its directors and officers for liabilities incurred in relation to their corporate positions. Thus, if the lawsuits proceed, let alone result in liability, BBBY may need to advance litigation expenses to Ms. Gove and indemnify her for any ultimate finding of liability.

*Fifth*, the continued prosecution of the Pending Actions against Ms. Gove will deplete insurance policies that she shares with the Debtors. Specifically, the Debtors and Ms. Gove are co-insureds under primary and excess director and officer liability insurance policies, which, under controlling precedent in the Third Circuit, are property of the bankruptcy estates. Each dollar paid out by those insurance policies to cover Ms. Gove's legal fees is a dollar denied the bankruptcy estates, to the detriment of the debtors and their creditors.

*Sixth*, continued proceedings against Ms. Gove will prejudice BBBY's opportunity and ability to defend itself at the appropriate time. Should the Pending Action proceed without BBBY, the resulting prejudice from findings in this case will inure to the detriment of BBBY's estate. BBBY's alleged conduct forms the foundation of Plaintiff's claims against Ms. Gove, and Plaintiff will likely seek to use any judicial decision on the claims against her in future proceedings against BBBY. Because the claims against Ms. Gove and BBBY are factually and legally intertwined, the Pending Action threatens significant prejudice to the interests of BBBY and its stakeholders.

For these reasons, BBBY respectfully asks this Court find that the automatic stay applies to Ms. Gove.

**FACTUAL BACKGROUND**

## I. THE DEBTORS' INDEMNIFICATION OBLIGATIONS

BBBY's Bylaws obligate it to indemnify, and advance expenses to, Ms. Gove with respect to the claims asserted in the Pending Action. Pursuant to its Bylaws, BBBY "shall indemnify and hold harmless any person who is or was a director or officer of the Corporation and who is or was involved in any manner . . . in any pending or completed . . . claim, action, suit or proceeding . . . by reason of the fact that such person is or was a director or officer of the Corporation . . . against all expenses (including attorneys' fees) . . . incurred by such person in connection with such Proceeding[.]" *See* Ex. A, Amended and Restated Bylaws of Bed Bath & Beyond Inc., at 16, Art. V § 1 (the "Bylaws"). This indemnification obligation includes "all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such Proceeding," and confers a contract right which "shall include the right to receive, prior to the conclusion of any Proceeding, payment of any expenses incurred by the Indemnitee in connection with such Proceeding, consistent with the provisions of applicable law[.]" *Id.* Moreover, BBBY "shall [] advance[] to the Indemnitee" "[a]ll reasonable expenses . . . within twenty (20) days after the receipt . . . of a statement or statements from the Indemnitee requesting such advance or advances from time to time, whether prior to or after final disposition of such Proceeding." *Id.* § 4.A. As an officer and director sued in her capacity as BBBY's CEO, Ms. Gove is covered by the indemnification obligations in the Company's Bylaws.

## II. THE DEBTORS' AND NON-DEBTORS DEFENDANTS' SHARED INSURANCE POLICIES

BBBY and its directors and officers, including Ms. Gove, share a common claims-made directors and officers liability policy ("D&O Policy"). The D&O Policy provides coverage for claims made against directors and officers of both BBBY and its subsidiaries, including, but not

5

limited to, non-indemnified losses of officers and directors, losses of the Company stemming from securities claims and losses incurred from indemnifying or advancing costs to indemnified directors and officers, and up to $250,000 of losses incurred by each retired independent director of the Company for which they are not indemnified. Ex. B, 2021 09 D&O Pol FINEX revised 772022 at 6, 10].

BBBY and its directors and officers are entitled to use the proceeds of that policy for "all loss[es] for which the [Company or Insured Persons] . . . become legally obligated to pay on account of any [Claim or Securities Claim] first made against [them]," which "include[es], but [is] not limited to, damages, judgments, and any award of pre-judgment interests and post-judgment interest with respect to covered damages, settlements, and Defense Costs," subject to certain non-applicable limitations. *Id.* at 10, 14.

