# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE BED BATH & BEYOND CORPORATION SECURITIES LITIGATION | Case No. 1:22-CV-02541 (TNM) |

**DEFENDANTS RC VENTURES LLC'S AND RYAN COHEN'S SUR-REPLY
IN FURTHER OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

    A.    Bratya's New Event Study Should be Disregarded ...................................................1

    B.    Cohen Opposed (And Opposes) Certification Because Bratya Failed Its "Modest" Burden of Proving Informational Efficiency...........................................3

    C.    Bratya's Claim That Cohen's Tweet "Exacerbated" An Ongoing Short Squeeze Borders On Silly ......................................................................................7

    D.    Bratya Is Barely A Member, Much Less An "Ideal" Representative, Of The Putative Class...................................................................................................9

CONCLUSION......................................................................................................................10

## TABLE OF AUTHORITIES

## CASES

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ........................................................................... *passim*

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69 (S.D.N.Y. 2015) ...................................................................................................................................... 6

*Carter v. George Washington Univ.*, 387 F.3d 872 (D.C. Cir. 2004) ............................................ 3

*In re Asemani*, 455 F.3d 296 (D.C. Cir. 2006) .............................................................................. 3

*In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196 (E.D. Pa. 2008) ........................................................... 7

*In re Groupon, Inc. Sec. Litig.*, 2015 WL 1043321 (N.D. Ill. Mar. 5, 2015) ................................. 6

*In re Jan. 2021 Short Squeeze Trading Litig.*, 2023 WL 9035671 (S.D. Fla. Nov. 13, 2023) ...................................................................................................................................... 7

*In re Xcelera.com Sec. Litig.*, 2004 WL 7329233 (D. Mass. Sept. 30, 2004) ............................... 6

*Rossville Convenience & Gas, Inc. v. Wilkinson*, 2021 WL 7210779 (D.D.C. Feb. 23, 2021) ...................................................................................................................................... 3

*Sataki v. Broad. Bd. of Governors*, 272 F.R.D. 21 (D.D.C. 2010) ................................................ 3

*Smilovits v. First Solar, Inc.*, 295 F.R.D. 423 (D. Ariz. 2013) ...................................................... 7

# INTRODUCTION

In its opening brief in support of its motion for class certification, Lead Plaintiff Bratya SPRL ignored the facts and law that disfavored its motion. In its reply brief, Bratya confronts these deficiencies for the first time with dodges, distortions, and—most egregiously—with novel expert analysis to which Defendants RC Ventures LLC and Ryan Cohen (collectively "Cohen") have had no opportunity to respond. Cohen submits this sur-reply, asserting that this Court should decline to consider Bratya's and Dr. Cain's new arguments, and correcting four fresh misrepresentations leveled by Bratya in its reply. Cohen respectfully requests a hearing with expert testimony to facilitate meaningful review and resolution of Bratya's motion.

### A. Bratya's New Event Study Should be Disregarded

Bratya moved to certify a putative class without providing *any* analysis on whether the market for BBBY securities was informationally efficient during the putative Class Period, such that reliance on the integrity of the market could be presumed on a class-wide basis. *See Basic Inc. v. Levinson*, 485 U.S. 224, 242, 246–47 (1988). Instead, Bratya's expert, Dr. Cain, submitted an event study that did not examine (much less demonstrate) that the market for BBBY securities reacted to relevant information during the putative Class Period.

It was evident that Dr. Cain's event study did not study the putative Class Period. ECF No. 117 ("Cohen Br.") at 28 (observing that "Dr. Cain's event study reflects 136 days within the Analysis Period—four 'News Days' and 132 'No News Days'—*none* of which fall within the Class Period."). Yet in case that glaring deficiency somehow escaped Bratya's notice, it was made clear during Dr. Cain's deposition:

> Q. One thing you don't do is you don't look at any news days within the Class Period; correct?
> A. For the *Cammer* 5 test?
> Q. Correct.

1

> A. *That is correct*.
>
> Q. And you don't look at any non-news days during the five-day trading period, do you?
>
> A. I believe that all of the Class Period days sort of fell in between where there was some amount of news coverage. So they were not put into the no-news days bucket, but there were no earnings announcements. *So they were not put into the news days bucket either.*
>
> Q. So in the actual analysis that you performed to determine whether or not the price is reacting to news, you don't actually look at any days in the Class Period?
>
> A. For the *Cammer* 5 test, *I believe that all of those days fell in sort of between those two buckets*. That's my recollection …

ECF No. 117-2 at 63 (emphases added).

