# UNITED STATES DISTRICT COURT

# DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE BED BATH & BEYOND CORPORATION SECURITIES LITIGATION | Case No. 1:22-cv-02541-TNM<br><br>Hon. Trevor N. McFadden<br><br>CLASS ACTION |

## LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE SUR-REPLY IN FURTHER OPPOSITION TO CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

LEGAL STANDARD............................................................................................................3

ARGUMENT .........................................................................................................................4

I.    Cohen's Arguments on Informational Efficiency and Adequacy are Improper ....................4

II.   Dr. Cain's Direct Response to Prof. Fischel is Not a New Argument...................................8

III.  Cohen Rehashes Arguments to Now Distance Himself from His Followers .......................11

CONCLUSION......................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP,*
623 F. Supp. 3d 470 (E.D. Pa. 2022) ...............................................................................13

*\*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)...........................................................................................................13

*Anand v. United States HHS,*
Civil Action No. 21-1635 (CKK), 2022 U.S. Dist. LEXIS 239386
(D.D.C.  Nov. 15, 2022)...................................................................................................3, 5

*Bigwood v. United States Dep't of Def.,*
132 F. Supp. 3d 124 (D.D.C. 2015) .................................................................................3, 4

*Carter v. George Wash. Univ.,*
387 F.3d 872 (D.C. Cir. 2004) .............................................................................................4

*Chun Huang v. Canntrust Holdings, Inc.,*
No. 19-CV-6396 (JPO), 2020 U.S. Dist. LEXIS 67065 (S.D.N.Y. Apr. 16, 2020) .......7

*Crummey v. SSA,*
794 F. Supp. 2d 46 (D.D.C. 2011) .......................................................................................4

*\*Erica P. John Fund, Inc. v. Halliburton Co.,*
718 F.3d 423 (5th Cir. 2013) .........................................................................................12, 13

*FindWhat Inv. Grp. v. FindWhat.com,*
658 F.3d 1282 (11th Cir. 2011) ...........................................................................................9

*Glass v. Lahood,*
786 F. Supp. 2d 189 (D.D.C. 2011) .....................................................................................3

*Glass v. Lahood,*
No. 11-5144, 2011 U.S. App. LEXIS 24459 (D.C. Cir. Dec. 8, 2011) ...........................3

*Glickenhaus & Co. v. Household Int'l., Inc.,*
787 F.3d 408 (7th Cir. 2015) ...............................................................................................9

*\*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys*.,
594 U.S. 113 (2021)..........................................................................................2, 9, 10, 12

ii

*Halliburton Co. v. Erica P. John Fund, Inc.,*
573 U.S. 258 (2014) ....................................................................................................12

*In re Asemani,*
455 F.3d 296 (D.C. 2006) ............................................................................................4

*In re CoreCivic, Inc.,*
No. 19-0504, 2019 U.S. App. LEXIS 25508 (6th Cir. Aug. 23, 2019) .........................9

*In re Initial Pub. Offering Sec. Litig.,*
260 F.R.D. 81 (S.D.N.Y. 2009) ................................................................................. 6

*In re January 2021 Short Squeeze Trading Litig.*
No. 21-2989-MDL-ALTONAGA/Torres, 2023 U.S. Dist. LEXIS 231860 (S.D. Fla. Nov. 13, 2023). ...........................................................................................................6, 7, 8

*In re Vivendi, S.A. Sec. Litig.,*
838 F.3d 223 (2d Cir. 2016).........................................................................................9

*Karinski v. Stamps.com, Inc.,*
No. CV 19-1828-MWF (SKx), 2020 U.S. Dist. LEXIS 209256 (C.D. Cal. Nov. 9, 2020) ..........12

*Lewis v. Rumsfeld,*
154 F. Supp. 2d 56 (D.D.C. 2001) .....................................................................3, 4, 12

*Monroe Cnty. Employees' Ret. Sys. v. S. Co.*,
332 F.R.D. 370 (N.D. Ga. 2019)................................................................................13

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,*
238 F. Supp. 2d 270 (D.D. C. 2002) ............................................................................4

*Robinson v. Detroit News, Inc.,*
211 F. Supp. 101 (D.D.C. 2002) ..................................................................................3

