# UNITED STATES DISTRICT COURT

# DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE BED BATH & BEYOND CORPORATION SECURITIES LITIGATION | Case No. 1:22-cv-02541-TNM<br><br>Hon. Trevor N. McFadden<br><br>CLASS ACTION |

**LEAD PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DENYING CLASS CERTIFICATION**

# TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

LEGAL STANDARD......................................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    Denial of Class Certification on the Section 20A Claim is an Error of Law ....................2

    II.    Proof of Price Impact and *Cammer* V Is Uncontested........................................................3

    III.    The Order's Ruling on Loss Causation is Both Procedurally Improper and Incorrect on the Merits ................................................................................................................5

    IV.    The Order's Analysis of Short-Selling Constraints is Factually Erroneous ......................8

CONCLUSION................................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bos. Ret. Sys. v. Alexion Pharm., Inc.*,
No. 3:16-cv-2127 (AWT), 2023 U.S. Dist. LEXIS 64812 (D. Conn. Apr. 13, 2023).....................3

*Crews v. Rivian Auto., Inc.*,
No. 2:22-cv-01524-JLS-E, 2024 U.S. Dist. LEXIS 126278 (C.D. Cal. July 17, 2024) ..................4

*Davis v. Joseph J. Magnolia, Inc.*,
893 F. Supp. 2d 165 (D.D.C. 2012)................................................................................................2

*Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"),
563 U.S. 804 (2011).....................................................................................................................4, 5

*Ferris v. Wynn Resorts Ltd.*,
No. 2:18-cv-00479-APG-DJA, 2023 U.S. Dist. LEXIS 35374 (D. Nev. Mar. 1, 2023) .................6

*Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"),
573 U.S. 258 (2014)........................................................................................................................4

*Homyk v. ChemoCentryx, Inc.*,
No. 4:21-cv-03343-JST, 2024 U.S. Dist. LEXIS 44782 (N.D. Cal. Mar. 6, 2024).........................5

*In re Advance Auto Parts, Inc., Sec. Litig.*,
No. 18-212-RGA, 2020 U.S. Dist. LEXIS 208085 (D. Del. Nov. 6, 2020) ....................................4

*In re Allstate Corp. Sec. Litig.*,
966 F.3d 595 (7th Cir. 2020) ..........................................................................................................6

*In re Bed Bath & Beyond Corp. Sec. Litig.*,
687 F. Supp. 3d 1 (D.D.C. 2023)....................................................................................................7

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ......................................................................................................7, 8

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
17 Civ. 01580 (LGS), 2019 U.S. Dist. LEXIS 180895 (S.D.N.Y. Oct. 16, 2019) .........................6

*In re Genius Brands Int'l, Inc.*,
97 F.4th 1171 (9th Cir. 2024) ................................................................................................5, 7, 8

*In re Groupon, Inc. Sec. Litig.*,
No. 12 C 2450, 2015 U.S. Dist. LEXIS 27334 (N.D. Ill. Mar. 5, 2015) .......................................10

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
791 F.3d 90 (2015) ...................................................................................................................6, 8

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ...................................................................................................10

*In re Petrobras Sec. Litig.*,
862 F.3d 250 (2d Cir. 2017) ..........................................................................................................4

*In re Xcelera.com Sec. Litig.*,
No. 00-11649-RWZ, 2004 U.S. Dist. LEXIS 29064 (D. Mass. Sep. 30, 2004) ..........................10

*\*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*,
32 F.3d 697 (2d Cir. 1994) ............................................................................................................2

*Luczak v. Nat'l Bev. Corp.*,
812 F. App'x 915 (11th Cir. 2020) ................................................................................................7

*\*Ludlow v. BP, P.L.C.*,
800 F.3d 674 (5th Cir. 2015) .........................................................................................................6

*\*Monroe County Employees' Ret. Sys. v. S. Co.*,
332 F.R.D. 370 (N.D. Ga. 2019) ...................................................................................................3

*\*Plymouth Cty. Ret. Sys. v. Patterson Cos.*,
No. 18-871 (MJD/HB), 2020 U.S. Dist. LEXIS 177505 (D. Minn. Sep. 28, 2020) ......................3

*\*Pub. Emples. Ret. Sys. of Miss. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) .....................................................................................................6, 7

*Said v. Nat'l R.R. Passenger Corp.*,
390 F. Supp. 3d 46 (D.D.C. 2019) ................................................................................................2

