IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE BED BATH & BEYOND CORPORATION SECURITIES LITIGATION | Case No. 1:22-CV-02541 (TNM) |

**DEFENDANTS RC VENTURES LLC'S AND RYAN COHEN'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ..................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    Bratya's New Section 20A Argument is Both Forfeited and Wrong ............................................................................................................... 2

        A.    Bratya's New Section 20A Argument is Forfeited ............................. 2

        B.    Bratya's New Section 20A Argument is Wrong ................................. 3

    II.   Bratya's Reasserted Arguments Remain Meritless ......................................... 7

CONCLUSION ............................................................................................................................... 9

CERTIFICATE OF SERVICE ...................................................................................................... 10

## TABLE OF AUTHORITIES

### CASES

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 663 F. Supp. 3d 334 (S.D.N.Y. 2023) .................... 4

*Cruz v. Am. Airlines, Inc.*, 356 F.3d 320 (D.C. Cir. 2004) ................................................................ 2

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) .......................................................... 4

*Est. of Gaither ex rel. Gaither v. D.C.*, 771 F. Supp. 2d 5 (D.D.C. 2011) .................................. 1, 2

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113 (2021) ..................................... 7, 8

*I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, 280 F. Supp. 3d 524 (S.D.N.Y. 2017) ............. 4

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
  503 F. Supp. 2d 25 (D.D.C. 2007) ................................................................................................ 6

*In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) ........................................... 5, 6

*In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178 (9th Cir. 2024) .......................................... 6

*In re VeriFone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993) ................................................................... 4

*Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697 (2d Cir. 1994) ......................... 5, 6

*Johnson v. Aljian*, 490 F.3d 778 (9th Cir. 2007) ......................................................................... 3, 4

*Kittner v. Gates*, 783 F. Supp. 2d 170 (D.D.C. 2011) ................................................................. 1, 2

*Motient Corp. v. Dondero*, 529 F.3d 532 (5th Cir. 2008) ............................................................... 5

*Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95 (2d Cir. 2022) .......................................................... 4

*S.E.C. v. Bilzerian*, 729 F. Supp. 2d 9 (D.D.C. 2010) .................................................................... 2

*Said v. Nat'l R.R. Passenger Corp.*, 390 F. Supp. 3d 46 (D.D.C. 2019),
  aff'd, 815 Fed. Appx. 561 (D.C. Cir. 2020) .................................................................................. 1

*Salvani v. InvestorsHub.com, Inc.*, 628 Fed. Appx. 784 (2d Cir. 2015) .......................................... 4

*Shupe v. Rocket Companies, Inc.*, 2024 WL 4349172 (E.D. Mich. Sept. 30, 2024) ................... 3, 7

*U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*,
  893 F. Supp. 2d 258 (D.D.C. 2012) ...................................................................................... 1, 2, 7

**STATUTES AND RULES**

15 U.S.C. § 78t-1 ...........................................................................................................3, 5, 6

Fed. R. Civ. P. 23 .........................................................................................................................6

**OTHER AUTHORITIES**

Ihor Dusaniwsky, *Squeezable U.S. Shorts*, S3 Analytics (Apr. 12, 2023),
    https://www.s3partners.com/articles/squeezable-us-shorts .......................................................9

**INTRODUCTION**

Bratya's motion "either raises arguments that should have been, but were not, raised in [its] underlying Motion for [Class Certification], or merely recycles the same arguments already pressed and rejected." *Est. of Gaither ex rel. Gaither v. D.C.*, 771 F. Supp. 2d 5, 9 (D.D.C. 2011). "This approach is, frankly, a waste of the limited time and resources of the litigants and the judicial system." *Id.* at 10.

There is much that could be said in response to both Bratya's waived argument and its recycled arguments. But respecting this Court's time—and the thorough analysis contained in its order denying class certification—Defendants RC Ventures LLC and Ryan Cohen (collectively "Cohen") attempt to summarize their opposition succinctly. Reconsideration is unwarranted.

