UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE BED BATH & BEYOND CORPORATION SECURITIES LITIGATION | Case No. 1:22-cv-02541-TNM<br><br>Hon. Trevor N. McFadden<br><br>CLASS ACTION |

**LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ..................................................................................................................................2

      I.     Cohen Mischaracterizes His Abandonment as Bratya's "Waiver"................................2

      II.    Cohen Does Violence to Section 20A's Plain Language....................................................4

      III.   Cohen's New Arguments on Ascertainability Flout the Weight of Authority .................6

      IV.   Cohen's Other Arguments are Legally, Factually and Procedurally Unsupported ..........8

CONCLUSION ..............................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alphabet Sec. Litig., R.I. v. Alphabet, Inc.*,
1 F.4th 687 (9th Cir. 2021) ................................................................................................3

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ...........................................................................................................9

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ............................................................................................9, 10

*City of Birmingham Relief v. Acadia Pharms., Inc.*,
No. 3:21-cv-00762-WQH-MSB, 2024 U.S. Dist. LEXIS 45220 (S.D. Cal. Mar. 11, 2024) ........10

*Env't Comm. of the Fla. Elec. Power Coordinating Grp., Inc. v. EPA*,
94 F.4th 77 (D.C. Cir. 2024) ..............................................................................................4

*Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"),
563 U.S. 804 (2011) ...........................................................................................................8

*Felter v. Kempthorne*,
473 F.3d 1255 (D.C. Cir. 2007) .........................................................................................4

*Gruber v. Gilbertson*,
No. 16cv9727, 2019 U.S. Dist. LEXIS 159793 (S.D.N.Y. Sep. 17, 2019) ...................5, 6

*Gruber v. Gilbertson*,
No. 16cv9727, 2019 U.S. Dist. LEXIS 159767 (S.D.N.Y. Sep. 17, 2019) ......................7

*Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"),
573 U.S. 258 (2014) ...........................................................................................................8

*Homyk v. ChemoCentryx, Inc.*,
No. 4:21-cv-03343-JST, 2024 U.S. Dist. LEXIS 44782 (N.D. Cal. Mar. 6, 2024) ..........7

*Hodges v. Akeena Solar, Inc.*,
274 F.R.D. 259 (N.D. Cal. 2011) ......................................................................................7

*In re Bed Bath & Beyond Corp. Sec. Litig.*,
687 F. Supp. 3d 1 (D.D.C. 2023) ........................................................................3, 5, 9, 10

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
No. H-14-3428, 2017 U.S. Dist. LEXIS 91938 (S.D. Tex. June 15, 2017)......................7

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) ...............................................................................6

*In re Under Armour Sec. Litig.*,
631 F. Supp. 3d 285 (D. Md. 2022) ................................................................................7

Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,
32 F.3d 697 (2d Cir. 1994)..............................................................................................6

*Johnson v. Aljian*,
490 F.3d 778 (9th Cir. 2007) ..........................................................................................5

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
40 F. Supp. 3d 332 (S.D.N.Y. 2014)...............................................................................5

*Pardi v. Tricida, Inc.*,
No. 21-cv-00076-HSG, 2024 U.S. Dist. LEXIS 175947 (N.D. Cal. Sep. 27, 2024)......10

*Pub. Emples. Ret. Sys. of Miss. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) ..........................................................................................3

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
335 F.R.D. 276 (N.D. Cal. 2020)....................................................................................7

*SEC v. Morgan Keegan & Co.*,
678 F.3d 1233 (11th Cir. 2012) ......................................................................................6

Shupe v. Rocket Co. Inc.,
No. 1:21-cv-11528, 2024 U.S. Dist. LEXIS 178076 (E.D. Mich. Sep. 30, 2024).......7, 8

*St. Clair Cty. Emps'. Ret. Sys. v. Acadia Healthcare Co.*,
No. 3:18-cv-00988, 2022 U.S. Dist. LEXIS 178750 (M.D. Tenn. Sep. 30, 2022).......8, 9

United States v. Barnes,
295 F.3d 1354 (D.C. Cir. 2002)......................................................................................4

**Statutes**
*15 U.S.C.S. § 78t-1 .........................................................................................................5

**Rules**
Fed. R. Civ. Proc. 23...................................................................................................1, 8

Section 9(a) Securities Exchange Act of 1934 ................................................................2

Section 9(f) Securities Exchange Act of 1934 ...................................................................................2