## ARGUMENT

### I. LEGAL STANDARD.

Section 362(a)(1) of the Bankruptcy Code prohibits "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Section 362(a)(3) similarly prevents "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *See In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012); *see also Midatlantic Nat'l Bank v. N..J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). Its purpose is to "give the debtor a 'breathing spell' from creditors, to allow the debtor to begin the process of discharging his debts, and . . . to protect creditors from preventing one creditor from obtaining payment of its claims to

6

the detriment of others[,]" thereby permitting the debtor's restructuring efforts to proceed in an efficient, coordinated manner. *In re VistaCare Group, LLC*, 678 F.3d 218, 231 (3d Cir. 2012) (quoting H.R.Rep No. 95-595, at 174, *reprinted in* 1978 U..S.C.C.A.N. at 6135).

"Although the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a 'debtor.'" *McCartney v. Integra Nat. Bank North*, 106 F.3d 506, 510 (3d Cir. 1997) (quoting *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991)). "This prohibition, however, has been liberalized in a number of cases where courts have applied the automatic stay protection to nondebtor third parties[,]" including "nonbankrupt codefendants in 'unusual circumstances.'" *Id.* (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

As relevant here, "unusual circumstances" justifying extension of the automatic stay include: (a) where a shared insurance policy creates an "identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant[,]" *id.* (quoting *A.H. Robins*, 788 F.2ds at 999); (2) where a judgment against a non-debtor would trigger claims for indemnification and pose a risk of collateral estoppel, *id.* (citing *In re American Film Technologies, Inc.*, 175 B.R. 847, 855 (Bankr. D. Del 1994)); and (3) "where stay protection is essential the debtor[s'] efforts of reorganization[,]" *id.* (citing *In re Lazarus Burman Associates*, 161 B.R. 891, 899-900 (Bankr. E.D.N.Y. 1993); *In re Steven P. Nelson*, 140 B.R. 814, 816-17 (Bankr. M.D. Fla. 1992)).

## II.   THE PENDING ACTION SHOULD BE STAYED PURSUANT TO SECTION 362(A) OF THE BANKRUPTCY CODE.

Section 362(a) of the Bankruptcy Code protects estate assets by staying any action "to recover a claim against the debtor" or "to exercise control over property of the estate." 11 U.S.C. § 362(a)(1), (3); *see also McCartney*, 106 F.3d at 510; *A.H. Robins*, 788 F.2d at 1002 (section

7

362(a)(3) "directs stays of any action, **whether against the debtor or third-parties**, to obtain possession or to exercise control over property of the debtor" (emphasis in original)); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) (explaining that a section 362 stay should extend to non-bankrupt co-defendants when a formal or contractual relationship between the debtor and non-debtor renders a judgment against the latter a judgment against the former). The Pending Action against Ms. Gove will adversely impact the bankruptcy estates and, thus, this Court should find that the automatic stay extends to Ms. Gove pursuant to section 362(a).

*First*, the Pending Action will trigger BBBY's indemnity obligations. This Court may, therefore, stay proceedings against Ms. Gove because "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *McCartney*, 106 F.3d at 510 (internal quotation omitted); *Belcufine v. Aloe*, 112 F.3d 633, 637 n.5 (3d Cir. 1997) (reiterating that "the rationale" that "the existence of . . . indemnity agreements between the officers and the debtor corporation created such an identity between the debtor and the individual officers that allowing the suit to proceed against the officers would, in effect, be allowing the suit to proceeding against the bankrupt debtor . . . has since been adopted by [the Third] Circuit"). Ms. Gove will have claims against BBBY's estate for advancement of defense costs and to cover any damage judgment from the Pending Action. By virtue of BBBY's indemnification obligations, these claims render judgment against Ms. Gove a judgment against the Company, and there is no limit on the amount of a claim for indemnification. Ex. B at 16. In light of these indemnification obligations, declining to apply the automatic stay to Ms. Gove "would defeat the very purpose of the statute," intended to provide the Debtors with repose from litigation and its associated costs and distractions. *See Nat'l Oilwell Varco v. Mud King Prods.,*

8

*Inc.*, 2013 WL 1948766, at *5 (S.D. Tex. May 9, 2013) (extending automatic stay to officers of debtor corporation where officers were indemnified pursuant to corporate bylaws); *Raudonis as trustee for Walter J. Raudonis 2016 Revocable Tr. v. RealtyShares, Inc.*, 507 F. Supp. 3d 378, 383 (D. Mass. 2020) (extending the automatic stay to non-debtor officer defendants in a federal securities suit based, in part, on indemnity obligations); *A.H. Robins*, 788 F.2d at 999.