During his deposition, Dr. Cain advanced a vociferous defense of his decision to test the efficiency of the putative Class Period without any reference to the putative Class Period:

> *I could have certainly looked at the alleged misrepresentations and the alleged corrective disclosures* and documented statistically significant price movements in response to those, but, again, my *Cammer* 5 analysis, my goal is to be agnostic and step away from the actual misreps [*sic*] and the alleged corrective disclosures and to focus on something like earnings announcements as the appropriate testing ground.

*Id.* (emphasis added). Dr. Cain did not supplement his report or amend his analysis after the deposition. Later, Cohen explained in his opposition brief that an event study demonstrating efficiency during some other time period could not be used as a proxy to show efficiency *during the putative Class Period*, because market conditions during the two times are fundamentally distinct and not analogous. Cohen Br. at 29–30.

Only now—after Cohen utilized his sole opportunity to oppose class certification—does Bratya belatedly submit a report from Dr. Cain that purports to show a cause-and-effect relationship between information and price movements during the putative Class Period. ECF No. 120-1 ("New Cain Rep.") ¶¶ 37, 42. Bratya did not provide Cohen with the data that Dr. Cain relied upon to form his new opinions. Cohen's expert, Professor Fischel, would need such data to comprehensively assess the efficacy of Dr. Cain's untimely analysis. Of course, having sequenced

2

its submissions to deprive Cohen of any occasion to respond, Bratya recognized no need to show its work.

At first blush (and without the benefit of backup data), Dr. Cain's new event study appears to suffer the same fatal defects as his first attempt. Dr. Cain's selection of a suboptimal estimation window may produce results favorable to Bratya, but those results are neither robust nor convincing. *See* Cohen Br. at 29–30, 34. Even so, this Court should decline to consider a new opinion and event study to which Cohen had no opportunity to respond or rebut. "Issues may not be raised for the first time in a reply brief." *In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006) (quoting *Rollins Envtl. Servs. v. EPA*, 937 F.2d 649, 653 n. 2 (D.C. Cir. 1991)). The D.C. Circuit has cautioned that it "do[es] not consider claims raised for the first time in a reply brief," and instead deems those arguments to be waived. *Carter v. George Washington Univ.*, 387 F.3d 872, 883 (D.C. Cir. 2004) (citing *Fitts v. Fed. Nat. Mortg. Ass'n*, 236 F.3d 1, 3 n. 2 (D.C. Cir.2001) (per curiam)); *see also Rossville Convenience & Gas, Inc. v. Wilkinson*, No. CV 20-2218 (JDB), 2021 WL 7210779, at *2 n.1 (D.D.C. Feb. 23, 2021) ("Generally, arguments raised for the first time on reply are waived." (citing *Lindsey v. District of Columbia*, 879 F. Supp. 2d 87, 95–96 (D.D.C. 2012)); *Sataki v. Broad. Bd. of Governors*, 272 F.R.D. 21, 25 (D.D.C. 2010) ("[B]ecause it was raised for the first time on reply, the Court shall disregard the argument." (citing *Baloch v. Norton*, 517 F. Supp. 2d 345, 348 n. 2 (D.D.C. 2007)). In resolving Bratya's motion for class certification, this Court should disregard Dr. Cain's new event study.

**B. Cohen Opposed (And Opposes) Certification Because Bratya Failed Its "Modest" Burden of Proving Informational Efficiency**

Bratya speciously asserts that "Cohen and his expert" sought "to disregard the legal definition of 'informational efficiency.'" ECF No. 119 ("Bratya Reply Br.") at 8. Bratya contends that Cohen "claim[ed] that only strict fundamental value efficiency will suffice" for the *Basic*

3

presumption. *Id.* at 9. Dr. Cain joins in, asserting that "Prof. Fischel focuses on a definition of fundamental market efficiency." New Cain Rep. ¶ 15. These characterizations are false.[1] Having read Cohen's brief and Professor Fischel's expert report, this Court fortunately need not rely on Bratya's assorted mischaracterizations.[2] Nonetheless, some truths bear emphasis.

At no point does Cohen or Professor Fischel suggest that this Court should assess Bratya's bid for class certification against a standard of fundamental efficiency. Instead Cohen articulated the meaning of informational efficiency (Cohen Br. at 19–20, 28), assessed whether the market for BBBY securities during the putative Class Period fit within that definition (*id.* at 28), and concluded it did not (*id.* at 28–31). Indeed, Bratya itself acknowledges that Cohen correctly articulated the "legal definition of 'informational efficiency.'" Bratya Reply Br. at 9 (citing Cohen Br. at 28). The problem for Bratya is that if a market is informationally efficient "when stock prices reflect available information" (*id.* at 8), then BBBY could not have been informationally efficient on *both* July 29th—when it traded at $5.03—*and* on August 11th—when it traded at $10.63—based on an identical mix of available information. *See* ECF No. 117-1 ("Fischel Rep.") ¶ 23.