*Rollins Envtl. Servs., Inc. v. United States EPA,*
937 F.2d 649 (D.C. Cir. 1991) .....................................................................................4

*Sataki v. Broad. Bd. Of Governors,*
272 F.R.D. 21 (D.D.C. 2010)........................................................................................4

*Smilovits v. First Solar, Inc.,*
295 F.R.D. 423 (D. Ariz. 2013) ...................................................................................6

*TSI Inc. v. Azbil BioVigilant Inc.,*
No. CV-12-00083-PHX-DGC, 2014 U.S. Dist. LEXIS 28938 (D. Ariz. Mar. 5, 2014)................9

iii

*Tyson v. United States Postal Serv.,*
Civil Action No. 22-3715 (RC), 2024 U.S. Dist. LEXIS 57365 (D.D.C. Mar. 29, 2024) ..........4, 5

*Unite Here Health v. Gilbert,*
No. 2:13-cv-00937-JAD-GWF, 2015 U.S. Dist. LEXIS 135065 (D. Nev. Sep. 30, 2015)............9

*Willis v. Big Lots, Inc.,*
242 F. Supp. 3d 634 (S.D. Ohio 2017) ........................................................................................10

Lead Plaintiff Bratya SPRL ("Bratya"), through its undersigned counsel, hereby respectfully submits this response in opposition to Defendants Ryan Cohen's and RC Ventures, LLC's (together, "Cohen") motion for leave to file a sur-reply in further opposition to class certification.

## PRELIMINARY STATEMENT

Cohen's attempt to have the last word on Bratya's motion for class certification is a brazen violation of the rules and an abuse of the judicial process. Cohen does not even pretend to meet the standard for allowing a sur-reply, and instead uses the proposed brief to sneak in new arguments concerning informational efficiency in an attempt to do damage control since his previous comments on that specific subject violated controlling authority, and to reiterate already-refuted potshots about Bratya. The Court should disregard Cohen's new arguments on informational efficiency and Bratya's adequacy entirely.

The remaining issues Cohen raises are also not new. Cohen had the burden at the time of his opposition brief to demonstrate a complete lack of price impact for each alleged misstatement and each alleged corrective disclosure. Cohen half-heartedly attempted to meet this burden by addressing only the timing of a single misstatement he made on Twitter on August 12, 2022. Cohen's expert, Professor ("Prof.") Daniel Fischel ("Fischel"), conducted an event study focused only on that particular statement, which admitted that the stock price rose right after the tweet was sent, but somehow concluded that an 18% rise in a few hours was equivalent to having absolutely no price impact. As is entirely proper and normal in a reply brief, Bratya responded to these patently false response observations. Dr. Matthew Cain ("Cain"), who had previously proved that Bed Bath & Beyond Inc.'s ("BBBY") securities generally traded in an efficient market, addressed the false response claims by showing that the specific misstatements and corrective disclosures

1

generated statistically significant responses.  This is how the burden of proof normally works for price impact.  Bratya had no obligation to affirmatively show price impact in its moving papers, and addressed Cohen's misrepresentations in Dr. Cain's Reply Report only because Cohen and his expert focused on the impact of one of his misrepresentations in his response.  *See Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 126 (2021) (holding again that a plaintiff has no burden whatsoever to show price impact, and "the defendant bears the burden of persuasion to prove a lack of price impact").  Reply expert reports that respond to an opponent's expert report are not considered new.

Cohen also claims that a sur-reply is needed to advance rehashed arguments concerning his theory that the price moved because of a short squeeze that had nothing to do with him.  Bratya alleged in the Complaint, and maintained in its Reply, that Cohen's misconduct is inextricably linked to any short squeeze, leading his followers to construe his tweets as a "squeeze play."[1] ¶¶154-55; Reply at 1, 13-14.  Bratya did not express "skepticism" about any of this in its Reply.  Cohen's Mot. at 1 (mischaracterizing Reply at 3).  Instead, Bratya attacked Prof. Fischel's unreliable and unscientific approach based on "rumors" and gossip.  Reply at 3.  Prof. Fischel's entire thesis rests on the claim that a short squeeze rendered the market for BBBY securities inefficient, but he does not even have the confidence to publicly assert that there is evidence of an "actual" short squeeze.  Reply at 3-5, 11, 15.  Again, this is important, as Prof. Fischel claims there was no price impact from Cohen's August 12, 2022 tweet because of a preexisting short squeeze, but he never analyzed or concluded that it existed given the significant uncertainty he repeatedly expressed in his Report.  *Id.*  **It is Cohen's burden** to show a complete lack of price impact, and