*\*SEB Inv. Mgmt. AB v. Symantec Corp.*,
335 F.R.D. 276 (N.D. Cal. 2020) ..................................................................................................3

*\*St. Clair Cty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*,
No. 3:18-cv-00988, 2022 U.S. Dist. LEXIS 178750 (M.D. Tenn. Sep. 30, 2022) ....................3, 6

*Turocy v. El Pollo Loco Holdings, Inc.*,
No. SA CV 15-1343-DOC (KESx), 2018 U.S. Dist. LEXIS 111442 (C.D. Cal. July 3, 2018) ......3

*Tyson Foods, Inc. v. Buaphekeo*,
577 U.S. 442 (2016)..................................................................................................................5

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)....................................................................................................4, 8

iv

**PRELIMINARY STATEMENT**

Lead Plaintiff Bratya SPRL ("Bratya"), through its undersigned counsel, hereby respectfully moves the Court to reconsider its September 27, 2024 Order (the "Order") denying Class Certification to address three discrete errors:

*First*, the Order neglected to assess predominance for claims raised under Section 20A of the Securities Exchange Act of 1934 ("Exchange Act"). Reliance is not necessary for this claim. Cohen did not challenge the Section 20A claims in his opposition, and Professor ("Prof.") Fischel did not contest Dr. Matthew Cain's ("Cain") opinions on damages for this claim.

*Second*, both experts agreed that Bed Bath & Beyond Inc. ("BBBY") securities had a statistically significant decline in stock price after news of Cohen's exit was revealed on August 18, 2022. The law does not require Bratya to show any front-end price impact. A statistically significant back-end decline is sufficient to show both market efficiency under the fifth *Cammer* factor ("*Cammer* V"), as well as price impact under Supreme Court precedent.

*Third*, the Order's finding that the decline was "[m]ore likely" "***caused***" by Cohen's act of liquidation rather than the market learning concealed information, Order at 42 (emphasis added), is both legally premature and factually unsupportable. Supreme Court precedent holds that loss causation is a merits issue common to the Class that cannot be decided now. Regardless, the end-of-Class Period disclosure directly corrected both Cohen's omission of his plan to sell ***and*** his false representation that any contemplated sales were merely potential, and the drop in question occurred the day ***after*** Cohen finished liquidating. The disclosure is also related and relevant to the August 12, 2022 Tweet, which communicated Cohen's positive view of BBBY, and that is all the law requires at this stage.

1

*Fourth*, the Order's finding on short-selling constraints contradicts the evidentiary record. For all of these reasons, Bratya respectfully requests that the Court grant its Motion for Reconsideration.

## LEGAL STANDARD

In this District, justice is considered in addressing reconsideration. *See Said v. Nat'l R.R. Passenger Corp.*, 390 F. Supp. 3d 46, 50 (D.D.C. 2019). Orders are reconsidered when they contain errors of law or fact that need correction. *See Davis v. Joseph J. Magnolia, Inc.*, 893 F. Supp. 2d 165, 168 (D.D.C. 2012). Orders are also reconsidered when the court: (a) patently misunderstands the parties, (b) decides issues beyond the adversarial issues presented, or (c) fails to consider controlling authority. *See Said*, 390 F. Supp. 3d at 50.

## ARGUMENT

**I.     Denial of Class Certification for the Section 20A Claim is an Error of Law**

Section 20A of the Exchange Act imposes liability on Ryan Cohen ("Cohen") for contemporaneously trading with members of the Class while in possession of material, nonpublic information. ¶¶264-71.[1] Reliance or the *Basic* presumption is not necessary for this claim. *See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir. 1994). Instead, it renders one who violates ***any*** Exchange Act provision or SEC regulation by trading on inside information liable, up to the amount of gains achieved or losses avoided, to contemporaneous traders in the same security. 15 U.S.C. §78t-1. Cohen violated Exchange Act Sections 13(d) and 16(a), and SEC Rules 144 and 13dt-1 (requiring the reporting person to disclose any plans to dispose of securities on Schedule 13D), as well as Sections 9 and 10(b). ¶¶34-40, ¶¶239-45. Proof

---

[1] ¶__ and ¶¶__ citations are to the operative Second Amended Complaint filed at ECF No. 66. Internal quotation marks and citations are omitted unless otherwise stated.

2

that Cohen traded on inside information will be provided by common evidence, ECF No. 119 at 6-8 (discussing common evidence of insider trading), and contemporaneity is mechanically determined by temporal proximity to Cohen's trades. *See Turocy v. El Pollo Loco Holdings, Inc.*, No. SA CV 15-1343-DOC (KESx), 2018 U.S. Dist. LEXIS 111442, *52-54 (C.D. Cal. July 3, 2018). That is all the law requires to certify the Class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 286 (N.D. Cal. 2020).