**LEGAL STANDARD**

"[M]otions for reconsideration are not vehicles for either reasserting arguments previously raised and rejected by the court or presenting arguments that should have been raised previously with the court." *Said v. Nat'l R.R. Passenger Corp.*, 390 F. Supp. 3d 46, 50–51 (D.D.C. 2019), *aff'd*, 815 Fed. App'x 561 (D.C. Cir. 2020). Instead, "reconsideration may be warranted where the court has patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or where a controlling or significant change in the law has occurred." *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (alterations and quotation marks omitted). Reconsideration is "an unusual measure, occurring in extraordinary circumstances." *Kittner v. Gates*, 783 F. Supp. 2d 170, 172 (D.D.C. 2011). The moving party bears the burden of showing reconsideration is warranted. *Id.* Bratya fails to do so.

1

## ARGUMENT

### I. Bratya's New Section 20A Argument is Both Forfeited and Wrong

#### A. Bratya's New Section 20A Argument is Forfeited

Insisting that reliance is not required, Bratya argues this Court should have separately assessed predominance for its claim under Section 20A of the Exchange Act. ECF No. 133 at 1.

A party may obtain reconsideration of an order that erroneously "reached an issue not presented by the parties." *Westrick*, 893 F. Supp. 2d at 269. A party may not, however, obtain reconsideration of an order that *did not resolve* an issue that the party *did not present*. *S.E.C. v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010) (a motion for reconsideration is "no[t] a vehicle for presenting theories or arguments that could have been advanced earlier"). Yet for its Section 20A claim, Bratya requests just that.

Bratya's Section 20A argument was not presented in its motion for class certification. Or in Bratya's reply in support of its motion for class certification. Or in Bratya's opposition to Cohen's motion for leave to file sur-reply. Or during this Court's hours-long evidentiary hearing and oral argument. Or in Bratya's supplemental post-hearing briefing. Throughout four briefs, 88 pages, and hours of in-person testimony and argument, Bratya never posited that "[r]eliance or the *Basic* presumption is not necessary for" its Section 20A claim. ECF No. 133 at 2. The term "Section 20A" appears in only one of Bratya's papers—its motion for class certification—and even there, Bratya cited the statute for an entirely unrelated proposition. ECF No. 109 at 4, 21–22.

Bratya did not even "hint" to—much less "present, argue, and support"—the theory it now advances for reconsideration. *Cruz v. Am. Airlines, Inc.*, 356 F.3d 320, 333 (D.C. Cir. 2004). Bratya cannot seek reconsideration of an argument it never made. *Gaither*, 771 F. Supp. 2d at 11; *Kittner*, 783 F. Supp. 2d at 173 ("[a] motion for reconsideration may not, however, be used to raise arguments or defenses that could have been advanced during the original proceeding.").

2

## B. Bratya's New Section 20A Argument is Wrong

### 1. Bratya's Section 20A claim is premised on claims requiring reliance

Were Bratya's Section 20A argument preserved, it would nonetheless lack merit. Section 20A authorizes a private right of action against "[a]ny person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information." 15 U.S.C. § 78t-1. "Claims under Section 20A are derivative and therefore require an independent violation of the Exchange Act." *Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007). To certify a class under Section 20A, Bratya must demonstrate that individual issues would not predominate the class's efforts to establish a predicate insider trading violation of the Exchange Act. *See, e.g.*, *Shupe v. Rocket Companies, Inc.*, 2024 WL 4349172, at *31–32 (E.D. Mich. Sept. 30, 2024) (denying certification of proposed class and 20A subclass). Bratya has not, and cannot, do so.