Section 10(b) Securities Exchange Act of 1934 .................................................................1, 2, 3, 5, 6

Section 10(b)(5)(a) Securities Exchange Act of 1934 ......................................................................3

Section 10(b)(5)(b) Securities Exchange Act of 1934 ......................................................................3

Section 10(b)(5)(c) Securities Exchange Act of 1934 ......................................................................3

Section 13(d) Securities Exchange Act of 1934 ....................................................................2, 3, 4, 5

Section 16 Securities Exchange Act of 1934 ................................................................................4, 5

Section 16(a) Securities Exchange Act of 1934 ........................................................................2, 3, 4

Securities and Exchange Commission Rule 144 ......................................................2, 3, 4, 5, 8

**PRELIMINARY STATEMENT**

Ryan Cohen ("Cohen") does not have "much to say" about Bratya SPRL's ("Bratya") motion for reconsideration. Cohen's Opposition at 7 (hereafter the "Opp."). He cannot dispute that: (1) his own expert provided evidence corroborating Bratya's evidence of the fifth *Cammer* factor and/or price impact, (2) undisputed evidence of price impact is sufficient to show issues common to the Class predominate under Rule 23, (3) courts cannot make findings on likely causes for the decline in stock price (loss causation) at the class certification stage, and (4) the announcement of Cohen's decision to sell all his holdings in Bed Bath & Beyond, Inc. ("BBBY") is sufficiently corrective when the applicable law on loss causation is applied. Cohen's concessions are sufficient to reverse course and certify the Class as proposed.

Nor does Cohen dispute that the Order overlooked the Section 20A claim. Instead, Cohen veers off tangents to argue that Bratya's "new Section 20A argument is forfeited." Opp. at 2. The facts show the opposite. Bratya properly pled several predicate violations of the Securities Exchange Act of 1934 ("Exchange Act"), and Cohen repeatedly failed to challenge all predicates for Section 20A except Section 10(b) at both the pleading stage as well as the class certification stage. Cohen's new arguments concerning the construction of Section 20A of the Exchange Act are also incorrect. The plain language of the statute explicitly covers any ***violation*** of the Exchange Act or SEC Rules, so long as the defendant contemporaneously trades with the class members based on material, nonpublic information, and does not reference or require a private Section 10(b) "***claim***." In any event, insider trading violations pursuant to Section 10(b) that target Cohen's conduct do not require reliance on his misrepresentations. Cohen's new criticism of the Class definition also fails. Class Members with Section 20A damages can be easily ascertained based

on their trading records, which will show all information about trade dates needed to determine who traded "contemporaneously" with Cohen.

Cohen reimagines the Order's ruling on loss causation as a "mismatch" analysis, though that legal term was never used or raised before either by him or the Court. Even so, there can be no mismatch because the Court already found that Cohen's misrepresentations implied a misleadingly positive message directly contradicted by his decision to dump all his holdings days later. Strikingly, Cohen does not contest that the corrective disclosure even more precisely matches his false representations made in the Schedule 13D and Form 144 in violation of SEC rules. Finally, Cohen yet again fails to cite any actual record evidence of short-selling constraints.

## ARGUMENT

### I.  Cohen Mischaracterizes His Abandonment as Bratya's "Waiver"

In Count VII of the Second Amended Complaint ("SAC"), Bratya specifically alleged that Cohen and RC Ventures violated "Section 10(b), Section 9(a) and Section 9(f) of the Exchange Act for the reasons stated in Counts I through VI above. ***Additionally, Cohen and RC Ventures violated multiple provisions of the Exchange Act while in possession of material, non-public adverse information concerning Bed Bath***." ¶267.  Cohen moved to dismiss Count VII only on the ground that Bratya failed to plead a private cause of action under Section 10(b). ECF No. 70 at 40 (arguing with cross-references that Bratya's Section 20A claims should be dismissed for the same reasons the Section 10(b) claims should be dismissed). In his opening brief, Cohen did not state, much less develop an argument, that Bratya had failed to plead any other predicate for Section 20A. *Id.* But Cohen understood that the SAC pled violations of several other predicates. In his reply brief, Cohen claimed incorrectly that, with respect to Section 20A, he had explained in his motion "why alleged violations of Rule 10b-5, Section 13(d), Rule 144, Section 16(a), and