***Second***, even were BBBY able to avoid its indemnification obligations to Ms. Gove, the Pending Action would still threaten to deplete the bankruptcy estate. BBBY and its directors and officers, including Ms. Gove, share a common primary liability insurance policy. The D&O Policy provides coverage for claims made against directors and executives of BBBY and its subsidiaries, including, but not limited to, non-indemnified losses of officers and directors, losses of the Company or those of its directors and officers that the Company indemnifies, and the Company's losses from securities claims. *See* Ex. B at 10. The Company and its officers and directors are entitled to use the proceeds of that policy for "damages, judgments, and any award of pre-judgement and post-judgment interest with respect to covered damages, settlements and Defense Costs," subject to a few non-relevant limitations. *Id.* at 14.

"It has long been the rule in [the Third] Circuit that insurance policies are considered part of the property of the bankruptcy estate." *AC&S Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) (citation omitted); *see also In re LTL Mgmt., LLC*, 2023 WL 3136666, at *5 (Bankr. D.N.J. Apr. 27, 2023) (holding that "there is an identity of interests between [related entities] and the Debtor[] [where] the parties share insurance coverage, that there exist potential indemnification obligations, and that continued litigation has a potential adverse impact on a debtor's estate and prospect of reorganization."); *McCartney*, 106 F.3d at 510; *In re Coram Healthcare Corp.* 315 B.R. 321, 335 (Bankr. D. Del. 2004) (noting that creditors "do not share an

9

identity of interest with the estate . . . unlike a debtor's . . . directors and officers who may have indemnification agreements with the debtor"); *Raudonis*, 507 F. Supp. 2d at 383-84 (extending the automatic stay to non-debtor defendants in a securities action because, in relevant part, "the defendants' shared insurance contract arguably sweeps [the debtor] and the individual defendants into the reach of the automatic stay"); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 443 B.R. 295, 317-18 (Bankr. S.D.N.Y. 2011) (extending the automatic stay to securities claims against non-debtor defendants where the debtor's estate had cognizable claims to those assets, and any recovery of the non-debtors assets by third-parties would necessarily diminish the estate). If Ms. Gove were to receive payments under these insurance policies, those payments would deplete proceeds available to all the debtors in these cases.

**Third**, if the Pending Action continues against Ms. Gove, BBBY's restructuring will be adversely affected by the unavoidable distraction that Ms. Gove and other officers of BBBY will face. Rather than focusing solely on critical restructuring matters, Ms. Gove—BBBY's current CEO and a member of the board of directors—would face significant distractions from ongoing discovery and other proceedings in the Pending Action. Even in a case proceeding solely against Ms. Gove, Plaintiff will undoubtedly seek document discovery, the overwhelming majority of which will have to come from BBBY. And Plaintiff will certainly seek to depose Ms. Gove and likely other directors and/or officers of BBBY. The Company needs its officers to focus on the multitude of issues it faces in this restructuring, not on a single lawsuit brought by one set of potential creditors. *See, e.g.*, *In re Calpine Corp.*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006) (extending automatic stay to non-debtors where "continuation of the case w[ould] distract key personnel" from their chapter 11 obligations).

Thus, a stay of the Pending Action would allow BBBY's directors and officers to focus on their primary responsibility to the Company's stakeholders and shepherd it through the chapter 11 proceedings. There is simply no practical way for the case to proceed only against Ms. Gove without having a real impact on the Company.

*Fourth*, allowing the Pending Action to proceed against Ms. Gove risks prejudicing BBBY given the identity of interests between BBBY and Ms. Gove— any judgment against Ms. Gove could function as a judgment against BBBY. Hence, if the Pending Action goes forward against Ms. Gove, the Company would be forced to either watch from the sidelines at great risk of prejudice to their interests on this issue, or jettison one of the principal benefits of the stay and be forced to involve itself in the Pending Action to protect those interests at great cost to the Company's restructuring efforts.