To obscure this fatal flaw, Bratya insinuates that all the economic evidence militating against class certification is probative only of fundamental efficiency, and wholly irrelevant to the

---

[1] Bratya also asserts that Cohen "request[ed] that the Court assume as a matter of law that he was unconnected with any short squeeze." Bratya Reply Br. at 13. Not so. Instead, Cohen observed that Bratya must show that the short squeeze—which Bratya alleged began before the putative Class Period—did not prevent informational efficiency. *See* ECF No. 66 ("SAC") ¶ 24. To the extent Bratya posits that the informational inefficiency caused by the short squeeze was, in turn, caused by Cohen, it was Bratya's burden to establish as much.

[2] Cohen leaves for another day, if necessary, the task of correcting the various mischaracterizations or distortions set forth in the "facts" section of Bratya's reply brief. *See* Bratya Reply Br. at 2–8. For now, Cohen will refute Bratya's inaccuracies only to the extent relevant to the instant motion, preserving its objection to the remainder of the misstatements set forth in Bratya's reply.

4

market's informational efficiency.  Bratya Reply Br. at 9–13 (noting, for instance, that "short selling constraints are also not particularly relevant . . .").  Bratya offers no principled distinction this Court could use to assess whether an economic indicator is relevant to fundamental efficiency, informational efficiency, both, or neither.  That is because no such clean lines exist.  Share price movements, option implied volatility, and short sale constraints are indicative of whether a stock price incorporates publicly available information.  Fischel Rep. ¶¶ 20–31.  That these indicators may also provide clues about a stock's fundamental value is largely beside the point.  In this case, the short squeeze alleged by Bratya (SAC ¶ 24) introduced market frictions that *both* disconnected BBBY's stock price from its fundamental value (*i.e.* fundamental inefficiency), *and* frustrated the incorporation of negative news and information in BBBY's stock price (*i.e.* informational inefficiency).  Fischel Rep. ¶¶ 20–31.  The latter condition renders this case unfit for the *Basic* presumption.

Bratya's attack on Dr. Cain's use of Nasdaq FIS data, and its criticism of the conclusions drawn from that data—specifically, that there was a scarcity of shares available to short during the putative Class Period—are unfounded.  *See* Bratya Reply Br. at 13 (calling such data "unreliable and incomplete"); New Cain Rep. at 7 (claiming "Short Interest in BBBY Does Not Indicate Market Inefficiency as Speculated by Prof. Fischel").  Nasdaq FIS collects data from institutional investors and major brokerages.  New Cain Rep. ¶ 21.  Data from major brokerages is probative of short interest because those investors—relative to other types of traders—may be more likely to make their shares available for lending.  Thus, Professor Fischel presented short interest as a function of the number of shares on loan relative to those actually available for lending, noting as he did that "not all shares outstanding are made available to be shorted."  Fischel Rep. ¶ 31

n.63. Nonetheless, data from S3 Partners—which Dr. Cain holds out as superior to Nasdaq FIS—confirms rather than "contradict[s]" Professor Fischel's conclusions. New Cain Rep. ¶¶ 21–22.

In his new report, Dr. Cain presents data from S3 Partners about the number of BBBY shares available to short in August 2022, from which Dr. Cain concludes that "hundreds of thousands of additional shares of BBBY were available for further shorting" during the putative Class Period. New Cain Rep. ¶ 24. But large numbers without context can be deceptive. For example, had Dr. Cain provided more data from S3 Partners—reporting that BBBY's daily float during the putative Class Period exceeded 90 million shares—this Court could have readily discerned that the number of BBBY shares available to short constituted *less than 1%* of its available stock.³ Or had Dr. Cain observed (as he did in his first report) that "weekly trading volume of BBBY's Common Stock over the . . . Class Period was 1.1 billion shares," it would have been clearer that the "hundreds of thousands" of shares available to short represented only 0.5% of trading volume. ECF No. 108-1 ("Cain Rep.") ¶ 38 (detailing trading volume); New Cain Rep. ¶ 24 (detailing shares available to short). It is unsurprising then, that S3 Partners awarded BBBY stock a "a 100/100 'squeeze score' based on the crowded nature of the short."⁴ Cohen Br. at 11.

---

³ Per data from S3 Partners (available via subscription). *See* S3 PARTNERS, https://www.s3partners.com/research (last visited July 3, 2024).