---

[1] All ¶____ and ¶¶____ references are to the Second Amended Complaint (the "Complaint") filed at ECF No. 66.  All internal citations are omitted and all emphasis is supplied unless otherwise noted.

he improperly attempted to do so based only on Prof. Fischel's speculative and unsubstantiated opinions.  As such, Bratya's justified criticisms of Prof. Fischel's flawed expert Report cannot be mischaracterized as a new argument based on Cohen's deliberate misreading of the Reply.

Nor did Bratya "debut" a new claim that Cohen's August 5, 2022 tweet caused BBBY's stock price to skyrocket by 40% on the next trading day.  Cohen's Mot. at 1.  That too was alleged in the Complaint, ¶¶139-43, and all Bratya pointed out in the Reply was that Prof. Fischel's Report conceded that fact, but never bothered to even address it.  Reply at 14.  Nothing at all is new about that simple observation.

Finally, even if the Court actually considers any of Cohen's arguments, they all lack merit and cannot prevent him from facing a Class of investors that he defrauded out of nearly a billion dollars.

## LEGAL STANDARD

Sur-replies are "disfavored."  *Glass v. Lahood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011) *aff'd*, No. 11-5144, 2011 U.S. App. LEXIS 24459 (D.C. Cir. Dec. 8, 2011); *Anand v. United States HHS*, Civil Action No. 21-1635 (CKK), 2022 U.S. Dist. LEXIS 239386, at *3 (D.D.C. Nov. 15, 2022) ("when arguments raised for the first time in reply fall within the scope of the matters [the opposing party] raised in opposition, and the reply does not expand the scope of the issues presented, leave to file a surreply will rarely be appropriate."); *see also Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002) (quoting *Lewis v. Rumsfeld*, 154 F. Supp. 2d. 56, 61 (D.D.C. 2001) ("The standard for granting leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply.").  "A court should only permit leave to file a sur-reply if the moving party is otherwise unable to address matters raised for the first time in the non-movant's reply brief."

*Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 154 (D.D.C. 2015); *Rumsfeld*, 154 F. Supp. 2d at 61 (denying motion for surreply because the contention did not involve a "new matter but rather an alleged mischaracterization"). The matter covered in the sur-reply "must be truly new." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 277 (D.D.C. 2002). A sur-reply cannot be misused as a "vehicle for rehashing arguments that have already been raised and briefed by the parties. Were that not true, briefing would become an endless pursuit." *Crummey v. SSA*, 794 F. Supp. 2d 46, 63 (D.D.C. 2011); *Bigwood*, 132 F. Supp. 3d at 154.

None of Cohen's authorities are on point. All involved instances where the arguments were genuinely new. *See, e.g.*, *In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006) (claim that prisoner's appeal considered filed on the date it is placed in the prison mail system deemed waived because made first time in reply brief); *Carter v. George Wash. Univ.*, 387 F.3d 872, 883 (D.C. Cir. 2004) (retaliation and constructive discharge claims waived because they were raised for the first time in a reply); *Rollins Envtl. Servs., Inc. v. United States EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991) (due process argument raised for the first time in reply brief); *Sataki v. Broad. Bd. of Governors*, 272 F.R.D. 21, 25 (D.D.C. 2010) (similar).

## ARGUMENT

### I.    Cohen's Arguments on Informational Efficiency and Adequacy are Improper

Nearly half of Cohen's purported sur-reply is dedicated to discussing informational efficiency and adequacy, but he provides no basis for additional briefing on these issues. *Compare* Cohen's Mot. at 1-2 *with* Cohen's Sur-Reply at 3-6; 9-10. The Court should disregard Cohen's new arguments. *See, e.g.*, *Tyson v. United States Postal Serv.*, Civil Action No. 22-3715 (RC), 2024 U.S. Dist. LEXIS 57365, at *18 (D.D.C. Mar. 29, 2024) (denying motion for leave to file a

sur-reply because no new arguments were raised in the reply brief); *Anand*, 2022 U.S. Dist. LEXIS 239386, at *3-4 (denying motion for leave to file a sur-reply because the district court was "unable to identify any new factual or legal arguments.").