**II.     Proof of Price Impact and *Cammer* V Is Uncontested**

Showing an absence of price impact is a "daunting task" for a defendant. *See, e.g.*, *Bos. Ret. Sys. v. Alexion Pharm., Inc.*, No. 3:16-cv-2127 (AWT), 2023 U.S. Dist. LEXIS 64812, at *39-40 (D. Conn. Apr. 13, 2023). Instead of meeting Cohen's burden, Prof. Fischel agreed with Dr. Cain that the corrective disclosure in this case is statistically significant. Order at 41-42. While statistical significance is not even required, courts routinely certify classes when a defendant concedes the statistical significance of corrective disclosures.[2] *See, e.g.*, *Bos. Ret. Sys.*, 2023 U.S. Dist. LEXIS 64812, at *41-42; *SEB Inv. Mgmt. AB*, 335 F.R.D. at 287 (finding that defendant's own expert showed price impact because the statistical significance of the corrective disclosures was uncontested); *St. Clair Cty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, No. 3:18-cv-00988, 2022 U.S. Dist. LEXIS 178750, *14-15 (M.D. Tenn. Sep. 30, 2022) (similar); *Plymouth Cty. Ret. Sys. v. Patterson Cos.*, No. 18-871 (MJD/HB), 2020 U.S. Dist. LEXIS 177505, at *35 (D. Minn. Sep. 28, 2020) (similar); *Monroe Cty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019) (similar).

---

[2] Prof. Fischel also agreed with Dr. Cain that the impact date of at least one Class Period event was statistically significant at the 90% confidence level, which courts have found sufficient to show a cause-and-effect relationship between class period events and stock price movements. *See* Bratya's Post Hr'g Br. at 9-10.

3

Disagreement on whether the front-end misrepresentations resulted in a statistically significant increase does not matter. *See, e.g.*, *Crews v. Rivian Auto., Inc.*, No. 2:22-cv-01524-JLS-E, 2024 U.S. Dist. LEXIS 126278, at *33 (C.D. Cal. July 17, 2024); *In re Advance Auto Parts, Inc., Sec. Litig.*, No. 18-212-RGA, 2020 U.S. Dist. LEXIS 208085, at *9 (D. Del. Nov. 6, 2020) (collecting cases). This is because even "***the lack of price movement on the dates of the alleged misrepresentations does not rebut the Basic presumption***." *Waggoner v. Barclays PLC*, 875 F.3d 79, 104 (2d Cir. 2017) (emphasis added).

Undisputed evidence of price impact here is sufficient to establish fraud-on-the-market. As the Supreme Court instructs, market efficiency is merely "an indirect way of showing price impact." *Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"), 573 U.S. 258, 281 (2014). Price impact "is *Basic*'s fundamental premise." *Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"), 563 U.S. 804, 813 (2011). "It thus has everything to do with the issue of predominance at the class certification stage." *Haliburton II*, 573 U.S. at 283. Proof of price impact is sufficient to demonstrate that questions of fact and law common to the Class predominate. *Haliburton II*, 573 U.S. at 283. Both experts provided that proof. Debates about the indirect proxies of market efficiency, *see* Order at 24-33, are thus beside the point. The Class should be certified for this reason alone.

Still, a statistically significant reaction to company-specific news under *Cammer* V is direct evidence of **both** market efficiency and price impact. *See, e.g.*, *In re Petrobras Sec. Litig.*, 862 F.3d 250, 276 (2d Cir. 2017) ("direct evidence" of market efficiency includes "immediate response in the stock price" to events); *Waggoner*, 875 F.3d at 97 (explaining that evidence of price impact satisfies *Cammer* V). Instead of meeting Cohen's burden, Cohen's expert agreed with Dr. Cain

4

that the pivotal corrective disclosure is statistically significant. That is sufficient to satisfy *Cammer* V and provides proof of market efficiency. *See supra* at 3-4.[3]