In *Johnson v. Aljian*, the Ninth Circuit clarified what is—and is not—required to establish an independent violation for purpose of Section 20A. 490 F.3d 778 (9th Cir. 2007). Beginning with what Section 20A *does not* demand: The court rejected the notion that Section 20A necessitated the underlying violation be "actionable"—clarifying that "[b]y 'actionable' we simply mean that the predicate violation must not be time-barred under its own period of limitations." *Id.* at 780 n.10; *see also id.* at 783 ("[W]e are persuaded that the plain meaning of the term 'violates' does not require that the predicate claim be filed within its own period of limitations").

As for what Section 20A *does* require, the Ninth Circuit counseled that Section 20A's plain text should govern. "[T]he term 'violates' ordinarily is understood to mean that a person has satisfied the *essential elements* of the proscribed act regardless of whether an action is commenced within the applicable statute of limitations . . . ". *Id.* at 782–83 (emphasis added). In a footnote

3

beside the term "essential elements," the court identified the elements of Section 10(b), upon which the plaintiff (like Bratya) had predicated its Section 20A claim:

> (1) a material misrepresentation (or omission), (2) scienter, i.e., a wrongful state of mind, (3) a connection with the purchase or sale of a security, (4) *reliance*, often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation," (5) economic loss, and (6) "loss causation," i.e., a causal connection between the material misrepresentation and the loss.

*Id.* at 781 n.13 (emphasis added) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005)).  To avoid any doubt, the court reiterated, "[t]o prove *violation* of either Section 10(b) or Rule 10b–5 . . . the plaintiff must prove five elements: 1. misrepresentation (or omission, where there exists some duty to disclose); 2. materiality; 3. scienter (intent to defraud or deceive); 4. *reliance*; and 5. causation." *Id.* at 782 (emphasis added).

In its complaint, Bratya brought a Section 20A claim based on alleged underlying violations of Sections 10(b), 9(a), and 9(f) of the Exchange Act.  ECF No. 66 ¶¶ 266–67.  Each of Bratya's alleged predicates requires reliance.  *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 106 (2d Cir. 2022) (§ 10(b)); *Salvani v. InvestorsHub.com, Inc.*, 628 Fed. Appx. 784, 786 (2d Cir. 2015) (§ 9(a)); *I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, 280 F. Supp. 3d 524, 540 (S.D.N.Y. 2017) (defining § 9(f) as a willful violation of § 9(a)).  In its order denying certification, this Court rightfully concluded that Bratya cannot prove reliance—an essential element of its predicate claims—on a class-wide basis.  It necessarily follows that Bratya cannot pursue class-wide resolution of a Section 20A claim, which depends upon claims that this Court determined were unfit for class certification.  *See In re VeriFone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993) ("[I]n light of our conclusion that no violation of the '34 Act has been stated, the § 20A claim was properly dismissed."); *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 663 F. Supp. 3d 334, 379 (S.D.N.Y. 2023) (dismissing Section 20A claim premised on implausible Section 10(b) claim, and

4

collecting cases in which Section 20A claims were dismissed for failure to allege elements of underlying violation).

Tellingly, Bratya now pivots. For the first time, Bratya asserts that its Section 20A claim is based on alleged violations of "Exchange Act Sections 13(d) and 16(a), and SEC Rules 144 and 13dt-1 (requiring the reporting person to disclose any plans to dispose of securities on Schedule 13D)." ECF No. 133 at 2. True, disclosure obligations like Section 13(d) do not expressly mention reliance—not least because Section 13(d) does not itself confer a private right of action. *Motient Corp. v. Dondero*, 529 F.3d 532, 536 (5th Cir. 2008) (noting that Section 18(a) "the sole basis for a private right of action for damages resulting from a violation of Section 13(d)" requires that an investor "actually relies on that information"). Even so, Bratya cites no authority—and Cohen has found none—suggesting a private right of action pursuant to Section 20A may rest on allegations that an issuer fell short of its various disclosure and reporting requirements.