2

Section 9 all fail." ECF No. 87 at 23-24. Addressing the only argument that was properly raised, the Court denied dismissal of Bratya's Section 20A claims because the SAC sufficiently pled both predicate violations of the Exchange Act as well as that Cohen traded on material, nonpublic information when he sold BBBY securities. *See In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F. Supp. 3d 1, 19 (D.D.C. 2023). Cohen's new legal arguments concerning Section 20A cannot be considered now because he failed to raise and develop them at the pleading stage. *See, e.g.*, *Alphabet Sec. Litig., R.I. v. Alphabet, Inc.*, 1 F.4th 687, 709 (9th Cir. 2021) (reversing *sua sponte* dismissal of scheme liability claims brought under Rule 10(b)(5)(a) and (c) because the defendant "had not targeted those claims in its motion to dismiss."). Cohen also cannot claim waiver when he knew the SAC pled violations of Section 13(d), Section 16(a) and Rule 144. *Compare* ECF No. 87 at 23-24 *with Pub. Emples. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 323 (5th Cir. 2014) (rejecting claims of waiver when defendant had fair notice of the claims).

Cohen does not dispute that Bratya moved to certify a Class that also raised claims under Section 20A of the Exchange Act. Bratya's expert report analyzed Section 20A, and Cohen concedes that the claim was raised in Bratya's motion for class certification. Opp. at 2. Cohen did not say a word about Section 20A in his opposition to Bratya's motion for class certification or in any of his many, subsequent filings. As such, he waived arguments concerning the other predicates for Section 20A at class certification as well.

In its motion for class certification, Bratya explicitly invoked *Basic*'s presumption of reliance for claims brought under Sections 9 and 10(b) of the Exchange Act and SEC Rule 10b-5(a)-(c). ECF No. 109 at 12-13. Bratya did not invoke the *Basic* presumption for the Section 20A claims because the law did not require that it do so, and instead referenced common evidence of insider trading violations that would predominate, and its expert determined that Section 20A

3

damages were calculable classwide. *Id.* at 20-22.  Cohen now attempts to twist his own waivers as Bratya's because Bratya did not mention an obvious statement of law: that reliance is not necessary for claims raised under Section 20A.  Opp. at 2.  This is disingenuous.  Cohen knew that Bratya alleged violations of Section 13(d), Section 16(a) and Rule 144, but failed to move to dismiss those predicates for Bratya's Section 20A claim.  ECF No. 87 at 23-24.  He does not claim that any of these predicate violations of the Exchange Act and SEC Rules require reliance.  Nor could he.

Regardless, whether Section 20A requires reliance is an issue of law, and the Court has "independent power to identify and apply the proper construction of governing law." *United States v. Barnes*, 295 F.3d 1354, 1362 (D.C. Cir. 2002); *Felter v. Kempthorne*, 473 F.3d 1255, 1261 (D.C. Cir. 2007) (holding that courts have a duty to conduct an independent examination of statutes); *Env't Comm. of the Fla. Elec. Power Coordinating Grp., Inc. v. EPA*, 94 F.4th 77, 113-14 (D.C. Cir. 2024) (holding that courts can interpret the meaning of statutes even if the parties do not make the necessary or appropriate arguments).  Bratya could not have waived under these circumstances.

## II. Cohen Does Violence to Section 20A's Plain Language

Cohen claims that Bratya cannot rely on Section 13(d), Section 16 and Rule 144 as predicates even though the statute states:

> Any person who violates **any provision of [the Exchange Act] or the rules or regulations thereunder** by purchasing or selling a security while in possession of material, nonpublic information shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

15 U.S.C.S. § 78t-1.

The plain language of the statute must govern, which clearly embraces violations of Section 13(d), Section 16 and Rule 144.  Nor is there any basis to assert that such infractions cannot

4

constitute "underlying insider trading violation[s]." Opp. at 6. Those provisions directly regulate insider trading and disclosure thereof. And, on its face, Section 20A limits liability to those who trade on "material, nonpublic information," eliminating any hypothetical concern of overbreadth. 15 U.S.C.S. § 78t-1. Bratya alleges, and will prove with common evidence, that Cohen omitted a plan to sell his BBBY securities in the Schedule 13D in violation of Section 13(d), and misrepresented his sales plan as merely "potential" on Form 144 in violation of Section 16 and Rule 144. *See, e.g.*, ¶¶34-40 (explaining the elements of each of these predicates). Cohen claims that Section 13(d) does not confer a private right of action. Opp. at 5. "No matter. Even if that is right, it does not follow that [Section 20A] claims may not be based on misleading 13D filings. Those are two separate questions." *In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F. Supp. 3d at 13. The Court has also previously rejected Cohen's claim that Section 18 provides the exclusive remedy for Section 13(d) violations. *Id.* at 13.