Plaintiff's entire argument against Ms. Gove turns on a single question: did BBBY's SEC filings and public statements affirmatively mislead the investing public about Ryan Cohen's investments? The theories and factual allegations underlying the claims against Ms. Gove are inextricably interwoven with the theories and factual allegations underlying the claims against BBBY. For one thing, the Pending Action predicates its claims against Ms. Gove on BBBY's allegedly wrongful conduct, arguing that Ms. Gove's responsibilities "required her to oversee the contents of the August 17, 2022 emailed statements to CNBC and the August 18, 2022 Form 8-K." 2d Am. Compl., ECF No. 66 ¶ 181. And, according to Plaintiff, "[b]ecause of [her] position[] of control and authority," "Gove [was] able to, and did, control the content[] of" Bed Bath & Beyond's allegedly misleading statements, and she also "exercised control over the general operations of . . . the Company and possessed the power to control the specific activities which compromise the primary violations about which Lead Plaintiff and the other members of the Class

11

complain." *Id.* ¶¶ 243, 244. Even if a ruling in Plaintiff's favor on that score did not technically have preclusive effect on BBBY, as a practical matter any rulings against Ms. Gove on legal or factual issues would presage similar adverse findings against BBBY.

Accordingly, bankruptcy courts recognize the need to halt litigation against non-debtor defendants where, as here, that litigation might disadvantage the debtor in future proceedings. *See, e.g.*, *In re Calpine Corp.*, 354 B.R. at 50 (noting that if the litigation at issue advanced without the debtor, "issues regarding [the debtor's] liability, its defenses and any damages that may be awarded, will be determined in [its] absence, exposing [the debtor] to a significant risk of collateral estoppel, stare decisis and evidentiary prejudice"); *In re Lion Capital Grp.*, 44 B.R. 690, 703–04 (Bankr. S.D.N.Y. 1984) (recognizing "the risk of collateral estoppel, the consequent drain on the debtor's resources through having to monitor . . . other actions, and the risk that testimony by employees or agents might be subsequently employed against the debtor would irreparably injure the estate[] and thus warranted the issuance of a stay" (emphasis added)).

*Finally*, a speedy resolution of BBBY's chapter 11 proceeding will answer important questions about the viability of the Pending Action as pleaded against Ms. Gove, and, as a result, a temporary stay of proceedings in this case will conserve judicial resources without prejudicing Plaintiff or the putative class members. To reiterate, BBBY and its debtor-affiliates proposed, and the bankruptcy court approved, a 120-day deadline for Plan confirmation. *See* Cash Collateral Order at 61, 266. Given that *all* discovery is currently stayed during the motion to dismiss phase of this case, a stay of proceedings until mid-August will not prejudice Plaintiff or members of the putative class

In contrast, a temporary stay provides real benefits to this Court. Confirmed chapter 11 plans often contain third-party releases or exculpations of debtors' management for pre-and-post

12

petition conduct, which, applied here, would necessarily moot Plaintiff's case against Ms. Gove. A confirmed chapter 11 plan may also subordinate or otherwise disallow Plaintiff's claim pursuant to 11 U.S.C. §§ 510(b) or 502(e). In either case, continued proceedings against Ms. Gove during the pendency of the Company's chapter 11 case would waste not only her and BBBY's time and resources, but this Court's, as well. Accordingly, concerns of judicial economy warrant a finding that the automatic stay extends to Ms. Gove.

## CONCLUSION

In short, allowing the Pending Action to continue would not only expose BBBY to indemnification obligations, but also threaten to deplete valuable estate assets (from the D&O Policy) and distract BBBY from its efforts to move expeditiously through its reorganization efforts. These risks could result in substantial harm to the Company's estate, and consequently, the interests of the Company's stakeholders. Accordingly, this Court should find that the automatic stay extends to cover claims against Ms. Gove in the Pending Action.

Dated: May 8, 2023

          Respectfully submitted,

          CLEARY GOTTLIEB STEEN & HAMILTON LLP

          */s/ Jared M. Gerber*
          Victor L. Hou (*pro hac vice*)
          Jared M. Gerber (*pro hac vice*)
          One Liberty Plaza
          New York, New York 10006
          Telephone: (202) 225-2507
          Email: vhou@cgsh.com
          Email: jgerber@cgsh.com

          Nowell D. Bamberger (D.C. Bar No. 989157)
          2112 Pennsylvania Avenue
          Washington, D.C. 20037
          Telephone: (202) 974-1752
          Email: nbamberger@cgsh.com

          *Counsel for Defendant Bed Bath & Beyond Inc.*