⁴ Bratya provides a litany of citations purporting to show that classes have been certified despite similar market frictions. Bratya Reply Br. at 11–12. None resemble the confluence of extreme circumstances presented here. For instance, in *In re Xcelera.com Sec. Litig.*, No. CV 00-11649-RWZ, 2004 WL 7329233, at *3 (D. Mass. Sept. 30, 2004), the relevant stock had "high" trading volume, but there is no indication (as here), that the volume was abnormal, and the markets were not impeded by limits on arbitrage. In *Carpenters Pension Tr. Fund v. Barclays PLC*, 310 F.R.D. 69, 91 (S.D.N.Y. 2015), the volatility at issue was not peculiar to a small cohort of meme stocks, but rather concerned market-wide "increased volatility of the markets during the financial crisis." The court concluded that this more generalized volatility "raises concerns, but it is not outcome determinative." *Id.* Likewise, in *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2015 WL 1043321, at *9 (N.D. Ill. Mar. 5, 2015), the court concluded *Basic* was satisfied for a company

### C. Bratya's Claim That Cohen's Tweet "Exacerbated" An Ongoing Short Squeeze Borders On Silly

Bratya's reply explicates upon a theory about which it had previously, and understandably, played coy: That if the market for BBBY securities was indeed informationally inefficient during the Class Period, "that would not be relevant because Cohen exacerbated" such inefficiency. Bratya Reply Br. at 14. Bratya claims that the manner in which Cohen "exacerbated" these ongoing market efficiencies—whatever that means—is through a tweet published after market-close on August 5, 2022. *Id.* Tellingly, Bratya does not allege the tweet contained any misinformation, does not start its Class Period from the date the tweet published, and—perhaps most damningly—does not include in its briefing *what the tweet said*. To be clear, Cohen tweeted:



---

with a healthy (1.8%) weekly trading volume, but noted that "if short selling is expensive, it could be a factor weighing against market efficiency." And in *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 433–34 (D. Ariz. 2013), the court expressed concern about impediments to short-selling, but ultimately concluded *Basic* was satisfied in part because "short selling was constrained *for only 11 weeks out of the four-year Class Period*." *Id.* at 434 (emphasis added). Moreover, the court in *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 212–13 (E.D. Pa. 2008) did not determine, as Bratya claims, that "[s]hort-selling constraints are also not particularly relevant when, like here, the market expected a security's price to rise." Bratya Reply Br. at 12. The court instead characterized short interest as "a useful proxy for determining whether there existed barriers to short-selling a particular security," but concluded that reduced short interest may not have been indicative of short-selling constraints, but rather the market's optimism about the future price of a security. *In re DVI Inc.*, 249 F.R.D. at 213. In stark contrast, the most analogous case—and one of the first to consider whether meme stocks in the midst of a short squeeze satisfied *Basic*—ultimately *denied* class certification. *See generally In re Jan. 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL, 2023 WL 9035671 (S.D. Fla. Nov. 13, 2023). Certification should likewise be denied here.

Bratya's contention—that days later, on August 8th, this aphorism pushed BBBY's stock price up 40%—is so unserious as to nearly disprove itself. Yet Bratya has forced Cohen to state the obvious: The tweet contained no information about the Company, the Company's performance, or Cohen's estimation of the Company. The tweet did not mention the Company *at all*. Nor did the tweet include some veiled reference from which Bratya could plausibly infer the tweet was intended to be understood in reference to the Company. In short, the tweet was unimportant.[5] It would be an affront to both economics and securities law to posit that Cohen's August 5th tweet "significantly altered the 'total mix' of information made available" to investors, *Basic*, 485 U.S. at 232 (citations omitted), much less caused the market capitalization of the Company to rise by 40%. The claim beggars belief, and even Bratya is not so bold as to make it with a full-throat. And indeed, if a tweet like this *did* have a monumental effect on a company's stock price, that market would plainly be inefficient (under any and all definitions of the term).

To make matters worse, Bratya's assertion that Cohen's August 5th tweet "move[d] the stock" "nearly 40%" does violence to the study of statistics by brazenly ignoring the distinction between causation and correlation. Bratya Reply Br. at 14. In late July and early August 2022, the market price of BBBY's stock was on a wild run. *See* Fischel Rep. ¶ 23. Indeed, before Cohen tweeted out this fortune-cookie wisdom on August 5th, the market price of BBBY securities had *similarly closed 33% higher than the prior day*. The market price of BBBY securities did not (and indeed, should not) skyrocket 40% on Monday because Cohen mused about work ethic on Friday.