Regardless, Cohen's convoluted attempt to resuscitate demonstrably incorrect arguments on informational efficiency are utterly without merit. Cohen repeats his point on volatility or an increase in BBBY's stock price from $5.03 to $10.63 before the Class Period to claim the market was inefficient, but volatility alone provides neither an economic nor legal basis to support that conclusion. *See* Reply at 11-12 (citing cases). Nor is there any merit to Cohen's insistence that there was an "identical mix of available information" between July 29, 2022 and August 11, 2022. Cohen's Sur-Reply at 4. Cohen road-tested his scheme to defraud with a tweet designed to entice retail investors on August 5, 2022, which caused the price of BBBY's stock price to skyrocket by over 40%, and posted a purple heart in support of the meme stock movement on August 10, 2022.[2] Still, Cohen struggles incredibly to keep his story straight, and again overemphasizes factors such as large price movements and short-selling constraints to make his inefficiency claims, but neither he nor his expert can dispute the existence during the Class Period of other ***economic factors***, including BBBY's NASDAQ listing, analyst coverage, eligibility to file Form S-3 and significant ownership held by market makers. Reply at 10-11. Nor can Cohen or his expert dispute that the stock price increased on August 16, 2022 solely because of Cohen's SEC filings, and decreased on August 19, 2022 solely because of Cohen's dump. Reply at 16-18. That ***is*** public information that undisputedly caused BBBY's price to rise and fall. Dr. Cain's Reply Report also disproves

---

[2] As Cohen's counsel learned from one of Plaintiff's expert reports last week, purple heart emojis are an expression of love for the retail investor community and support for their hostility to hedge funds. That is what Cohen sent without comment during what his expert calls a "rumored short squeeze." He now publicly insults and defames the same investors he relentlessly cultivated and ultimately defrauded out of a desire to evade accountability for his misconduct.

any assertion that Cohen's August 12, 2022 tweet had no price impact – the only statement Cohen addressed.  *Id.*

      Even if the Court considers them now, Cohen's new arguments concerning short-selling constraints cannot save the day because he fails to distinguish Bratya's authorities and does not cite ***any*** authorities of his own to support inefficiency.  For example, Cohen disregards that, in *Smilovits v. First Solar, Inc.*, the district court explicitly ruled that short-selling constraints constituted indirect evidence of inefficiency, but nevertheless certified the class because, like here, all the other *Cammer* factors weighed in favor of the class.  295 F.R.D. 423, 434, 438 (D. Ariz. 2013).  The same is true for *In re Initial Pub. Offering Sec. Litig.*, in which the district court found Prof. Fischel's analysis of the short interest deficient and further found that the minimal short interest weighed against a finding of efficiency yet still certified the Class because the remaining *Cammer* factors weighed in favor of the Class.  260 F.R.D. 81, 100-01 (S.D.N.Y. 2009).  Cohen's continued misrepresentation of *In re January 2021 Short Squeeze Trading Litig.* does not help him. No. 21-2989-MDL-ALTONAGA/Torres, 2023 U.S. Dist. LEXIS 231860 (S.D. Fla. Nov. 13, 2023).  The district court did not make any findings on the impact of a short squeeze on market efficiency in that case.  Instead, it found that "[b]ecause Plaintiffs have forsaken a traditional *Basic* presumption by admitting that the market was not efficient when Plaintiffs transacted, the Court need not consider the experts' competing views on market efficiency."  *Id.* at *111.  Bratya has consistently maintained that the market ***was*** informationally efficient – the type of efficiency embraced by the Supreme Court – and the existence of most of the *Cammer* and *Krogman* factors during the Class Period is an uncontested fact in this litigation.