### III. The Order's Determination of Loss Causation is Both Procedurally Improper and Incorrect on the Merits

The Order excused Cohen's failure to show an absence of price impact because "[t]he value of the corrective disclosure here is less clear." Order at 42. It acknowledged that Cohen's exit from BBBY might reveal he was pessimistic about the Company when he sent a misleading tweet on August 12, 2022. *Id.* Nevertheless, the Order opined that liquidation of Cohen's stake in and of itself "[m]ore likely" "caused" the price to plunge. *Id.* This is a ruling on loss causation on the merits. Loss causation is proven by identifying "corrective disclosures." *In re Genius Brands Int'l, Inc.*, 97 F.4th 1171, 1184 (9th Cir. 2024). It is a question of fact and law common to the Class that predominates because failure of proof ends the litigation for all Class Members. *See Homyk v. ChemoCentryx, Inc.*, No. 4:21-cv-03343-JST, 2024 U.S. Dist. LEXIS 44782, at *13-14 (N.D. Cal. Mar. 6, 2024); *see also Tyson Foods, Inc. v. Buaphekeo*, 577 U.S. 442, 457 (2016) (argument that all class members will be unable to prove "an element of the plaintiffs' cause of action" is "a matter of summary judgment, not class certification.").

In *Halliburton I*, the Supreme Court reversed the Fifth Circuit's decision to require proof of loss causation at the class certification stage. 563 U.S. at 809. It also observed that "***we have never mentioned loss causation as a precondition for invoking Basic's rebuttable presumption of reliance***," and explained that "***[l]oss causation addresses a matter different from whether an***

---

[3] Prof. Fischel also admitted that there was "nothing wrong" with Dr. Cain's first study, and "it met basically high levels of academic standards." Tr. at 113:16-18. Yet, both Prof. Fischel and the Order disregard that the analysis period of the first Cain study overlapped with persistent rumors of a short squeeze before the Class Period, contradicting Cohen's assumptions about market efficiency drawn from that phenomenon. Tr. at 30:13-24, 131:3-17.

5

*investor relied on a misrepresentation.*" *Id.* at 812 (emphasis added); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 688-89 (5th Cir. 2015) (warning courts not to test the relationship between challenged statements and corrective disclosures at class certification because doing so would "vitiate" the Supreme Court's holding in *Halliburton I*); *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 608 (7th Cir. 2020) (instructing courts to "consciously avoid deciding materiality and loss causation."); *Ferris v. Wynn Resorts Ltd.*, No. 2:18-cv-00479-APG-DJA, 2023 U.S. Dist. LEXIS 35374, at *35 (D. Nev. Mar. 1, 2023) (rejecting claim that Supreme Court precedent allows loss causation to be considered at class certification); *Acadia Healthcare Co.*, 2022 U.S. Dist. LEXIS 178750, at *21-22 (same).[4]

Testing the relationship between a corrective disclosure and a misstatement is a "highly fact intensive inquiry" reserved for later stages of litigation. *See Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 325 (5th Cir. 2014). But even if the August 19, 2022 decline was only caused in part by the alleged misrepresentations and omissions, that would support loss causation at the merits stage. In *In re Harman Int'l Indus., Inc. Sec. Litig.*, the D.C. Circuit held that a corrective disclosure does not need to be the sole cause for the decline in price or amount to an admission that the statements were not true. 791 F.3d 90, 110 (D.C. Cir. 2015). The Circuit also clarified that the disclosure need not mirror the alleged misrepresentations and omissions. *Id.*

---

[4] A few courts have examined corrective disclosures at class certification under narrow circumstances absent here. *See, e.g.*, *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 17 Civ. 01580 (LGS), 2019 U.S. Dist. LEXIS 180895, *61-62 (S.D.N.Y. Oct. 16, 2019) (ruling that correctives can be examined when there is no increase in price after a representation is made only if: (1) the information is already disclosed, (2) irrelevant or unrelated to the subject matter, or (3) constitutes speculative or negative commentary). No credible basis exists to assert that the disclosure did not reveal new information or was speculative or negative commentary, and the Court already found that the tweet was related to the disclosures at the pleading stage.

at 110-11. It joined other circuits in holding that a corrective disclosure needs to only relate to the same subject matter as the misrepresentations. *Id.* (citing cases).