Bratya's novel attempt to ground its Section 20A claim on disclosure requirements cannot be squared with the plain language of Section 20A. Section 20A did not create a comprehensive action for any plaintiff (or class of plaintiffs) alleging a person transgressed *any* provision of the Exchange Act or the SEC's myriad rules or regulations. Instead, Section 20A authorizes action under "any provision" of the Act, but only so long as that provision is violated "by purchasing or selling a security while in possession of material, nonpublic information." 15 U.S.C. § 78t-1. "The language of § 20A makes clear that . . . Congress sought to alter the remedies available in insider trading cases, and *only* in insider trading cases." *Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir. 1994); *see also In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 665 (S.D.N.Y. 2007) ("Section 20A creates a private right of action to enforce the existing prohibition on insider trading under § 10(b) caselaw") (quotation marks omitted).

5

The statute's purpose explains its narrow scope. "Congress added § 20A . . . to remedy the very specific problems inherent in prosecuting insider trading cases." *Jackson*, 32 F.3d at 703. Courts have thus rejected attempts to premise Section 20A liability on claims that do not require "pleading and proving scienter and the other elements of a Rule 10b–5 action." *Id.* at 704 (explaining that doing so "would skew the legislative balance of interests").

Bratya's Section 20A claim cannot rest on alleged departures from disclosure and reporting requirements. Instead, to establish liability under Section 20A, Bratya must prove an underlying insider trading violation of the Exchange Act. This Court already concluded that Bratya cannot do so on a class-wide basis, consistent with the requirements of Rule 23.

### 2. Bratya's Section 20A claim is not common to the proposed class

Were that not enough, Bratya's Section 20A argument flounders once more. Section 20A is limited to those who traded "contemporaneously with the purchase or sale of securities that is the subject of [the] violation." 15 U.S.C. § 78t-1. "[C]ourts have interpreted the 'contemporaneous trading' requirement quite strictly"—"plaintiffs' trades must not only take place *after* the insider trading transaction at issue . . . but also occur on the same day." *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 503 F. Supp. 2d 25, 46–47 (D.D.C. 2007) (internal citation omitted). At the very least, the contemporaneous trading rule "requires that the seller and buyer engaged in transactions close in time." *In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1190 (9th Cir. 2024) (finding contemporaneity where sales occurred on November 5 and purchases occurred on November 5–6).

Some of the proposed class, including those who purchased stock only between August 12–15, did not trade "contemporaneously" with Cohen. *See* ECF No. 91 at 4 (noting Cohen traded on August 16 and 17). Bratya did not propose a subclass composed solely of persons that traded contemporaneously with Cohen. Much less did Bratya attempt to "specifically defin[e] the

6

temporal proximity between a putative Subclass member's trade and Defendant [Cohen's] alleged insider trade" as at least one court has held is required. *Shupe*, 2024 WL 4349172, at *30. Bratya's broad brush, post-hoc attempt to construct a class of Section 20A plaintiffs is woefully insufficient. Particularly where, as here "[e]ven a one-day difference in the Subclass definition necessarily impacts the claims of a significant number of investors." *Id.*

## II. Bratya's Reasserted Arguments Remain Meritless

The remainder of Bratya's motion—regarding price impact, causation, and short-selling constraints—largely regurgitates its earlier arguments in support of class certification. Bratya identifies no "misunderstanding," pivotal fact, or "fundamental change in the law" justifying its reiteration of assertions that this Court already thoughtfully considered and rejected. *Westrick*, 893 F. Supp. 2d at 269. Cohen has much to say about its disagreements with Bratya on each of the issues that Bratya has repackaged and re-raised, but will not belabor points of which this Court is well aware.