Even as to Section 10(b) as a Section 20A predicate, Cohen's own authorities disprove his argument that reliance is required. In *Johnson v. Aljian*, the Ninth Circuit drew a distinction between "violations" and "claims," observing that:

> Webster's . . . defines the verb "violates" to mean breaking or disregarding the law. . . . When, for example, someone asks if a person "violated" the speeding law, she is ordinarily understood as inquiring whether that person disregarded the posted speed limit, not whether a timely action commenced or a successful prosecution resulted.

490 F.3d 778, 781 (9th Cir. 2007).

This is why courts have concluded that Section 20A "requires only an underlying violation of the Exchange Act—it does not require the underlying violation to be viable, actionable, or timely." *Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F. Supp. 3d 332, 343 (S.D.N.Y. 2014); *see also Gruber v. Gilbertson*, No. 16cv9727, 2019 U.S. Dist. LEXIS 159793, at *8-9 (S.D.N.Y. Sep.

5

17, 2019) (ruling that "a plaintiff may state a § 20A claim without pleading a § 10(b) ***claim***, so long as there are factual allegations supporting a reasonable inference of a § 10(b) ***violation***."). While maintaining a private right of action—*i.e.* a "claim"—for Section 10(b) requires reliance, a "violation" of Section 10(b) does not.[1]  For that reason, courts have made clear that "'reliance' does not bear on . . . whether the securities laws were violated," including violations of Section 10(b).  *See, e.g.*, *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012).  And the mere act of trading on material, nonpublic information is a "deceptive" device and a "manipulative" act under Section 10(b) of the Exchange Act.  *See, e.g.*, *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1203 (D. Or. 2015).  Indeed, Cohen conceded this principle of law in his motion to dismiss.  In that filing, Cohen admitted that "trading on the basis of material, nonpublic information can qualify as a 'deceptive device,' giving rise to Section 10(b) liability," and treated the insider trading claim as separate and distinct from the misrepresentations claim.  ECF No. 70 at 35.  That specific claim, which Cohen unsuccessfully moved to dismiss, is not based on material misrepresentations or omissions, obviating the need for any reliance requirement.   For all these reasons, Bratya does not need to maintain a private cause of action under Section 10(b) or show that investors relied on Cohen's misrepresentations for the Section 20A claims to be certified.

### III.     Cohen's New Arguments on Ascertainability Flout the Weight of Authority

In moving for class certification, Bratya explained why the Class was ascertainable.  ECF No. 109 at 10-11.  Cohen did not challenge ascertainability in his opposition.  For the first time,

---

[1] Cohen also misquotes the Second Circuit's holding in *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 704 (2d Cir. 1994).  Opp. at 6 (misquoting *Jackson*).  In *Jackson*, the Second Circuit held that the plain language of Section 20A applies only to predicate violations of the Exchange Act, not the Securities Act of 1933 ("Securities Act") that establishes strict liability for making false or misleading statements or omitting material information in a registration statement. Bratya does not rely on any predicate violation of the Securities Act.

6

he claims that Bratya did not define the temporal proximity between the Section 20A "sub-class" member's trades and Cohen's contemporaneous trades. Opp. at 6-7. "Courts generally have found it unnecessary to create a sub-class for Section 20A claims." *Homyk v. ChemoCentryx, Inc.*, No. 4:21-cv-03343-JST, 2024 U.S. Dist. LEXIS 44782, at *23-24 (N.D. Cal. Mar. 6, 2024) (citing cases); *see also* 3 Newberg on Class Actions § 7:30 (6th ed.)) (although "plaintiffs may subdivide the class . . . in their certification motion . . . they are not required to do so"). Courts also do not require a plaintiff to define "contemporaneous" or specify the temporal proximity between class members' trades and a defendant's trades. *See, e.g.*, *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 286 (N.D. Cal. 2020) (certifying class of those who purchased common stock contemporaneously with any sale of common stock by the defendant without specifying dates); *Gruber v. Gilbertson*, No. 16cv9727, 2019 U.S. Dist. LEXIS 159767, at *27-28 (S.D.N.Y. Sep. 17, 2019) (same). That is because the definition of contemporaneous is determined by the Court, reserved for later stages of the litigation, and cannot preclude certification. *See, e.g.*, *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 298 n.2, 299 (D. Md. 2022) (collecting cases). In any event, the overwhelmingly weight of authority holds that Class Members can readily and easily be ascertained through their trading records or BBBY's transfer records upon the resolution of this litigation. *Id.* at 299 (collecting cases).[2]