---

[5] This was not Cohen's first foray into social media philosophy. About a week earlier, Cohen tweeted that "[t]he best time to be alive in human history is now." @RyanCohen, Twitter (Jul. 27, 2022, 8:51 PM), https://bit.ly/4cm5wGa. In 2020, Cohen echoed Ben Franklin's view that "[a]n ounce of prevention is worth a pound of cure." @RyanCohen, Twitter (Dec. 31, 2020, 11:52 AM), https://bit.ly/4cr7uFk. These tweets, like the one on August 5th, are not market movers. They are pop psychology. *See* Cohen Br. 13–14.

Evidence and common sense instead suggest that the price of BBBY securities continued to rise on August 8th for the same reasons as it rose on August 1st, August 2nd, August 3rd, August 4th, and August 5th.

Bratya's accusation that Professor Fischel "never bothered to look at" Cohen's August 5th tweet is a master class in deflection. Bratya Reply Br. at 14. Professor Fischel did not focus on Cohen's August 5th tweet because Bratya did not allege it was false, misleading, or otherwise improper. Professor Fischel had no need to evaluate a benign tweet published a week before Bratya alleged its putative Class Period began. Put differently, neither Cohen nor Professor Fischel fixated on the August 5th tweet because it was not relevant to the claim on which class certification hinges: Whether the market for BBBY securities *during the putative Class Period that Bratya selected* traded in an informationally efficient market. Having failed to carry its burden on this central question, Bratya resorts to its secondary argument that Cohen's August 5th tweet caused the inefficiencies plaguing the market during its putative Class Period. And to do so, Bratya attacks Professor Fischel for failing to address a backup theory that Bratya only rolled out because its Plan A lacks merit.

### D. Bratya Is Barely A Member, Much Less An "Ideal" Representative, Of The Putative Class

Bratya's most egregious distortions are reserved for arguments about its own fitness to serve as lead plaintiff in this suit. Bratya advances the remarkable argument that Bratya is an "ideal" class representative because—although it initiated new short positions after each of Cohen's allegedly inflationary statements—it had purchased BBBY stock at some earlier point in time. Bratya Reply Br. at 20. Unsurprisingly, Bratya lacks legal support for its bold and counterintuitive new claim, instead citing a case for the uncontroversial proposition that a misstatement, which prolongs an inflationary price impact, is actionable. *See id*. (quoting

9

*FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1316 (11th Cir. 2011)).  Bratya's own class definition further undermines its assertion.  After all, Bratya does not seek to represent a class of investors who *held* Bed Bath shares or long call options at the outset of the putative Class Period, but rather those who *purchased* during the putative Class Period.  Bratya did not become a member of its own class until August 17th, the same day Bratya (unlike, allegedly, the rest of the putative class) understood Cohen to have sold his entire stake.

Bratya obscures its own trading history beyond recognition.  Bratya represents that it was net-long on BBBY during the putative Class Period, while omitting that it *only* increased its long position on August 17th and August 18th.  *See* ECF 117-2 at 191.  Bratya also newly asserts that it went long on BBBY "during trading hours on August 17th prior to seeing the [*Seeking Alpha*] article," which Bratya claims to have seen after market-close at 10:11 PM on August 17.  Bratya Reply Br. at 22.  Perhaps.  But on August 18th, Bratya was undisputedly well-aware that Cohen had exited his stake when it decided to purchase new BBBY securities.  Bratya's net-long stake in BBBY thus reflects Bratya's decision to invest in a stock that Cohen had abandoned.  Bratya itself did not rely upon Cohen's alleged misstatements, and Bratya failed to earn a presumption that others did.

## CONCLUSION

For the reasons set forth above, Bratya's motion should be denied.  Insofar as this Court believes it would aid its decisional process, Cohen respectfully requests a hearing with expert testimony on the issue of class certification.

Dated: July 3, 2024                                         Respectfully submitted,

                                                            */s/ Brian T. Gilmore*
                                                            Dane H. Butswinkas (D.C. Bar # 425056)
                                                            Steven M. Farina (D.C. Bar # 437078)
                                                            Brian T. Gilmore (D.C. Bar # 1030601)
                                                            Madeline C. Prebil (D.C. Bar # 1778724)
                                                            WILLIAMS & CONNOLLY LLP
                                                            680 Maine Avenue, S.W.
                                                            Washington, DC 20024
                                                            T: (202) 434-5000
                                                            F: (202) 434-5029
                                                            dbutswinkas@wc.com
                                                            sfarina@wc.com
                                                            bgilmore@wc.com
                                                            mprebil@wc.com

                                                            *Counsel for RC Ventures LLC and Ryan Cohen*