      Cohen's new arguments concerning Bratya's adequacy also remain frivolous.  Nothing is "remarkable" about the fact that Bratya remained long on every day and during every minute of

the Class Period. Cohen's Sur-Reply at 9. Selling some stock to meet margin calls or taking hedge positions does not alter that Bratya was always net long and took additional long positions during the Class Period, or make it inadequate in any sense. A defendant must show how short-selling transactions caused the plaintiff to not rely on his or her false representations. *See, e.g.*, *Chun Huang v. Canntrust Holdings, Inc.*, No. 19-CV-6396 (JPO), 2020 U.S. Dist. LEXIS 67065, at *10 (S.D.N.Y. Apr. 16, 2020). Cohen does not even attempt to do that. Even the nonbinding authority Cohen seems enamored with recognized that transactions that result in gains do not matter if the plaintiff suffers net losses during the Class Period. *See In re January 2021 Short Squeeze Trading Litig.*, 2023 U.S. Dist. LEXIS 231860, at *52-54. Bratya lost millions of dollars during the Class Period because of Cohen's fraud.

Cohen also continues to ignore the law by pressing his tired argument that Bratya is atypical because it purchased stock later in the Class Period as opposed to in the beginning of the Class Period. Cohen's Sur-Reply at 10. This makes no sense. Anyone who purchased common stock or long call options ***at any point between August 12, 2022 and August 18, 2022 is a member of the Class with the same claims as all other Class members***. ¶1. As Cohen's own nonbinding authority recognizes, factual variations between Class members do not themselves render a representative atypical; what matters is whether there is a similarity between the legal theories asserted. *See In re January 2021 Short Squeeze Trading Litig.*, 2023 U.S. Dist. LEXIS 231860, at *47-48. Here, ***all*** Class Members rely on the exact same facts and legal theories. *See* ECF No. 109 at 8.

Bratya's purchases on August 18, 2022 were also made before Cohen's SEC filings disclosing his dump were released after the market closed that day. Everyone who purchased on that day is a Class Member. And Bratya's speculation that a potential sale, which it and nobody

7

else could logically be certain of, was a harbinger for the implementation of Cohen's turnaround strategy to sell buybuy BABY, Inc. demonstrates, at most, that Bratya relied on Cohen's statements and was duped for a few more days than perhaps some other investors.[3]  Prolonged victimhood does not make a class representative atypical or inadequate.

Cohen also cherry-picks the record and ignores adverse facts that severely undercut his claims.  Later in the day on August 17, 2022, Edouard Coti told David Coti that the Form 144 was "just the right to sell within 6 months."  Reply at 22 (citing Cohen's Ex. 3 at BRATYA_000749).  The Coti brothers' consideration of both the possibility of a sale as well as no sale is not unusual or controversial given Cohen's confusing and misleading reference to actual sales in the Form 144 as merely "potential."  *See also* ¶175 (investor speculating that news of Cohen's sales was fake).  Cohen's fictitious allegation that the Coti brothers had actual knowledge of his fraud while the market, the media and BBBY executives at the highest level remained confused by his SEC filings is ridiculous.  Reply at 5 (citing Bratya's Ex. 10), 18.  Moreover, Cohen has never explained why any of this can become the focus of trial or place the Class's interests in "jeopardy."  *See In re January 2021 Short Squeeze Trading Litig.*, 2023 U.S. Dist. LEXIS 231860, at *48.  The nonbinding authority he cites itself recognized that he must do both to show a class representative is atypical.  *Id.*

## II.    Dr. Cain's Direct Response to Prof. Fischel is Not a New Argument

---

[3] This is not unusual or atypical.  So strong is Cohen's cult like status that many retail investors believed his potential sales may be part of a larger plan for BBBY, but they were all, of course, ultimately victims of his fraud.  *See, e.g.*, u/HomelessZillionaire, "That 💜 was his last tweet and was him signing off until he could legally announce anything! Power to the Players!"  *Reddit, r/BBBY* (Aug. 20, 2022),
<https://www.reddit.com/r/BBBY/comments/wt9x5s/that_was_his_last_tweet_and_was_him_signing_off> (accessed July 10, 2024).