Importantly, a corrective disclosure can take any form and come from any source. *See Amedisys, Inc.*, 769 F.3d at 322; *Luczak v. Nat'l Bev. Corp.*, 812 F. App'x 915, 921 (11th Cir. 2020) (same). Loss causation is satisfied when the corrective disclosure reveals new facts that "render[] some aspect" of the defendant's statements untrue. *See In re Genius Brands Int'l, Inc.*, 97 F.4th at 1184. Moreover, a corrective disclosure does not need to reveal the fraud "in one fell swoop." *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020). Here, the drop was unquestionably related to two misrepresentations and omissions that were sustained at the pleading stage but overlooked in the Order. On August 16, 2022, Cohen filed a Schedule 13D that omitted his plan to sell BBBY securities. ¶¶160-61; *see also In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F. Supp. 3d 1, 17 (D.D.C. 2023). On August 17, 2022, Cohen's Form 144 was released, in which he misleadingly described his sales as "potential" when he had already sold, and affirmed that he did not trade on material, nonpublic information. ¶¶173-74. Disclosure of Cohen's massive sales necessarily relates back to these misrepresentations and omissions. The disclosure corrected Cohen's omission of a definitive plan to sell BBBY securities, and his misrepresentation that sales were merely potential. Definitive news of Cohen's dump, including huge sales of stock and options on August 16-17, 2022, was not released until after the market closed on August 18, 2022. ¶¶175-78.

As for the tweet, Cohen's exit revealed he was pessimistic about BBBY's prospects when he published a misleadingly positive "to the moon" Twitter post. Order at 42. That is sufficient to show that the corrective disclosure relates back to the misrepresentation. Nothing more is required at this stage. Loss causation does not require all aspects of the fraud to be revealed before

7

economic losses are sustained. *See In re Genius Brands Int'l, Inc.*, 97 F.4th at 1183. Fact and expert discovery are designed to address that issue. Liquidation of Cohen's shares caused the stock price to plunge because investors understood that he lost confidence in BBBY. Order at 42.[5]

To the extent that the Order assumes that the drop was "***more likely***" "***caused***" by Cohen's act of liquidation, Order at 42 (emphasis added), rather than information conveyed to the market about the liquidation, that assumption cannot be reconciled with the timeline of events. Cohen secretly completed his liquidation on August 16 and 17, 2022, before investors learned of any actual sales. The largest drop occurred on August 19, 2022, ***after Cohen had completed his liquidation***. There is no plausible basis to conclude that the act of liquidation, rather than the disclosure of the liquidation, caused that decline on August 19. No evidence was offered to support such an argument, and Cohen never made such an argument.

### IV. The Order's Analysis of Short-Selling Constraints is Factually Erroneous

The finding of inefficiency based on "at least some limitation on short sellers translating their pessimism into BBBY's price" is clearly erroneous. Order at 33. Undisputed record evidence showed that: (1) short sellers placed or maintained shorts of over 30 million shares every day,

---

[5] In *In re Harman Int'l Indus., Inc. Sec. Litig.*, defendants argued that an earnings miss could not be a corrective disclosure because it showed only poor financial performance. 791 F.3d 90 at 110-11. The D.C. Circuit reversed, holding that the missed financial projections showed the company was not flourishing despite defendants' representations to the contrary. *Id.* The same is true for Cohen's dump. His exit showed that: (a) he had a plan to sell his stake, (b) his sales were not potential but actual, and (c) he sold because he soured on his investment and lacked confidence in BBBY's future. Had the D.C. Circuit followed the Order's logic in *In re Harman Int'l Indus., Inc. Sec. Litig.*, the dismissal would have been affirmed because the stock price decline could be attributed solely to the poor financial results. 791 F.3d 90 at 110-11. In *Waggoner*, the Second Circuit would have held that the decline in price was attributable to news of an action brought by the Attorney General of New York, not defendants' representations. 875 F.3d at 88. And in *In re BofI Holding, Inc. Sec. Litig.*, the Ninth Circuit would have affirmed dismissal by attributing the loss to the emergence of a whistleblower lawsuit in and of itself. 977 F.3d at 788-90. The law, however, compelled the circuits to reach a result favorable to plaintiffs.

allowing their views to reach the market, ECF No. 120-1 at 12-13; (2) the supply of shares for shorting exceeded demand by hundreds of thousands of shares on every day of the Class Period, *id.*; (3) traders could also express negative views via options, *id.*; and (4) the pessimistic view of BBBY was well-known and disseminated (*see* Order at 3-4). And, Prof. Fischel admitted that his assumptions were just rank speculation about what an investor might do: "for some investors, it's just the cost of the short sell and the practicalities of figuring out where to get the shares from. You know, it just might not be something that convinces them to go short." Tr. at 103:8-12.