*First*, notwithstanding Bratya's bare denial, proof of price impact and *Cammer* V was hotly contested. The Court analyzed no fewer than four event studies addressing the market's (lack of) reaction to new, value-relevant information during the proposed class period. Nor, as Bratya claims, did Professor Fischel "agree[] with Dr. Cain that the corrective disclosure in this case is statistically significant." ECF No. 133 at 3. Instead, per the Court's nuanced explanation, "Fischel did not show absence of price impact for Cohen's departure." ECF No. 131 at 42. But any reaction more likely reflected Cohen's "liquidation of his substantial stake in BBBY" than "the result of the 'truth' about Cohen's 'full cart' tweet finally surfacing." *Id.* Far from erroneous, the Court's conclusion on price impact represented a triumph of common sense. *See Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 122 (2021) ("In assessing price impact at class

certification, courts should be open to *all* probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense") (quotation marks omitted).

*Second*, the Court did not treat "loss causation as a precondition for invoking *Basic*" as Bratya now accuses. ECF No. 133 at 5. Instead—when assessing whether Cohen rebutted *Basic* by showing a lack of price impact—the Court expressed skepticism about the import of the alleged corrective disclosure. ECF No. 131 at 42. The Court's observation is in harmony with the Supreme Court's instruction to be wary of a "mismatch between the contents of the misrepresentation and the corrective disclosure." *Goldman Sachs Grp.*, 594 U.S. at 123. Such a mismatch "may occur when the earlier misrepresentation is generic" (*e.g.*, a customer's cart is full) "and the later corrective disclosure is specific" (*e.g.*, Cohen liquidated his entire holdings in BBBY). *Id.* The Supreme Court advised that under such circumstances "there is less reason to infer front-end price inflation—that is, price impact—from the back-end price drop." *Id.* This Court's consideration of whether "[t]he generic nature of a misrepresentation" may be "important evidence of a lack of price impact" is proper, not prohibited. *Id.* "That is so regardless [of] whether the evidence is also relevant to a merits question like materiality." *Id.* at 122.

*Third*, this Court's conclusion regarding short sale constraints was not factually erroneous: It reflects a careful and comprehensive evaluation of detailed record evidence. The Court dedicated three full pages to a thoughtful weighing of evidence indicating that short sale constraints plagued the market for BBBY securities during the proposed class period. Bratya identifies no material fact absent from the Court's discussion, nor any significant misunderstanding that plagued the Court's reasoning. Instead, Bratya fixates on myopic or manufactured disagreements with the Court. *See* ECF No. 133 at 10 (arguing a "100/100 squeeze score" "does

8

not guarantee a stock squeeze," although the Court never implied such a guarantee).[1] At bottom, Bratya disagrees with the Court's resolution of factual disputes. But that hardly justifies reconsideration.

## CONCLUSION

For the reasons set forth above, Bratya's motion should be denied.

Dated: October 17, 2024

Respectfully submitted,

/s/ Steven M. Farina
Dane H. Butswinkas (D.C. Bar # 425056)
Steven M. Farina (D.C. Bar # 437078)
Brian T. Gilmore (D.C. Bar # 1030601)
Madeline C. Prebil (D.C. Bar # 1778724)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
T: (202) 434-5000
F: (202) 434-5029
dbutswinkas@wc.com
sfarina@wc.com
bgilmore@wc.com
mprebil@wc.com

*Counsel for RC Ventures LLC and Ryan Cohen*

---

[1] Bratya's quoted source explains: "S3's Squeeze Score overlays the significant components for a squeeze, higher financing costs and unrealized losses, to our Crowded Score to identify shorted stocks with higher short-side volatility and identifies stocks that have the necessary conditions to be 'squeezed.'" Ihor Dusaniwsky, *Squeezable U.S. Shorts*, S3 Analytics (Apr. 12, 2023), https://www.s3partners.com/articles/squeezable-us-shorts; *see* ECF No, 133 at 10 (quoting Dusaniwsky). Cohen did not understand the Court to be confused on this point.

## CERTIFICATE OF SERVICE

    I hereby certify that on October 17, 2024, I caused to be electronically transmitted a copy of the foregoing Opposition to the Clerk's Office using the CM/ECF No. system, and service was effected electronically to all counsel of record.

/s/ *Steven M. Farina*
Steven M. Farina