---

[2] Cohen's reliance on *Shupe v. Rocket Co. Inc.* is misplaced. No. 1:21-cv-11528, 2024 U.S. Dist. LEXIS 178076, at *88-89 (E.D. Mich. Sep. 30, 2024). Not only does *Shupe* stand alone in imposing an admittedly "trivial" requirement, *Shupe* also acknowledges that most courts have found that trading within several days of an insider's transactions satisfies contemporaneity. *Id.* at *88; *see also In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H-14-3428, 2017 U.S. Dist. LEXIS 91938, at *11-12 (S.D. Tex. June 15, 2017) (collecting cases and finding that "[a]n allegation of a six-day gap . . . does not render [plaintiff] an atypical class representative"); *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 272 (N.D. Cal. 2011) (rejecting arguments that Cohen makes here, and declining to narrow the class). Unlike the two-month class period alleged in *Shupe*, the Class Period here is barely a week long, and cannot present the problems Cohen conjures. Cohen also

**IV.    Cohen's Other Arguments are Legally, Factually and Procedurally Unsupported**

Cohen's insinuation that Prof. Daniel Fischel ("Fischel") did not concede the statistical significance of the corrective disclosure is false. Opp. at 7. Cohen cannot deny that Prof. Fischel buried the statistical significance of the corrective disclosure in his backup materials, and omits that Prof. Fischel admitted in his merits report that the "residual price decline" on August 19, 2022 is "statistically significant." *See* Ex. 1 at 12 n.50.[3] His appeal to "common sense" does not support determining loss causation at this stage—Supreme Court precedent prohibits courts from deciding that issue at class certification. Opp. at 7-8. Instead, a common-sense approach heavily favors class certification because nobody disputes that there is statistical proof of price impact upon the corrective event—"*Basic*'s fundamental premise," *see Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"), 563 U.S. 804, 813 (2011), and the existence of which is alone sufficient to demonstrate predominance under Rule 23, *see Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"), 573 U.S. 258, 283 (2014).

Cohen's post-hoc attempt to defend the erroneous ruling as a "mismatch" analysis is unfounded. Even now, Cohen does not argue that there is a "mismatch" between the corrective disclosure and the false representations he made on the Schedule 13D and the Form 144, and Cohen never argued and/or presented any expert testimony concerning a "mismatch" between his false Twitter post and the disclosure of his dump. *See, e.g.*, *St. Clair Cty. Emps'. Ret. Sys. v. Acadia Healthcare Co.*, No. 3:18-cv-00988, 2022 U.S. Dist. LEXIS 178750, at *17 (M.D. Tenn.

---

omits that, in *Shupe*, the district court rejected his arguments regarding meme stocks and short squeezes, ruling instead that Supreme Court precedent compelled a finding of market efficiency because meme stock traders are "value investors." *Shupe*, 2024 U.S. Dist. LEXIS 178076, at *63-65.

[3] Prof. Fischel's merits expert report is attached as Ex. 1. To provide full context, Plaintiff attaches Dr. Matthew Cain's merits opening and reply reports as Exs. 2 and 3.

8

Sep. 30, 2022) (refusing to conduct a "mismatch" analysis because it was not raised by defendants or defendants' expert at class certification). It is also clear from the Order that the Court weighed two plausible causes for the decline in stock price and assumed one more likely without the benefit of fact and expert discovery. That is not a mismatch analysis; it is determining loss causation. *See, e.g.*, *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 99 n.11 (2d Cir. 2023) (distinguishing between the two concepts).