Evidence is not new "if it is submitted in direct response to proof adduced in opposition to a motion." *Unite Here Health v. Gilbert*, No. 2:13-cv-00937-JAD-GWF, 2015 U.S. Dist. LEXIS 135065, *23 (D. Nev. Sep. 30, 2015). Parties can file "rebuttal evidence to contravene arguments first raised by the non-moving party in its opposition." *TSI Inc. v. Azbil BioVigilant Inc.*, No. CV-12-00083-PHX-DGC, 2014 U.S. Dist. LEXIS 28938, at *3-4 (D. Ariz. Mar. 5, 2014). Reply reports that respond to an opposing party's expert report are proper.

Here, Prof. Fischel conducted an event study with a flawed estimation window contaminated by Cohen's fraud to claim that Cohen's August 12, 2022 tweet had no price impact. Indeed, Prof. Fischel discussed the event study under a section entitled "**THE TWEET THAT ALEGEDLY INTRODUCED ARTIFICAL INFLATION INTO BBBY'S STOCK DID NOT IMPACT ITS PRICE**." Fischel Rep. at 20 (emphasis in original). Cohen bears the heavy burden to show a lack of price impact for each alleged misstatement and each alleged corrective disclosure. *See Goldman Sachs Grp., Inc.*, 594 U.S. at 126-27 (holding again that a plaintiff has no obligation to show any evidence of price impact, and the burden of persuasion to do so rests squarely on a defendant's shoulders); *see also In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 259 (2d Cir. 2016) (holding that defendants "cannot avoid liability for an alleged misstatement merely because the misstatement is not associated with an uptick in inflation."); *Glickenhaus & Co. v. Household Int'l., Inc.*, 787 F.3d 408, 418 (7th Cir. 2015) (same); *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1316 (11th Cir. 2011) (similar); *In re CoreCivic, Inc.*, No. 19-0504, 2019 U.S. App. LEXIS 25508, at *2 (6th Cir. Aug. 23, 2019) (similar). Putting aside the fact that Cohen has miserably failed to come close to meeting his burden since he does not even challenge the price impact of most of his misrepresentations ***or any of the corrective disclosures***, Dr. Cain's reply analysis showing the statistical significance of Cohen's alleged misrepresentations ***directly responds*** to

Prof. Fischel's irrational assertion that the August 12, 2022 tweet could—if parameters were sufficiently manipulated—fall short of certain statistical significance tests even though the price rose 18% in the hours that followed.  Reply at 2, 16-18.  Replying to a response is the normal sequence of proof and how issues are briefed under the Supreme Court's burden-shifting framework.  *See Goldman Sachs Grp., Inc.*, 594 U.S. at 126-27.  There is no room here for any special privilege for Cohen to get the last word, or to prevent Dr. Cain from responding to false response brief assertions, simply because Cohen failed to meet his burden on an issue that he must prove.  Bratya and Dr. Cain cannot respond to Cohen's price impact arguments before those arguments are even made.  For these reasons, Cohen is not entitled to have Dr. Cain's alternative event study stricken.

Cohen's misstatements of fact do not change the result.  Bratya provided, and Cohen and his expert conceded, that most of the *Cammer* and *Krogman* factors were met ***during the Class Period***.  Reply at 10-11; *but see* Cohen's Sur-Reply at 1 (misstating that "Bratya moves to certify a putative class without providing *any* analysis on whether the market for BBBY securities was informationally efficient during the Class Period…") (emphasis in original).  Bratya had no obligation to present an event study under the fifth *Cammer* factor.  *See Goldman Sachs Grp., Inc.*, 594 U.S. at 126-27.  No event study was submitted in the *Cammer* case.  *See* Ex. B attached to Decl. of Omar Jafri at ECF No. 108.  Cohen makes much of the fact that Dr. Cain's initial event study focused on an objective factor like an earnings announcement rather than his Class Period misrepresentations, Cohen's Sur-Reply at 2, but he fails to inform the Court that he would have attacked the event study as biased had Dr. Cain done that.  *See, e.g.*, *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 655 (S.D. Ohio 2017) (defendant claiming that event study's inclusion of corrective disclosure would bias the study's results)  But now that Cohen waived his right to make that claim

by submitting an event study that purports to address one of his Class Period misrepresentations, Bratya and Dr. Cain are well within their rights to respond accordingly.  Cohen's naked claim that Dr. Cain's event study selected a "suboptimal estimation window" is similarly incorrect.  Cohen's Sur-Reply at 3.  Regression models using data from the previous 120 trading days are standard, and Prof. Fischel is the one who concocted a non-standard window contaminated by Cohen's fraud. Cain Reply Rep. at ¶¶45-48.  More importantly, Prof. Fischel's admission that the price of BBBY's securities rose significantly after Cohen's August 12, 2022 tweet dooms Cohen's attempt to avoid facing a certified Class of investors he defrauded.  Reply at 17-18 (citing on point authorities). Cohen only now asks the Court to disregard Dr. Cain's event study because it turns all his arguments to dust.