Despite overwhelming evidence that shorting was not only possible but rampant, the Order erroneously accepted Prof. Fischel's view that it could theoretically be constrained if short availability was "scaled to volume." Order at 32. He cited no authority for the unscientific manipulation he proposed, and for good reason: short availability as reported already reflects actual volume. It is simply the excess supply of shares available for shorting, net of demand from shares that have already been shorted on a given trading day at the then-present trading volume. For example, undisputed evidence shows that huge volume on August 16, 2022 did not deplete short availability; over 500,000 shares still remained available for shorting after all who placed shorts had borrowed and all who had covered shorts returned shares to the lender. ECF No. 120-1 at 12-13. Prof. Fischel's test of whether short sales operated as a "constraint on the explosion of volume," Order at 32, was equally specious. He cited no record evidence, econometric literature or caselaw showing that efficiency is impacted by that relationship, and it would be mathematically impossible to "constrain" volume by increasing short selling. Every short sale, by definition, is a market transaction that adds to and is reflected in reported volume.

The Order compounded its error by misinterpreting S3's "100/100 squeeze score." *Id.* No record evidence defined this to be a short constraint, and S3 itself does not so indicate. Instead,

9

S3 routinely ranks many stocks with a 100/100 score and emphasizes that "high Squeeze Scores do not guarantee a stock squeeze." *See* https://www.s3partners.com/articles/squeezable-us-shorts. The Order's assumption that a 50% annualized cost to borrow BBBY shares operated as a constraint, Order at 32, also constitutes a clear error. That only amounts to a daily cost of 0.137% (50/365), or 1.096% across the 8-day Class Period. Cohen provided no evidence that such costs constrained any trader, and undisputed evidence proving that traders held more than 30 million shares short despite those costs shows otherwise. So does the title of the article the Order cites: "Bed Bath & Beyond Stock Is Pricey to Borrow. Short Sellers Are Doing It Anyway." *Id.* Under similar circumstances, *In re Groupon Inc. Sec. Litig.*, determined that even a 100+% cost to borrow did not affect market efficiency, especially because "no actual traders were identified who were unable to short." No. 12 C 2450, 2015 U.S. Dist. LEXIS 27334, *28-30 (N.D. Ill. Mar. 5, 2015).

Finally, even if the market could be characterized as a "bubble" rather than a rational response of traders capitalizing on the belief that Cohen would rescue the Company, courts repeatedly find that such trading does not negate informational efficiency. *See, e.g.*, *In re Xcelera.com Sec. Litig.*, No. 00-11649-RWZ, 2004 U.S. Dist. LEXIS 29064, *7-8 (D. Mass. Sep. 30, 2004) (finding efficiency despite claim that stock was "trading in a bubble that rivaled the Dutch tulip mania of the 1630s"); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 105 (S.D.N.Y. 2009) (finding market was "efficient enough" despite evidence of internet trading bubble).

## CONCLUSION

For the foregoing reasons, Bratya respectfully requests the Court to reconsider the Order and certify the Class.

Dated: October 9, 2024               Respectfully submitted,

/s/ *Omar Jafri*
Omar Jafri

**POMERANTZ LLP**
Joshua B. Silverman (admitted *pro hac vice*)
Omar Jafri (admitted *pro hac vice*)
Christopher P.T. Tourek (admitted *pro hac vice*)
Genc Arifi (admitted *pro hac vice*)
10 S. LaSalle Street, Suite 3505
Chicago, IL 60603
Tel: (312) 377-1181
Fax: (312) 377-1184
Email: jbsilverman@pomlaw.com
　　　ojafri@pomlaw.com
　　　ctourek@pomlaw.com
　　　garifi@pomlaw.com

　-and-

Jeremy A. Lieberman (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com

*Counsel for Lead Plaintiff Bratya SPRL and Co-Lead Counsel for the proposed Class*


**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Peretz Bronstein (admitted *pro hac vice*)
Yitzchak E. Soloveichik (admitted *pro hac vice*)
Eitan Kimelman (admitted *pro hac vice*)
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
Email: peretz@bgandg.com
　　　soloveichik@bgandg.com
　　　eitank@bgandg.com

*Counsel for Lead Plaintiff Bratya SPRL and Co-Lead Counsel for the proposed Class*

11

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (D.C. Bar No. 225623)
Daniel S. Sommers (D.C. Bar No. 416549)
Jan E. Messerschmidt (D.C. Bar No. 1031488)
1100 New York Avenue, N.W., Fifth Floor
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
Email: stoll@cohenmilstein.com
        dsommers@cohenmilstein.com
        jmesserschmidt@cohenmilstein.com

*Liaison Counsel for Lead Plaintiff Bratya SPRL and for the proposed Class*