In any event, the Order does not mention "mismatch" and found that "Cohen's exit from BBBY might reveal he was pessimistic about the company's prospects back when he tweeted about the 'full cart.'" Order at 42. That is an acknowledgment that the statement and the corrective disclosure are connected; not that the relationship between the tweet and the disclosure of Cohen's sales is broken. *See Goldman Sachs Grp., Inc.*, 77 F.4th at 81. While Cohen invites the Court to commit reversible error by ruling on materiality, the Supreme Court instructs that determination is off limits. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467-68 (2013). Materiality is a merits issue that will be proved with common evidence and will impact all Class Members identically; it has nothing to do with class certification. *Id.* To the extent that the Court can peak at the merits and consider materiality in determining for the first time whether the tweet was "generic," the Court already did that exercise at the pleading stage and ruled against Cohen. *See In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F. Supp. 3d at 12 (finding that Cohen's false Twitter post was material because investors interpreted it as a recommendation to "buy or hold" BBBY securities); *id.* (finding also that Cohen's Schedule 13D was material because investors reacted positively to it and drove up the price of BBBY securities).

Material misrepresentations cannot be deemed "generic" under the law. *See Goldman Sachs Grp., Inc.*, 77 F.4th at 102 (holding that courts can look to caselaw on materiality and puffery

9

only to examine whether a representation is so "generic" that an investor can be presumed not to have relied on it as a matter of law).

Courts have also declined to find a mismatch when the misrepresentation contradicts the disclosure, and the disclosure results in an immediate stock price decline.  *See, e.g.*, *City of Birmingham Relief v. Acadia Pharms., Inc.*, No. 3:21-cv-00762-WQH-MSB, 2024 U.S. Dist. LEXIS 45220, at *36-37 (S.D. Cal. Mar. 11, 2024); *Pardi v. Tricida, Inc.*, No. 21-cv-00076-HSG, 2024 U.S. Dist. LEXIS 175947, at *23 (N.D. Cal. Sep. 27, 2024).  The dissemination of a moon emoji to exhort investors to "buy or hold," *see In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F. Supp. 3d at 7, is anything but consistent with dumping every last one of your securities at the same time.  The corrective disclosure also resulted in a "value-relevant" decline in stock price of over 40%.  *Compare* ¶178 *with Tricida, Inc.*, 2024 U.S. Dist. LEXIS 175947, at *23.

As for short-selling constraints, Cohen fails to cite even a shred of record evidence supporting their existence.  He does not dispute that short sellers were able to place or maintain shorts of over 30 million shares every day under the actual volume conditions of the Class Period, that at all times, supply for potential shorts exceeded demand, or that the cost to borrow shares for the entire 8-day Class Period was only around 1%, hardly prohibitive.  Such conditions negate any inference that informational efficiency was impaired by short constraints.  Moreover, Cohen agrees that the "squeeze score" referenced in the Order referred to the conditions conducive to a squeeze, not the existence of a squeeze, which Prof. Fischel himself could only say was "rumored."  Opp. at 8.

## CONCLUSION

For the foregoing reasons and for the reasons explained in the opening brief, Bratya respectfully requests the Court to reconsider the Order and certify the Class.

Dated: October 24, 2024

Respectfully submitted,

/s/ *Omar Jafri*
Omar Jafri

**POMERANTZ LLP**
Joshua B. Silverman (admitted *pro hac vice*)
Omar Jafri (admitted *pro hac vice*)
Christopher P.T. Tourek (admitted *pro hac vice*)
Genc Arifi (admitted *pro hac vice*)
10 S. LaSalle Street, Suite 3505
Chicago, IL 60603
Tel: (312) 377-1181
Fax: (312) 377-1184
Email: jbsilverman@pomlaw.com
ojafri@pomlaw.com
ctourek@pomlaw.com
garifi@pomlaw.com

-and-

Jeremy A. Lieberman (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com

*Counsel for Lead Plaintiff Bratya SPRL and Co-Lead Counsel for the proposed Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Peretz Bronstein (admitted *pro hac vice*)
Yitzchak E. Soloveichik (admitted *pro hac vice*)
Eitan Kimelman (admitted *pro hac vice*)
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
Email: peretz@bgandg.com
soloveichik@bgandg.com
eitank@bgandg.com

*Counsel for Lead Plaintiff Bratya SPRL and Co-Lead Counsel for the proposed Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (D.C. Bar No. 225623)
Daniel S. Sommers (D.C. Bar No. 416549)
Jan E. Messerschmidt (D.C. Bar No. 1031488)
1100 New York Avenue, N.W., Fifth Floor
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
Email: stoll@cohenmilstein.com
          dsommers@cohenmilstein.com
          jmesserschmidt@cohenmilstein.com

*Liaison Counsel for Lead Plaintiff Bratya SPRL and for the proposed Class*