For all of these reasons, there is no reason to disregard Dr. Cain's response to Prof. Fischel's biased and unreliable event study.

## III.    Cohen Rehashes Arguments to Now Distance Himself from His Followers

Cohen uses additional space in his proposed Sur-Reply to reiterate the same false arguments he made extensively in his opposition concerning his August 5, 2022 tweet.  Bratya did not disavow Complaint allegations or "debut" any new claims.  Cohen's Mot. at 1.[4]  Bratya criticized Prof. Fischel for relying on what he described as "rumors," gossip, and speculation instead of providing scientific evidence demonstrating inefficiency or absence of price impact. Reply at 3.  Cohen mischaracterizes Bratya's point because he cannot accept that the law required him, not Bratya, to show an absence of price impact for each alleged misrepresentation and each

---

[4] Cohen is particularly obsessed with ¶24 of the Complaint, but he omits the most significant allegation made there.  In ¶24, Bratya discussed a brewing short squeeze reported in an article published in *Seeking Alpha*—the same article Prof. Fichel relies heavily on to opine on "rumors"— to make the key allegation that Cohen took advantage of this information because he had experience and previously benefited enormously from a short squeeze of GameStop stock.

alleged corrective disclosure.  *See Rumsfeld*, 154 F. Supp. 2d at 61 (mischaracterization of a previously-argued point is not properly considered "a new matter").  There is also nothing new about the fact that Cohen's August 5, 2022 tweet caused BBBY's stock price to skyrocket by 40%. The Complaint alleged that fact.  ¶143; *see, e.g.*, *Karinski v. Stamps.com, Inc.*, No. CV 19-1828-MWF (SKx), 2020 U.S. Dist. LEXIS 209256, at *17-18 (C.D. Cal. Nov. 9, 2020) (rejecting claim that plaintiff's theory was first raised in a reply brief because it was pled in the complaint). Moreover, Plaintiff's observation that Prof. Fischel acknowledged the massive increase in BBBY's stock price on August 8, 2022, but failed to address all but one of Cohen's tweets does not allow Cohen to rehash arguments on this subject.  Reply at 14.

Cohen's opposition to what is a routine motion almost always granted in securities fraud litigation is the "master class in deflection."  Cohen's Sur-Reply at 9.  Bratya does not have any burden to prove or disprove anything about a short squeeze to have the Class certified.  *Id.* at 4 n.1. Bratya only had a burden to raise a rebuttable presumption of reliance.  *See Goldman Sachs Grp., Inc.*, 594 U.S. at 119.  Bratya met that burden by showing that all the *Cammer* and *Krogman* factors are met.  It is now Cohen's burden to show that his false statements and the alleged corrective disclosures had no price impact because of a short squeeze that was completely unrelated to him. Cohen has utterly failed to meet that burden.

Still, Cohen's repetitive arguments on this subject remain meritless.  Cohen claims that the 40% increase in price of BBBY common stock right after he tweeted on August 5, 2022 "is so unserious as to nearly disprove itself."  Cohen's Sur-Reply at 8.  But this is merely empty rhetoric grounded on an absurd assumption.  The quintessential definition of price impact is either an increase in price following a defendant's statement or a decrease in price following a revelation of the fraud.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 718 F.3d 423, 434 (5th Cir. 2013),

*vacated and remanded on other grounds by Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014); *see also Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 623 F. Supp. 3d 470, 508 (E.D. Pa. 2022) (noting that existence of price movement combined with market reaction is evidence of price impact).

Cohen insists that his August 5, 2022 tweet had nothing to do with BBBY, but he does not, and cannot, contest that Cohen's followers in the retail investor community understood the tweet as a reference to BBBY, and understood his Class Period scheme as a "squeeze play," and that Cohen did nothing to disabuse them of both notions. *See* ¶¶140-145, 154; Cohen's Sur-Reply at 8. At any rate, Cohen's belief that the tweet was "unimportant" or did not alter the total mix of information available to investors is an attack on materiality explicitly foreclosed by Supreme Court precedent at this stage of the litigation. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 467 (2013) (holding that a plaintiff is not required to provide proof of materiality at the class certification stage). Cohen makes much of the fact that BBBY's stock price rose before the Class Period, but that is consistent with why Cohen would be particularly motivated to rally retail investors to effectuate his pump-and-dump scheme. Cohen's Sur-Reply at 7-9. Nevertheless, pointing to other potential causes for price movements is never enough to meet the burden to show a complete absence of price impact. *See, e.g.*, *Monroe Cnty. Employees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 396-97 (N.D. Ga. 2019) (collecting cases concluding that raising triable issues of fact concerning price movement does not rebut the presumption of reliance).

Cohen attempts to justify Prof. Fischel's decision to neglect the August 5, 2022 tweet as irrelevant to whether the market was efficient during the Class Period. Cohen's Sur-Reply at 9. But Cohen again walks into a contradiction where he wants to have his cake and eat it too. Cohen and his expert principally rely on stock price movements ***outside the Class Period*** to make their

claims about the impact of a pre-existing short squeeze on BBBY's securities. Cohen's Sur-Reply at 8 (fixating on the market price of BBBY's securities in late July and early August 2022 or outside the Class Period).[5] If price movements before the Class Period are relevant to class certification, then so are Cohen's tweets posted before the Class Period.

**CONCLUSION**

For the foregoing reasons, Cohen's motion for leave to file a sur-reply should be denied in all respects. If the Court exercises its discretion to hear Cohen's new arguments, Plaintiff respectfully requests that the Court consider Plaintiff's responses herein.

Dated: June 17, 2024                   Respectfully submitted,

                                       /s/ *Omar Jafri*
                                       Omar Jafri

                                       **POMERANTZ LLP**
                                       Joshua B. Silverman (admitted *pro hac vice*)
                                       Omar Jafri (admitted *pro hac vice*)
                                       Christopher P.T. Tourek (admitted *pro hac vice*)
                                       Genc Arifi (admitted *pro hac vice*)
                                       10 S. LaSalle Street, Suite 3505
                                       Chicago, IL 60603
                                       Tel: (312) 377-1181
                                       Fax: (312) 377-1184
                                       Email: jbsilverman@pomlaw.com
                                               ojafri@pomlaw.com
                                               ctourek@pomlaw.com
                                               garifi@pomlaw.com

                                           *-and-*

                                       Jeremy A. Lieberman (admitted *pro hac vice*)
                                       600 Third Avenue, 20th Floor

---

[5] Cohen's motion seems fascinated with certain tweets outside the Class Period that Cohen characterizes as "pop psychology," all in an attempt to minimize the importance and impact of his social media communications. Cohen's Sur-Reply at 8. But, as Cohen's counsel learned from one of Plaintiff's expert reports last week, Cohen is a social media influencer with a large following, and he needs to post information like this to sound authentic and less self-serving. He would lose authenticity and credibility if all he did was talk about himself and his investments.

14

New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com

*Counsel for Lead Plaintiff Bratya SPRL and Co-
Lead Counsel for the proposed Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Peretz Bronstein (admitted *pro hac vice*)
Yitzchak E. Soloveichik (admitted *pro hac vice*)
Eitan Kimelman (admitted *pro hac vice*)
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
Email: peretz@bgandg.com
        soloveichik@bgandg.com
        eitank@bgandg.com

*Counsel for Lead Plaintiff Bratya SPRL and Co-
Lead Counsel for the proposed Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (D.C. Bar No. 225623)
Daniel S. Sommers (D.C. Bar No. 416549)
Jan E. Messerschmidt (D.C. Bar No. 1031488)
1100 New York Avenue, N.W., Fifth Floor
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
Email: stoll@cohenmilstein.com
        dsommers@cohenmilstein.com
        jmesserschmidt@cohenmilstein.com

*Liaison Counsel for Lead Plaintiff Bratya SPRL
and for the proposed Class*

15