# Exhibit 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

IN RE BED BATH & BEYOND
CORPORATION SECURITIES
LITIGATION

Case No. 1:22-cv-02541-TNM

**EXPERT REPORT OF DANIEL R. FISCHEL**

**September 9, 2024**

## I.   INTRODUCTION, ASSIGNMENT AND SUMMARY OF CONCLUSIONS

### A.  Prior Reports and Hearing Testimony

1.       I filed an expert report on May 17, 2024 ("Fischel Report")[1] in which I evaluated Plaintiff's claims in light of the relevant economic evidence and responded to Dr. Cain's initial report filed on February 15, 2024 ("Cain Report").[2]  Among other things, I demonstrated that:

- BBBY's "price movements leading up to and during the five-day Class Period were distorted because of a rumored short squeeze"[3] as "the ability to short BBBY stock was constrained leading up to and during the Class Period, thus providing conditions under which a short squeeze could occur";[4]

- "There is no reliable basis to conclude that BBBY stock, and therefore options, traded in an efficient market during the Class Period";[5]

- "Dr. Cain's event study is highly likely to find false positives, i.e., determinations that residual returns are statistically significant when they are in fact not unusual in the context of an increase in stock price volatility";[6]

- "the [August 12, 2022] Tweet cannot be characterized as a 'pump' because of the absence of any scientific and reliable evidence of a price reaction";[7] and

- "Dr. Cain has not provided any methodology that allows the finder of fact to distinguish the price increases, if any, caused by the alleged affirmative misstatements or the price declines, if any, caused by the alleged corrective disclosure from those caused by the distortions in the price from the rumored short squeeze."[8]

2.       Dr. Cain subsequently responded to my report on June 21, 2024 ("Cain Reply Report").[9]  In that report, Dr. Cain opined that:

---

1.      Expert Report of Daniel R. Fischel dated May 17, 2024 ("Fischel Report").  The Fischel Report includes a description of my qualifications.  A copy of my updated CV is attached as **Appendix A**.  Capitalized terms in this report are defined in the Fischel Report unless otherwise noted.
2.      Expert Report of Matthew D. Cain, Ph.D. dated February 15, 2024.
3.      Fischel Report § IV.A., ¶¶ 23-28.
4.      Fischel Report ¶ 31.
5.      Fischel Report § IV, ¶¶ 20-35.
6.      Fischel Report ¶ 53.
7.      Fischel Report ¶ 36.
8.      Fischel Report ¶ 56.
9.      Expert Reply Report of Matthew D. Cain, Ph.D. dated June 21, 2024.

- An alternative data source showed that "hundreds of thousands of additional shares of BBBY were available for further shorting during the Class Period if investors had so desired,"[10] further noting that "commentators speculated about a potential short squeeze in the Common Stock for many months prior to the start of the Class Period";[11]

- "Prof. Fischel's estimation window is contaminated by the alleged misconduct, which allegedly *caused* the increase in BBBY's volatility during the Class Period";[12]

- His event study analysis demonstrates "statistically significant front-end price increases on the relevant market impact dates of the alleged misrepresentations on August 12, 2022, and August 16, 2022, as well as a statistically significant back-end price decrease on the market impact date of the alleged corrective disclosure, August 19, 2022";[13] and

- "To the extent that any confounding information unrelated to the alleged fraud contributed to BBBY's Common Stock price decline following the alleged corrective disclosure, it is my understanding that I am not required to conduct a loss causation analysis of artificial inflation versus confounding information at this stage."[14]

3.    At the hearing on August 2, 2024 (the "Hearing"), Dr. Cain repeated the opinions, and the bases for those opinions, that he presented in the Cain Report and Cain Reply Report.[15]

4.    In my testimony at the Hearing, I explained that:

- Dr. Cain's analyses and opinions suffered from a fatal flaw, namely that he ignored that BBBY stock was subject to a rumored short squeeze leading up to and during the Class Period;[16]

- Dr. Cain's own alternative data source in fact showed that there were short selling constraints during the Class Period;[17]

---

10.    Cain Reply Report ¶ 24.
11.    Cain Reply Report ¶ 25.
12.    Cain Reply Report ¶ 45.
13.    Cain Reply Report ¶ 44.
14.    Cain Reply Report ¶ 53.
15.    See Transcript of Evidentiary Hearing before the Honorable Trevor N. McFadden, United States District Judge, In Re: Bed Bath & Beyond Corporation Securities Litigation, August 2, 2024 ("Hearing Tr.").
16.    Hearing Tr. at 108:7-14.
17.    Hearing Tr. at 98:4-99:18.

- Dr. Cain ignores that I ran two event studies, one of which excluded the Class Period from my estimation window, meaning price movements from that period could not contaminate my event study results;[18] and

- A properly conducted event study that accounts for the heightened volatility in BBBY stock returns demonstrates not only that BBBY's residual return on August 12, 2022 is not statistically significant, but also that its residual returns on the other days during the Class Period are not statistically significant.[19] See **Table 1** *infra* ¶ 18.

Neither the Cain Reply Report nor Dr. Cain's testimony at the Hearing alter my conclusions.

### B. Dr. Cain's Damages Report

5.     Prior to the Hearing, Dr. Cain filed a report presenting his opinions on materiality, loss causation, and damages in this matter ("Cain Damages Report").[20]  His conclusions regarding these topics are primarily based on the same event study results he presented in the Cain Report, the Cain Reply Report, and in his testimony at the Hearing.[21]

6.     In the Cain Damages Report, Dr. Cain purports to identify two "Corrective Disclosure Events" that "revealed relevant information about Defendant Cohen's alleged intent to sell and end his role as an activist investor dedicated to turning around BBBY's business and operations" and caused its stock price to decline on two dates:  (i) August 18, 2022 because

---

18.     Hearing Tr. at 115:5-117:21.
19.     Hearing Tr. at 104:19-105:1, 116:8-14.
20.     Expert Report of Matthew D. Cain, PhD dated July 12, 2024 ("Cain Damages Report") ¶ 3.  Dr. Cain was asked to assess "(1) whether the misstatements and omissions alleged in the Complaint in this matter contained value-relevant information that investors would consider economically material; (2) whether investor losses were proximately caused by the misrepresentations and/or omissions made by Defendants as alleged by Plaintiffs in the operative Complaint and as may be proved at trial (*i.e.*, loss causation); (3) the methodology for quantifying investor losses resulting from Defendants' misrepresentations and the subsequent revelation of the allegedly misrepresented and/or omitted facts; (4) the quantification of any artificial inflation per share for BBBY Common Stock and BBBY Call Options for each day of the Class Period caused by the alleged misrepresentations and/or omissions; and (5) the appropriate methods to quantify Rule 10b-5, §20A, and §9 class-wide damages for BBBY Common Stock and Call Options in this matter." *Id.* ¶ 3.  He repeats his prior opinions that the market for BBBY's stock and options are efficient during the Class Period and that damages can be calculated based on a common methodology.  *Id.* ¶ 1.
21.     Cain Damages Report ¶¶ 14-20; Hearing Tr. at 45:13-25, 53:20-54:20, 55:9-21, 56:8-57:2.

"[a]fter market close the previous day, Cohen's SEC Form 144 was released, indicating the potential sale of his stake in BBBY;" and (ii) August 19, 2022 because "[a]fter market close the previous day, Cohen filed with the SEC an amended Schedule 13D which was released at 4:16 PM and an SEC Form 4 which was released at 4:42 PM, both disclosing that he had liquidated his entire stake in BBBY."[22]  Based on his event study, he concludes that the residual price declines on both dates are statistically significant.[23]  Dr. Cain further claims that his review of news articles and analyst reports found no confounding information (i.e., information unrelated to the alleged fraud) that can explain any portion of the price declines on these dates, and concludes that the entire residual price declines – $4.56 on August 18, 2022 and $7.26 on August 19, 2022 – dissipated alleged artificial inflation that purportedly had been caused by the alleged misrepresentations.[24]

7.      Dr. Cain also claims to identify two "Inflation Creating Events" that "clearly bolstered the market's confidence in Defendant Cohen's continued presence as an activist investor in BBBY committed to turning its business around" and caused BBBY's stock price to increase on two dates:  (i) August 12, 2022 starting at 10:42 AM when Mr. Cohen sent his Tweet; and (ii) August 16, 2022 after Mr. Cohen filed an SEC Form 3 stating that he owned more than 10 percent of BBBY's outstanding shares as well as an amended Schedule 13D, which allegedly omitted to inform the market of his intent to sell his stake in BBBY.[25]  Based on his event study, he concludes that the residual price increases on both dates are statistically significant.[26]  Dr.

---

22.     Cain Damages Report ¶ 15.  See also RC Ventures Form 144, August 16, 2022; RC Ventures Schedule 13D, Amendment No. 3, August 18, 2022; RC Ventures Form 4, August 18, 2022.
23.     Cain Damages Report ¶¶ 66, 78.
24.     Cain Damages Report ¶¶ 57, 62, n.79.
25.     Cain Damages Report ¶ 18.  Dr. Cain has acknowledged that there was misreporting that Mr. Cohen had purchased new options when in fact he did not.  Hearing Tr. at 75:21-76:2.
26.     Cain Damages Report ¶¶ 87, 91.

Cain again claims that, based on his review of news articles and analyst reports, there is no confounding information that can explain any portion of the price increases on these dates, and concludes that the entire residual price increases – $1.95 starting at 10:42 AM on August 12, 2022 and $3.72 on August 16, 2022 – introduced alleged artificial inflation caused by the purported misrepresentations on those dates.[27]

8.     Dr. Cain claims that he is being "conservative" by incorporating the "Inflation Creating Events" into his analysis because he "consider[s] the possibility that some of the artificial inflation dissipated on the Corrective Disclosure Events did not extend all the way back to the beginning of the Class Period," and "*reduce[s]* the artificial inflation prior to the Inflation Creating Events."[28]  Because the amount of alleged artificial inflation that Dr. Cain estimates was dissipated by the Corrective Disclosure Events ($11.82 = $4.56 + $7.26) is greater than the amount he estimates was introduced by the Inflation Creating Events ($5.67 = $1.95 + $3.72), he concludes that BBBY's stock price was purportedly inflated on August 12, 2022 before the Tweet by $6.15, the difference between $11.82 and $5.67.[29]

9.     Finally, Dr. Cain asserts that alleged artificial inflation between the events he identifies is a constant dollar amount, thus concluding that alleged artificial inflation in BBBY's stock price equals the sum of the price movements he attributes to each subsequent event:  (i) $6.15 prior to the Tweet on August 12, 2022; (ii) $8.10 from the Tweet at 10:42 am on August

---

27.   Cain Damages Report ¶¶ 19-20, 88 ("… I attribute $1.95 per share of the abnormal dollar increase to the fraud-related information disclosed at 10:42AM ET on August 12, 2022.  I thus estimate that $1.95 of artificial inflation per share was introduced into BBBY Common Stock at 10:42 AM on August 12, 2022.").
28.   Cain Damages Report ¶ 96.
29.   Cain Damages Report ¶¶ 19-20, 88.

12, 2022 through the close on August 15, 2022; (iii) $11.82 on August 16 & 17, 2022; and (iv) $7.26 on August 18, 2022.[30]

10.     Dr. Cain also estimates alleged artificial inflation for BBBY's call options by implementing the Black-Scholes option pricing formula using the "but-for stock price," which is the difference between the actual stock price and his concurrent estimate of alleged artificial inflation in BBBY's stock price.[31]  Based on the output of this formula, he first estimates alleged call option damages as the difference between his estimated artificial inflation in the call option price at time of purchase less estimated artificial inflation in the call option price at time of the sale.[32]  Dr. Cain then limits the resulting alleged damages, stating that "[t]o obtain recoverable damages, I also impose the loss causation restriction by limiting an investor's recovery to the market price changes (after controlling for market and industry forces and any confounding information) on the Corrective Disclosure Events and Inflation Creating Events."[33]  Specifically, he first estimates these "market price changes" as the change in price of each option on the date of each Corrective Disclosure Event and Inflation Creating Event multiplied by what he calls "factor $x$," or the ratio of the residual return in BBBY stock divided by the actual return in the stock on these event dates.[34]  Dr. Cain states that his "factor $x$" limitation is equal to "the sum of changes in inflation on the Corrective Disclosure Events *minus* the sum of changes in inflation

---

30.     Cain Damages Report ¶ 20.
31.     Cain Damages Report ¶¶ 108-111.  For each option series on each day, Dr. Cain estimates alleged artificial inflation in BBBY's options as the difference between the "observed" option price and the "but-for" option price, both which are estimated by the Black-Scholes formula; specifically, he estimates the "observed" option price by applying the formula using as inputs the strike price, time to expiration, risk-free rate, implied volatility, and the actual stock price, then estimates the "but-for" option price by using the "but-for stock price" in place of the actual stock price in the formula while keeping the other inputs the same.  *Id.*
32.     Cain Damages Report ¶ 114.
33.     Cain Damages Report ¶ 113.
34.     Cain Damages Report ¶¶ 104, 113.

on the Inflation Creating Events that occur after the purchase date and on or before the date of sale."[35]  He concludes that alleged damages for each call option transaction are equal to the minimum of (i) damages estimated from the Black-Scholes formula or (ii) damages estimated from his "factor $x$" model.[36]

### C.  Assignment and Summary of Conclusions

11.      I have been asked by counsel for Mr. Cohen and RC Ventures to review and respond to the Cain Damages Report.  Based on my review and analysis of the materials listed in **Appendix B**, I have concluded that Dr. Cain's analyses of materiality, loss causation, and alleged artificial inflation are fatally flawed and unreliable for the following primary reasons:

- Dr. Cain's entire analysis is based on an assumption of an efficient market which did not exist during the Class Period.

- Dr. Cain's analysis of price movements fails to take into account the effect of the rumored short squeeze.

- Dr. Cain's event study analysis is fundamentally flawed and produces nonsensical results.

- Dr. Cain's analyses of alleged artificial inflation in BBBY's call options are fundamentally flawed and nonsensical, and provide windfalls to Class members.

## II.   DR. CAIN'S ENTIRE ANALYSIS IS BASED ON AN ASSUMPTION OF AN EFFICIENT MARKET WHICH DID NOT EXIST DURING THE CLASS PERIOD

12.      As I explained at the Hearing, event study methodology – the results of which provide the foundation of virtually all of Dr. Cain's analyses and opinions in the Cain Damages

---

35.     Cain Damages Report ¶ 114.  *Id.* Appendix C reports the amount of alleged artificial inflation introduced or dissipated on each day for each option under the "factor $x$" method, while *id.* Appendix D reports the amount of alleged artificial inflation on each day for each option during the Class Period under the Black-Scholes method.

36.     Cain Damages Report ¶ 114.

Report – is premised on market efficiency.[37]  Without the assumption of market efficiency, one cannot draw valid inferences from an event study,[38] including about materiality, loss causation, and the amount of alleged artificial inflation associated with the alleged misstatements and omissions that are the core of Plaintiff's claims.

13.     As I testified at the Hearing, there was a temporary period of market inefficiency for BBBY stock and options caused by a rumored short squeeze during the Class Period.[39] Based on objective economic evidence, I demonstrated that BBBY stock was subject to a rumored short squeeze leading up to and during the Class Period that caused large but temporary price distortions in the absence of any value-relevant information.[40]  I showed that BBBY's stock price spiked prior to the Class Period far in excess of the market and BBBY's benchmark industry, that these price distortions were temporary, and that these price distortions were contemporaneous with corresponding spikes in trading volume and volatility.[41]  Importantly, I showed that these distortions in price and spikes in volume and volatility are not explained by new value-relevant information and were attributed to a rumored short squeeze by market participants.[42]  **Appendix C** is the text of the Fischel Report which explains in Section IV the bases for why an efficient market did not exist during the Class Period.

---

37.     See Hearing Tr. at 88:18-89:5.
38.     See, e.g., Dunbar, Frederick C., and Dana Heller, "Fraud on the Market Meets Behavioral Finance," *Delaware Journal of Corporate Law*, 31.2 (2006) at 509 ("When the market is not efficient, however, the normal conditions for interpreting the valuation component of an event study are not present.  If investors are not basing their price forecast on future cash flows alone, but instead they are, for example, herding after others or responding to momentum in the price, immaterial information about the issuer of the security may well have a significant effect on the price.").
39.     Hearing Tr. at 108:4-14.
40.     Fischel Report ¶ 23-24.  In particular, BBBY's stock price increased by 111.3% from July 29, 2022 to August 11, 2022 and increased by 117.1% from August 11, 2022 to August 17, 2022. Hearing Tr. at 103:24-104:11, 137:16-20; Demonstratives 13 and 14.
41.     Fischel Report ¶¶ 23-24.
42.     Fischel Report ¶¶ 25-27.

### III.   DR. CAIN'S ANALYSIS OF PRICE MOVEMENTS FAILS TO TAKE INTO ACCOUNT THE EFFECT OF THE RUMORED SHORT SQUEEZE

14.     Dr. Cain purports to account for the impact of information unrelated to the allegations but fails to disentangle the stock price movements allegedly caused by the purported "Inflation Creating Events" and "Corrective Disclosure Events" from those caused by the rumored short squeeze, which partially – if not fully – explain those movements.  By ignoring the effects of the rumored short squeeze, Dr. Cain makes the classic economic error of confusing correlation with causation and fails to establish that any, let alone all, of the stock price movements he measures were caused by the alleged inflationary and corrective statements he claims to have identified.

15.     The rumored short squeeze caused the volatility of BBBY's stock price to increase substantially leading up to and during the Class Period;[43] consequently, very large price movements occurred even on days when there was no new information.  For example, Dr. Cain's own event study shows that the largest positive residual return during the Class Period of 20.90% occurred on August 16, 2022, the date of an "Inflation Causing Event," but also shows that the second largest positive residual return is almost identical at 20.51% and occurred on August 15, 2022 when there was no new value-relevant information to explain it.[44]  Because he fails to establish that the ongoing rumored short squeeze does not similarly explain BBBY's stock price when the purported "Inflation Creating Events" and "Corrective Disclosure Events" occurred,

---

[43]     Fischel Report ¶ 24; Hearing Tr. at 104:12-105:1; Demonstrative 18.

[44]     See Dr. Cain's regression_results.xlsx backup file.  Dr. Cain defined August 15, 2022 to be a "no news" day.  Cain Reply Report Exhibit 3a.  We also reviewed financial news articles about BBBY available from Bloomberg, Factiva, and Seeking Alpha as well as analyst reports and found no new value-relevant information that can explain Dr. Cain's positive and statistically significant residual return on this day.

Dr. Cain fails to establish that the stock price movements he measures were caused entirely – if at all – by these events as he claims.

## IV.   DR. CAIN'S EVENT STUDY ANALYSIS IS FUNDAMENTALLY FLAWED AND PRODUCES NONSENSICAL RESULTS

### A.   Dr. Cain's Event Study Fails to Take into Account the Heightened Volatility Caused by the Rumored Short Squeeze

16.     The event study that Dr. Cain uses as the basis for his opinions in the Cain Damages Report, which is the same one that he presented in his prior reports, is fundamentally flawed because he once again failed to account for the heightened stock price volatility during the Class Period caused by the rumored short squeeze.  As I explained previously and document in **Figure 1** below, BBBY's stock price volatility increased dramatically leading up to the Class Period:[45]

**Figure 1**



**BBBY Stock Volatility**
**August 1, 2021 - September 30, 2022**

Notes & Source: The historical put implied volatility is calculated by Bloomberg as the at the money put implied volatility of the first listed expiry that is at least 20 business days out from the respective date, based on the Listed Implied Volatility Engine (LIVE) calculator. Shaded region indicates August 2022. Per Bloomberg L.P.

---

45.     Fischel Report ¶ 53; Hearing Tr. at 115:16-24.

17.     Dr. Cain's event study measures the volatility of BBBY's stock price over estimation periods that are 120 days prior to each event date he analyzes.[46]  Consequently, these estimation periods fail to account for the considerable increase in volatility that began shortly before the Class Period because the volatility of BBBY's stock price during the substantial majority of his estimation periods was much lower than it was in August 2022.  By using a period of lower volatility to test for statistical significance in a period of higher volatility, Dr. Cain's event study is highly likely to find false positives, i.e., determinations that residual returns are statistically significant when they are in fact not unusual in the context of heightened stock price volatility.[47]

18.     As I explained at the Hearing and document in **Table 1** below,[48] correcting Dr. Cain's event study by properly accounting for the heightened volatility in BBBY's stock returns (and otherwise using the same explanatory variables in the model) demonstrates that the residual returns during the Class Period are not statistically significant:[49]

---

46.     Cain Damages Report ¶ 56.  See also Cain Report n. 66 & Cain Reply Report ¶ 40.
47.     Fischel Report ¶ 53; Hearing Tr. at 115:16-116:4.
48.     Hearing Tr. at 116:8-22.
49.     Fischel Report ¶ 39; Hearing Tr. at 116:8-22.

**Table 1**
**Bed Bath & Beyond**
**Summary and Comparison of Event Study Results During Class Period**

| Date | Cain's Reply Report Description[2] | Cain Damages Report[1] | | | Fischel 1[3] | | Fischel 2[3] | |
|---|---|---|---|---|---|---|---|---|
| | | Actual Return | Abnormal Return | t-stat | Abnormal Return | t-stat | Abnormal Return | t-stat |
| 08/12/22 | "Defendant Cohen posts the Tweet, allegedly alerting retail investors of his intent to maintain his stake in BBBY." | 19.74% | 16.82% | **2.31** | 14.47% | 1.06 | 16.27% | 1.36 |
| 08/15/22 | Dr. Cain's Alternative No News Day | 21.15% | 20.51% | **2.82** | 20.40% | 1.45 | 20.82% | 1.77 |
| 08/16/22 | "Defendant Cohen files a delinquent Form 3 and Amended Schedule 13D, allegedly suggesting an increase in his overall stake in BBBY. In reality, the increase had allegedly occurred in April 2022." | 25.51% | 20.90% | **2.78** | 9.92% | 0.79 | 15.21% | 1.16 |
| 08/17/22 | Dr. Cain's Alternative No News Day | 11.13% | 11.25% | 1.50 | 8.25% | 0.59 | 8.69% | 0.73 |
| 08/18/22 | "BBBY files an 8-k stating it had reached a 'constructive agreement' with RC Ventures regarding Cohen's stake in the Company." | -21.85% | -21.99% | **(2.90)** | -20.29% | (1.45) | -20.65% | (1.75) |

Notes:
**Fischel 1** are results for a 40 day estimation window that includes all trading days and begins 8/01/22 and ends 9/26/22.
**Fischel 2** are results for an estimation window consisting of two non-contiguous periods, the 20 trading days before 8/12/22 (beginning 7/15/22), and the 20 trading days after 8/19/22 (ending 9/19/22), thereby excluding the Class Period and 8/19/22 from the analysis period entirely.
**Cain Damages Report** are Dr. Cain's results based on a 120 day rolling estimation window, which excludes earning dates, alleged misstatements, and alleged corrective disclosures.
All three models regress Bed Bath & Beyond's stock returns on the S&P 500 Index and the S&P 500 Specialty Retail Index returns.
Statistical Significance defined as a t-stat of ±1.96 or above and noted in red.
Sources:
[1] Cain Damages Report "regression_results.xlsx" backup file.
[2] Cain Reply Report Exhibit 3A.
[3] Fischel Report ¶ 39, footnote 83, and event study backup files.

Consequently, Dr. Cain's own event study analysis fails to provide reliable and scientific evidence that the stock price movements on these dates were caused by any company-specific news, let alone by the Inflation Creating Events and Corrective Disclosure Events as he claims.[50]

> **B. Dr. Cain's Analysis of the Alleged Corrective Disclosures Makes No Sense Because He Fails to Demonstrate that There Are Any Prior Misstatements to Correct**

19.    Dr. Cain's analysis of the alleged corrective disclosures is further fundamentally flawed because he estimates alleged artificial inflation of $6.15 on August 12, 2022 prior to the Tweet, which requires that Mr. Cohen should have disclosed an intention to sell his entire

---

50.    While the residual price decline on August 19, 2022 is statistically significant when Dr. Cain's event study is corrected, it does not establish that it "corrects" any earlier alleged misrepresentations or eliminates any alleged artificial inflation.

position in BBBY before the market opened on August 12, 2022, despite the fact that he had not initiated any such sale.  However, even assuming *arguendo* that an intent to sell existed at that time, the concept of a continuous duty to disclose such information to the market prior to taking any action makes no sense from an economic perspective and is in conflict with the efficient functioning of markets.[51]  Indeed, Dr. Cain provides no economic basis for such a continuous duty to disclose, and so does not establish that there is anything to correct.

20.     This disconnect is illustrated by Dr. Cain's opinions based on the results of his event study regarding the decline in BBBY's stock price on August 19, 2022, which he attributes to the disclosure that Mr. Cohen had liquidated his stake.[52]  He opines that this decline establishes materiality and loss causation attributable to the alleged misstatements,[53] and measures alleged artificial inflation throughout the Class Period, accounting for between 61% and 100% of his estimate of alleged inflation on each day.[54]  But this claim makes no sense because there is no allegation that Mr. Cohen should have disclosed the fact that he had liquidated his entire stake on the first day of the Class Period as Dr. Cain's opinions require, nor could there be because it hadn't happened yet.

21.     Dr. Cain's analyses of the "Inflation Creating Events" – i.e., the "pumps" in Plaintiff's claim of a "pump-and-dump" scheme – also lack credibility.  He opines that these "pumps" were the sole cause of BBBY's price increases on August 12, 2022 and August 16,

---

51.     For example, a substantial stock price reaction to the announcement of an intent to sell might induce the seller to reverse course, prompting a need to make yet another announcement of a new intention to hold the position, which could induce yet another substantial stock price reaction.

52.     See *supra* ¶ 6; Cain Damages Report ¶¶ 76-84.

53.     Cain Damages Report ¶¶ 76-84.

54.     Cain Damages Report ¶¶ 17, 20.  Because Dr. Cain's estimate of alleged inflation starting on August 12, 2022 before the Tweet is the sum of the price movements he attributes to each subsequent event, the $7.26 price decline on August 19, 2022 he measures is reflected as alleged inflation on every day of the Class Period, ranging from 61% (= $7.26 / $11.82) of his estimate on August 16, 2022 and August 17, 2022 to 100% of his estimate on August 18, 2022.

2022, claiming that there is no confounding information unrelated to the alleged fraud that could explain these price increases.[55]  In addition to his fatal flaw of failing to account for the effects of the rumored short squeeze on his conclusions, Dr. Cain's opinions regarding the observed price increases on these days are inconsistent with the economic evidence and his market efficiency opinion as explained below.  If there are no "pumps," Plaintiff's claim that Mr. Cohen engaged in a "pump-and-dump" scheme is groundless.

### i.   August 12, 2022 Tweet

22.     Dr. Cain concludes that "[t]he statistically significant price increase in BBBY Common Stock coupled with the lack of other news on this date demonstrates that the market reacted quickly and significantly on August 12, 2022, to Cohen's Tweet."[56]  His conclusion is baseless and inconsistent with the economic evidence.

23.     Dr. Cain does not cite any contemporaneous news articles or analyst commentary discussing the Tweet, let alone any market commentary attributing the price increase on August 12, 2022 to it.[57]  And there is none as I explained in the Fischel Report, consistent with my event study analysis that shows that the residual return on August 12, 2022 is not statistically significant.[58]

### ii.   August 16, 2022 Form 3 & Amended Schedule 13D

24.     Dr. Cain claims that the Form 3 filed on August 16, 2022 "indicated that Cohen had acquired additional call options with strike prices of $60 - $80 by January 2023" and that the

---

55.     Cain Damages Report ¶ 57.  As explained *supra* ¶¶ 16-18, my event study, which correctly accounts for the heightened volatility during the Class Period, finds that the price movements on August 12, 2022 and August 16, 2022 are statistically indistinguishable from random price movements during this period.
56.     Cain Damages Report ¶ 87.
57.     During the hearing, Dr. Cain testified that he had no opinion as to whether the Tweet contained value-relevant information.  Hearing Tr. at 73:16-22.
58.     Fischel Report ¶ 42.

Amended Schedule 13D filed the same day reiterated this same information and "created the false impression that [Mr. Cohen] had no intention of selling his BBBY Holdings."[59]  He cites public press discussing that Mr. Cohen had purchased additional call options and finds no confounding information, concluding that "[t]his statistically significant price increase in BBBY Common Stock coupled with the lack of other news on this date demonstrates that the market reacted quickly and significantly on August 16, 2022, to the filings."[60]  Dr. Cain's opinion is fundamentally flawed and inconsistent with his market efficiency opinion.

25.     To begin with, Dr. Cain ignores the fact that the information in the Amended Schedule 13D and Form 3 regarding Mr. Cohen's holdings had been disclosed previously.[61] Specifically, Mr. Cohen filed a Schedule 13D on March 25, 2022 disclosing the exact same stock and option positions.[62]  In fact, the Amended Schedule 13D itself notes that the reason for the filing was "solely due to a change in the number of outstanding Shares of the Issuer,"[63] which increased the ownership percentage of those same holdings from 9.8% to 11.8%.[64]  Even this specific increased ownership percentage was not new information because BBBY had filed a proxy on June 1, 2022 disclosing that following share buybacks, Mr. Cohen owned 11.8% of total shares outstanding.[65]

26.     Consequently, and yet again, Dr. Cain's opinion regarding alleged inflation is inconsistent with his opinion regarding market efficiency because information that is repeated

---

59.     Cain Damages Report ¶ 89.
60.     Cain Damages Report ¶¶ 90, 91.
61.     Cain Damages Report ¶¶ 29, 89.
62.     *Compare* RC Ventures Schedule 13D, Amendment No. 1, March 25, 2022 *with* RC Ventures Schedule 13D, Amendment No. 2, August 16, 2022.
63.     RC Ventures Schedule 13D, Amendment No. 2, August 16, 2022.
64.     *Compare* RC Ventures Schedule 13D, Amendment No. 1, March 25, 2022 *with* RC Ventures Schedule 13D, Amendment No. 2, August 16, 2022.
65.     Bed Bath & Beyond Schedule 14A, June 1, 2022 at 74.

publicly does not affect prices in an efficient market since the price already reflects the public information.  Accordingly, because the information in the filings was not new, BBBY's stock price already reflected it if the market for the stock was efficient.  In fact, Dr. Cain recognizes that BBBY's stock price reflected previously disclosed information because in his analysis of confounding information for August 18, 2022, he opines that "information that was previously publicly known [] would have been reflected in BBBY's stock price" prior to the repetition of that same information.[66]

27.     Moreover, Dr. Cain mischaracterizes the evidence presented in his own report regarding the cause of the positive residual return on August 16, 2022.  Rather than attributing the increase to "the false impression that [Mr. Cohen] had no intention of selling his BBBY holdings" as Plaintiff claims,[67] the evidence presented in the Cain Damages Report demonstrates that market participants attributed the increase to the perception that Mr. Cohen had increased his stake in BBBY securities (when in fact he had not).[68]

28.     Dr. Cain cannot reject the possibility that the best explanation for the observed stock price movement on August 16, 2022 is the rumored short squeeze, regardless of whether the market for BBBY stock was efficient.  Indeed, as noted *supra* ¶ 15, Dr. Cain's residual return on August 16, 2022 of 20.90% is virtually identical to his residual return on August 15, 2022 of 20.51%, when there was no new value-relevant information.

---

66.    Cain Damages Report ¶ 74.  I note that Dr. Cain fails to establish that there was no price decline associated with the downgrade in BBBY's rating by Wedbush on August 18, 2022; similarly, he ignores the announcement that the Company had hired bankruptcy counsel Kirkland & Ellis (announced after market close on August 18, 2022).  Cain Damages Report ¶¶ 81-82.

67.    Cain Damages Report ¶ 89.

68.    Cain Damages Report ¶ 90 (e.g., an article published on August 17, 2022 in *Institutional Investor Magazine* states:  "Shares of Bed Bath & Beyond soared about 30 percent Tuesday amid several trading halts due to the spike in activity, which was boosted by the news that GameStop Chairman Ryan Cohen bought more call options on the struggling retailer.").

### iii. Dr. Cain's Estimate of Alleged Artificial Inflation Produces Absurd Results

29.     Even if one ignores the fundamental flaws explained above and accepts Dr. Cain's view of the alleged inflationary and corrective events, his analysis of alleged artificial inflation leads to nonsensical results.[69]  As shown in **Table 2** below, he concludes that absent the alleged wrongdoing, BBBY's stock price would have increased by 63% on August 15, 2022 (more than twice the actual return that day), 28% on August 17, 2022 (again more than twice the actual return that day), and 126% from the "but-for stock price" (i.e., the actual price less his estimate of alleged artificial inflation) at the open on August 12, 2022 of $4.89 to the close on August 19, 2022 of $11.03 (an increase of over two-and-a-quarter times over six trading days):

**Table 2**

|  | Date | Actual Price [A] | Actual Return [B=A_t/A_{t-1}-1] | Dr. Cain's Artificial Inflation [C] | Dr. Cain's "But-For" Price [D=A-C] | Dr. Cain's "But-For" Return [E=D_t/D_{t-1}-1] |
|---|---|---|---|---|---|---|
| [1] | Aug 12, 2022 Open | $11.04 |  | $6.15 | $4.89 |  |
| [2] | Aug 12, 2022 | $12.95 | 17.3% | $8.10 | $4.85 | -0.8% |
| [3] | Aug 15, 2022 | $16.00 | 23.6% | $8.10 | $7.90 | 62.9% |
| [4] | Aug 16, 2022 | $20.65 | 29.1% | $11.82 | $8.83 | 11.8% |
| [5] | Aug 17, 2022 | $23.08 | 11.8% | $11.82 | $11.26 | 27.5% |
| [6] | Aug 18, 2022 | $18.55 | -19.6% | $7.26 | $11.29 | 0.3% |
| [7] | Aug 19, 2022 | $11.03 | -40.5% | $0.00 | $11.03 | -2.3% |
|  | **Total** |  | **-0.1%** |  |  | **125.6%** |

**Sources:**

[A] Dr. Cain's regression_results.xlsx backup file; Aug 12, 2022 open price from CRSP.
[C] Cain Damages Report ¶ 20.

---

69.     Because Dr. Cain has not reliably analyzed the causes of the price changes in BBBY stock during the Class Period, all of the flaws described herein apply to his evaluation of Section 20A damages, which assume that all of the "profits gained" and "losses avoided" by Mr. Cohen are attributable to the alleged wrongdoing.  Cain Damages Report ¶¶ 120-126.

Such extraordinarily large price movements over such short periods of time[70] are nonsensical because Dr. Cain has not identified – nor is there – any new value-relevant information that can explain them.[71, 72]

## V.   DR. CAIN'S ANALYSES OF ALLEGED ARTIFICIAL INFLATION IN BBBY'S CALL OPTIONS ARE FUNDAMENTALLY FLAWED AND NONSENSICAL, AND PROVIDE WINDFALLS TO CLASS MEMBERS

30.     As an initial matter, Dr. Cain's Black-Scholes and "factor $x$" methods both rely on his flawed and unreliable estimate of alleged artificial inflation in BBBY's stock price[73] and so, for this reason alone, his estimates of alleged artificial inflation in BBBY's call option prices are also fundamentally flawed and unreliable for all of the reasons explained above.

31.     Dr. Cain's analysis of alleged damages for BBBY call options is further fundamentally flawed for at least two reasons.  First, his analyses of artificial inflation in BBBY's call options is nonsensical because it often exceeds the actual option price that Class members paid, providing them with an unjustifiable windfall.  Second, Dr. Cain's analysis of alleged damages also provides a windfall to Class members who engaged in commonly-employed option trading strategies involving put options because he fails to provide estimates of the benefits from the alleged fraud received on these put options that offset alleged losses on the associated call options.  I explain each in turn.

---

70.    Dr. Cain testified:  "an increase of 18 percent over one year would be fantastic.  So to see that within one day would be somewhat extraordinary."  Hearing Tr. at 52:20-23.

71.    Dr. Cain reviewed news articles and analyst reports during the Class Period in all three of his reports.  Cain Report ¶ 45; Cain Reply Report ¶ 38; Cain Damages Report ¶ 62.  We also reviewed financial news articles about the Company available from Bloomberg, Factiva, and Seeking Alpha, as well as analyst reports, and found no new value-relevant information that could explain these extraordinary price movements.

72.    The Cain Damages Report does not acknowledge the impact of a rumored short squeeze on BBBY's stock price leading up to and during the Class Period despite the economic evidence of one that I presented in the Fischel Report.  However, the rumored short squeeze can only explain the actual stock price returns in the real world, it cannot explain the substantially larger hypothetical stock price returns under Dr. Cain's "but-for" analysis.

73.    See supra ¶ 10.

A. **Dr. Cain's Estimates of Alleged Artificial Inflation Often Exceed Class Members'
Actual Purchase Price**

32.     Dr. Cain's analysis is fundamentally flawed and nonsensical because his estimates
of alleged artificial inflation in BBBY's call options exceed the option price in many instances.
In other words, his analysis absurdly results in purported damages that can be greater than the
total amount the Class member actually paid to acquire the options.

33.     As but one example, for the September 23, 2022 expiration option with a strike
price of $20, Dr. Cain's Black-Scholes model estimates that the alleged artificial inflation for all
call option purchases on August 15, 2022 (a day when the alleged inflation in BBBY's stock
price did not change) is $3.45, ignoring that Class members purchased this option on this day for
as little as $3.00.[74]  Consequently, Dr. Cain would provide a windfall to Class members who in
reality did not – because they could not – incur an investment loss as high as the amount his
analysis would award them.[75]  This is not an isolated example.  Approximately 1.2 million call
option contracts – over 30% of all contracts traded during the Class Period – traded at prices
lower than Dr. Cain's estimate of alleged artificial inflation using the Black-Scholes model, an
impossibility and clear indication that his method is prone to overestimating alleged damages
and thus unreliable.[76]

---

74.     Cain Damages Report Appendix D; Dr. Cain's backup file UnderlyingOptionsTradesCalcs_2022-
08.csv.

75.     The unreliability of Dr. Cain's model cannot be made reliable by limiting the loss to an amount
that is possible because doing so does not resolve the underlying issue with his methodology, i.e.,
just because the results of his calculation do not always require a limitation does not mean those
results are reliable, it just means those results are not impossible.

76.     We compared the "Inflation" values from Cain Damages Report Appendix D for each option on
each day to the corresponding option trade prices in Dr. Cain's backup file
UnderlyingOptionsTradesCalcs_2022-08.csv to determine if the trade price was less than Dr.
Cain's estimate of alleged artificial inflation under his Black-Scholes model.

34.     Dr. Cain's *ad hoc* "factor *x*" methodology also suffers from this same fundamental flaw.  For the above example, the "factor *x*" value is $4.80, again greater than the purchase prices that are as low as $3.00.[77]  Consequently, Dr. Cain's alternative method also would provide a windfall to Class members by awarding alleged artificial inflation that is greater than the amount they paid for the option.  This, too, is not an isolated example.  Over 1.5 million call option contracts – almost 40% of all contracts traded during the Class Period – traded at prices lower than Dr. Cain's estimate of alleged artificial inflation using his "factor *x*" methodology, a clear indication that it is prone to overestimating alleged damages and thus unreliable.[78]

35.     Dr. Cain's proposal to take the minimum of the unreliable output from these two methods does not fix the problem.  Taking the minimum of two methods that are prone to overestimation does not and cannot render the result reliable.  But it doesn't even address the extreme problem highlighted above.  For example, on August 15, 2022, Dr. Cain's Black-Scholes model estimates alleged artificial inflation that is greater than the option purchase prices for 183,063 contracts, or almost one-third of contracts traded that day.  After applying his "factor *x*" limitation, there are still 144,231 contracts – or approximately one-quarter of contracts traded that day – for which Dr. Cain would award more in alleged inflation than the Class members paid for the options.

---

77.     Cain Damages Report Appendix C, page 60 reports that for the September 23, 2022 expiration option with a strike price of $20, "Inflation Dissipated" on August 18, 2022 and August 19, 2022 of $3.65 and $3.87, respectively, for a total of $7.52, and "Inflation Introduced" on August 16, 2022 of $2.72.  Because the "Inflation Introduced" on August 16, 2022 had not occurred yet, alleged artificial inflation for this option on August 15, 2022 is $4.80 (= $7.52 - $2.72).

78.     We compared the "Inflation" values implied by Cain Damages Report Appendix C for each option on each day to the corresponding option trade prices in Dr. Cain's backup file UnderlyingOptionsTradesCalcs_2022-08.csv to determine if the trade price was less than Dr. Cain's estimate of alleged artificial inflation under his "factor *x*" methodology.

**B. Dr. Cain's Failure to Analyze Artificial Inflation in BBBY's Put Options Provides a Windfall for Class Members Who Purchased Call Options and Sold Put Options**

36.     Dr. Cain also would provide a windfall to many Class members because he ignores they had strong economic incentives to engage in textbook options strategies that involve simultaneously entering into both long and short positions by buying put options at the same time as buying call options.[79]  Under Plaintiff's theory of this case, Class members who engaged in such strategies were both harmed and benefited by the alleged fraud – while they purportedly were harmed by alleged artificial inflation in their call position, they also were benefited in their accompanying put position (because put option prices would have been higher but-for the alleged misrepresentations, the put prices were allegedly artificially deflated).  Because Dr. Cain does not provide estimates of alleged artificial "deflation" in BBBY put option prices, Class members who engaged in such strategies would receive a windfall because they would be compensated for their losses from the alleged wrongdoing on their call options while retaining their benefits from the alleged wrongdoing on their put options.

37.     As a matter of economics, the benefits from the alleged fraud must be offset against the alleged harm to appropriately recompense Class members who engaged in such options trading strategies, which is impossible without reliable estimates of alleged inflation in BBBY put options.[80]  Dr. Cain recognizes that economic benefits of the alleged fraud offset harm

---

79.     See, e.g., Bodie, Zvi, Alex Kane, and Alan J. Marcus. Investments. McGraw-Hill Education, 11th Ed. (2018), at 671-673 ("A long straddle is established by buying both a call and a put on a stock, each with the same exercise price, X, and the same expiration date, T.  Straddles are useful strategies for investors who believe a stock will move a lot in price but are uncertain about the direction of the move… Strips and straps are variations of straddles.  A strip is two puts and one call on a security with the same exercise price and expiration date.  A strap is two calls and one put.").

80.     This issue is not limited to Class members who only traded options.  As a matter of economics, the net impact of the alleged wrongdoing on Class members who were allegedly harmed by long

because he describes the calculation of a Class member's "economic" "recoverable damages" in this matter as "artificial inflation at the time of purchase" (the purported harm from the alleged wrongdoing) "minus artificial inflation at the time of sale" (a purported benefit from the alleged wrongdoing).[81]

38.     Similarly as a matter of economics, all benefits from the alleged fraud received by Class members must be taken into account.  For example, if a Class member sold BBBY shares at allegedly inflated prices during the Class Period that were purchased prior to August 12, 2022 when alleged artificial inflation was $0, and subsequently purchased more shares at allegedly inflated prices during and retained them through the Class Period, the economic benefits attributable to the alleged fraud from the sale should offset the purported economic harm attributable to the alleged fraud from the purchase.

Daniel R. Fischel

September 9, 2024

---

positions (or purchases) but benefited by short positions (or sales) – whether those positions were exclusively stock, exclusively options, or some combination – must be taken into account.

81.     Cain Damages Report ¶ 113.

22

**DANIEL R. FISCHEL**                                                    **September 2024**

Business Address:

Compass Lexecon
332 South Michigan Avenue
Chicago, Illinois 60604
Tel: 312-322-0209
dfischel@compasslexecon.com


## PROFESSIONAL EXPERIENCE

Lee and Brena Freeman Professor of Law and Business, University of Chicago Law School (1/84 – 12/2005, chair awarded in 7/89, emeritus as of 1/1/2006); Dean of Law School (1/99 – 2/01); Visiting Professor of Law, University of Chicago Law School (7/82 - 6/83).

Professor of Law and Business, Northwestern University School of Law (1/1/2006 – 5/2011). Professor, Kellogg School of Management (courtesy appointment, 1/1/2006 – 5/2011).

Jack N. Pritzker Distinguished Visiting Professor of Law, Northwestern University School of Law (6/02-6/03).

Professor of Law and Business, University of Chicago Graduate School of Business (courtesy appointment, 7/87 - 6/90).

Director, Law and Economics Program, University of Chicago (1/84 - 6/91).

Assistant Professor of Law, Northwestern University School of Law (6/80 - 6/81); Associate Professor of Law, Northwestern University School of Law (6/81 - 6/82); promoted to full professor in 6/82.

Attorney with Levy and Erens, Chicago, Illinois (7/79 - 6/80).

Law Clerk for Associate Justice Potter Stewart of the United States Supreme Court (1978 - 1979).

Law Clerk for Judge Thomas E. Fairchild, Chief Judge of the Seventh Circuit Court of Appeals (1977 - 1978).


## CONSULTING EXPERIENCE

Chairman, Compass Lexecon (Chairman and President until 12/2023).


## AREAS OF SPECIALIZATION

Securities and Financial Markets, Valuation and Financial Analysis, Bankruptcy and Financial Distress Litigation, ERISA Litigation, Class Certification, Damages, Corporate Governance.


## PUBLICATIONS

Payback: The Conspiracy to Destroy Michael Milken and His Financial Revolution, Harper Business (1995).

The Economic Structure of Corporate Law, Harvard University Press (1991) (with Frank H. Easterbrook).


## ARTICLES

The Use of Trading Models to Estimate Aggregate Damages in Securities Fraud Litigation: An Update, Briefly… Perspectives on Legislation, Regulation, and Litigation, Vol. 10, No. 3 (National Legal Center for the Public Interest, 2006) (with David J. Ross and Michael A. Keable).

The Hewlett-Packard Merger: A Case Study, in The New Investor Relations, Expert Perspectives On The State Of The Art (Bloomberg Press Princeton, 2004) (with Kenneth R. Cone, Gregory J. Pelnar and David J. Ross).

Market Evidence in Corporate Law, 69 U. Chi. L. Rev. 941 (2002).

Multidisciplinary Practice, The Business Lawyer, Vol. 55, (May 2000).

Government Liability for Breach of Contract, American L. & Econ. Rev. V1 N1/2 313 (1999) (with Alan Sykes).

Lawyers and Confidentiality, 65 U. Chi. L. Rev. 1 (1998).

The Law and Economics of Vanishing Premium Life Insurance, 22 Del. J. Corp. Law 1 (1997) (with Robert S. Stillman).

Clustering and Competition in Asset Markets, 20 J. Law & Econ. 23 (1997) (with Sanford J. Grossman, Merton H. Miller, Kenneth R. Cone and David J. Ross).

Corporate Crime, 25 J. Legal Studies 319 (1996) (with Alan O. Sykes).

The Use of Trading Models to Estimate Aggregate Damages in Securities Fraud Litigation: A Proposal for Change, in Securities Class Actions: Abuses and Remedies (The National Legal Center for the Public Interest, 1994) (with David J. Ross).

Civil Rico After Reves: An Economic Commentary, 1993 Sup. Ct. Rev. 157 (with Alan O. Sykes).

Contract and Fiduciary Duty, 36 J. Law & Econ. 425 (1993) (with Frank H. Easterbrook).

Should the Law Prohibit "Manipulation" in Financial Markets?, 105 Harv. L. Rev. 503 (1991) (with David J. Ross).

Efficient Capital Markets, the Crash, and the Fraud on the Market Theory, 74 Cornell L. Rev. 907 (1989).

The Corporate Contract, 89 Colum. L. Rev. 1416 (1989) (with Frank H. Easterbrook); also published in Corporate Law and Economic Analysis (Cambridge University Press 1990) (Lucian Bebchuk ed.).

The Economics of Lender Liability, 99 Yale L. J. 131 (1989).

Should One Agency Regulate Financial Markets, in Black Monday and the Future of Financial Markets (R. Kormendi, R. Kamphuis & J. W. H. Watson, ed.) (Dow Jones-Irwin Inc., 1988).

ERISA's Fundamental Contradiction: The Exclusive Benefit Rule, 55 U. Chi. L. Rev. 1105 (1988) (with John H. Langbein).

From MITE to CTS: Takeovers, the Williams Act and the Commerce Clause, 1987 Sup. Ct. Rev. 47.

The Regulation of Banks and Bank Holding Companies, 73 Va. L. Rev. 301 (1987) (with Andrew M. Rosenfield and Robert S. Stillman).

The Regulation of Accounting: Some Economic Issues, 52 Brooklyn L. Rev. 1051 (1987).

Organized Exchanges and the Regulation of Dual Class Common Stock, 54 U. Chi. L. Rev. 119 (1987).

Comparable Worth and Discrimination in Labor Markets, 53 U. Chi. L. Rev. 891 (1986) (with Edward P. Lazear).

Comparable Worth: A Rejoinder, 53 U. Chi. L. Rev. 950 (1986) (with Edward P. Lazear).

Close Corporations and Agency Costs, 38 Stan. L. Rev. 271 (1986) (with Frank H. Easterbrook).

The Role of Liability Rules and the Derivative Suit in Corporate Law: A Theoretical and Empirical Analysis, 71 Corn. L. Rev. 261 (1986) (with Michael Bradley).

Regulatory Conflict and Entry Regulation of New Futures Contracts, 59 J. Bus. S85 (1985).

Optimal Damages in Securities Cases, 52 U. Chi. L. Rev. 611 (1985) (with Frank H. Easterbrook).

The Business Judgment Rule and the Trans Union Case, 40 Bus. Law. 1437 (1985).

Insider Trading and Investment Analysts: An Economic Analysis of Dirks v. SEC, 13 Hofstra L. Rev. 127 (1984).

<u>Limited Liability and the Corporation</u>, 52 U. Chi. L. Rev. 89 (1985) (with Frank H. Easterbrook).

<u>Labor Markets and Labor Law Compared with Capital Markets and Corporate Law</u>, 51 U. Chi. L. Rev. 1061 (1984).

<u>Customer Protection in Futures and Securities Markets</u>, 4 J. Futures Markets 273 (1984) (with Sanford J. Grossman).

<u>Mandatory Disclosure and the Protection of Investors</u>, 70 Va. L. Rev. 669 (1984) (with Frank H. Easterbrook).

<u>The Appraisal Remedy In Corporate Law</u>, 1983 Am. Bar Found. Res. J. 875.

<u>The Regulation of Insider Trading</u>, 35 Stan. L. Rev. 857 (1983) (with Dennis W. Carlton).

<u>Voting in Corporate Law</u>, 26 J. Law & Econ. 395 (1983) (with Frank H. Easterbrook).

<u>Auctions and Sunk Costs in Tender Offers</u>, 35 Stan. L. Rev. 1 (1982) (with Frank H. Easterbrook).

<u>The Corporate Governance Movement</u>, 35 Vand. L. Rev. 1259 (1982).

<u>Use of Modern Finance Theory in Securities Fraud Cases Involving Actively Traded Securities</u>, 38 Bus. Law 1 (1982).

<u>Antitrust Suits By Targets of Tender Offers</u>, 80 Mich. L. Rev. 1155 (May 1982) (with Frank H. Easterbrook).

<u>Corporate Control Transactions</u>, 91 Yale L. J. 698 (1982) (with Frank H. Easterbrook).

<u>The "Race to the Bottom" Revisited: Reflections on Recent Developments in Delaware Corporation Law</u>, 76 Nw. Univ. L. Rev. 913 (1982).

<u>Takeover Bids, Defensive Tactics and Shareholders' Welfare</u>, 36 Bus. Law 1733 (1981) (with Frank H. Easterbrook).

<u>The Law and Economics of Dividend Policy</u>, 67 Va. L. Rev. 699 (1981).

<u>The Proper Role of a Target's Management in Responding to a Tender Offer</u>, 94 Harv. L. Rev. 1161 (1981) (with Frank H. Easterbrook) (awarded prize by Emory University for best paper written in law and economics for the year 1981).

<u>Secondary Liability Under Section 10(b) of the Securities Act of 1934</u>, 69 California L. Rev. 80 (1981).

<u>Efficient Capital Market Theory, the Market for Corporation Control, and the Regulation of Cash Tender Offers</u>, 57 Tex. L. Rev. 1 (1978); reprinted in K. Scott and R. Posner ed., <u>Economic Perspectives on Corporation Law and Securities Regulation</u> (Little Brown 1980).

<u>Antitrust Liability for Attempts to Influence Government Action: The Basis and Limits of the Noerr-Pennington Doctrine</u>, 45 U. Chi. L. Rev. 80 (1977).

Comment, <u>The Demand and Standing Requirements in Stockholder Derivation Actions</u>, 44 U. Chi. L. Rev. 168 (1977).

Comment, <u>The Use of Government Judgments in Private Antitrust Litigation: Clayton Act Section 5(a), Collateral Estoppel, and Jury Trial</u>, 43 U. Chi. L. Rev. 338 (1976).


## **EDUCATION**

<u>University of Chicago Law School</u>, Chicago, Illinois; J.D. 1977, cum laude; Order of the Coif; Comment Editor, Vol. 44, <u>University of Chicago Law Review</u>; Approximately top 1% of the Class. Awarded Casper Platt Award for best paper written by a student of the University of Chicago Law School; awarded Jerome N. Frank Prize for excellence in legal writing while a member of the University of Chicago Law Review, 1975 - 1977. Studied law and economics with Richard Posner and other members of the faculty.

<u>Brown University</u>, Providence, Rhode Island; M.A. 1974 in American History.

<u>Cornell University</u>, Ithaca, New York; major-American History; minor-Economics; B.A. 1972.

**TESTIMONY**

Testimony of Daniel R. Fischel In Re: Bed Bath & Beyond Corporation Securities Litigation, In the United States District Court for the District of Columbia, C.A. No. 22-02541, (August 2, 2024).

Deposition of Daniel R. Fischel In Re: Tops Holding II Corporation, et al., Debtors, Alan D. Halperin, as the Litigation Trustee for the Tops Holding Litigation Trust, vs. Morgan Stanley Investment Management, Inc. et al., In the United States District Court, Southern District of New York, Case No. 18-22279 (SHL) (July 19, 2024).

Testimony of Daniel R. Fischel In Re: Richard J. Tornetta et al., vs. Elon Musk, et al., In the Court of Chancery of the State of Delaware, C.A. No. 2018-0408-KSJM, (July 8, 2024).

Testimony of Daniel R. Fischel In Re: The Matter of The Companies Act (As Revised) and In The Matter of 58.COM Inc., In The Grand Court of The Cayman Islands, Financial Services Division, Cause No. FSD 275 of 2020 (CJMRH), (June 26, 27, 28 and July 1, 2, 2024).

Deposition of Daniel R. Fischel In Re: Bed Bath & Beyond Corporation Securities Litigation, In the United States District Court for the District of Columbia, Case No. 1:22-cv-02541-TNM, (June 17, 2024).

Deposition of Daniel R. Fischel In Re: TGC Partners Limited et al., v. SIG China Investments One et al., In the Court of Common Pleas of Montgomery County Pennsylvania, No. 2021-22424, (June 7, 2024).

Deposition of Daniel R. Fischel In Re: Richard J. Tornetta et al., vs. Elon Musk, et al., In the Court of Chancery of the State of Delaware, C.A. No. 2018-0408-JRS, (May 31, 2024).

Declaration of Daniel R. Fischel In Re: Richard J. Tornetta et al., vs. Elon Musk, et al., In the Court of Chancery of the State of Delaware, C.A. No. 2018-0408-KSJM, (May 8, 2024).

Deposition of Daniel R. Fischel In Re: Sjunde AP-Fonden et al., vs. General Electric, et al., In the United States District Court, Southern District of New York, Case No. 17-cv-08457 (JMF), (May 3, 2024).

Deposition of Daniel R. Fischel In Re: Maxmillian Klein, et al. on behalf of themselves and all others similarly situated v. Meta Platforms, Inc., In the United States District Court, Northern District of California, San Francisco Division, Case No. 20-cv-08570-JD, (March 20, 2024).

Deposition of Daniel R. Fischel In Re: Federal Trade Commission v. Meta Platforms, Inc., In the United States District Court for the District of Columbia, No. 1:20-cv-03590-JEB, (February 15, 2024).

Deposition of Daniel R. Fischel In Re: Stewart N. Goldstein, individually and on behalf of all others similarly situated v. Sarissa Capital Management, L.P., et al., In the Court of Chancery for the State of Delaware, Case No. 2020-1061-JTL, (January 25, 2024).

Deposition of Daniel R. Fischel In Re: Solar Eclipse Investment Fund III, LLC, Solar Eclipse Investment Fund IV, LLC, et al. v Cohnreznick LLP, Cohnreznick Capital Markets Securities LLC, et al., In the Superior Court of the State of California, County of Los Angeles, Case No. 19STCV45775, (October 31, 2023).

Deposition of Daniel R. Fischel In Re: Alta Partners, LLC v. Getty Images Holdings, Inc., No. 1:22-cv-08916-JSR and CRCM Institutional Master Fund (BVI) LTD., and CRCM SPAC Opportunity Fund LP, In the United States District Court, Southern District of New York, No. 1:23-cv-01074-JSR, (August 28, 2023).

Testimony of Daniel R. Fischel In Re: Petersen Energia Inversora, S.A.U. and Petersen Energia S.A.U. v. Argentine Republic and YPF S.A., In the United States District Court, Southern District of New York, 15 Civ. 2739 (LAP), (July 27, 2023).

Deposition of Daniel R. Fischel In Re: January 2021 Short Squeeze Trading Litigation, In The United States District Court, Southern District of Florida, Case No. 21-2989-MDL-ALTONAGA, (April 12, 2023).

Testimony of Daniel R. Fischel In Re: Sanchez Energy Corporation, et al., Debtors, In The United States Bankruptcy Court, Southern District of Texas, Houston Division, Chapter 11, Case No. 19-34508 (MI), (March 28, 2023).

Deposition of Daniel R. Fischel In Re: Sanchez Energy Corporation, et al., Debtors, In The United States Bankruptcy Court, Southern District of Texas, Houston Division, Chapter 11, Case No. 19-34508 (MI), (February 10, 2023).

Testimony of Daniel R. Fischel In Re: The Boeing Company and Boeing Brasil Servicos Tecnicos Aeronauticos LTDA. v. Embraer S.A. and Yabora Industria Aeronautica S.A., American Arbitration Association, Case No. 01-20-0005-0591, (February 6, 2023).

Testimony of Daniel R. Fischel In Re: Straight Path Communications Inc. Consolidated Stockholder Litigation, In the Court of Chancery of the State of Delaware, C.A. No. 2017-0486-SG, (December 9, 2022).

Testimony of Daniel R. Fischel In Re: Oracle Corporation Derivative Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 2017-0337-SG, (July 28, 2022).

Testimony of Daniel R. Fischel In Re: United States of America v. Gregg Smith, Michael Nowak, and Jeffrey Ruffo, In The United States District Court, Northern District of Illinois, Eastern Division, No. 19 CR 00669, (July 25 and 26, 2022).

Deposition of Daniel R. Fischel In Re: Sjunde Ap-Fonden, et al. vs. General Electric, et al. In The United States District Court, Southern District of New York, Index No. 17-cv-08457 (JMF), (July 14, 2022).

Deposition of Daniel R. Fischel In Re: Sanchez Energy Corporation, et al., and Delaware Trust Company v. Mesquite Energy Inc. f/k/a Sanchez Energy Corporation, Apollo Commodities Management, L.P., Fidelity Management and Research Company, et al. In the United States Bankruptcy Court, Southern District of Texas, Houston Division, Chapter 11, Case No. 19-34508 (MI), Adv. Pro. No. 21-3862 (MI), (May 17, 2022).

Deposition of Daniel R. Fischel In Re: Tesla, Inc., Securities Litigation, In the United States District Court for the Northern District of California, San Francisco Division, Civil Action No. 3:18-cv-04865-EMC, (March 28, 2022).

Deposition of Daniel R. Fischel In Re: Petersen Energia Inversora, S.A.U. and Petersen Energia S.A.U. v. Argentine Republic and YPF S.A., In the United States District Court, Southern District of New York, 15 Civ. 2739 (LAP), (March 17, 2022).

Testimony of Daniel R. Fischel In Re: Mindbody, Inc. Stockholder Litigation, In the Court of Chancery of the State of Delaware, C.A. No. 2019-0442-KSJM, (March 9, 2022).

Testimony of Daniel R. Fischel In Re: The Official Committee of Unsecured Creditors of Allied Systems Holdings, Inc. and its affiliated debtors et al. v. Yucaipa, et al., In the U.S. Bankruptcy Court for the District of Delaware, Bankr., D. Del., Proc. Nos. 13-50530-KBO, 14-50971-KBO (March 4, 2022).

Deposition of Daniel R. Fischel In Re: Securities and Exchange Commission v. Ripple Labs, Inc. et al., In the United States District Court, Southern District of New York, Case No. 20-Civ-10832 (AT) (SN) (February 28, 2022).

Deposition of Daniel R. Fischel In Re: Mindbody, Inc. Stockholder Litigation, In the Court of Chancery of the State of Delaware, C.A. No. 2019-0442-KSJM, (February 4, 2022).

Declaration of Daniel R. Fischel In Re: Mylan N.V. Securities Litigation, In the United States District Court, Southern District of New York, Case No. 1:16-cv-07926 (JPO), (December 22, 2021).

Deposition of Daniel R. Fischel In Re: JUUL Labs, Inc. Marketing, Sales Practices, and Products Liability Litigation, In the United States District Court, Northern District of California, Case No.: 19-md-02913-WHO, (December 13, 2021).

Deposition of Daniel R. Fischel In Re: Oracle Corporation Derivative Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 2017-0337-SG, (December 8, 2021).

Deposition of Daniel R. Fischel In Re: Straight Path Communications Inc. Consolidated Stockholder Litigation, In the Court of Chancery of the State of Delaware, C.A. No. 2017-0486-SG, (October 21, 2021).

Deposition of Daniel R. Fischel In Re: Abu Dhabi Investment Authority vs. Mylan N.V. and Mylan Inc., In the United States District Court, Southern District of New York, Civil Action No. 1:20-cv-01342-JPO, (August 18, 2021).

Deposition of Daniel R. Fischel In Re: Mylan N.V. Securities Litigation, In the United States District Court, Southern District of New York, Case No. 1:16-CV-07926 (JPO), (August 17, 2021).

Deposition of Daniel R. Fischel In Re: Hawaii Structural Ironworkers Pension Trust Fund, Individually and on Behalf of All Others Similarly Situated vs. AMC Entertainment Holdings, Inc., et al., In the United States District Court, Southern District of New York, Case No.1:18-cv-00299-AJN-SLC, (August 12, 2021).

Deposition of Daniel R. Fischel In Re: Sjunde Ap-Fonden, et al. vs. General Electric, et al., In the United States District Court, Southern District of New York, Index No. 17-cv-08457 (JMF), (August 9, 2021).

Testimony of Daniel R. Fischel In Re: United States of America vs. Edward Bases and John Pacilio, In the United States District Court, Northern District of Illinois, Eastern Division, Docket No. 18 CR 48, (July 29, 2021).

Testimony of Daniel R. Fischel In Re: Ahmed D. Hussein vs. Sheldon Razin, Steven Plochocki, Quality Systems, Inc., And Does 1-10, Inclusive, In the Superior Court of California, County of Orange, NO. 30-2013-00679600, CU-NP-CJC (July 27, 2021).

Testimony of Daniel R. Fischel In Re: Tesla Motors, Inc. Stockholders Litigation, In the Court of Chancery of the State of Delaware, Consolidated Civil Action No. 12711-VCS (July 23, 2021).

Testimony of Daniel R. Fischel In Re: Huntsman International, LLC vs. Albemarle Corporation, Rockwood Specialties Group, Inc., and Rockwood Holdings, Inc., American Arbitration Association, AAA Case No. 01-17-001-4588 (May 10, 2021).

Testimony of Daniel R. Fischel In Re: Resolution Life L.P. and Resolution Life (Parallel) Partnership vs. GBIG Holdings, Inc. f/k/a Southland National Holdings, Inc.; SNH Acquisition, LLC and Greg Lindberg, In the Supreme Court of the State of New York, Civil Division, Index Nos. 650575/19, 653258/19, (April 19, 2021).

Deposition of Daniel R. Fischel In Re: Matthew Sciabacucchi and Hialeah Employees' Retirement System vs. John Malone, et al., and Charter Communications, Inc., In the Court of Chancery for the State of Delaware, C.A. No. 11418-VCG, (April 16, 2021).

Deposition of Daniel R. Fischel In Re: Jeld-Wen Holdings, Inc. Securities Litigation, In the United States District Court for The Eastern District of Virginia, Richmond Division, Civil Action No. 3:20-cv-00112-JAG, (February 26, 2021).

Testimony of Daniel R. Fischel In Re: The Pacific Gas and Electric Company Administration of Stress Test Methodology Developed Pursuant to Public Utilities Code Section 451.2(b) and (2) Determination That $7.5 Billion of 2017 Catastrophic Wildfire Costs and Expenses Are Stress Test Costs That May Be Financed Through Issuance of Recovery Bonds Pursuant to Section 451.2(c) and Section 850 et Seq.(U39E), Before the Public Utilities Commission of the State of California, Application No. 20-04-023, (December 15, 2020).

Deposition of Daniel R. Fischel In Re: Resolution Life L.P. and Resolution Life (Parallel) Partnership vs. GBIG Holdings, Inc. f/k/a Southland National Holdings, Inc.; SNH Acquisition, LLC and Greg Lindberg, In the Supreme Court of the State of New York, Index No. 650575/2019, (November 24, 2020).

Deposition of Daniel R. Fischel In Re: SH 130 Concession Company, LLC, Zachry Toll Road – 56 LP Cintra Texas 56 LLC et al. vs. Central Texas Highway Constructors, LLC, et al., In the United States Bankruptcy Court, Western District of Texas, Austin Division, Case No. 16-10262-TMD, Adversary No. 18-01030, (November 5, 2020).

Deposition of Daniel R. Fischel In Re: Ahmed D. Hussein versus Sheldon Razin, Steven Plochocki, Quality Systems, Inc., et al., In the Superior Court of the State of California, County of Orange, Case No. 302013-00679600 CUNPCJC, (October 22, 2020).

Deposition of Daniel R. Fischel In Re: Deutsche Bank National Trust Company, Solely in its Capacity as Trustee of the Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-9, In the Supreme Court of the State of New York County of New York, Index No. 654208/2018 (September 25, 2020).

Testimony of Daniel R. Fischel In Re: Fairstone Financial Holdings Inc., J.C. Flowers IV L.P. and VP Canada Acquisition, L.P. vs. Duo Bank of Canada, Court File No. CV-20-00641857-00CL and Duo Bank of Canada vs. Fairstone Financial Holdings Inc., J.C. Flowers IV L.P. and VP Canada Acquisition, L.P., Court File No. CV-20-00643629-00CL, In the Ontario Superior Court of Justice, (September 11, 2020).

Testimony of Daniel R. Fischel In Re: AB Stable VIII LLC vs. Maps Hotels and Resorts One LLC, et al., In the Court of Chancery of the State of Delaware, C. A. No. 2020-0310-JTL (August 28, 2020).

Deposition of Daniel R. Fischel In Re: AB Stable VIII LLC vs. Maps Hotels and Resorts One LLC, et al., In the Court of Chancery of the State of Delaware, Case No. 2020-0130-JTL (August 14, 2020).

Deposition of Daniel R. Fischel In Re: Willis Towers Watson PLC Proxy Litigation, In the United States District Court for the Eastern District of Virginia, Alexandria Division, Master File No. 1:17-cv-1338-AJT-JFA (August 12, 2020).

Deposition of Daniel R. Fischel In Re: Forescout Technologies, Inc. et al. vs. Ferrari Group Holdings, LP, and Ferrari Merger Sub, Inc., et al., In the Court of Chancery of the State of Delaware, Civil Action No. 2020-0385-SG (July 13, 2020).

Deposition of Daniel R. Fischel In Re: Brigade Leveraged Capital Structures Fund Ltd. et al. vs. Kindred Healthcare, Inc., et al., In the Circuit Court of Chancery of the State of Delaware, Case No. 2018 0165 (February 5, 2020).

Testimony of Daniel R. Fischel In Re: Gannaway Entertainment, Inc. et al vs. Frankly Inc. et al., American Arbitration Association, Case No. 01-18-0003-9480 (December 17, 2019).

Deposition of Daniel R. Fischel In Re: The Official Committee of Unsecured Creditors of Allied Systems Holdings, Inc. and its affiliated debtors et al. v. Yucaipa, et al., In the U.S. Bankruptcy Court for the District of Delaware, Bankr., D. Del., Proc. Nos. 13-50530-KBO, 14-50971-KBO (December 16, 2019).

Testimony of Daniel R. Fischel In Re: Nord Anglia Education, Inc., In the Grand Court of The Cayman Islands, Financial Services Division, Cause No. FSD 235 of 2017 (IKJ). (December 6, 9, 10 and 11, 2019).

Deposition of Daniel R. Fischel In Re: Lindie L. Banks and Erica LeBlanc, individually and on behalf of all others similarly situated vs. Northern Trust Corporation and Northern Trust Company, In the United States District Court, Central District of California, Case No. 2: 16-cv-09141-JFK (JCx) (November 22, 2019).

Deposition of Daniel R. Fischel In Re: Tesla Motors, Inc. Stockholder Litigation, In the Court of Chancery of the State of Delaware, C.A. No. 12711-VCS (November 19, 2019).

Deposition of Daniel R. Fischel In Re: Melina N. Jacobs, On Behalf of Herself and All Others Similarly Situated vs. Verizon Communications, Inc., et al., In the United States District Court for the Southern District of New York, Civil Action No. 1:16-cv-01082 (August 28, 2019).

Deposition of Daniel R. Fischel In Re: American Realty Capital Properties, Inc. Litigation, In the United States District Court, Southern District of New York, Civil Action No. 1:15-mc-00040-AKH Class Action (July 25, 2019).

Deposition of Daniel R. Fischel In Rajesh M. Shah, et al vs. Zimmer Biomet Holdings, Inc., et al, In the United States District Court, Northern District of Indiana, South Bend Division, Case No. 3:16-cv-815-PPS-MGG (May 17, 2019).

Testimony of Daniel R. Fischel In Colonial Chevrolet Co., Inc., et al., Alley's of Kingsport, Inc., et al., and Union Dodge, Inc., et al. vs. The United States (Nos. 10-647C, 11-100C, and 12-900L – Consolidated), In the United States Court of Federal Claims (May 8, 2019).

Testimony of Daniel R. Fischel In Anthem, Inc. vs. Cigna Corporation, In the Court of Chancery of the State of Delaware, C.A. No. 2017-0114-JTL (March 8, 2019).

Deposition of Daniel R. Fischel In Re: Nine West holdings, Inc., et al., Debtors, United States Bankruptcy Court, Southern District of New York, Chapter 11 Case No. 18-10947 (SCC) (January 16, 2019).

Deposition of Daniel R. Fischel In Re: Sandisk LLC Securities Litigation, United States District Court, Northern District of California, San Francisco Division, Case No. 3:15-cv-01455-VC (November 16, 2018).

Deposition of Daniel R. Fischel In Re: Colonial Chevrolet Co., Inc., Alley's of Kingsport, Inc. and Union Dodge, Inc., et al vs. The United States, In the United States Court of Federal Claims, Nos. 10-647C, 11-100C and 12-900L (Consolidated) (November 15, 2018).

Testimony of Daniel R. Fischel In Re: United States of America, et al., vs. J-M Manufacturing Co., Inc., United States District Court, Central District of California – Western Division, No. CV 6-55 GW (November 5, 2018).

Deposition of Daniel R. Fischel In Re: Appraisal of Air Methods Corp., In the Court of Chancery of the State of Delaware, C.A. No.: 2017-0317-JRS (September 27 and 28, 2018).

Testimony of Daniel R. Fischel In Re: Akorn, Inc., v. Fresenius Kabi, AG, et al., In the Court of Chancery of the State of Delaware, C.A. No. 2018-0300-JTL (July 13, 2018).

Deposition of Daniel R. Fischel In Re: Starz Stockholder Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 12584-VCG (July 12, 2018).

Deposition of Daniel R. Fischel In Re: Akorn, Inc. vs. Fresenius Kabi AG, Quercus Acquisition, Inc. and Fresenius SE & Co. KGaA, In the Court of Chancery of the State of Delaware, Index No. 2018-0300 (June 30, 2018).

Deposition of Daniel R. Fischel In Re: Physiotherapy Holdings, Inc., et al., Debtors; PAH Litigation Trust v. Water Street Healthcare Partners, L.P., et al., In the United States Bankruptcy Court for the District of Delaware, Case No. 13-12965 (KG) (Jointly Administered) (June 5, 2018).

Deposition of Daniel R. Fischel In Re: Facebook, Inc. Class C Reclassification Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 12286-VCL (May 18, 2018).

Testimony of Daniel R. Fischel In Re: Dr. Alan Sacerdote, et al. vs. New York University, In the United States District Court for the Southern District of New York, Civil Action No. 1:16-cv-6284-KBF (April 24, 25 and 26, 2018).

Deposition of Daniel R. Fischel In Re: Daniel Turocy, et al. vs. El Pollo Loco Holdings, Inc., et al., In the United States District Court, Central District of California, Southern Division, Case No. 8:15-cv-01343-DOC-KES (April 12, 2018).

Deposition of Daniel R. Fischel In Re: United States of America v. AT&T Inc., Directv Group Holdings, LLC, and Time Warner Inc., In the United States District Court for the District of Columbia, Case No. 1:17-cv-02511-RJL (March 9, 2018).

Deposition of Daniel R. Fischel In Re: Dr. Alan Sacerdote, et al. vs. New York University, In the United States District Court for the Southern District of New York, Civil Action No. 1:16-cv-6284-KBF (March 1, 2018).

Testimony of Daniel R. Fischel In Re: Lehman Brothers Holdings Inc., et al., In the United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No. 08-13555 (SCC) (December 4, 2017).

Deposition of Daniel R. Fischel In Re: Lehman Brothers Holdings Inc., et al., In the United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No. 08-13555 (SCC) (October 17, 2017).

Testimony of Daniel R. Fischel In Re: Genon Energy, Inc., et al, Debtors, In the United States Bankruptcy Court for the Southern District of Texas Houston Division, Chapter 11, Case No. 17-33695 (DRJ) (October 6, 2017).

Deposition of Daniel R. Fischel In Re: Genon Energy, Inc., et al, Debtors, In the United States Bankruptcy Court for the Southern District of Texas Houston Division, Chapter 11, Case No. 17-33695 (DRJ) (August 25, 2017).

Deposition of Daniel R. Fischel In Re: United States ex re. Hendrix et al., vs. JM Manufacturing Company, Inc., et al., In the United States District Court, Central District of California, Case No. ED CV 06-00055-GW (July 20, 2017).

Testimony of Daniel R. Fischel In Re: Saguaro Power Co. v. Pioneer Americas LLC d/b/a Olin Chlor Alkali Products, In AAA Case No. 01-16-0005-1073 (June 30, 2017).

Testimony of Daniel R. Fischel In Re: Syngenta AG MIR 162 Corn Litigation, In the United States District Court for the District of Kansas, Master File No. 2:14-MD-02591-JWL-JPO (June 19, 2017).

Testimony of Daniel R. Fischel In Re: Motors Liquidation Company, f/k/a General Motors Corporation, et al., Debtors, United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No.:09-50026 (MG) and Motors Liquidation Company Avoidance Action Trust, et al vs. JPMorgan Chase Bank, N.A., et al., United States Bankruptcy Court, Southern District of New York, Case No.: 09-00504 (MG) (May 2 and 3, 2017).

Deposition of Daniel R. Fischel In Re: Alere-Abbott Merger Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 12963-VCG (April 4, 2017).

Testimony of Daniel R. Fischel In Re: Appraisal of AOL Inc., In the Court of Chancery of the State of Delaware, Consol C.A. No. 11204-VCG (March 20, 2017).

Deposition of Daniel R. Fischel <u>In Re: City of Daytona Beach Policy and Fire Pension Fund, et al vs. Examworks Group, Inc., et al.</u>, In the Court of Chancery of the State of Delaware, C.A. No. 12481-VCL (February 22, 2017).

Deposition of Daniel R. Fischel <u>In Re: Appraisal of AOL Inc.</u>, In the Court of Chancery of the State of Delaware, Consol C.A. No. 11204-VCG (February 14 and 15, 2017).

Deposition of Daniel R. Fischel <u>In Re: Motors Liquidation Company, f/k/a General Motors Corporation, et al., Debtors</u>, United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No.:09-50026 (MG) and <u>Motors Liquidation Company Avoidance Action Trust, et al vs. JPMorgan Chase Bank, N.A., et al.</u>, United States Bankruptcy Court, Southern District of New York, Case No.: 09-00504 (MG) (January 31, 2017).

Deposition of Daniel R. Fischel <u>In Re: Syngenta Litigation</u>, In the State of Minnesota District Court, County of Hennepin Fourth Judicial District, Court File No. 27-CV-15-3785 and <u>In Re: Syngenta AG MIR 162 Corn Litigation</u>, In the United States District Court for the District of Kansas, Case No. 2:14-md-2591-JWL-JPO (January 20, 2017).

Testimony of Daniel R. Fischel <u>In the Matter of Motiva Enterprises LLC vs. Bechtel Corporation, Jacobs Engineering Group, Inc. and Bechtel-Jacobs CEP Port Arthur Joint Venture</u>, International Institute for Conflict Prevention and Resolution (October 20, 2016)

Deposition of Daniel R. Fischel in <u>Beaver County Employees Retirement Fund, et al., vs. Cyan, Inc., et al.</u>, Superior Court of the State of California, County of San Francisco, Lead Case No. CGC-14-538355 (Consolidated with No. CGC-14-539008) (October 11, 2016).

Testimony of Daniel R. Fischel <u>In Re: Paragon Offshore PLC, et al, Debtors</u>, In the United States Bankruptcy Court, District of Delaware, Case No. 16-10386 (September 23, 2016).

Deposition of Daniel R. Fischel <u>In the Matter of Motiva Enterprises LLC vs. Bechtel Corporation, Jacobs Engineering Group, Inc. and Bechtel-Jacobs CEP Port Arthur Joint Venture</u>, International Institute for Conflict Prevention and Resolution (August 25, 2016)

Deposition of Daniel R. Fischel <u>In Re: Syngenta AG MIR162 Corn Litigation</u>, In the United States District Court for the District of Kansas; Case No. 2;14-MD-02591-JWL-JPO and <u>In Re: Syngenta Litigation</u>, In the State of Minnesota District Court, County of Hennepin, Fourth Judicial District, Case No. 27-CV-15-385 (August 11, 2016).

Deposition of Daniel R. Fischel <u>The Western and Southern Life Insurance Company vs. The Bank of New York Mellon</u>, Court of Common Pleas, Hamilton County, Ohio, Case No. A 1302490 (July 27, 2016).

Testimony of Daniel R. Fischel in <u>Herbalife, Ltd., vs. KPMG LLP</u>, Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution, CPR Case No. 1100076998 (May 19, 2016).

Testimony of Daniel R. Fischel in <u>iHeart Communications, Inc., f/k/a Clear Channel Communications, Inc. vs. Benefit Street Partners, et al.</u>, In the District Court of Bexar County, Texas, Cause No. 2016 CI 04006 (May 17, 2016).

Deposition of Daniel R. Fischel in <u>iHeart Communications, Inc., f/k/a Clear Channel Communications, Inc. vs. Benefit Street Partners, et al.</u>, In the District Court of Bexar County, Texas, Cause No. 2016 CI 04006 (May 12, 2016).

Testimony of Daniel R. Fischel in <u>U.S. Commodity Futures Trading Commission v. Igor B. Oystacher and 3 Red Trading, LLC</u>, In the United States District Court for the Northern District of Illinois, Eastern Division, Docket No. 15 C 9196 (May 6, 2016).

Testimony of Daniel R. Fischel in <u>Merion Capital LP and Merion Capital II, LP vs. Lender Processing Services, Inc.</u>, In the Court of Chancery of the State of Delaware, C.A. No. 9320-VCL (May 4 and 5, 2016).

Testimony of Daniel R. Fischel in <u>iHeart Communications, Inc., f/k/a Clear Channel Communications, Inc. v. Benefit Street Partners LLC, et al.</u>, In the District Court of Bexar County, Texas, 285th Judicial District, Cause No. 2016-CI 04006 (April 5, 2016).

Deposition of Daniel R. Fischel in <u>iHeart Communications, Inc., f/k/a Clear Channel Communications, Inc. v. Benefit Street Partners LLC, et al.</u>, In the District Court of Bexar County, Texas, 285th Judicial District, Cause No. 2016-CI 04006 (April 2, 2016).

Deposition of Daniel R. Fischel in <u>Herbalife Ltd. vs. KPMG LLP</u>, Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution, CPR Case No.1100076998 (March 31, 2016).

Deposition of Daniel R. Fischel in <u>U.S. Commodity Futures Trading Commission v. Igor B. Oystacher and 3 Red Trading, LLC</u>, In the United States District Court, Northern District of Illinois, Eastern Division, No. 15-cv-09196 (March 25, 2016).

Deposition of Daniel R. Fischel in <u>Merion Capital LP and Merion Capital II, LP vs. Lender Processing Services, Inc.</u>, In the Court of Chancery of the State of Delaware, C.A. No. 9320-VCL (March 15, 2016).

Deposition of Daniel R. Fischel in <u>Lawrence E. Jaffe Pension Plan, On Behalf of Itself and All Others Similarly Situated v. Household International, Inc., et al.</u>, In the United States District Court, Northern District of Illinois Eastern Division, Lead Case No. 02-C-5893 (February 24, 2016).

Deposition of Daniel R. Fischel in <u>Robert E. Morley, Jr. and REM Holdings 3, LLC vs. Square, Inc., Jack Dorsey, and James McKelvey, Jr.</u>, United States District Court for the Eastern District of Missouri, Eastern Division, Civil Action No. 14-CV-00172-SNLJ (February 19, 2016).

Testimony of Daniel R. Fischel <u>In the Matter of the Application of U.S. Bank National Association, The Bank of New York Mellon, et al.</u>, Supreme Court of the State of New York, County of New York, Index No. 652382/2014 (January 20 and 21, 2016).

Testimony of Daniel R. Fischel in <u>Sangeeth Peruri v. Ameriprise Financial, Inc., et al</u>, American Arbitration Association, Case No. 01-15-0002-3991 (December 7, 2015).

Deposition of Daniel R. Fischel <u>In the Matter of the Application of U.S. Bank National Association, The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., et al</u>, In the Supreme Court of the State of New York, County of New York, Index No. 652382/2014 (December 3, 2015).

Testimony of Daniel R. Fischel in <u>Securities and Exchange Commission v. Arkadiy Dubovoy, et al</u>, In the United States District Court for the District of New Jersey, Civil Case No. 15-cv- 6076-MCA (October 8, 2015).

Deposition of Daniel R. Fischel in <u>Steven A. Stender, Harold Silver and Infinity Clark Street Operating, L.L.C., on behalf of themselves and all others similarly situated v. Archstone- Smith Operating Trust, et al.</u>, in the United States District Court for the District of Colorado, Case No. 07-CV-02503-WJM-MJW (July 24, 2015).

Testimony of Daniel R. Fischel <u>In Re: Determination of Royalty Rates and Terms for Ephemeral Recording and Digital Performance of Sound Recordings (Web IV)</u>, in the United States Copyright Royalty Judges, The Library of Congress, Docket No. 14-CRB-0001-WR (2016-2020) (May 21 and 22, 2015).

Deposition of Daniel R. Fischel <u>In Re: Determination of Royalty Rates and Terms for Ephemeral Recording and Digital Performance of Sound Recordings (Web IV)</u>, in the United States Copyright Royalty Judges, The Library of Congress, Docket No. 14-CRB-0001-WR (2016-2020) (April 1, 2015).

Deposition of Daniel R. Fischel in <u>MacDermid, Incorporated vs. Cookson Group, PLC, Cookson Electronics and Enthone, Inc.</u>, in the Superior Court, Judicial District of Waterbury, Docket No. UWY-CV-12-6016356-S (January 21, 2015).

Testimony of Daniel R. Fischel in the <u>Securities and Exchange Commission vs. Samuel E. Wyly and Donald R. Miller, Jr., in his capacity as the Independent Executor of the Will and Estate of Charles J. Wyly, Jr.</u>, in the United States District Court, Southern District of New York, 10 Civ. 5760 (SAS) (November 17, 2014).

Deposition of Daniel R. Fischel <u>In Re: Activision Blizzard, Inc. Stockholder Litigation</u>, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 8885-VCL (October 17, 2014).

Testimony of Daniel R. Fischel in <u>Hugh M. Caperton, Harman Development Corporation, Harman Mining Corporation, and Sovereign Coal Sales, Inc. v. A.T. Massey Coal Company, Inc.</u>, In the Circuit Court for Buchanan County, Case No. 027CL10000771-00 (May 20 and 21, 2014).

Deposition of Daniel R. Fischel in Center Partners, Ltd., et al v. Urban Shopping Centers, L.P., et al., In the Circuit Court of Cook County, Illinois, County Department, Law Division, Case No. 04 L 012194 (April 24, 2014).

Deposition of Daniel R. Fischel in Third Point LLC v. William F. Ruprecht, et al and Sotheby's, In the Court of Chancery of the State of Delaware, C.A. No. 9469-VCP (April 19, 2014).

Deposition of Daniel R. Fischel in Hugh M. Caperton, Harman Development Corporation, Harman Mining Corporation, and Sovereign Coal Sales, Inc. v. A.T. Massey Coal Company, Inc., In the Circuit Court for Buchanan County, Case No. 027CL10000771-00 (March 14, 2014).

Deposition of Daniel R. Fischel in Corre Opportunities Fund, LP, Zazove Associates LLC, DJD Group LLLP, First Derivative Traders LP, and Kevan A. Fight vs. Emmis Communications Corporation, United States District Court, Southern District of Indiana, Indianapolis Division, Case No. 1:12-cv-0491-SEB-TAB (October 4, 2013).

Testimony of Daniel R. Fischel In the Matter of the Application of The Bank of New York Mellon, (As Trustee Under Various Pooling and Servicing Agreements and Indenture Trustee under various indentures), Petitioner, for an order, pursuant to CPLR §7701, seeking judicial instructions and approval of a proposed settlement, Index No. 651786/11, Supreme Court of the State of New York, County of New York: Trial Term Part 39 (September 9 and 10, 2013).

Testimony of Daniel R. Fischel In Re: September 11 Litigation, Case No. 21 MC 97 (AKH), United States District Court for the Southern District of New York, (July 16, 2013).

Deposition of Daniel R. Fischel in Cantor Fitzgerald & Co., et al v. American Airlines, Inc., et al, Case No. 21 MC 101 (AKH), 04 CV 7318 (AKH), United States District Court, Southern District of New York (July 1,2013).

Deposition of Daniel R. Fischel In Re: Pfizer Inc. Securities Litigation, Case No. 04 Civ. 9866 (RO) in The United States District Court for the Southern District of New York (June 28, 2013).

Testimony of Daniel R. Fischel in William T. Esrey, Julie C. Esrey, Ronald T. LeMay and Casondra C. Lemay v. Ernst & Young LLP Arbitration, Case No. 13 107 Y 02332 11 (May 29, 2013).

Deposition of Daniel R. Fischel in Christine Bauer-Ramazani and Carolyn B. Duffy, on behalf of themselves and all other similarly situated v. Teachers Insurance and Annuity Association of America – College Retirement and Equities Fund (TIAA-CREF), et al, in the United States District Court, District of Vermont, Docket No. 1:09-cv-190 (May 21, 2013).

Deposition of Daniel R. Fischel In Re: Google Inc. Class C Shareholder Litigation, In the Court of Chancery of the State of Delaware, Case No. 7469CS (May 17, 2013).

Deposition of Daniel R. Fischel In the Matter of the application of The Bank of New York Mellon (as Trustee under various Pooling and Servicing Agreements and Indenture Trustee under various Indentures), et al., Supreme Court of the State of New York, County of New York, Index No. 651786/2011 (May 9, 2013).

Deposition of Daniel R. Fischel in William T. Esrey, Julie C. Esrey, Ronald T. Lemay, and Casondra C. Lemay v. Ernst & Young, L.L.P., Before the American Arbitration Association, Case No. 1234 (May 7, 2013).

Deposition of Daniel R. Fischel in Archer Well Company, Inc. v. GW Holdings LLC and Wexford Capital LP, in the United States District Court, Southern District of New York, ECF Case No. 1 1:12-cv-06762-JSR (April 5, 2013).

Testimony of Daniel R. Fischel in Meso Scale Diagnostics, LLC , Meso Scale Technologies, LLC v. Roche Diagnostics GmbH, et al., In the Court of Chancery of the State of Delaware, Civil Action No. 5589-VCP (February 27, 2013).

Deposition of Daniel R. Fischel in Center Partners, Ltd. et al v. Urban Shopping Centers, L.P., et al, Circuit Court of Cook County, Illinois, No. 04 L 012194 (February 6 and 7, 2013).

Deposition of Daniel R. Fischel In Re: September 11 Litigation, United States District Court, Southern District of New York, Civil Action No. 21 MC 101 (AKH) (January 11, 2013).

Deposition of Daniel R. Fischel in Meso Scale Diagnostics, LLC, Meso Scale Technologies, LLC v. Roche Diagnostics GmbH, et al., In the Court of Chancery of the State of Delaware, Case No: 5589-VCP (November 12, 2012).

Testimony of Daniel R. Fischel in Stuart Bederman, et al. v. Archstone, f/k/a Archstone-Smith Operating Trust, Arbitration before the Honorable Bruce W. Kauffman (October 17, 2012).

Deposition of Daniel R. Fischel in David E. Brown, et al. v. Authentec, Inc. et al., In the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, Civil Division, Case No. 05-2012-CA-57589 (September 18, 2012).

Deposition of Daniel R. Fischel in Stuart Bederman, et al. v. Archstone, f/k/a Archstone-Smith Operating Trust, Arbitration before the Honorable Bruce W. Kauffman (September 14, 2012).

Testimony of Daniel R. Fischel in Tronox, Incorporated, et al., v. Kerr-McGee Corporation, et al., United States Bankruptcy Court, Southern District of New York, Adversary Proceeding No. 09-10098(ALG) (August 7, 8 and 9, 2012).

Deposition of Daniel R. Fischel In re McAfee, Inc. Shareholder Litigation, Superior Court of the State of California, County of Santa Clara, Lead Case No. 1:10-cv-180413 (August 2, 2012).

Testimony of Daniel R. Fischel in Kraft Foods Global, Inc., v. Starbucks Corporation, Arbitration Before JAMS, Arbitration No. 1340008345 (July 31, 2012).

Deposition of Daniel R. Fischel in Altana Pharma AG, and Wyeth v. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd., In the United States District Court, District of New Jersey, Consolidated Civil Action Nos. 04-2355 (JLL)(CCC), 05-1966 (JLL)(CCC), 05-3920 (JLL)(CCC) and 05-3672 (JLL)(CCC) (June 1, 2012).

Deposition of Daniel R. Fischel in Kraft Foods Global, Inc. v. Starbucks Corporation, Arbitration before JAMS, Arbitration No. 1340008345 (May 15, 2012).

Deposition of Daniel R. Fischel in Capital One Financial Corporation v. John A. Kanas and John Bohlsen, In the United States District Court for the Eastern District of Virginia, Alexandria Division, Civil Action No. 1:11-cv-750 (LO/TRJ) (May 10, 2012).

Deposition of Daniel R. Fischel In Re: Pfizer Inc. Securities Litigation, In the United States District Court, Southern District of New York, Case 1:04-cv-09866-LTS-HBP (May 3, 2012).

Deposition of Daniel R. Fischel in Willie R. Pittman, Susan B. Seales and Stephen T. Selzer vs. J. Coley Clark, Moneygram International, Inc., et al., In the Court of Chancery of the State of Delaware, C.A. No. 6387-VCL (April 26, 2012).

Deposition of Daniel R. Fischel in Chona Allison, et al v. CRC Insurance Services, Inc., In the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 10-3313 (March 14 and 15, 2012).

Deposition of Daniel R. Fischel In Re: Tronox Incorporated, et al., Debtors, In the United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No. 09-10156 (ALG) (February 24, 2012).

Testimony of Daniel R. Fischel In Re: BankAtlantic Bancorp, Inc. Litigation, In the Court of Chancery of the State of Delaware, Consolidated Civil Action No. 7068-VCL (January 27 and 30, 2012).

Deposition of Daniel R. Fischel in Hildene Capital Management, LLC et al v. BankAtlantic Bancorp, Inc., et al, In the Court of Chancery of the State of Delaware, C.A. No. 7068- VCL (January 19, 2012).

Deposition of Daniel R. Fischel in Advanced Analogic Technologies, Incorporated v. Skyworks Solutions, Inc. and Powerco Acquisition Corp., In the Court of Chancery of the State of Delaware, Arbitration No. 005-A-CS (November 18, 2011).

Testimony of Daniel R. Fischel in Prudential Retirement Insurance and Annuity Company v. State Street Bank and Trust Company and State Street Global Advisors, Inc., United States District Court, Southern District of New York, Case No. 07-CV-8488 (October 13, 2011).

Deposition of Daniel R. Fischel In Re: Inkeepers USA Trust, et al v. Cerberus Series Four Holdings, LLC., et al, United States Bankruptcy Court, Southern District of New York, Case No. 10-13800 (SCC) (October 5, 2011).

Deposition of Daniel R. Fischel in Mary K. Jones, et al v. Pfizer, Inc., et al, United States District Court, Southern District of New York, Civil Action No. 10-cv-03864 (AKH) ECF (October 4, 2011

Testimony of Daniel R. Fischel in Marina Del Rey Country Club Apartments, et al. vs. Archstone and Archstone Multifamily Series I Trust, Ruby/Archstone Arbitration (August 30, 2011).

Deposition of Daniel R. Fischel in Maher Terminals, LLC v. The Port Authority of New York and New Jersey, Before the Federal Maritime Commission, FMC Docket No. 08-03 (August 25, 2011).

Testimony of Daniel R. Fischel in Securities and Exchange Commission v. Joseph P. Nacchio, Robert S. Woodruff, Afshin Mohebbi, James J. Kozlowski and Frank T. Noyes, United States District Court for the District of Colorado, Civil Action No. 05-cv-480-MSK-CBS (August 16, 2011).

Affidavit of Daniel R. Fischel in Glenhill Capital LP, et al v. Porsche Automobil Holding, SE, f/k/a Dr. Ing. h.c. F. Porsche AG, Supreme Court of the State of New York, County of New York, Index Number 650678/2011 (August 15, 2011).

Deposition of Daniel R. Fischel in Fairfax Financial Holdings Limited and Crum & Forster Holdings Corp. v. S.A.C. Capital Management, LLC, et al., Superior Court of New Jersey, Law Division: Morris County, Docket No. MRS-L-2032-06 (July 27, 2011).

Deposition of Daniel R. Fischel In Re: Lyondell Chemical Company, et al v. Leonard Blavatnik, et al., United States Bankruptcy Court, Southern District of New York, Chapter 11 Case No. 09-10023 – (REG) (Jointly Administered) (July 25, 2011).

Deposition of Daniel R. Fischel In Re: Constar Int'l Inc. Securities Litigation, United States District Court, Eastern District of Pennsylvania, Master File No. 03cv05020 (June 28, 2011).

Affidavit of Daniel R. Fischel In Re: Massey Energy Co. Derivative and Class Action Litigation, in The Court of Chancery of the State of Delaware, C.A. No. 5430-VCS (May 20, 2011).

Deposition of Daniel R. Fischel in Marina Del Rey Country Club, et al v. Archstone and Archstone Multifamily Series I Trust, Ruby/Archstone Arbitration (May 9, 2011).

Testimony of Daniel R. Fischel in The Dow Chemical Company v. Petrochemical Industries Company (K.S.C.), International Chamber of Commerce, International Court of Arbitration, ICC Case No. 16127/JEM/MLK (April 7, 2011).

Testimony of Daniel R. Fischel In Re: Tribune Company, et al., Debtors, In the United States Bankruptcy Court for the District of Delaware, Chapter 11, Case No. 08-13141 (KJC) (March 10, 2011).

Deposition of Daniel R. Fischel In Re: Tribune Company, et al., Debtors, In the United States Bankruptcy Court for the District of Delaware, Chapter 11, Case No. 08-13141 (KJC) (March 2, 2011).

Deposition of Daniel F. Fischel In Re: Genetically Modified Rice Litigation, In the United States District Court for the Eastern District of Missouri, Eastern Division, Case No. 4:06 MD 1811 CDP (February 15, 2011)

Deposition of Daniel R. Fischel in Riceland Food, Inc. v. Bayer Cropscience LP, et al, In the United States District Court, Eastern District of Missouri, Eastern Division, Case No. 4:09- cv-00433 CDP (January 18, 2011).

Deposition of Daniel R. Fischel In Re: Genetically-Modified Rice Litigation, In the United States District Court for the Eastern District of Missouri, Case No. 4:06-MD-1811 (November 11, 12, 2010).

Deposition of Daniel R. Fischel in Coleen Witmer, Individually, and on Behalf of All Others Similarly Situated v. Dynegy Inc., In the District Court of Harris County, Texas, 234th Judicial District (November 6, 2010).

Testimony of Daniel R. Fischel in Terra Firma (GP) 2 Investments Limited v. Citigroup Inc., United States District Court for the Southern District of New York, No. 1:09-CV-10459 (JSR) (November 2, 2010).

Testimony of Daniel R. Fischel in Terra Firma (GP) 2 Investments Limited v. Citigroup Inc., United States District Court for the Southern District of New York, No. 1:09-CV-10459 (JSR) (October 22, 2010).

Testimony of Daniel R. Fischel in Air Products and Chemicals, Inc. v. Airgas, Inc., Peter McCausland, et al, In the Court of Chancery of the State of Delaware, C.A. No. 5249-CC (October 5, 2010)

Deposition of Daniel R. Fischel in Air Products and Chemicals, Inc. v. Airgas, Inc., Peter McCausland, et al, In the Court of Chancery of the State of Delaware, C.A. No. 5249-CC (September 8, 2010).

Deposition of Daniel R. Fischel in Terra Firma (GP) 2 Investments Limited v. Citigroup Inc., United States District Court for the Southern District of New York, No. 1:09-CV-10459 (JSR) (July 28, 2010).

Deposition of Daniel R. Fischel in Citadel Investment Group, L.L.C. et al v. Mikhail Malyshev and Jace Kohlmeier, In the American Arbitration Association, Case No.AAA No. 51 166 00969 09 (July 13, 2010).

Testimony of Daniel R. Fischel In Re: United States of America v. Joseph P. Nacchio, in the United States District Court for the District of Colorado, Case No. 05-CR-00545-EWN (June 23, 2010).

Deposition of Daniel R. Fischel in Cantor Fitzgerald Securities, Cantor Fitzgerald & Co., Cantor Fitzgerald Partners v. The Port Authority of New York and New Jersey, in the Supreme Court of the State of New York, County of New York, Case No. 105447/94 (June 4, 2010).

Deposition of Daniel R. Fischel in Alaska Retirement Management Board on behalf of State of Alaska Public Employees' Retirement System and State of Alaska Teachers' Retirement System v. Mercer (US), Inc., Mercer Human Resources Consulting, Inc., and William M. Mercer, Inc., in The Superior Court for the State of Alaska, First Judicial District at Juneau, Case No. 1JU-07-974CI (April 29, 2010).

Deposition of Daniel R. Fischel In Re: ACS Shareholders Litigation, in The Court of Chancery of the State of Delaware, Consolidated Case No. 4940-VCP (April 26, 2010).

Testimony of Daniel R. Fischel in Securities and Exchange Commission v. Carl W. Jasper, in the United States District Court for the Northern District of California, San Jose Division, Case No. C-07-06122-JW (April 16, 2010).

Deposition of Daniel R. Fischel in Prudential Retirement Insurance and Annuity Company v. State Street Bank and Trust Company and State Street Global Advisors, Inc., in the United States District Court, Southern District of New York, Case No. 07 CIV 8488 (April 9, 2010).

Deposition of Daniel R. Fischel in Re: Lyondell Chemical Company, et al., Debtors. Official Committee of Unsecured Creditors, on behalf of the Debtors' Estates v. Citibank, N.A., et al., in the United States Bankruptcy Court, Southern District of New York, Chapter 11 Case No. 09-10023 – (RED) (December 2, 2009).

Deposition of Daniel R. Fischel in Securities and Exchange Commission v. Carl W. Jasper, In the United States District Court, Northern District of California, San Jose Division, Case No. CV 07-6122 (HRL) (October 22, 2009).

Testimony of Daniel R. Fischel in Ventas, Inc. v. HCP, Inc., In the United States District Court of the Western District of Kentucky at Louisville, Civil Action No. 3:07-cv-00238-JGH (September 2, 2009).

Deposition of Daniel R. Fischel in Frank K. Cooper Real Estate #1, Inc., et al vs. Cendant Corporation f/k/a Hospitality Franchise Systems and Century 21 Real Estate Corporation, Superior Court of New Jersey, Law Division: Morris County, Docket No. MRS-L-377-02 (August 10, 2009).

Deposition of Daniel R. Fischel in Ventas, Inc. v. HCP, Inc., In the United States District Court of the Western District of Kentucky at Louisville, Civil Action No. 3:07-cv-00238-JGH (August 3, 2009).

Deposition of Daniel R. Fischel in U.S. Commodity Futures Trading Commission v. Amaranth Advisors, L.L.C., Amaranth Advisors (Calgary) and Brian Hunter, in the United States District Court, Southern District of New York, Case No. 07 CIV 6682 (July 8, 2009).

Declaration and Expert Surrebutal Report of Daniel R. Fischel in Ventas, Inc. v. HCP, Inc., In The United States District Court for the Western District of Kentucky at Louisville, Case No. 3:07-CV-00238-JGH (June 22, 2009).

Testimony of Daniel R. Fischel in NRG Energy, Inc. v. Exelon Corporation and Exelon Exchange Corporation, in the United States District Court, Southern District of New York, Case No. 09-CV-2448 (JGK) (DFE), (June 3, 2009).

Deposition of Daniel R. Fischel In Re: Delphi Corporation v. Appaloosa Management L.P., et al., In the United States Bankruptcy Court, Southern District of New York; Chapter 11, Case No. 05-44481(RDD) (Jointly administered), (June 2, 2009).

Deposition of Daniel R. Fischel in NRG Energy, Inc. v. Exelon Corporation and Exelon Exchange Corporation, in the United States District Court, Southern District of New York, Case No. 09-CV-2448 (JGK) (DFE), (May 31, 2009).

Deposition of Daniel R. Fischel in e-Bay Domestic Holdings, Inc. v. Craig Newmark and James Buckmaster and Craigslist, Inc., in the Court of Chancery of the State of Delaware, Case No. 3705-CC (May 29, 2009)

Testimony of Daniel R. Fischel In Re: Lawrence E. Jaffe Pension Plan, et al v. Household International, Inc., et al, in the United States District Court for the Northern District of Illinois, Eastern Division, No. 02-C-5893 (April 16, 20, 28 and 29, 2009).

Deposition of Daniel R. Fischel In Re: Rohm and Haas Company v. The Dow Chemical Company and Ramses Acquisition Corp., In the Court of Chancery of the State of Delaware, C.A. No. 4309-CC (March 4, 2009).

Deposition of Daniel R. Fischel In the Matter of Hoffman, et al. v. American Express Travel Related Services Company, Inc., et al., in the Superior Court of the State of California, in and for the County of Alameda, Case No. 2001-022881 (January 15, 2009).

Deposition of Daniel R. Fischel In Re: TyCom Ltd. Securities Litigation, in the United States District Court, District of New Hampshire, Docket No. 03-CV-1352 (September 22, 2008).

Deposition of Daniel R. Fischel In Re: Hexion Specialty Chemicals, Inc., et al v. Huntsman Corp., in the Court of Chancery of the State of Delaware, Civil Action No. 3841-VCL (September 4, 2008).

Deposition of Daniel R. Fischel In Re: Stone Energy Corp. Securities Litigation, in the United States District Court, Western District of Louisiana, Lafayette-Opelousas Division, Civil Action No. 6:05CV2088 (LEAD) (July 16, 2008).

Deposition of Daniel R. Fischel In Re: Initial Public Offering Securities Litigation, in the United States District Court, Southern District of New York, Master File No. 21 MC 92 (SAS) (April 3 and 4, 2008).

Deposition of Daniel R. Fischel In Re: Lawrence E. Jaffe Pension Plan, et al v. Household International, Inc., et al, in the United States District Court for the Northern District of Illinois, Eastern Division, No. 02-C-5893 (March 21, 2008).

Deposition of Daniel R. Fischel In Re: IAC/InteractiveCorp and Barry Diller v. Liberty Media Corporation, in the Court of Chancery of the State of Delaware in and for New Castle County, Consolidated Case Number 3486-VCL (February 29, 2008).

Testimony of Daniel R. Fischel In Re: Immunicon Corporation v. Veridex LLC, before the American Arbitration Association (Commercial Arbitration Rules), Case Number 50 180T 00192 07 (January 17, 2008).

Deposition of Daniel R. Fischel In Re: Unitedglobalcom Shareholders Litigation, in the Court of Chancery of the State of Delaware in and for New Castle County, Consolidated C.A. No. 1012-N (November 19, 2007).

Deposition of Daniel R. Fischel In Re: Cendant Corporation Litigation, in the United States District Court for the District of New Jersey, Master File No. 98-1664 (WHW) (November 15, 2007).

Deposition of Daniel R. Fischel In Re: Cendant Corporation Litigation, in the United States District Court for the District of New Jersey, Master File No. 98-1664 (WHW) (October 16, 2007).

Deposition of Daniel R. Fischel In Re: Schering-Plough Corporation Securities Litigation, in the United States District Court for the District of New Jersey, Master File No. 01-CV-0829 (KSH/RJH) (October 12, 2007).

Deposition of Daniel R. Fischel In Re: Carpenters Health & Welfare Fund, et al. vs. The Coca-Cola Company, in the United States District Court, Northern District of Georgia, Atlanta Division, File No. 1:00-CV-2838-WBH (Consolidated) (September 26, 2007).

Deposition of Daniel R. Fischel In Re: Parker Freeland, et al., vs. Iridium World Communications, Ltd., et al., in the United States District Court for the District of Columbia, Civil Action No. 99-1002 (August 7, 2007)

Deposition of Daniel R. Fischel In Re: Chuck Ginsburg v. Philadelphia Stock Exchange, Inc., et al., In the Court of Chancery of the State of Delaware in and for New Castle County, C.A. No. 2202-N (June 12, 2007).

Testimony of Daniel R. Fischel In Re: Holcombe T. Green and HTG Corp. v. McKesson, Inc., et al, In the Superior Court for the County of Fulton, State of Georgia, Civil Action File No. 2002-CV-48407 (June 5, 2007).

Affidavit of Daniel R. Fischel In Re: Lear Corporation Shareholders Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 2728-VCS (May 30, 2007).

Affidavit of Daniel R. Fischel In Re: Aeroflex, Inc. Shareholder Litigation, in the Supreme Court of the State of New York, County of Nassau: Commercial Division, Index No. 07-003943 (May 23, 2007).

Deposition of Daniel R. Fischel In Re: Holcombe T. Green and HTG Corp. v. McKesson, Inc., HBO & Company, Albert Bergonzi, and Jay Gilbertson, in the Superior Court for the County of Fulton, State of Georgia, Civil Action File No. 2002W48407 (May 21, 2007).

Deposition of Daniel R. Fischel In Re: Adelphia Communications Corp. v. Deloitte & Touche LLP, et al, in the Court of Common Pleas, Philadelphia County, Pennsylvania, Case No. 000598 (May 3 and 4, 2007).

Testimony of Daniel R. Fischel In Re: United States of America v. Joseph P. Nacchio, in the United States District Court for the District of Colorado, Case No. 05-CR-00545-EWN (April 9, 2007).

Deposition of Daniel R. Fischel In Re: MK Resources Company Shareholders Litigation, in the Court of Chancery for the State of Delaware in and for New Castle County, C.A. No. 1692- N (February 22, 2007).

Deposition of Daniel R. Fischel In Re: Starr International Company, Inc. v. American International Group, Inc., In the United States District Court, Southern District of New York, Case No. 05 CV 6283 (January 26, 2007).

Written testimony of Daniel R. Fischel In Re: Verizon Communications Inc. and Verizon Services Corp. v. Christopher G. Pizzirani, In the United States District Court for the Eastern District of Pennsylvania, Case No. 2:06-cv-04645-MK (November 6, 2006).

Testimony of Daniel R. Fischel In Re: Northeast Savings, F.A. v. United States of America, In the United States Claims Court, Case No. 92-550 C (November 2 and 9, 2006).

Testimony of Daniel R. Fischel In Re: United States of America v. Sanjay Kumar and Stephen Richards, United States District Court, Eastern District of New York, 04 Civ. 4104 (ILG) (October 25, 2006).

Affidavit of Daniel R. Fischel In Re: Lionel I. Brazen and Nancy Hammerslough, et al v. Tyco International Ltd., et al, In the Circuit Court of Cook County, Illinois County Department, Chancery Division, No. 02 CH 11837 (September 18, 2006).

Deposition of Daniel R. Fischel In Re: Tele-Communications, Inc. Shareholders Litigation, in the Court of Chancery of the State of Delaware in and for New Castle County, Consolidated C.A. No. 16470 (September 15, 2006).

Affidavit of Daniel R. Fischel In Re: United States of America v. Sanjay Kumar and Stephen Richards, United States District Court, Eastern District of New York, 04 Civ. 4104 (ILG) (September 8, 2006).

Deposition of Daniel R. Fischel In Re: James Gilbert v. McKesson Corporation, et al., in the State Court of Fulton County, State of Georgia, Civil Action File No. 02VS032502C (September 7, 2006).

Supplemental Declaration of Daniel R. Fischel In Re: United States of America v. Jeffrey K. Skilling, in the United States District Court, Southern District of Texas, Houston Division, Crim. No. H-04-25 (Lake, J.) (August 25, 2006).

Affidavit of Daniel R. Fischel In Re: United States of America v. Sanjay Kumar and Stephen Richards, United States District Court, Eastern District of New York, 04 Civ. 4104 (ILG) (August 22, 2006).

Declaration of Daniel R. Fischel In Re: United States of America v. Jeffrey K. Skilling, in the United States District Court, Southern District of Texas, Houston Division, Crim. No. H-04- 25 (Lake, J.) (August 3, 2006).

Deposition of Daniel R. Fischel In Re: Enron Corporation Securities Litigation, in the United States District Court, Southern District of Texas, Houston Division, Case Number: H-01- 3624 (May 24, 2006).

Testimony of Daniel R. Fischel In Re: Guidant Corporation Shareholders Derivative Litigation, in the United States District Court, Southern District of Indiana, Indianapolis Division, Master Derivative Docket No. 1:03-CV-955-SEB-WTL (January 20, 2006).

Testimony of Daniel R. Fischel In Re. Hideji Jumbo Tanaka v. Cerberus Far East Management, L.L.C., et al., AAA Case No. 50 T 116 00284 03, (December 15, 2005).

Deposition of Daniel R. Fischel In Re: McKesson HBOC, Inc. Securities Litigation, in the United States District Court for the Northern District of California, No. C-99-20743-RMW (August 16, 2005).

Testimony of Daniel R. Fischel In the Matter of Visconsi Companies Ltd., et al. and Lehman Brothers, et al., National Association of Securities Dealers Department of Arbitration, Grievance No. 03-07606 (July 26, 2005).

Testimony of Daniel R. Fischel In Re: John P. Crowley, as Receiver of Ambassador Insurance Company v. Doris June Chait, et al., in the United States District Court for the District of New Jersey, Case No. 85-2441 (HAA) (July 21 and 22, 2005).

Deposition of Daniel R. Fischel In Re: Electronic Data Systems Corporation Securities Litigation, in the United States District Court for the Eastern District of Texas, Tyler Division, Case No. 6:03-MD-1512 (July 20, 2005).

Testimony of Daniel R. Fischel In Re: United States of America v. Philip Morris, Inc., et al, in the United States District Court for the District of Columbia, Case No. 1:99CV02496 (May 26 and 27, 2005).

Deposition of Daniel R. Fischel In Re: Cordis Corporation v. Boston Scientific Corporation, et ano, in the United States District Court for the District of Delaware, Case No. 03-027-SLR (May 25, 2005).

Deposition of Daniel R. Fischel In Re: United States of America v. Philip Morris, Inc., et al, in the United States District Court for the District of Columbia, Case No. 1:99CV02496 (May 16, 2005).

Testimony of Daniel R. Fischel In Re: Drury Industries, Inc. v. Drury Properties, Inc., in the First Judicial District Court of the State of Nevada in and for Carson City, Nevada (April 6 and 7, 2005).

Deposition of Daniel R. Fischel In Re: Jerry R. Summers and George T. Lenormand, et al v. UAL Corporation ESOP Committee, Marty Torres, Barry Wilson, Doug Walsh, Ira Levy, Don Clements, Craig Musa, and State Street Bank and Trust Company, in the United States District Court for the North District of Illinois, Eastern Division, No. 03 C 1537 (March 9, 2005).

Deposition of Daniel R. Fischel In Re: Drury Industries, Inc. v. Drury Properties, Inc., in the First Judicial District Court of the State of Nevada in and for Carson City, Nevada (March 7 and 10, 2005).

Testimony of Daniel R. Fischel In the Matter of Fyffes PLC v. DCC PLC, S&L Investments Limited, James Flavin and Lotus Green Limited, in The High Court, Dublin, Ireland (2002 No. 1183P) (February 1 and 2, 2005).

Deposition of Daniel R. Fischel In the Matter of the Arbitration between The Canada Life Assurance Company and The Guardian Life Insurance Company of America (January 12, 2005).

Deposition of Daniel R. Fischel In Re: IDT Corporation vs. Telefonica, S.A., et al, in the United States District Court, District of New Jersey, Civil Action No. 01-CV 471 (December 14, 2004).

Deposition of Daniel R. Fischel In Re: DQE, Inc. Securities Litigation, in the United States District Court, Western District of Pennsylvania, Master File No. 01-1851 (December 7, 2004)

Testimony of Daniel R. Fischel In Re: United States of America v. Daniel Bayly, James A Brown, Robert S. Furst, Daniel O. Boyle, William R. Fuhs and Sheila K. Kahanek, in the United States District Court of Southern Texas Houston Division, Case No. H-CR-03-363 (November 4, 2004).

Testimony of Daniel R. Fischel <u>In the Matter of the Arbitration Between the Canada Life</u> <u>Assurance Company,</u> <u>Petitioner v. Caisse Centrale De Reassurance, Respondent,</u> (November 2, 2004).

Testimony of Daniel R. Fischel <u>In Re: Yankee Atomic Electric Company, Connecticut Yankee</u> <u>Atomic Power</u> <u>Company, and Maine Yankee Atomic Power Company v. The United States,</u> in the United States Court of Federal Claims, Case Nos. 98-126C, 98-154C and 98-474C (August 9, 2004).

Affidavit of Daniel R. Fischel <u>In Re: Oracle Corp. Derivative Litigation,</u> in the Court of the Chancery of the State of Delaware In and For New Castle County, Consolidated Civil Action No. 18751 (June 8, 2004).

Deposition of Daniel R. Fischel <u>In Re: Reading International, Inc., et al v. Regal Entertainment Group, et al,</u> (Delaware Chancery Court) (May 30, 2004).

Affidavit of Daniel R. Fischel <u>In Re: Reading International, Inc., et al v. Regal Entertainment Group, et al,</u> (Delaware Chancery Court) (May 28, 2004).

Deposition of Daniel R. Fischel <u>In Re: Northeast Savings, F.A. v. United States of America,</u> in the United States Claims Court, Case No. 92-550-C (May 4, 5 and 6, 2004).

Deposition of Daniel R. Fischel <u>In Re: Tyson Foods, Inc. Securities Litigation,</u> in the United States District Court for the District of Delaware, Civil Action No. 01-425-SLR (March 18, 2004).

Testimony of Daniel R. Fischel <u>In the Matter of Coram Healthcare Corp. and Coram, Inc.,</u> <u>Debtors,</u> In the United States Bankruptcy Court for the District of Delaware, Case No. 00- 3299 Through 00-3300 (MFW) (March 4, 2004).

Testimony of Daniel R. Fischel <u>In Re: Tracinda Corporation v. DaimlerChrysler AG, et al,</u> in the United States District Court for the District of Delaware, Civil Action No. 00-984 (February 11, 2004)

Deposition of Daniel R. Fischel <u>In Re: Gerald K. Smith, as Plan Trustee for and on behalf of the</u> <u>Estates of</u> <u>Boston Chicken, Inc., et al. v. Arthur Anderson LLP, et al.,</u> in the United States District Court for the Northern District of Illinois, Case Nos. CIV-01-218-PHX-PGR, CIV-01- 246-PHX-EHC, CIV-02-1162-PHX-PGR, CIV-02-1248-PHX-PGR (Consolidated) (October 29 and 30, 2003).

Deposition of Daniel R. Fischel <u>In Re: Irene Abrams, on behalf of herself and all others similarly</u> <u>situated v. Van</u> <u>Kampen Funds, Inc., Van Kampen Investment Advisory Corp., Van</u> <u>Kampen Prime Rate Income Trust,</u> <u>Howard Tiffen, Richard F. Powers III, Stephen L. Boyd,</u> <u>Dennis J. McDonnell and Jeffrey W. Maillet,</u> in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 01-C-7538 (October 21, 2003).

Deposition of Daniel R. Fischel <u>In the Matter of Coram Healthcare Corp. and Coram, Inc.,</u> <u>Debtors,</u> In the United States Bankruptcy Court for the District of Delaware, Case No. 00- 3299 Through 00-3300 (MFW) (October 13, 2003).

Testimony of Daniel R. Fischel <u>In Re: Transcore Holdings, Inc. v. Rocky Mountain Mezzanine Fund</u> <u>II, LP;</u> <u>Hanifen Imhoff Mezzanine Fund, LP; Moramerica Capital Corporation; and</u> <u>NDSBIC, LP and W. Trent</u> <u>Ates and Fred H. Rayner, In Re: Jams Arbitration,</u> Case No. 1410003193 (September 24, 2003).

Deposition of Daniel R. Fischel <u>In Re: Transcore Holdings, Inc. v. Rocky Mountain Mezzanine Fund</u> <u>II, LP;</u> <u>Hanifen Imhoff Mezzanine Fund, LP; Moramerica Capital Corporation; and</u> <u>NDSBIC, LP and W. Trent</u> <u>Ates and Fred H. Rayner, In Re: Jams Arbitration,</u> Case No. 1410003193 (May 13, 2003).

Deposition of Daniel R. Fischel <u>In Re: AT&T Broadband Management Corporation v. CSG Systems,</u> <u>Inc.,</u> American Arbitration Association No. 77 181 00159 02 VSS (April 9, 2003).

Deposition of Daniel R. Fischel <u>In Re: DaimlerChrysler AG Securities Litigation,</u> in the United States District Court for the District of Delaware, Civil Action No. 00-993-JJF (February 11 and 12, 2003).

Deposition of Daniel R. Fischel <u>In Re: David T. Bard, Commissioner of Banking and Insurance for the State of</u> <u>Vermont, as Receiver for Ambassador Insurance Company v. Arnold Chait, et al,</u> in the United States District Court for the District of New Jersey, Civil Action No. 85- 2441 (December 12, 2002).

Testimony of Daniel R. Fischel <u>In Re: MHC Financing Limited Partnership, et al vs. City of San Rafael, et al,</u> in the United States District Court, Northern District of California, Case No. C 00-3785 VRW (November 6, 2002).

Deposition of Daniel R. Fischel <u>In Re:  MHC Financing Limited Partnership, et al vs. City of San</u> <u>Rafael, et al</u>, in the United States District Court, Northern District of California, Case No. C 00-3785 VRW (October 16, 2002).

Deposition of Daniel R. Fischel <u>In Re: Maine Yankee Atomic Power Company v. United States of</u> <u>America</u>, In the United States Court of Federal Claims, Case No. 98-474 C (October 8 and 9, 2002)

Testimony of Daniel R. Fischel <u>In Re: California Federal Bank, FSB v. The United States of America</u>, In the United States Court of Federal Claims, Case No. 92-138C (September 20 and 23, 2002).

Deposition of Daniel R. Fischel <u>In Re: Maine Yankee Atomic Power Company v. United States of</u> <u>America</u>, In the United States Court of Federal Claims, Case No. 98-474 C (September 4 and 6, 2002).

Deposition of Daniel R. Fischel <u>In the Matter of RDM Sports Group, Inc., et al v. Smith,</u> <u>Gambrell, Russell,</u> <u>L.L.P.; et al</u>, In the United States Bankruptcy Court for the Northern District of Georgia, Newnan Division, Case No. 00-1065 (May 14 and 15, 2002).

Deposition of Daniel R. Fischel <u>In Re: Walter B. Hewlett, individually and as Trustee of the William</u> <u>R. Hewlett</u> <u>Revocable Trust, and Edwin E. van Bronkhorst as Co-Trustee of the William R.</u> <u>Hewlett Revocable Trust</u> <u>v. Hewlett-Packard Company</u>, in the Court of the Chancery of the State of Delaware in and for New Castle County (April 24, 2002).

Deposition of Daniel R. Fischel <u>In Re: California Federal Bank, FSB, v. The United States of</u> <u>America</u>, in the United States District Court of Federal Claims, Case No. 92-138C (April 16 and 17, 2002).

Deposition of Daniel R. Fischel <u>In Re: Computer Associates Class Action Securities Litigation</u>, in the United States District Court, Eastern District of New York, File No. 98-CV-4839 (TPC) (MLO) (March 19 and 20, 2002).

Deposition of Daniel R. Fischel <u>In Re: United States of America v. David Blech</u>, In the United States District Court, Southern District of New York, Case No. S1 97 Cr. 402 (KTD) (February 13, 2002).

Testimony of Daniel R. Fischel <u>In the Matter of Coram Healthcare Corp. and Coram, Inc.,</u> <u>Debtors</u>, In the United States Bankruptcy Court for the District of Delaware, Case No. 00- 3299 Through 00-3300 (MFW) (December 14, 2001).

Deposition of Daniel R. Fischel <u>In Re: Sunbeam Securities Litigation</u>, In the United States District Court, Southern District of Florida, Miami Division, Case No. 98-8258-CIV – Middlebrooks (December 4, 5 and 6, 2001).

Affidavit of Daniel R. Fischel <u>In Re: Jack M. Webb, Special Deputy Receiver for American Eagle</u> <u>Insurance</u> <u>Company v. Elvis Mason, Mason Best Company, L.P., Don D. Hutson, American</u> <u>Eagle Group, Inc.,</u> <u>Marion Phillip Guthrie, Frederick G. Anderson, George F. Cass, Richard M. Kurz, Patricia S. Pickard,</u> <u>Arthur Andersen & Co., L.L.P., and Towers, Perrin Forester & Crosby, Inc., D/B/A Tillinghast</u>, In the District Court of Travis County, Texas, 201st Judicial District, Cause No. 99-08253 (September 7, 2001).

Declaration of Daniel R. Fischel <u>In the Matter of Inquiry Concerning High-Speed Access to</u> <u>the Internet Over</u> <u>Cable and Other Facilities:</u> Before the Federal Communications Commission, Washington DC, GN Docket No. 00-185, (Declaration with K. Arrow, G. Becker, D. Carlton, R. Gertner, J. Kalt, H. Sider, and Gustavo Bamberger) (July 24, 2001).

Declaration of Daniel R. Fischel <u>In Re: Walter Green, on behalf of himself and all others</u> <u>similarly situated v.</u> <u>Merck-Medco Managed Care, L.L.C.</u>, United States District Court, Southern District of New York, Civil Action No. 99 CIV 0847 (CLB) (June 18, 2001).

Testimony of Daniel R. Fischel <u>In Re:Tyson Foods, Inc. and Lasso Acquisition Corporation v. IBP, Inc.</u>, Delaware Chancery Court, (May 25, 2001).

Deposition of Daniel R. Fischel <u>In Re:Tyson Foods, Inc. and Lasso Acquisition Corporation v. IBP, Inc.</u>, Delaware Chancery Court, (May 10, 2001).

Deposition of Daniel R. Fischel <u>In Re: Myron Weiner, Nicholas Sitnycky, Ronald Anderson and</u> <u>Robert Furman</u> <u>on behalf of themselves and all others similarly situated v. The Quaker</u> <u>Oats Company and William D.</u> <u>Smithburg</u>, United States District Court, Northern District of Illinois, Case No. 98 C 3123, (January 24, 2001).

Deposition of Daniel R. Fischel In Re: Retsky Family Limited Partnership v. Price Waterhouse, LLP, United States District Court, Northern District of Illinois, Eastern Division, No. 97 C 7694, (October 31, 2000).

Joint Affidavit of Daniel R. Fischel and David J. Ross In Re: Floyd D. Wilson, for himself and all others similarly situated v. Massachusetts Mutual Life Insurance Company, in the First Judicial District Court, County of Santa Fe, State of New Mexico, No. D0101 CV-98-02814 (August 4, 2000).

Affidavit of Daniel R. Fischel In Re: T. Rowe Price Recovery Fund, L.P., and Carl Marks Management Co., L.P., individually and derivatively on behalf of Seaman Furniture Co., Inc. v. James Rubin, M.D. Sass Associates, Inc., Resurgence Asset Management, L.L.C., M.D. Sass Corporation Resurgence Partners, L.P. , M.D. Sass Corporate Resurgence International, Ltd., Robert Symington, Byron Haney, Alan Rosenberg, Steven H. Halper, and Peter McGeough and Seaman Furniture Co., Inc., In the Court of Chancery of the State of Delaware in and for New Castle County, C.A. No. 18013, (June 7, 2000).

Testimony of Daniel R. Fischel In Re: Bank United of Texas, FSB, et al., v. United States of America, United States Court of Federal Claims, Case Number 95-437C, (October 12 and 14, 1999).

Deposition of Daniel R. Fischel In Re: Bank United of Texas, FSB, et al., v. United States of America, United States Court of Federal Claims, Case Number 95-437C, (September 26, 1999; July 10, 1999; and June 16, 17, 1999).

Testimony of Daniel R. Fischel In Re: C. Robert Suess, et al., v. The United States, United States Court of Federal Claims, No. 90- 981C (May 17, 1999).

Testimony of Daniel R. Fischel In Re: Lexecon, Inc. v. Milberg Weiss Bershad Specthrie & Lerach, et al., in the United States District Court, Northern District of Illinois Eastern Division, Case No. 92 C 7768 (March 8, 9, 10 and 15, 1999).

Testimony of Daniel R. Fischel In Re: California Federal Bank v. United States, in the United States Court of Federal Claims, Case Number 92-138C, (February 4 and 11, 1999).

Deposition of Daniel R. Fischel In Re: California Federal Bank v. United States, in the United States Court of Federal Claims, Case Number 92-138C, (February 6, 1999; January 27 and 30, 1999).

Deposition of Daniel R. Fischel In Re: C. Robert Suess, et al., v. The United States, United States Court of Federal Claims, No. 90- 981C (October 27 and 28, 1998).

Deposition of Daniel R. Fischel In Re: Connector Service Corporation v. Jeffrey Briggs, United States District Court, Northern District of Illinois, Eastern Division, No. 97-C-7088 (August 28, 1998).

Deposition of Daniel R. Fischel In Re: Statesman Savings Holding Corp., et al. v. United States of America, United States Court of Federal Claims, Case No. 90-773C, (May 4, 1998 and February 12, 1998).

Testimony of Daniel R. Fischel In Re: Glendale Federal Bank FSB v. United States of America, United States Court of Federal Claims, No. 90-772C, (March 24, 25 and 26, 1998; September 2, 3, 4, 5, 8, 9, 10, 11, 12, 24, 25, 26 and 27, 1997; October 7, 9, 16, 17, 30 and 31, 1997; December 8, 9 and 10, 1997).

Affidavit of Daniel R. Fischel and David J. Ross In Re: Publicis Communication v. True North Communications Inc., et al., United States District Court, Northern District of Illinois, Eastern Division, Case No. 97-C-8263, (December 7, 1997).

Deposition of Daniel R. Fischel In Re: Glendale Federal Bank FSB v. United States of America, United States Court of Federal Claims, No. 90-772C, (August 27 and 28, 1997).

Testimony of Daniel R. Fischel In Re: AUSA Life Insurance Company, et al. v. Ernst & Young, in the United States District Court, Southern District of New York, Master File No. 94 CIV. 3116 (CLB) (July 7 and 8, 1997).

Deposition of Daniel R. Fischel In Re: Santa's Best, f/k/a National Rennoc, an Illinois general partnership, and Tinsel/Ruff Group Limited Partnership, an Illinois limited partnership v. Rennoc Limited Partnership, a New Jersey limited parternship, v. Tinsel/Ruff Group Limited Parternship, an Illinois limited partnership, in the Circuit Court of Cook, Illinois County Department - Chancery Division, No. 95 CH 12160, (June 17, 1997).

Arbitration of Daniel R. Fischel In Re: Lerner v. Goldman Sachs, et. al., Before the American Arbitration Association, 75-136-00090-94 (April 10, 1997).

Affidavit of Daniel R. Fischel In Re: Hilton Hotels Corporation and HLT Corporation v. ITT Corporation, United States District Court, District of Nevada, CV-S-97-00095-PMP (RLH) (March 24, 1997).

Deposition of Daniel R. Fischel In Re: Glendale Federal Bank, FSB v. United States of America, Washington, D.C., Case No. 90-772C, (March 19, 1997; January 30 and 31, 1997).

Deposition of Daniel R. Fischel In Re: Statesman Savings Holding Corporation v. United States of America, Washington, D.C., Case No. 90-773-C, (February 19 and 20, 1997).

Testimony of Daniel R. Fischel In Re: Westcap Enterprises, Inc. and Westcap Corporation, Debtor; in the United States Bankruptcy Court, for the Southern District of Texas, Houston Division, Houston, Texas; Case No. 96-43191-H2-11, (November 1996).

Testimony of Daniel R. Fischel In Re: United States of America v. Robert R. Krilich, in the United States District Court, Northern District of Illinois, Eastern Division, No. 94 CR 419, (August 20, 1996 and July 15, 1996)

Deposition of Daniel R. Fischel In Re: McMahan & Company, Froley, Revy Investment Co., Inc. and Wechsler & Krumholz, Inc. v. Wherehouse Entertainment, Inc., Louis A. Kwiker, George A. Smith, Michael T. O'Kane, Lawrence K. Harris, et al., United States District Court, Southern District of New York, Index No. 88 Civ. 0321 (SS) (AJP), (July 16, 1996 and June 10, 1996).

Deposition of Daniel R. Fischel In Re: Joseph W. and Helen B. Teague, Steven Allen Barker, Rita Strahowski, Swannee Beck, and Lifetime Partners of PTL, as representatives of a nationwide class consisting of 150,129 Lifetime Partners and of 27,839 persons who have partially paid for Lifetime Partnerships v. James O. Bakker, in the United States District Court for the Western District of North Carolina, Civil Action No. 3:87CV514, (June 28, 1996).

Deposition of Daniel R. Fischel In Re: Snapple Beverage Corporation Securities Litigation, in the United States District Court, Eastern District of New York, Master File No. CV 94-3647 (May 30, 1996).

Testimony of Daniel R. Fischel In Re: Chuck Quackenbush, Insurance Commissioner of the State of California, in his capacity as Trustee of Mission Insurance Company Trust, et al. v. Borg-Warner Corporation, Borg Warner Equities Corporation, Borg-Warner Insurance Service, Inc., et al., for the Superior Court of the State of California, for the County of Los Angeles, No. C688487 (April 18, 1996).

Deposition of Daniel R. Fischel In Re: Chuck Quackenbush, Insurance commissioner of the State of California, in his capacity as Trustee of Mission Insurance Company Trust, et al. v. Borg-Warner Corporation, Borg Warner Equities Corporation, Borg-Warner Insurance Service, Inc., et al., for the Superior Court of the State of California, for the County of Los Angeles, No. C688487 (April 17, 1996).

Deposition of Daniel R. Fischel In Re: Household Commercial Financial Services, Inc. a citizen of the states of Delaware and Illinois v. Julius Trump, a citizen of the State of Florida, Edmond Trump, a citizen of the state of Florida, James M. Jacobson, a citizen of the State of New York, and Parker, Chapin, Flattau & Klimpl, a citizen of the states of New York and New Jersey, in the United States District Court, for the Northern District of Illinois Eastern Division, 92 C 5010 (February 1, 1996).

Deposition of Daniel R. Fischel In Re: JWP, Inc. Securities Litigation, in the United States District Court, Southern District of New York, Master File No. 92 Civ. 5815 (CLB); AUSA Life Insurance Company, et al. v. Ernst & Young, in the United States District Court, Southern District of New York, Master File No. 94 Civ. 3116 (CLB) (November 30, 1995; November 9, 1995; October 18 and 19, 1995; September 28, 1995).

Deposition of Daniel R. Fischel In Re: City of Houston Municipal Employees Pension System, a Texas association v. PaineWebber Group Inc., et al., in the United States District Court, Eastern District of Missouri, Eastern Division, No. 4:94CV0073CAS (November 15 and 16, 1995).

Testimony of Daniel R. Fischel In Re: American Continental Corporation/Lincoln Savings & Loan Securities Litigation - Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach and Kevin P. Roddy, in the United States District Court, District of Arizona, Civ-93-1087-PHX-JMR (July 25 and 26, 1995).

Deposition of Daniel R. Fischel In Re: Keith C. Bogard, et al., v. National Community Bank Inc., et al., in the United States District Court, District of New Jersey, No. 90-5-32 (HAA) (December 20, 1994).

Deposition of Daniel R. Fischel <u>In Re: Harvey Rosen, Ben Rogers and Julie Rogers v. Deloitte & Touche, Elias Zinn, Julius Zinn, Dennis Lamm, and Ronald Begnaud</u>, in the 268th Judicial District Court, of Fort Bend County, Texas, Cause No. 84-482 (November 9, 1994).

Testimony of Daniel R. Fischel <u>In Re: PPM America, Inc., et al. v. Marriott Corporation et al.</u>, in the United States District Court, for the District of Maryland, Civil Docket No. H-92-3068 (October 12, 1994).

Deposition of Daniel R. Fischel <u>In Re: Browning-Ferris Industries, Inc., Securities Litigation</u>, United States District Court, for the Southern District of Texas, Houston Division, Civil Action H-903477 (September 1, 1994).

Testimony of Daniel R. Fischel <u>In Re: Computer Associates International Inc. Securities Litigation</u>, United States District Court, Eastern District of New York, CV-90-2398 (JBW) (May 26 and 27, 1994).

Deposition of Daniel R. Fischel <u>In Re: PPM America, Inc., et al. v. Marriott Corporation et al.</u>, United States District, for the District of Maryland, H-92-3068 (May 10, 1994 and March 8, 1994).

Deposition of Daniel R. Fischel <u>In Re: Securities and Exchange Commission v. Shared Medical Systems Corporation, R. James Macaleer, James C. Kelly and Clyde M. Hyde</u>, United States District Court, for the Eastern District of Pennsylvania, Civil Action - Law: No. 91- CV-6549 (February 22, 1994).

Testimony of Daniel R. Fischel <u>In Re: Peter M. Schultz and Pamela A. Schultz v. Rhode Island Hospital Trust National Bank, N.A., et al.</u>, United States District Court, District of Massachusetts, Civil Action No. 88-2870-T (February 16, 1994).

Deposition of Daniel R. Fischel <u>In Re: Henry T. Endo, et al. v. John M. Albertine, et al.</u>, United States District Court, Northern District of Illinois, Eastern Division, No. 88 C 1815 (November 11 and 12, 1993; October 28, 1993).

Deposition of Daniel R. Fischel <u>In Re: Computer Associates International Inc. Securities Litigation</u>, United States District Court, Eastern District of New York, CV 90-2398 (JBW) (November 2, 1993 and February 4, 1993).

Affidavit of Daniel R. Fischel <u>In Re: Peter M. Schultz and Pamela A. Schultz v. Rhode Island Hospital Trust National Bank, N.A. et al.</u>, United States District Court, District of Massachusetts, Civil Action No. SS-2870-T (October 28, 1993).

Deposition of Daniel R. Fischel <u>In Re: Alpheus John Goddard, III, etc. v. Continental Bank N.A., etc.</u>, State of Illinois, County of Cook, Circuit Court of Cook County, County Department- Chancery Division, No. 89 CH 1081 (September 10, 1993).

Deposition of Daniel R. Fischel <u>In Re: Taxable Municipal Bond Section "G" Securities Litigation</u>, United States District Court, Eastern District of Louisiana, MDL No. 863 (September 2, 1993).

Reply Affidavit of Daniel R. Fischel <u>In Re: Columbia Securities Litigation</u>, United States District Court Southern District of New York, 89 Civ. 6821 (LBS) (August 30, 1993).

Affidavit of Daniel R. Fischel <u>In Re: Consumers Gas & Oil, Inc. v. Farmland Industries, Inc., et al.</u>, United States District Court, for the District of Colorado, Civil Action No. 92-F-1394 (August 26, 1993).

Declaration of Daniel R. Fischel <u>In Re: Equitec Rollup Litigation</u>, United States District Court for the Northern District of California, Master file No. C90 2064 CAL (July 28, 1993).

Deposition of Daniel R. Fischel <u>In Re: United Telecommunications, Inc. Securities Litigation</u>, United States District Court for the District of Kansas, No. 90-2251-0 (July 22, 1993, April 21 and 22, 1993).

Deposition of Daniel R. Fischel <u>In Re: Consumers Gas & Oil, Inc., a Colorado farm cooperative in liquidation, on behalf of itself and others similarly situated v. Farmland Industries, Inc., a Kansas farm cooperative, et al.</u>, United States District Court, District of Colorado, 92-F- 1394 (June 18, 1993).

Deposition of Daniel R. Fischel <u>In Re. Rosalind Wells v. HBO & Company</u>, United States District Court, Northern District of Georgia, Atlanta Division, 8-87-CV-657A (JTC) (June 10, 1993 and May 24, 1993).

Deposition of Daniel R. Fischel <u>In Re: Equitec Rollup Litigation</u>, United States District Court, Northern District of California, No. C-90-2064 CAL (June 2 and 3, 1993).

Supplemental Declaration of Daniel R. Fischel <u>In Re: Oracle Securities Litigation</u>, United States District Court, Northern District of California, Master File No. C 90 0931 VRW (May 20, 1993).

Affidavit of Daniel R. Fischel and Kenneth R. Cone <u>In Re: Raymond P. Hayden, et al. v. Jeffrey L. Feldman, et al.</u>, United States District Court, Southern District of New York No. 88 Civ. 8048 (JES) (May 12, 1993).

Testimony of Daniel R. Fischel <u>In Re: Melridge, Inc., Securities Litigation</u>, United States District Court for the District of Oregon, CV No. 87-1426-FR (May 4 and 5, 1993).

Declaration of Daniel R. Fischel <u>In Re: Oracle Securities Litigation</u>, United States District Court, Northern District of California, Master File No. C 90 0931 VRW (April 20, 1993).

Deposition of Daniel R. Fischel <u>In Re: Gillette Securities Litigation</u>, United States District Court, District of Massachusetts, No. 88-1858-K (April 1, 1993).

Affidavit of Daniel R. Fischel <u>In Re: Columbia Securities Litigation</u>, United States District Court, Southern District of New York, 89 Civ. 6821 (LBS) (March 25, 1993).

Deposition of Daniel R. Fischel <u>In Re: Westinghouse Securities Litigation</u>, United States District Court, Western District of Pennsylvania, CV No. 91 354 (March 23, 1993).

Declaration of Daniel R. Fischel <u>In Re: Oracle Securities Litigation</u>, United States District Court, Northern District of California, Master File No. C 90-0931 VRW (March 22, 1993).

Deposition of Daniel R. Fischel <u>In Re: Kroy, Inc., a Minnesota corporation et al. v. Bankers Trust New York Corporation, et al.</u>, Superior Court of the State of Arizona in and for the County of Maricopa, No. CV 89-35680 (March 18, 1993).

Deposition of Daniel R. Fischel <u>In Re: Amos M. Ames, Helen M. Ames, Robert F. Bourke, Louise L. Bourke, Leo E. Corr, April C. Corr, Wence M. Horak, Ruth Horak, Robert T. Freas, Maurita Freas, Bruce Fink, Jr., William H. Jones, Candace A. Jones, Richard Paul, William L. Paul, Carole Paul, Steven J. Paul, Best Power Technology, Incorporated, and Best Power Technology Sales Corporation</u>, in the State of Wisconsin, Circuit Court, Juneau County, Consolidated Case Nos. 92-CV-31, 92-CV-32 (January 26, 1993).

Deposition of Daniel R. Fischel <u>In Re: Federal Express Corporation Shareholder Litigation</u>, in the United States District Court, Western District of Tennessee, Master File No. 90-2359- 4B (December 3, 1992).

Deposition of Daniel R. Fischel <u>In Re: Raymond Snyder, Individually and on behalf of all those similarly situated v. Oneok, Inc., et al.</u>, in the United States District Court, Northern District of Oklahoma, Civil Action No. 88 C 1500 E (October 15 and 16, 1992).

Deposition of Daniel R. Fischel <u>In Re: Melridge, Inc. Securities Litigation, Consolidated Actions</u>, United States District Court, District of Oregon, Master File No. CV87-1426-JU and Nos. 387-06589-P11, 88-05-JU, 88-221-JU, 88-0699-PA, 88-1266-JU (September 17, 1992; July 25 and 26, 1991).

Deposition of Daniel R. Fischel <u>In Re: Maxus Corporate Company v. Kidder, Peabody & Co. Incorporated, Martin A. Siegel and Ivan F. Boesky</u>, in the District Court Dallas County, Texas, 298th Judicial District, No. 87-15583-M (September 11, 1992; August 18 and 19, 1992).

Deposition of Daniel R. Fischel <u>In Re: Jennifer A. Florin and Alan L. Mundt, on behalf of themselves and all others similarly situated v. Wesray Capital Corp., Citizens and Southern Trust Company, a subsidiary of Citizens and Southern Corporation, Robert K. Barton, Leonard S. Gaby, Allen G. Lacoe, Robert A. Magnusson, Anthony A. Saliture, Harlan B. Smith, Thomas F. Stutzman, Raymond G. Chambers, Frank E. Richardson, E. Burke Ross, Jr., William E. Simon and Frank W. Walsh, Jr.</u>, in the United States District Court, Western District of Wisconsin, Civil Action No. 91C-0948 (August 12, 1992).

Deposition of Daniel R. Fischel <u>In Re: Pearl Newman, Shanna Lehmann & Athanasios Tsivelekidis, on their own behalf and on behalf of all other persons similarly situated v. On- Line Software International, Inc. Jack M. Berdy, John C. Crocker, Richard A. Granger, Richard R. Holtmeier, Michael S. Juceam, Edward J. Siegel, Howard P.Sorgen and Richard Ward</u>, United States District Court, District of New Jersey, Consolidated Civil Action Nos. 88-3247, 88-3411 (July 28 and 29, 1992).

Deposition of Daniel R. Fischel In Re: Crazy Eddie Securities Litigation, Oppenheimer-Palmieri Fund, I.P., et al. v. Peat Marwick Main & Co., et al., United States District Court for the Eastern District of New York, 87 Civ. 0033 (EHN), 88 Civ. 3481 (EHN) (June 11, 1992; March 26 and 27, 1992).

Testimony of Daniel R. Fischel In Re: American Continental Corporation/Lincoln Savings and Loan Securities Litigation, in the United States District Court, for the District of Arizona MDL Docket No. 834 (June 4, 1992; May 26, 27 and 28, 1992).

Testimony of Daniel R. Fischel In Re: State of West Virginia v. Morgan Stanley & Co. Incorporated, in the Circuit Court of Kanawha County, State of West Virginia, Civil Action No. 89-C-3700 (April 27, 1992).

Affidavit of Daniel R. Fischel In Re: William Steiner, on behalf of himself and all others similarly situated v. Tektronix, Inc., et al., in the United States District Court, District Court of Oregon, Civil No. 90-587-JO (March 23, 1992).

Deposition of Daniel R. Fischel In Re: Martin Kaplan and Selma Kaplan, on Behalf of Themselves and All Others Similarly Situated v. VICORP Restaurants, Inc., Charles R. Frederickson, Robert S. Benson, Emerson B. Kendall, Robert T. Marto and Johyn C. Hoyt, United States District Court, District of Colorado, Civil Action No. 90-C-2182 (February 11, 1992).

Deposition of Daniel R. Fischel In Re: Interco Incorporated v. Wasserstein, Perella & Co., Inc., United States District Court, Eastern District of Missouri, Eastern Division, No. 91-0151-C- 6 (February 3, 1992 and December 12, 1991).

Statement of Daniel R. Fischel In Re: Far West Federal Bank, S.B., et al. v. Director, Office of Thrift Supervision, et al., United States District Court for the District of Oregon, Civil Action No. 90-103 PA (February 3, 1992).

Deposition of Daniel R. Fischel In Re: Capital Bank of California v. Morgan Stanley & Co., Incorporated, United States District Court, Central District of California, No. 91-1650-R (January 24, 1992).

Deposition of Daniel R. Fischel In Re: Trinity Ventures, et al. v. Federal Deposit Insurance Corporation, in its own capacity and as successor to the Federal Savings and Loan Insurance Corporation, United States District Court, for the District of Oregon, No. 90-103- PA (January 6, 1992).

Deposition of Daniel R. Fischel In Re: First Republicbank Securities Litigation, United States District Court, Northern District of Texas, Dallas Division, Civil Action No. 3-88-0641-H (January 2, and 3, 1992; November 26, 1991).

Deposition of Daniel R. Fischel In Re: State of West Virginia v. Morgan Stanley & Co. Incorporated; Salomon Brothers Inc.; and Goldman Sachs & Co., in the Circuit Court of Kanawha County, State of West Virginia, Civil Action No. 89-C-3700 (December 19 and 20, 1991).

Deposition of Daniel R. Fischel In Re: The Regina Company, Inc. Securities Litigation, United States District Court, District of New Jersey, Civil Action No. 88-4149 (HAA) (October 31, 1991).

Affidavit of Daniel R. Fischel In Re: Gillette Securities Litigation, United States District Court, District of Massachusetts, Civil Action No. 88-1858-K (October 7, 1991)

Deposition of Daniel R. Fischel In Re: Capital Maritime Corporation v. Amfels, Inc., Far East Levingston Shipbuilding Ltd., John B. Allison and Patrick A. McDermid, United States District Court for the Southern District of Texas Houston Division, C.A. No. H-90-3417 (September 12, 1991).

Deposition of Daniel R. Fischel In Re: Thomas J. Caldarone, Jr. v. Isidore Brown, et al., and John E. Washburn, et al. v. Isidore Brown, et al., United States District Court, Northern District of Illinois, Eastern Division, Docket Nos. 80 C 6251 and 81 C 1475 (August 28, 29, and 30, 1991).

Testimony of Daniel R. Fischel In Re: Apple Securities Litigation, United States District Court, Northern District of California, Northern Division, Docket No. C-84-20148 (May 20 and 21, 1991).

Testimony of Daniel R. Fischel In Re: The Stuart-James Co., Inc., et al. Litigation, United States of America before the Securities & Exchange Commission, in Denver, Colorado, Administrative Proceeding File No. 3-7164 (May 6, 1991).

Deposition of Daniel R. Fischel In Re: Jennie Farber on behalf of herself and all others similarly situated v. Public Service Company of New Mexico; Jerry D. Geist; John P. Bundrant and Albert J. Robison, United States District Court for the District of New Mexico, CIV 89-456 JB WWD (April 17 and 18, 1991).

Affidavit of Daniel R. Fischel In Re: Moise Katz, Frederick Rand, Elias Weissman, Richard D. Morgan, Marion R. Morgan and Mortimer Schulman v. Raymond A. Hay, United States District Court, Southern District of New York, No. 86 Civ. 5640 (JES) (March 29, 1991).

Deposition of Daniel R. Fischel In Re: Standard Chartered PLC., a United Kingdom corporation, et al. v. Price Waterhouse, a general partnership, Superior Court of the State of Arizona, in and for the County of Maricopa, CV 88-34414 (March 13 and 14, 1991).

Affidavit of Daniel R. Fischel In Re: United States of America v. AVX Corporation, and Commonwealth of Massachusetts v. AVX Corporation, United States District Court, District of Massachusetts, Civil Action Nos. 83-3882-Y and 83-3899-Y (January 29, 1991).

Deposition of Daniel R. Fischel In Re: Apple Computer Securities, United States District Court Northern District of California, San Jose Division, No. C-84-20148 (a) JW (December 13 and 14, 1990).

Deposition of Daniel R. Fischel In Re: Polycast Technology Corporation, and Uniroyal Plastics Acquisition Corp. v. Uniroyal, Inc., et al., United States District Court Southern District of New York, No. 87 Civ. 3297 (December 6, 1990 and November 28, 1990).

Deposition of Daniel R. Fischel In Re: Ellen Rudd, on behalf of herself and all others similarly situated, and Mayer Corporation on behalf of themselves, and all others similarly situated, and Louis Brandt, and Israel Baker, Jay R. Kuhne, Pininfarina Corp., and American Transfer Co., on behalf of themselves and all others similarly situated v. Kirk Kerkorian, et al., Superior Court of the State of California, County of Los Angeles, Nos. CA 000980, CA 000981, CA 001017, CA 620279 (June 21, 1990).

Testimony of Daniel R. Fischel In Re: City of San Jose v. Paine, Webber, Jackson & Curtis, Incorporated, et al., and related counter- and Third-Party Claims, United States District Court, Northern District, No. C-84-20601 RPA (May 23 and 24, 1990).

Deposition of Daniel R. Fischel In Re: City of San Jose v. Paine, Webber, Jackson & Curtis, Incorporated, et al., and related counter- and Third-Party Claims, United States District Court, Northern District, No. C-84-20601 RPA (May 22, 1990), No. RPA 84-20601 (November 16, 1989 and September 8, 1989).

Testimony of Daniel R. Fischel In Re: Kulicke and Soffa Industries, Inc. Securities Litigation, United States District Court for the Eastern District of Pennsylvania, No. 86-1656 (March 20 and 21, 1990).

Deposition of Daniel R. Fischel In Re: Kulicke and Soffa Industries, Inc. Securities Litigation, United States District Court for the Eastern District of Pennsylvania, No. 86-1656 (March 9, 1990; December 19 and 21, 1989).

Affidavit of Daniel R. Fischel In Re: Viacom International Inc. v. Carl C. Icahn, et al., v. Ralph M. Baruch, et al., United States District Court, Southern District of New York, No. 86 Civ. 4215 (RPP) (March 8, 1990).

Deposition of Daniel R. Fischel In Re: Technical Equities Coordination Litigation, Superior Court of the State of California for the County of Santa Clara, Master File No. 1991, Santa Clara County Superior No. 600306 (March 1, 1990).

Deposition of Daniel R. Fischel In Re: Amalgamated Clothing and Textile Workers Union, AFL- CIO, et al. v. David A. Murdock, et al., United States District court for the Central District of California, No. CV-86-6410 IH (February 8, 1990).

Deposition of Daniel R. Fischel In Re: Connecticut National Life Insurance Company, et al. v. Peter A. Sprecher and Laventhol & Horwath, United States District Court, Central District of California, No. CV 87-1945 WJR (Tx) (January 30, 1990).

Deposition of Daniel R. Fischel In Re: Consolidated Capital Securities Litigation, United States District Court, Northern District of California, No. C-85-7332 AJZ (January 22, 1990).

Declaration of Daniel R. Fischel In Re Plaintiffs' Damages in Re: Liquidity Fund, et al. v. Southmark Corporation, et al. in the Superior Court of the State of California for the County of San Mateo, No. 332435 (January 18, 1990).

Deposition of Daniel R. Fischel In Re: Norman Kamerman, Shirley Brown, Edward Rosen, Lexim Investors Corp., and Dohsa Anstalt, on behalf of themselves and all others similarly situated, and Barnett Stepak v. Saul Steinberg, Reliance Group Holdings, Inc., Reliance Group, Inc., Reliance Financial Services corp., and Reliance Insurance Company, United States District Court, Southern District of New York, No. 84 Civ. 4440 (September 13, 1989).

Affidavit of Daniel R. Fischel In Re: Edward A. Taylor, et al. v. A. O. Smith Corporation et al., Circuit Court for Lincoln County, Tennessee, No. 098-84 (August 11, 1989).

Deposition of Daniel R. Fischel In Re: Container Products Inc. v. Pace Industries, United States District Court, Southern District of New York, No. 88-CIV. 3549 (KMW) (July 19, 1989).

Deposition of Daniel R. Fischel In Re: Joseph B. Moorman, et al. v. Southmark Corporation, et al., Liquidity Fund, et al. v. Southmark Corporation, et al., Superior Court of the State of California for the County of San Mateo, Nos. 322135 and 332435 (July 11, 1989).

Testimony of Daniel R. Fischel In Re: Tessie Wolfson, et al. v. Frederick S. Hammer, and Meritor Financial Group, United States District Court for the Eastern District of Pennsylvania, Civil Action No. 87-8471 (June 20, 1989).

Deposition of Daniel R. Fischel In Re: Richard J. Heckmann, et al. v. C. L. Ahmanson, et al., and Consolidated Cases, Superior Court of the State of California for the County of Los Angeles, Nos. CA000851 and C642081 (June 8, 1989).

Deposition of Daniel R. Fischel In Re: Tessie Wolfson, et al. v. Frederick S. Hammer, United States District Court for the Eastern District of Pennsylvania, Civil Action No. 87-8472 (May 11, 1989).

Testimony of Daniel R. Fischel In Re: Tessie Wolfson, et al. v. Frederick S. Hammer, United States District Court for the Eastern District of Pennsylvania, Civil Action No. 87-8472 (April 13, 1989).

Deposition of Daniel R. Fischel In Re: National Union Fire Insurance Company of Pittsburgh, PA v. Wells Fargo Bank, N.A., District Court of Harris County, Texas, 125th Judicial District, No. 88-49246 (April 10 and 11, 1989).

Deposition of Daniel R. Fischel In Re: Susan Rothenberg, as Custodian for Stephen J. Rothenberg v. Charles E. Hurwitz, United Financial Corporation, United Savings Association of Texas, et al., United States District Court for the Southern District of Texas, Houston Division, Civil Action No. H-86-1435 (March 30, 1989).

Deposition of Daniel R. Fischel In Re: Jose Nodar, et al. v. William Weksel, Albert Bromberg, Henry B. Turner, IV, Frank L. Bryant, Leo Kuperschmid, Bennett S. Lebow, Ernst & Whinney and Oppenheimer & Co., Inc., United States District Court, Southern District of New York, No. 84 Civ. 3870 (VLB) and consolidation case No. 84 Civ. 5132 (VLB) (December 15 and 16, 1988).

Deposition of Daniel R. Fischel In Re: William Steiner, et al. v. Whittaker Corporation, et al., Superior Court of the State of California for the County of Los Angeles, No.CA000817 (December 7, 1988).

Deposition of Daniel R. Fischel In Re: Arnold I. Laven, et al. v. Western Union Corporation, et al., United States District Court for the District, Western District of Washington, MDL No. 551 (August 30 and 31, 1988).

Deposition of Daniel R. Fischel In Re: Washington Public Power Supply System Securities Litigation, United States District Court, Western District of Washington, MDL No. 551 (August 16 and 22, 1988).

Affidavit of Daniel R. Fischel In Re: District Business Conduct Committee for District No. 3 v. Blinder, Robinson & Company Inc., et al., National Association of Securities Dealers, Inc. National Business Conduct Committee, Complaint No. DEN-666 (July 21, 1988).

Deposition of Daniel R. Fischel In Re: Joseph Seidman, et al. v. Stauffer Chemical Company, et al, United States District Court for the District of Connecticut, No. B 84-543 (TFGD) (June 10, 1988 and May 5, 1987).

Deposition of Daniel R. Fischel In Re: Edlin Cattle Co., Inc., and James Edlin v. A. O. Smith Harvestore Products, Inc., et al., United States District Court for the Northern District of Texas, Amarillo Division, No. CA-2-86-0122 (May 12, 1988).

Deposition of Daniel R. Fischel In Re: MicroPro Securities Litigation, United States District Court for the
Northern District of California, No. C-85-7428-EFL (A) (May 2, 1988).

Affidavit of Daniel R. Fischel In Re: Pizza Time Theatre Securities Litigation, United States District Court for the
Northern District of California, Civil File No. 84-20048-(A)-RPA (March 25, 1988).

Affidavit of Daniel R. Fischel and Robert A. Sherwin In Re: First National Bank of Louisville v. Brooks Farms,
and George C. Brooks, et al., Third-Party Plaintiffs v. A. O. Smith Corporation, et al., Circuit Court for
Maury County, Tennessee, No. 2058 (March 3, 1988).

Testimony of Daniel R. Fischel In Re: Nucorp Energy Securities Litigation, United States District Court for the
Southern District of California, M.D.L. 514 (March 15, 16, 17, and 18, 1988).

Deposition of Daniel R. Fischel In Re: Nucorp Energy Securities Litigation, United States District Court for the
Southern District of California, M.D.L. 514 (January 27, 1988).

Deposition of Daniel R Fischel In Re: Anheuser-Busch Companies, Inc. v. W. Paul Thayer, et al., United States
District Court for the Northern District of Texas, Dallas Division, No. CA- 3-85-0794-R (January 21, 1988;
December 4, 1987; and November 5, 1987).

Testimony of Daniel R. Fischel In Re: Securities and Exchange Commission v. First City Finance Corporation
Ltd., and Marc Belzberg, United States District Court for the District of Columbia, Civil Action No. 86-2240
(December 18, 1987).

Testimony of Daniel R. Fischel In Re: The Irvine Company v. Athalie Irvine Smith and Athalie R. Clarke,
Trustee, State of Michigan Circuit Court for the county of Oakland, Civil Action No. 8327011-CZ
(December 14, 15, and 16, 1987).

Deposition of Daniel R. Fischel In Re: Securities and Exchange Commission v. First City Finance Corporation,
Ltd. and Marc Belzberg, United States District Court for the District of Columbia, Civil Action No. 86-2240
(December 11, 1987).

Affidavit of Daniel R. Fischel In Re: Gerald D. Broder and Constance D. Broder v. Alphonse H. Bellac and
William B. Weinberger v. Combustion Equipment Associates, Inc., et al., and William B. Weinberger v.
Coopers & Lybrand, United States District Court for the Southern District of New York,
80 CIV 6175 (CES), 80 CIV 6839 (CES), 84 CIV 8217 (CES) (July 22, 1987).

Deposition of Daniel R. Fischel In Re: The Irvine Company v. Athalie Irvine Smith and Athalie R. Clarke,
Trustee, State of Michigan, Circuit Court for the County of Oakland, Civil Action No. 83270011-CZ
(June 1, 1987).

Deposition of Daniel R. Fischel In Re: Fortune Systems Securities Litigation, United States District for the
Northern District of California, Master File No. 83-3348A-WHO (May 7, 1987).

Deposition of Daniel R. Fischel In Re: Victor Technologies Securities Litigation, United States District Court for
the Northern District of California, Master File No. C-83-3906(A)-RFP (FW) (January 8, 1987 and
October 30, 1986).

Reply Declaration of Daniel R. Fischel in Support of the Motion by the Activision Defendants for Summary
Judgment In Re: Activision Securities Litigation, United States District Court for the Northern District of
California, Master File No. C-83-4639(A)-MHP (October 27, 1986).

Testimony of Daniel R. Fischel In Re: NVHomes, L.P. v. Ryan Homes, Inc.; and Ryan Homes, Inc. v.
NVHomes, L.P., et al., United States District Court for the Western District of Pennsylvania, Civil Action
No. 86-2139 (October 24, 1986).

Supplemental Affidavit of Daniel R. Fischel In Re: NVHomes, L.P. v. Ryan Homes, Inc.; and Ryan Homes, Inc.
v. NVHomes, L.P. and NVAcquisition L.P., et al., United States District Court the Western District of
Pennsylvania, Civil Action No. 86-2139 (October 24, 1986).

Affidavit of Daniel R. Fischel in Support of the Motion by the Activision Defendants for Summary Judgment In
Re: Activision Securities Litigation, United States District Court for the Northern District of California,
Master File No. C-86-2139 (October 20, 1986).

Declaration of Daniel R. Fischel in Support of the Motion by the Activision Defendants for Summary Judgment In Re: Activision Securities Litigation, United States District Court for the Northern District of California, Master File No. C-83-4639(A)-MHP (October 2, 1986).

Affidavit in Support of Defendants Motion for Summary Judgment In Re: MCorp Securities Litigation, United States Court for the Southern District of Texas, Civil Action No. H-85- 5894 (September 25, 1986).

Deposition of Daniel R. Fischel In Re: Activision Securities Litigation, United States District Court for the Northern District of California, No. C 83 4639 (August 18 and 19, 1986).

Deposition of Daniel R. Fischel In Re: John Mancino v. James A. McMaghan, et al., United States District Court for the Northern District of California, Civil No. C-84-0407-TEH (August 14, 1986).

Testimony of Daniel R. Fischel In Re: Charles W. Leigh, et al. and George Johnson, et al. v. Clyde William Engle, et al., United States District Court for the Northern District of Illinois, Eastern Division, Case No. 78 C 3799 (August 1, 1986).

Reply Affidavit of Daniel R. Fischel In Re: The Amalgamated Sugar Company v. NL Industries, United States District Court for the Southern District of New York, 86 Civ. 5010 (VLB) (July 28, 1986).

Affidavit of Daniel R. Fischel In Re: The Amalgamated Sugar Company v. NL Industries, United States District Court for the Southern District of New York, 86 Civ. 5010 (VLB) (July 18, 1986).

Deposition of Daniel R. Fischel In Re: Charles W. Leigh, et al. and George Johnson, et al. v. Clyde William Engle, et al., United States District Court for the Northern District of Illinois, Eastern Division, Case No. 78 C 3799 (July 1, 1986).

Deposition of Daniel R. Fischel In Re: Seafirst Corporation v. William M. Jenkins, et al.; and Seafirst Corporation v. John R. Boyd, et al., United States District Court for the Western District of Washington at Seattle, Case No. C83-771R (February 27, 1986).

Deposition of Daniel R. Fischel In Re: Kreindler v. Sambo's Restaurants, Inc., United States District Court for the Southern District of New York, Case No. 79 Civ. 4538 (December 17, 1985).

Affidavit of Daniel R. Fischel In Re: United States of America v. S. Richmond Dole and Clark J. Matthews II (March 19, 1985).

Deposition of Daniel R. Fischel In Re: Craig T. McFarland, et al. v. Memorex Corporation, United States District Court for the Northern District of California, No. C 79-2926-WAI, C 79-2007-WAI, C 79-241-WAI (February 26, 1985; January 29 and 30, 1985).

Testimony of Daniel R. Fischel In Re: Robert J. Lawrence v. Grumman Corp. Pension Plan, et al., United States District Court for the Eastern District of New York, No. CV-81-3530 (December 19, 1983).

Testimony of Daniel R. Fischel In Re: Telvest, Inc. v. Junie L. Bradshaw, et al. and American Furniture Company, United States District Court, for the Eastern District of Virginia Richmond Division, No. CA-79-0722-R (December 4, 1981).


## OTHER ACTIVITIES

Member, American Economic Association, American Finance Association.

Former Member of the Board of Overseers of the Becker-Friedman Institute at the University of Chicago.

Former Advisor to the Harvard Program on Corporate Governance at Harvard University.

Former Member, Board of Directors, Center for the Study of the Economy and the State.

Former Member, Mid-America Institute Task Force on Stock Market Collapse.

Have acted as a consultant and/or advisor to the New York Stock Exchange, the National Association of Securities Dealers, the Chicago Board of Trade, the Chicago Board Options Exchange, the Chicago Mercantile Exchange, the New York Mercantile Exchange, the Federal Trade Commission, the Department of Labor, the Securities and Exchange Commission, the Canadian Securities and Exchange Commission, the United States

Department of Justice, the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the Federal Housing Finance Agency, and the Office of Thrift Supervision.

Referee, Journal of Financial Economics, Journal of Law and Economics, Journal of Legal Studies.

Participant and speaker at multiple conferences on the Economics of Corporate, Securities and Commodities Law and the Regulation of Financial Markets.

Former Chairman, American Association of Law Schools' Section on Law and Economics.

**APPENDIX B**

**Materials Relied Upon**

**Expert Reports**

Expert Report of Matthew D. Cain, Ph.D., February 15, 2024 and Backup Materials

Expert Report of Daniel R. Fischel, May 17, 2024 and Backup Materials

Expert Reply Report of Matthew D. Cain, PHD, June 21, 2024 and Backup Materials

Expert Report of Matthew D. Cain, PhD dated July 12, 2024 and Backup Materials


**Legal Documents**

Transcript of Evidentiary Hearing before the Honorable Trevor N. McFadden, United States District Judge, in Re: Bed Bath & Beyond Corporation Securities Litigation, August 2, 2024 and Demonstratives


**Academic Literature**

Bodie, Zvi, Alex Kane, and Alan J. Marcus, *Investments*, 11th Ed. (McGraw-Hill Education 2017)

Dunbar, Frederick C., and Dana Heller, "Fraud on the Market Meets Behavioral Finance," Delaware Journal of Corporate Law, 31.2 (2006)


**SEC Filings**

RC Ventures Schedule 13D, Amendment No. 1, March 25, 2022

Bed Bath & Beyond Schedule 14A, June 1, 2022

RC Ventures Schedule 13D, Amendment No. 2, August 16, 2022

RC Ventures Form 144, August 16, 2022

RC Ventures Schedule 13D, Amendment No. 3, August 18, 2022

RC Ventures Form 4, August 18, 2022


**Data Sources**

Bloomberg L.P.

U.S. Stock and Index Databases © 2024 Center for Research in Security Prices (CRSP), The University of Chicago Booth School of Business


All other data and documents referenced in this report.

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE BED BATH & BEYOND CORPORATION SECURITIES LITIGATION | Case No. 1:22-cv-02541-TNM |

**EXPERT REPORT OF DANIEL R. FISCHEL**

**May 17, 2024**

## I.  QUALIFICATIONS

1.      I am President and Chairman of Compass Lexecon, a consulting firm that specializes in the application of economics to a variety of legal and regulatory issues.  I am also the Lee and Brena Freeman Professor of Law and Business Emeritus at The University of Chicago Law School.  I previously served as Dean of The University of Chicago Law School, Director of the Law and Economics Program at The University of Chicago, and as Professor of Law and Business at The University of Chicago Graduate School of Business (by courtesy), the Northwestern University Law School, and the Kellogg School of Management at Northwestern University (by courtesy).

2.      Both my research and teaching have concerned the economics of corporate law and financial markets.  I have published approximately fifty articles in leading legal and economics journals and am coauthor, with Judge Frank Easterbrook of the Seventh Circuit Court of Appeals, of the book The Economic Structure of Corporate Law (Harvard University Press).  Courts of all levels, including the Supreme Court of the United States, have cited my articles as authoritative.  My curriculum vitae, which contains a list of my publications, is attached hereto as **Appendix A**.

3.      I have served as a consultant or advisor on economic issues to the United States Department of Justice, the United States Securities and Exchange Commission, the National Association of Securities Dealers, the New York Stock Exchange, the Chicago Board of Trade, the Chicago Board Options Exchange, the Chicago Mercantile Exchange, the New York Mercantile Exchange, the United States Department of Labor, the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the Federal Housing Finance Agency, and the Federal Trade Commission, among others.

4.      I am a member of the American Economic Association and the American Finance Association.  I am also a former member of the Board of Governors of the Becker Friedman Institute at The University of Chicago, a former Advisor to the Corporate Governance Project at Harvard University, a former member of the Board of Directors of the Center for the Study of the Economy and the State at The University of Chicago, and former Chairman of the American Association of Law Schools' Section on Law and Economics.  I have testified as an expert witness in multiple proceedings in federal and state courts across the country, as detailed in **Appendix A**, including as an expert in multiple securities fraud litigations.

5.      I have been assisted by Compass Lexecon's professional staff.  **Appendix B** lists materials that I have relied upon in forming my opinions in this matter.[1]  Compass Lexecon bills my time at a rate of $1,950 per hour.  My compensation is not contingent on the outcome of this case.

## II. BACKGROUND

6.      Bed Bath & Beyond, Inc. ("BBBY" or the "Company") was a specialty home retailer in North America that sold a wide assortment of merchandise for the home and home furnishings through physical retail stores and e-commerce platforms.[2]  In addition to Bed Bath & Beyond stores, the Company operated buybuy BABY stores which sold baby essentials and nursery furnishings.[3]  In 2019, the Company started divesting non-core business and real estate as part of an ongoing business transformation with the goal of adapting to the changing retail market and meeting the evolving needs of its customers.[4]  BBBY common stock traded on the

---

1.      I reserve the right to update my analyses and conclusions if additional information is made available to me.
2.      BBBY Form 10-K for the fiscal year ended February 26, 2022 ("2022 10-K") at 4.
3.      2022 10-K at 4.
4.      2022 10-K at 4-5.  For the fiscal years ending February 2020, 2021 and 2022, the Company had operating losses of $700.1 million, $336.9 million and $407.6 million, respectively.  *Id.* at 33.

Nasdaq stock market until April 23, 2023 when the Company filed for bankruptcy.[5]  BBBY started liquidating its stores shortly thereafter.[6]

7.     On March 7, 2022, Ryan Cohen and RC Ventures LLC ("RC Ventures"), an investment fund owned by Mr. Cohen,[7] filed a Schedule 13D with the Securities and Exchange Commission ("SEC") indicating that they had acquired a 9.8% equity stake in BBBY comprised of 7,780,000 shares of common stock and 1,670,100 out-of-the-money call options expiring January 20, 2023.[8]  Attached to the 13D filing was a letter from Mr. Cohen to BBBY's board of directors (the "Board") encouraging the Board to explore strategic alternatives including selling the Company, selling or spinning off the buybuy BABY banner, or selling part of its businesses or other assets.[9]

8.     On March 25, 2022, Mr. Cohen and RC Ventures filed an amended Schedule 13D, which disclosed that Mr. Cohen, RC Ventures, and BBBY had entered into a cooperation agreement.[10]  Pursuant to this agreement, BBBY increased the size of its Board by three additional members, Mr. Cohen and RC Ventures agreed not to acquire more than 19.9% of

---

5.     2022 10-K at 24; BBBY Form 12b-25, April 26, 2023.

6.     "UPDATE 3-Bed Bath & Beyond files for bankruptcy protection after long struggle, begins liquidation sale," *Reuters*, April 23, 2023, 7:12 AM ET.

7.     Ryan Cohen co-founded pet supply company Chewy, Inc. and served as its chief executive officer ("CEO") until the company was sold to PetSmart, Inc. in 2017.  In September, 2020, through RC Ventures, Mr. Cohen disclosed an equity stake of almost 10 percent in GameStop.  Mr. Cohen was named a member of GameStop's Board of Directors in January 2021, elected Chairman of the Board in June 2021, and appointed CEO in September 2023.  *See* "PetSmart's Latest Bite at E-Commerce:  Chewy.com," *Wall Street Journal*, April 18, 2017, 8:37 PM ET. "GameStop Rises on Investor's Plan to Make It an Amazon Rival," *Bloomberg*, September 21, 2020, 7:22 PM ET. "Biography – Ryan Cohen," available at https://investor.gamestop.com/board-member/ryan-cohen, accessed May 17, 2024.

8.     RC Ventures Schedule 13D, March 7, 2022.  The January 20, 2023 call options consisted of 1,125,700 call options with an exercise price of $60, 44,400 options with an exercise price of $75, and 500,000 options with an exercise price of $80.

9.     RC Ventures Schedule 13D, March 7, 2022.

10.    RC Ventures Schedule 13D, Amendment No. 1, March 25, 2022. *See also* BBBY Form 8-K, March 25, 2022.

BBBY common stock, and Mr. Cohen and RC Ventures agreed to vote for directors nominated and proposals recommended by the Board.[11]  In addition, two of the Board members nominated by Mr. Cohen and RC Ventures joined a four-member Strategy Committee of the Board formed to support the Board's oversight and review of a strategic analysis of the buybuy BABY business.[12]

9.      On June 1, 2022, the Company filed a Proxy Statement with the SEC, which disclosed that, while RC Ventures owned the exact same number of shares and options reported in the March 7, 2022 13D filing, the ownership interest had increased to 11.8% because of a decline in the Company's shares outstanding from Company share repurchases.[13]  BBBY issued an earnings report dated June 28, 2022 disclosing a Q2 2022 loss of $2.83 per share, significantly larger than the expected loss of $1.39 per share.[14]

10.     On August 5, 2022, *Seeking Alpha* published an article titled "Bed Bath & Beyond shares soar 30%+ amid suspected short-squeeze."[15]  On August 8, 2022, *Barrons.com* reported:  "Bed Bath & Beyond, a former meme stock, appears to once again be a favorite of the Reddit investing crowd.  With some 46% of the shares shorted, and a seemingly endless stream of bad news souring sentiment on Wall Street, Bed Bath & Beyond looks like many other

---

11.     RC Ventures Schedule 13D, Amendment No. 1, March 25, 2022.  Prior to the agreement, BBBY's board of directors consisted of 11 members.  Mr. Cohen and RC Ventures were not required to vote on the board's nominated directors and recommended proposals if Glass Lewis, a proxy advisor company, recommended against them.  *Id.*

12.     RC Ventures Schedule 13D, Amendment No. 1, March 25, 2022.

13.     BBBY Schedule 14A, June 1, 2022 at 74.  BBBY Form 10-Q for the quarterly period ended May 28, 2022 at 15; BBBY Form 10-Q for the quarterly period ended August 27, 2022 at 17 (stating that the repurchase program was completed in the first quarter of fiscal 2022).

14.     BBBY Form 8-K, June 29, 2022 (Earnings Press Release); "Bed Bath & Beyond Stock Slumps as CEO Steps Down and Loss Wider Than Expected," *Dow Jones Institutional News*, June 29, 2022, 7:50 AM ET.

15.     "Bed Bath & Beyond shares soar 30%+ amid suspected short-squeeze," *Seeking Alpha*, August 5, 2022, 12:01 PM ET.

unloved meme stocks that have been adopted by retail investors posting online in places like the Wall Street Bets subReddit."[16]

11.     On August 12, 2022, before market open, CNBC tweeted a link to its article titled "Loop Capital says Bed Bath & Beyond comeback doesn't make fundamental sense, stock headed to $1."[17]  At 10:42 AM ET, Mr. Cohen replied to the CNBC tweet with a tweet stating: "At least her cart is full 🙂."[18]  On August 15, 2022, after market close, Mr. Cohen and RC Ventures filed a Form 3 repeating that they owned 7,780,000 common shares of BBBY and beneficially owned 1,670,100 shares underlying call options.[19]  On August 16, 2022, before market open, Mr. Cohen and RC Ventures filed an amendment to their March 7, 2022 Schedule 13D reflecting that their equity stake in BBBY common stock had increased to 11.8% "solely due to a change in the number of outstanding Shares of the Issuer."[20]  On August 17, 2022, the SEC's website published RC Ventures' Form 144, dated August 16, 2022 indicating a "proposed sale" of its entire position in BBBY beginning August 16, 2022.[21]  On August 18, 2022, after market close, Mr. Cohen and RC Ventures filed a Schedule 13D amendment disclosing that on August 16 and 17, 2022 they had sold their entire position (both stock and options) in BBBY.[22]

---

16.     "Bed Bath & Beyond Stock Is Flying. Thank the Meme Trade," *Barron's Online*, August 8, 2022, 3:57 PM ET.

17.     CNBC, Twitter Post, August 12, 2022, 7:04 AM ET, available at https://twitter.com/CNBC/status/1558046723053953025 (accessed May 17, 2024).

18.     Ryan Cohen, Twitter Post, August 12, 2022, 10:42 AM ET, available at https://twitter.com/ryancohen/status/1558101541453795329?lang=en (accessed May 17, 2024).

19.     RC Ventures Form 3, August 15, 2022.  Note that these are the exact same positions previously reported in RC Ventures Schedule 13D, Amendment No. 1, March 25, 2022.

20.     RC Ventures Schedule 13D, Amendment No. 2, August 16, 2022. Note that this is the same ownership percentage that was disclosed in the June 1, 2022 Proxy filing by the Company.

21.     RC Ventures Form 144, August 16, 2022, available at https://www.sec.gov/files/forms-144-2022-08-16.zip.

22.     RC Ventures Schedule 13D, Amendment No. 3, August 18, 2022.  Mr. Cohen and RC Ventures sold 5,000,000 common shares on August 16, 2022 at an average price of $21.17, and 2,780,000 common shares on August 17, 2022 at an average price of $25.96.  They sold all 1,670,100 options on August 17, 2022 at an average price of $6.75.

## III.  ALLEGATIONS, ASSIGNMENT, AND SUMMARY OF CONCLUSIONS

12.     Bratya SPRL ("Plaintiff") filed a securities class action lawsuit seeking to recover damages allegedly caused by Defendants Mr. Cohen, RC Ventures, BBBY, and Sue E. Gove[23] on behalf of all persons who purchased or otherwise acquired BBBY's common stock and long call options between August 12, 2022 and August 18, 2022 (the "Class Period").[24]  Specifically, Plaintiff claims violations under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder against all Defendants, as well as under Sections 9(a), 9(f), and 20(A) of the Exchange Act against Mr. Cohen and RC Ventures.[25]

13.     Plaintiff alleges that, prior to selling their BBBY stock and options, Mr. Cohen and RC Ventures received material non-public information about the Company's liquidity and credit crises, and its inability to sell or spinoff buybuy BABY.[26]  Plaintiff further alleges that Mr. Cohen engaged in a "pump-and-dump scheme," artificially inflating the price of BBBY's common stock throughout the Class Period by publicly encouraging retail investors to buy shares of BBBY by issuing misleading statements and SEC filings while he planned on selling RC Ventures' equity stake and options.[27]

14.     In particular, Plaintiff alleges that Mr. Cohen's moon-emoji Twitter post on August 12, 2022 (the "Tweet") and RC Ventures' amended Schedule 13D filed before market

---

23.     *In Re Bed Bath & Beyond Corporation Securities Litigation*, Case No. 1:22-cv-02541-TNM, Second Amended Class Action Complaint, January 30, 2023 ("SAC") at 1.  The claims against Ms. Gove were dismissed from the lawsuit, and the claims against BBBY were stayed pending bankruptcy.  *See In Re Bed Bath & Beyond Corporation Securities Litigation*, Case No. 1:22-cv-02541-TNM, Memorandum Opinion, July 27, 2023 at 1, 8, 9, & 20.

24.     SAC ¶ 1.  *In Re Bed Bath & Beyond Corporation Securities Litigation*, Case No. 1:22-cv-02541-TNM, Lead Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Plaintiff's Memo") at ¶ 1.

25.     SAC ¶ 1.

26.     SAC ¶¶ 196, 233 & 240.

27.     SAC ¶¶ 8 & 31.

hours on August 16, 2022 inflated the price of BBBY's common stock and options.[28]  Plaintiff

further alleges that Mr. Cohen hid his intent to sell and his sales by (i) filing a Form 144

disclosing that he may sell his BBBY position via email on August 16, 2022, thereby delaying

public disclosure until after market close on August 17, 2022;[29] and (ii) failing to disclose in the

same Form 144 that he had already sold "substantial quantities" of common stock and options at

the time he signed the Form 144.[30]

15.     In support of its motion for class certification, Plaintiff has submitted the Expert

Report of Matthew D. Cain, Ph.D. dated February 15, 2024 ("Cain Report").[31]  Dr. Cain's

principal opinions are that (i) the markets for BBBY common stock and options were efficient

throughout the Class Period and (ii) damages can be "calculated on a class-wide basis subject to

standard, common methodologies for each of Plaintiffs' pending claims."[32]

16.     Dr. Cain's opinion of market efficiency for BBBY common stock is based on his

analysis of eleven factors, principally those described in the *Cammer* and *Krogman* cases, over

the period August 12, 2021 to August 18, 2022 (the "Cain Analysis Period").[33]  Among other

things, he opines that "[t]hough not necessary for a finding of market efficiency [under his

understanding of caselaw], the cause-and-effect relationship between new Company disclosures

and resulting Common Stock price movements (which [he] analyze[d] under the fifth *Cammer*

---

28.     SAC ¶¶ 8-9 & 162.
29.     SAC ¶ 10.
30.     SAC ¶ 174.
31.     *See* Exhibit A to Plaintiff's Memo.
32.     Cain Report ¶ 3.e.
33.     Cain Report ¶¶ 30 & 105.  The *Cammer* factors are Average Weekly Trading Volume, Analyst
        Coverage, Market Makers, SEC Form S-3 Filing Eligibility, and Cause and Effect Relationship
        Between Company Information and Stock Prices.  *Id.* ¶¶ 35, 40, 48, 54 & 57.  The additional
        factors (including the *Krogman* factors) are Market Capitalization, Bid-Ask Spread, Public Float,
        Institutional Ownership, Autocorrelation, and Active Options Trading.  *Id.* ¶¶ 79, 83, 88, 92, 95 &
        100.

factor) further demonstrates that BBBY Common Stock traded in an efficient market throughout the Class Period."[34]

17.     Dr. Cain notes that "the *Cammer* and *Krogman* factors are not relevant for gauging market efficiency of options markets," and concludes that the markets for BBBY's options were efficient in part because BBBY's common stock traded in an efficient market.[35]

18.     Dr. Cain also opines that he can apply the "out-of-pocket" methodology to estimate per-share damages class-wide for violations of Sections 9(a) and 10(b) of the Exchange Act in this matter.[36]  He states that "[t]his approach calculates damages formulaically as the artificial inflation in the share price at the time of purchase minus the artificial inflation in the share price at the time of sale."[37]  Dr. Cain explains that "event studies" that "measure stock price reactions to corrective disclosures which revealed the relevant truth that was concealed by alleged material omissions and/or misrepresentations … are widely employed to calculate artificial inflation."[38]  He claims that the impact of "'confounding information' [i.e., 'non-fraud related factors'] on the price of BBBY securities can be determined on a common, class-wide basis using various accepted methodologies."[39, 40]

---

34.     Cain Report ¶ 3.c.
35.     Cain Report § VI.C. & ¶¶ 113-117.
36.     Cain Report ¶¶ 118-121.
37.     Cain Report ¶ 120.
38.     Cain Report ¶ 123.
39.     Cain Report ¶ 124.
40.     Dr. Cain also concludes that class-wide damages for violation of Section 20A of the Exchange Act can be measured based on the statutory provisions as (i) "losses avoided" from selling shares during the Class Period as opposed to selling shares after the relevant truth at the end of the Class Period; or (ii) "profits gained" in "causal connection with defendants' unlawful acts, including prejudgment interest in the losses avoided and profits gained calculation." Cain Report ¶¶ 134-135.  Dr. Cain notes that event studies also can be used to estimate alleged damages under Section 20A. *Id.* ¶ 135 n.133.

19.     I have been asked by counsel for Mr. Cohen and RC Ventures to evaluate Plaintiff's claims in light of the relevant economic evidence and to review and respond to the Cain Report.  Based on my review and analysis of the materials listed in **Appendix B**, I have reached the following principal conclusions:[41]

- There is no reliable basis to conclude that BBBY stock, and therefore options, traded in an efficient market during the Class Period.

- The Tweet that allegedly introduced artificial inflation into BBBY's stock did not impact its price.

- Individual inquiry is required because some, if not many, Class members did not rely on the integrity of the market prices.

- Dr. Cain's conclusions are fundamentally flawed and unreliable because he fails to account for the changed circumstances around the proposed Class Period.

I elaborate on and provide the bases for these opinions in the remainder of this report.

## IV.  THERE IS NO RELIABLE BASIS TO CONCLUDE THAT BBBY STOCK, AND THEREFORE OPTIONS, TRADED IN AN EFFICIENT MARKET DURING THE CLASS PERIOD

20.     A hallmark of market efficiency – regardless of how it is defined – is that stock prices reflect publicly available information, hence the only direct test of efficiency is whether prices can be shown to move following the release of new value-relevant information.[42]  As a corollary, prices are not expected to move substantially in the absence of new value-relevant information except in rare instances by chance.  While BBBY stock, like other stocks trading on national exchanges, may be efficient by this metric during most periods, this was not case for the

---

41.     My analysis in this report focuses on BBBY's stock.  Because BBBY's option prices are derivative of BBBY's stock prices, my opinions are equally applicable to BBBY's options.

42.     I note that in analyzing whether BBBY's stock price responded to new value-relevant information, Dr. Cain analyzes the Company's quarterly earnings announcements prior to the Class Period.  Cain Report ¶ 73.

stock leading up to and during the five-day Class Period when it was subject to a rumored short squeeze.

21.    Plaintiff acknowledges that this rumored short squeeze occurred but fails to analyze the implications of that recognition for market efficiency.  Moreover, as will be explained below in Section VII, Plaintiff's expert Dr. Cain failed to conduct any discrete analysis of market efficiency during the Class Period.[43]  The principal implications of the rumored short squeeze ignored by Plaintiff and Dr. Cain are that it:  (i) distorted BBBY stock prices and volatility in the absence of any new value-relevant information inconsistent with market efficiency; (ii) limited the ability of investors to short sell the stock during this period, which is necessary for market efficiency; and (iii) was understood to have only a temporary impact on BBBY stock prices inconsistent with the random walk necessary for market efficiency.

22.    Before discussing each of these implications in turn, I note that Professor Fama, a pioneer of the efficient market hypothesis for which he received the Nobel prize (and whose work is cited repeatedly by Dr. Cain[44]), opined that the market for another meme stock that was subject to a rumored short squeeze was *inefficient*:

> Perceptions are important when people act on them. If you were to look at, for example, GameStop, that's a clear case where, for a couple of days, the market was inefficient. You take a tiny stock and people start piling in. Well, finance is no different from any other branch of economics.  It's all supply and demand.  If the demand goes crazy, the price can go crazy — temporarily.[45]

---

43.    Plaintiff relied on Dr. Cain to "show[] that BBBY's common stock reacted to Company-specific news in a manner expected in an efficient market," but Dr. Cain in fact did not include in his report any analysis of any of the price movements during the Class Period.  Plaintiff's Memo at 16.
44.    Cain Report ¶¶ 23 & 60.
45.    "Nobel winner Eugene Fama on GameStop, market bubbles and why indexing is king," *MarketWatch*, March 3, 2021, last updated 2:01 PM ET.

A. **Price Movements Leading up to and During the Five-Day Class Period Were Distorted Because of a Rumored Short Squeeze**

23.      In the days leading up to the Class Period, BBBY's closing stock prices increased by 111%, rising from $5.03 on the last trading day in July to $10.63 on August 11, 2022; in fact, it increased almost 40% on August 8, 2022 alone.[46]  As shown in the chart below, this price change was far in excess of the return experienced by either the market or BBBY's benchmark industry over the same time period.[47]



Source: Bloomberg L.P.

---

46.      Bloomberg, L.P.
47.      *See* 2022 10-K at 25.

24.     As demonstrated by the following charts, these price distortions were temporary and contemporaneous with a corresponding spike in trading volume as well as a substantial increase in option implied volatility.[48]





Notes & Source: Shaded region indicates August 2022. Data per Bloomberg L.P.

---

48.     *See e.g.,* Berk, Jonathan and Peter DeMarzo, *Corporate Finance*, 5th Ed. (Pearson 2020) at 810 ("[O]ne parameter, σ, the volatility of the stock price, is not directly observable. Practitioners use two strategies to estimate the value of this variable. The first, most straightforward approach is to use historical data on daily stock returns to estimate the volatility of the stock over the past several months. Because volatility tends to be persistent, such estimates can provide a reasonable forecast for the stock's volatility in the near future. The second approach is to use the current market prices of traded options to 'back out' the volatility that is consistent with these prices based on the Black-Scholes formula. An estimate of a stock's volatility that is implied by an option's price is known as an implied volatility."); Chen, Sipeng and Gang Li, "Why does option-implied volatility forecast realized volatility? Evidence from news events," 156 *Journal of Banking and Finance* (2023) at 1 ("Chen and Li (2023)") ("Numerous studies suggest that the volatility implied from option prices offers a more efficient forecast of future stock volatility compared with alternative approaches, such as historical volatility and model-based methods. In other words, option prices subsume the information contained in other forecasting variables.").



**Closing Stock Price and Option Implied Volatility**
**August 1, 2021 - September 30, 2022**

Notes & Source: The historical put implied volatility is calculated by Bloomberg as the at the money put implied volatility of the first listed expiry that is at least 20 business days out from the respective date, based on the Listed Implied Volatility Engine (LIVE) calculator. Shaded region indicates August 2022. Per Bloomberg L.P.

As shown, these trends, including the upward price move, began before and continued during the Class Period.

25.    However, the Company did not issue any press releases, hold conference calls, or otherwise provide new value-relevant information to the market during the period when this increase occurred, let alone information that would cause the market to value BBBY by *more than twice* what it had several days earlier.  We did not find any news that could explain this rise in the Company's stock price.  Instead, we found market commentary pointing out the substantial price increase in the absence of new value relevant information that could explain it.  For example:

- Pandemic darling Bed Bath & Beyond Inc., not part of the index [Roundhill Solactive Meme Index] but another notorious favorite of meme-driven investors, rocketed 40% Monday.  The struggling retailer has been mired in a deep sales

slump and has had no corporate development that may seemingly move shares. But that didn't stop the home-goods store from climbing for a ninth straight session.[49]

- Meme stocks have enjoyed something of a renaissance in recent days.  A prime example is Bed Bath & Beyond Inc., which soared as much as 75% between Friday and early Tuesday for no apparent reason.[50]

- "There isn't a fundamental reason for a lot of these price moves [large stock price movements in meme stocks including Bed Bath & Beyond]," [Managing Director at S3 Partners Ihor] Dusaniwsky told the Guardian.  "A lot of it is fomo [fear of missing out] on the rally."[51]

26.    Unable to find value-relevant information to explain the price increase, market commentators at the time attributed BBBY's upward movement to a rumored short squeeze.[52] For example:

- Bed Bath & Beyond shares soar 30%+ amid suspected short squeeze.[53]

- Bed Bath & Beyond stock has jumped over 70% over the past several trading days, which we believe has been driven by a "meme stock-driven" short squeeze as opposed to any significant fundamental catalyst.[54]

27.    Market commentators also noted that this trend of upward price movements absent any company news was likely attributable to a rumored short squeeze that continued during the Class Period.  For example:

- In recent weeks, it's caught the attention of loosely organized traders on Reddit and elsewhere on the Internet, who have sent the stock soaring more than 400%

---

49.    "Post-Pandemic Meets Postwar Era on a Blind Curve: John Authers," *Bloomberg Opinion,* August 9, 2022, 12:37 AM ET.

50.    "Meme-Stock War Is Hedge Fund Versus Hedge Fund: Jared Dillian," *Bloomberg Opinion*, August 10, 2022, 8:30 AM ET.

51.    "Winning bets? Meme stock frenzy of 2021 makes a return," *The Guardian*, August 13, 2022, 3:01 AM ET.

52.    Plaintiff acknowledges that BBBY's stock was subject to a short squeeze that started prior to the Class Period.  *See* SAC ¶¶ 24-28.

53.    "Bed Bath & Beyond shares soar 30%+ amid suspected short-squeeze," *Seeking Alpha*, August 5, 2022, 12:01 PM ET.

54.    "Maintain Sell Rating As Meme Stock Short Squeeze Doesn't Alter Fundamental View," *Loop Capital*, August 12, 2022.

from July lows, similarly befuddling trading action that's previously been seen in shares of AMC Entertainment Holdings Inc. and GameStop Corp.[55]

- Bed Bath & Beyond stock has exploded. Since the start of the month, shares in the company rose more than 300%. On Wednesday alone, the stock soared 11.8% on heavy volume. Analysts attribute the rise in stock price to the meme stock craze in which retail investors drive up the share price in order to force hedge funds who have shorted the stock to either cut their losses and sell or buy up more shares - thus inflating the stock price further.[56]

- Bed Bath & Beyond stock rose about 360% between then [June 29] and Aug. 17, with little in the way of news to propel the shares. In fact, few traditional buy and sell signals used by both value and growth investors -- from the prices of company bonds and insider buying of stock to management turnover -- seem to work once shares are caught up in a meme-stock frenzy.[57]

28.    The large stock price increase in the absence of new value-relevant information suggests that if the market was efficient on the last trading day in July when the price was $5.03, it was not efficient by August 11, 2022 when the price was $10.63.  As described in the next section, this anomaly can be explained by the rumored short squeeze when conditions curtailed the ability of short sellers to act on an inefficiently priced stock.

**B.  The Unconstrained Ability to Sell Short Is Necessary for Market Efficiency**

29.    In a well-functioning market, i.e., where there are no short sale constraints, the price of a stock reflects the consensus view of market participants about the value of the security based on the available public information about the issuer's prospects.  Market participants who expect the stock price to increase can trade on information by purchasing the security while

---

55.    "DISTRESSED DAILY: Memestock Traders Help Bed Bath & Beyond Bonds," *Bloomberg First Word*, August 18, 2022, 8:13 AM ET.

56.    "Bed Bath & Beyond success College kid's $110M 'meme stock' win," *New York Post*, August 19, 2022.

57.    "What the Bed Bath & Beyond Trade Says About Meme Stocks -- Barrons.com," *Dow Jones Institutional News*, August 19, 2022, 1:52 PM ET.

market participants who do not own the stock but believe that it is overvalued can short it.[58] Consequently, the absence of short sale constraints allows market prices to incorporate bullish as well as bearish views about a company's prospects and market valuation into its stock price through the trading activity of the investors who hold these views, allowing the price to reflect the market consensus view of the value of all publicly available information.[59]

30.   Short sale constraints impede price discovery by preventing market participants with bearish views about a company's prospects and market valuation to trade on those views. These constraints can occur when there is a lack of sufficient shares available to borrow for shorting and/or the costs of borrowing are prohibitively expensive.[60]   Consequently, as recognized in the academic literature, prices of stocks subject to short sale constraints do not reflect the consensus view of market participants.[61]   As one academic study summarizes, "[a]

---

58.   Bodie, Zvi, Alex Kane, and Alan J. Marcus, *Investments*, 10th Ed. (McGraw-Hill Education 2014) at 80 ("An investor borrows a share of stock from a broker and sells it.  Later, the short-seller must purchase a share of the same stock in order to replace the share that was borrowed…The short-seller anticipates the stock price will fall, so that the share can be purchased later at a lower price than it initially sold for; if so, the short-seller will reap a profit.").

59.   Note that there are a number of costs and risks associated with short selling, including (i) the cost to borrow shares; (ii) the risk that a lender recalls the borrowed security forcing the borrower to locate other shares to borrow or cover the short position if there are no or very limited shares to borrow; (iii) the risk of potentially unlimited (temporary or permanent) losses as a result of sharp increases in the stock price; and (iv) the risk of being forced to cover a short position as a result of insufficient funds to post collateral or margin after price increases (including when the investor was correct and the price eventually declines). *See e.g.,* Engelberg, Joseph E., Adam V. Reed, and Matthew C. Ringgenberg, "Short-Selling Risk," 73 *Journal of Finance* (2018); Fabozzi, Frank J, *Short Selling Strategies, Risks, and Rewards,* 2nd Ed. (John Wiley & Sons, Inc. 2004) at pp. 13-16.

60.   Short sellers are one type of arbitrageur in that they seek to profit from securities they view as overvalued.  As noted in Cain Report ¶ 53 n.53, the presence of arbitrageurs is part of the concept behind one of the *Cammer* factors.

61.   *See, e.g.*, Miller, Edward M., "Risk, Uncertainty, and Divergence of Opinion," 32 *The Journal of Finance* (1977), and Jones, Charles M. and Owen A. Lamont, "Short-sale constraints and stock returns," 66 *Journal of Financial Economics* (2002), among others.

key insight from these studies is that when short constraints are binding, the underlying stock will be over-priced, and subsequent returns will be low."[62]

31.     Market evidence indicates that the ability to short BBBY stock was constrained leading up to and during the Class Period, thus providing conditions under which a short squeeze could occur.  The chart below documents the stock's short interest utilization, a metric that measures the number of shares that are sold short as a percentage of the shares available to borrow.[63]  As the chart shows, starting in July 2022 and continuing through the Class Period, BBBY's short interest utilization was at or near 100%, meaning that there were very few if any additional shares available to borrow and sell short.  For the reasons stated above, this constraint on short selling is inconsistent with market efficiency.

---

62.     Beneish, M.D., C.M.C. Lee, and D.C. Nichols, "In short supply: Short-sellers and stock returns." 60 *Journal of Accounting and Economics* (2015) at 35 ("Beneish (2015)").  One famous example of mispricing due to short sale constraints involves Palm and 3Com.  3Com owned Palm and sold 5% to the public and retained 95% which it planned to give to 3Com shareholders such that they would receive 1.5 shares of Palm for each share of 3Com they owned.  This would imply that a share of 3Com should be worth at least 1.5 shares of Palm.  Yet on the day of the IPO Palm closed at $95.06 per share while 3Com closed at $81.81 per share.  The mispricing was widely publicized, yet persisted for months due to the lack of availability of shares to short Palm.  *See* Lamont, Owen A. and Richard H. Thaler, "Can the Market Add and Subtract?  Mispricing in Tech Stock Carve-Outs," 111 *Journal of Political Economy* (2003) at 265 ("[I]n this case any investor who can multiply by 1.5 should be able to tell that Palm is overpriced relative to 3Com. The evidence from options markets shows that these stocks were unambiguously overpriced, and it is difficult to explain why in equilibrium anyone would own these shares. The mispricing persisted because of the sluggish functioning of the shorting market.").

63.     *See e.g.,* Ramachandran, Lakshmi Shankar and Jitendra Tayal, "Mispricing, short-sale constraints, and the cross section of option returns," 141 *Journal of Financial Economics* (2021).  I note that not all shares outstanding are made available to be shorted.



**Short Interest Utilization**
**August 1, 2021 - September 30, 2022**

Notes & Source: Short interest utilization is calculated as the ratio between the number of shares on loan to the number of shares available for lending. Shaded region indicates August 2022. Data per Nasdaq FIS Astec Analytics Short Lending Data (SLD).

## C. Price Movements Understood to Be Temporary Are Inconsistent with a Random Walk Necessary for Market Efficiency

32.     As discussed above, market evidence supports the view expressed in the contemporaneous news that the distortion of BBBY's price prior to the Class Period was likely the result of a rumored short squeeze.[64]  A "short squeeze" like the one suspected by market commentators for BBBY stock before and during the Class Period is a form of market manipulation that results in a temporary distortion of market prices and causes them to no longer reflect value-relevant information in an efficient manner.[65]  So-called "meme" stocks, like

---

64.     Plaintiff also acknowledges that a rumored short squeeze started prior to the Class Period.  *See* SAC ¶¶ 24-28.
65.     *See infra* ¶ 44.

BBBY, are subject to short squeezes under certain conditions, which can flare up unexpectedly due to chatter on social media.[66]

33.     The economic literature establishes that short squeezes are typically brief and end with a sharp price decline.[67]  For example, one article references a study of short squeezes between 2008 and 2021 and notes that "[s]hort squeezes typically don't last long…. The average short squeeze in this data set lasted approximately 12 days from the onset to the peak," and that "[w]hen a short squeeze eventually exhausts itself, the stock price typically declines by -50% [sic] within the next 3-4 days."[68]

34.     During the run-up in BBBY's stock price in August 2022, market commentators anticipated that the price increases would be temporary and followed by sharp price declines. For example:

- Shares of Bed Bath & Beyond Inc [sic] jumped 39.0% on Monday as retail investors flocked to the highly shorted stock of the home goods maker, likely piling pressure on those with bearish bets on it.  "We do believe there is currently a short squeeze playing out in BBBY," said Evan Niu, analyst at Ortex, adding that 45% of the firm's free float was shorted…. "These types of extremely large moves are outliers but they do happen time and time again," said Adam Sarhan,

---

66.     *See infra* ¶ 44.
67.     *See e.g.,* Adair, Troy and John R. Nofsinger, *Foundations of Investments*, (Cengage 2024) at 563 ("The rise of the retail meme stock investors in 2021 shows another way to use short-sale interest. These investors identified stocks with very high short interest and then tried to squeeze the short sellers by buying the stock and pressuring it to rise in price. This is known as a short squeeze. As the price rises, short sellers lose money. Eventually, some of them will start buying the stock to close their short position, causing even further prices increases. That squeezes the remaining short seller [sic] even more. This cycle can create a dramatic, though usually temporary, price increase."); DeRosa, David, "Bursting the Bubble. Rationality in a Seemingly Irrational Market." *CFA Institute Research Foundation* (2021) at 13-14 ("[A] successful squeeze could cause the share price to violently but temporarily rise to levels otherwise thought unachievable. More to our point, such a successful squeeze would violate fundamental valuation and may contradict other neoclassical postulates but only for a brief period of time… the squeeze could drive up the share price to seemingly crazy levels. We do not see this as a regular feature of stock price behavior, and when it happens it is not permanent.").
68.     "When Will The Ride End? Analyzing GameStop Short Squeeze By Looking At History," *Seeking Alpha*, February 1, 2021, 10:35 AM ET.

chief executive officer at 50 Park Investments.  "But most of the time these exaggerated moves are short-lived and the stocks tend to go back down."[69]

- When a little-known company's stock witnesses an unimaginable price for no apparent reason and has a large investor's interest, it's a perfect case of a meme stock.  But, with the speed with which the price of these stocks goes up, the fall in share price in them is equally stronger …. A few recent additions to the meme stock list could be the stocks of AMTD Digital (HKD) and Bed, Bath and Beyond (BBBY).[70]

35.     Price increases that are known to be temporary and inevitably followed by price declines, such as the rumored short squeeze which distorted BBBY's share price leading up to and during the Class Period, are inconsistent with a random walk required for market efficiency. As discussed in a widely used textbook:

> One implication of the efficient markets hypothesis is that stock prices should follow a random walk.  This means that changes in stock prices are impossible to predict from available information.  If, based on publicly available information, a person could predict that a stock price would rise by 10 percent tomorrow, then the stock market must be failing to incorporate that information today.  According to this theory, the only thing that can move stock prices is news that changes the market's perception of the company's value. But news must be unpredictable otherwise, it wouldn't really be news. For the same reason, changes in stock prices should be unpredictable.[71]

For this and all the reasons stated above, there is no reasonable basis to conclude that BBBY stock, and therefore options, traded in an efficient market during the Class Period.

## V.    THE TWEET THAT ALLEGEDLY INTRODUCED ARTIFICIAL INFLATION INTO BBBY'S STOCK DID NOT IMPACT ITS PRICE

36.     In the previous section I discussed a number of reasons why there is no reliable basis to conclude that BBBY's stock traded in an efficient market during the Class Period due to the highly unusual conditions leading up to and during the Class Period.  Despite acknowledging

---

69.     "Bed Bath & Beyond jumps as retail investors chase highly shorted stocks," *Reuters News*, August 8, 2022, 11:01 AM ET.

70.     "Meme Stocks Phenomenon: Bed, Bath and Beyond & other stocks that more than doubled money in quick-time," *Financial Express Online*, August 13, 2022, 8:50 AM ET.

71.     Mankiw, N. Gregory, *Principles of Economics*, 8th Ed. (Cengage Learning 2018) at 572.

these highly unusual circumstances and failing to provide any direct evidence that the stock price

reacted to new value-relevant information in this environment during the Class Period, Plaintiff

alleges that the Tweet was the beginning of a "pump-and-dump scheme" by artificially inflating

BBBY's stock price.[72]  In this section, I demonstrate that this allegation is contradicted by the

economic evidence.  For the reasons explained below, the Tweet cannot be characterized as a

"pump" because of the absence of any scientific and reliable evidence of a price reaction.[73]  And

if the Tweet did not constitute a "pump," then subsequent disclosures which are alleged to

correct that Tweet also cannot be understood to constitute a "dump."

### A. Event Study Analysis Demonstrates that There Is No Scientific and Reliable Basis to Establish That BBBY's Stock Price Increased Following Mr. Cohen's Tweet on August 12, 2022

37.     The accepted method to test whether a stock price was impacted by information is

to perform an event study.[74]  Event study analysis is a statistical method commonly used in

financial economics to measure the impact of events on stock prices (e.g., to test if BBBY's

stock prices reacted to new potentially value-relevant information).[75]  It is standard practice in

event studies to take into account the effect of market factors on stock price changes (or

"returns"), which is typically done by: (i) estimating the relationship between changes in a

company's stock price and changes in the performance of a market and/or industry index; (ii)

---

72.     SAC ¶¶ 8-9, 31-33 & 147-153; Plaintiff's Memo at 3.

73.     *See infra* ¶ 39.

74.     I discuss the uses of event study methodology in securities litigation in my article "Use of Modern Finance Theory in Securities Fraud Cases Involving Actively Traded Securities," 38 *The Business Lawyer* (1982).

75.     *See, e.g.*, Fama, Eugene F., et al., "The Adjustment of Stock Prices to New Information." 10 *International Economic Review* (1969); MacKinlay, A. Craig, "Event Studies in Economics and Finance." 35 *Journal of Economic Literature* (1997); Tabak, David and Frederick Dunbar, "Materiality and Magnitude: Event Studies in the Courtroom." *Litigation Services Handbook: The Role of the Financial Expert,* Weil, Roman L. et al. eds., 3rd Ed. (John Wiley & Sons 2001) at Chapter 19.

using this relationship and the actual performance of the market and/or industry index on the day

or days in question to calculate an expected return; and (iii) subtracting the expected return from

the actual return to derive a residual return.[76, 77]

38.     A key factor in an event study is the selection of the estimation period.  An

estimation period underlying an event study analysis determines, among other things, the normal

volatility of a stock's residual returns and assumes that this volatility is stationary during the

event being analyzed, i.e., the volatility does not change.[78]  As shown in the chart in the previous

---

76.   The residual return is a "direct measure of the (unexpected) change in securityholder wealth
       associated with the event." Kothari, Sagar P., and Jerold B. Warner. "Econometrics of Event
       Studies," *Handbook of Empirical Corporate Finance* (Elsevier 2007) at 9.  When performing
       event studies, the conventional practice in finance is to test the "null hypothesis" that the residual
       return is zero against either the alternative hypothesis that the residual return is different from
       zero, or the alternative hypothesis that the residual has a particular sign (i.e., positive or negative).
       If the null hypothesis is rejected at conventional levels of significance, then the residual returns
       are considered to be statistically significant, i.e., they are considered to be significantly different
       from zero.  Under these circumstances, one can conclude that the observed stock return on a
       particular date cannot be fully explained by the independent variable(s) considered in the
       estimation model and/or the stock's volatility and is likely attributable to the firm-specific events
       which occurred on that date.  *See, e.g.*, Mendenhall, William, James E. Reinmuth and Robert J.
       Beaver. *Statistics for Management and Economics*. 7th Ed. (Duxbury Press 1993) at 327.

77.   The statistical significance of the residual returns is typically assessed by calculating a
       standardized measure of the size of the residual return known as a "t-statistic."  A t-statistic with
       an absolute value of 1.96 or greater denotes statistical significance at the five percent level of
       significance in a "two-tailed" test of statistical significance (i.e., testing whether the residual
       return is significantly different from zero in either direction), while a t-statistic with an absolute
       value of 1.65 or greater denotes statistical significance at the five percent level of significance in
       a "one-tailed" test of statistical significance (i.e., testing whether the residual return is
       significantly different from zero in a particular direction) and the ten percent level in a "two-
       tailed" test of statistical significance.  *See, e.g.*, Mendenhall, William, James E. Reinmuth and
       Robert J. Beaver. *Statistics for Management and Economics*. 7th Ed. (Duxbury Press 1993) at
       330-331, 345-346; MacKinlay, A. Craig, "Event Studies in Economics and Finance," 35 *Journal
       of Economic Literature* (1997); Schwert, G. William. "Using Financial Data to Measure Effects
       of Regulation," 24 *The Journal of Law and Economics* (1981); Fischel, Daniel R., "Use of
       Modern Finance Theory in Securities Fraud Cases Involving Actively Traded Securities," 38 *The
       Business Lawyer* (1982) at 18-19.

78.   *See, e.g.,* Feinstein, Steven P. and O. Miguel Villanueva, "Securities Litigation Event Studies in
       the Covid Volatility Regime," *Journal of Forensic Economics* (2022) at 3 ("To produce reliable
       results and valid inferences, however, the t-test requires that the volatility of the residual returns
       estimated by the linear regression in the pre-event estimation period, equals the volatility of the

section, BBBY's option implied volatility substantially increased leading up to the Class Period

and remained elevated during the month of August 2022.[79]  The short-lived nature of these

highly unusual circumstances presents a challenge in selecting the appropriate estimation period.

While one wants to select a period in which the volatility and the relationship between the

stock's returns and the market and/or industry index returns are similar to those during which the

event at issue occurred,[80] it is also important that the estimation period is long enough to capture

residual returns in the subsequent out-of-sample event period. A spike in volatility at the outset of the period in which the important case events reside can render the standard event study methodology unreliable.");  Gold, Kevin L., Eric Korman, and Ahmer Nabi, "Federal Securities Acts and Areas of Expert Analysis," in *Litigation Services Handbook: The Role of the Financial Expert*, 6th Ed., Weil, Roman L. et al., eds. (John Wiley & Sons 2017) at n. 71  ("It is important that the underlying properties of the model (that is, the coefficients and standard error) be similar during the estimation and event periods (see, for example, John Binder, "The Event Study Methodology since 1969," *Review of Quantitative Finance and Accounting*, 1998, p. 113), which states that "[i]t is assumed that the coefficients are constant during the estimation and event periods." The security price's sensitivity to the market (that is, its beta) during the estimation period of the event study model should be similar to its sensitivity during the event period. Otherwise, the benchmark daily returns may be based on a relationship between the security and the market that no longer holds true during the event period, which could introduce bias into estimated abnormal returns.").

79.    *See e.g.,* Berk, Jonathan and Peter DeMarzo, *Corporate Finance*, 5th Ed. (Pearson Education 2020) at 810 ("[O]ne parameter, σ, the volatility of the stock price, is not directly observable. Practitioners use two strategies to estimate the value of this variable. The first, most straightforward approach is to use historical data on daily stock returns to estimate the volatility of the stock over the past several months. Because volatility tends to be persistent, such estimates can provide a reasonable forecast for the stock's volatility in the near future. The second approach is to use the current market prices of traded options to 'back out' the volatility that is consistent with these prices based on the Black-Scholes formula. An estimate of a stock's volatility that is implied by an option's price is known as an implied volatility."); Chen & Li (2023) at 1 ("Numerous studies suggest that the volatility implied from option prices offers a more efficient forecast of future stock volatility compared with alternative approaches, such as historical volatility and model-based methods. In other words, option prices subsume the information contained in other forecasting variables.").

80.    Peterson, Pamela P., "Event Studies: A Review of Issues and Methodology," 28 *Quarterly Journal of Business and Economics* (1989) at 37-38 ("For applications in which the determinants of the normal return are not expected to change due to the event, an estimation period typically is chosen prior to the event period.  For applications in which these determinants are expected to change due to the event (e.g., arising from capital structure changes), the estimation period may follow the event or represent some form of average of pre- and post-event period information."); Henderson, Jr., Glenn V., "Problems and Solutions in Conducting Event Studies," 57 *The Journal*

a sufficient sample of the stock's movements.  To balance these factors, I selected a 40-day period starting on August 1, 2022 as my estimation period,[81] and estimated the relationship between BBBY's stock price and the S&P 500 Index and the S&P 500 Specialty Retail Industry Index, which are the indices to which BBBY compared its stock price performance.[82]

39.     My event study finds that the residual return on August 12, 2022 is not statistically significant because the t-statistic is only 1.06.[83]  Consequently, there is no reliable, scientific evidence that the stock price movement on this day is distinguishable from zero during this period of heightened volatility, hence there is no reliable, scientific evidence that the Tweet actually "pumped" up BBBY's stock price and introduced artificial price inflation into it.

40.     But even if the price increase was statistically significant, it would still be necessary to determine whether the Tweet that occurred on that day was responsible for any price increase on that day.  For that reason, I also examined the intraday price movement of BBBY stock on August 12, 2022.  If the market was efficient and the Tweet "pumped" up the stock as Plaintiff claims, I would expect to see a marked increase in the price following the Tweet.  Instead, as shown in the chart below, the stock price had begun rising shortly after the

---

*of Risk and Insurance* (1990) at 291-292 ("There are essentially four choices for the estimation period:  before the event window, during the window, after the window, and around the window. The majority of events studies use an estimation period before the event… A strong case can be made for a post-event estimation period if the event is expected fundamentally to alter the firms' sensitivity to market returns.  If the event is important enough to change alpha and beta, then values from before the event are not appropriate.  Evidence of alpha or beta changes may be used as evidence of an event…  If there is evidence or reason to question parameter stability, then a post-event estimation period may be appropriate.").  Evidence of beta changes are presented in Cain Report, Exhibit 4.

81.     I understand that Dr. Cain has also used a 40-day estimation period in prior event study analysis.

82.     *See* 2022 10-K at 25.

83.     The t-statistic on August 12, 2022 is calculated as the residual return divided by the standard error of the residual value; in this instance, $14.47\% / 13.62\% = 1.06$.  As a robustness check of the results, we also used an estimation period of 20 days before the beginning of the Class Period and 20 days after August 19, 2022, thereby removing the Class Period and associated days entirely from the analysis. We again find that the residual return on August 12, 2022 is not statistically significant, with an associated t-statistic of only 1.36.

market opened and continued to rise at approximately the same gradual pace after the Tweet was issued.  Consequently, the pre-existing rumored short squeeze provides a better explanation than the Tweet for the observed price increase on August 12, 2022 (which, again, is not statistically different from zero because of the increased price volatility in August 2022).





Sources: Tick Data, LLC; U.S. Stock and Index Databases ©2024 Center for Research in Security Prices (CRSP), The University of Chicago Booth School of Business.

41.    The results of the above analyses contradict Plaintiff's allegation that the Tweet artificially "pumped" up BBBY's stock price.  If it had caused an increase, I would expect to observe a statistically significant price increase associated with it.  Alternatively, consistent with my conclusion above regarding the lack of efficiency of the market for BBBY stock during the Class Period, my event study result further demonstrates that the market for BBBY stock was not

efficient during this period.[84]  It is entirely possible that both are true – the market for BBBY

stock was not efficient and the Tweet had no impact on the stock price.

### B. Contemporaneous Market Commentary Does Not Attribute a Price Movement to the Tweet

42.     To further test the results of my finding that the Tweet had no impact on BBBY's

stock price, we also reviewed financial news articles about the Company available from

Bloomberg, Factiva and *Seeking Alpha* as well as analyst reports dated from August 12, 2022

through August 15, 2022, the following trading day.  We found none that attributed the stock's

price increase on August 12, 2022 to the Tweet, consistent with the findings above.

## VI. INDIVIDUAL INQUIRY IS REQUIRED BECAUSE SOME, IF NOT MANY, CLASS MEMBERS DID NOT RELY ON THE INTEGRITY OF THE MARKET PRICE

43.     In my experience, plaintiffs in securities fraud class actions can avoid having to

demonstrate actual reliance on the alleged false or misleading statements or other alleged

misconduct on an individualized basis if they can invoke a presumption that they made their

investment decisions by relying on the integrity of the market price in an efficient market.  In this

case, however, some, perhaps many potential Class Members in all likelihood made their

investment decisions based on a belief of an inefficient market for reasons unrelated – and often

contrary – to a belief in the integrity of the market price as reflecting the true value of BBBY

stock.  This reality makes it impossible for Plaintiff to demonstrate that potential Class Members

are entitled to the presumption that they relied on the integrity of the market price on a class-

wide basis.  Whether potential Class Members did or did not rely on the integrity of the market

---

84.     As Dr. Cain himself states, "[I]f a short squeeze caused BBBY's stock to no longer be
        informationally efficient, I would expect to observe the absence of any relation between relevant
        news and corresponding stock price movements." Cain Report ¶ 105.

price in making their investment decisions can therefore only be determined on an individualized basis.

## A. The Economic Literature Recognizes That Short Squeezes Are a Form of Market Manipulation Divorced from Reliance on the Integrity of the Market Price

44.     The economic literature recognizes that short squeezes are a form of "market manipulation."  For example, Putniņŝ (2012) states: "'Corners' and 'squeezes' are techniques in which the manipulator secures a controlling position in the supply of an asset and/or derivative contract.  The manipulator then uses this position to manipulate the price by exploiting investors that need the underlying asset to close out short positions."[85]  Similarly, Harris (2003) comments: "Squeezers are parasitic traders because they design trading strategies that profit only when they can exploit other traders.  Their manipulations make prices less informative, and their trades greatly increase transaction costs for other traders."[86]  Moreover, Costola, Iacopini and Santagiustina (2021) investigates meme stocks in particular and finds "the 'mementum', or meme period, of stocks, that is, the momentum when synchronized buying signals that originate on social media have an effect on a stock's price and trading volume… can be counted as a market manipulation strategy.... The meme-based coordination mechanisms originated in social media allow small investors to act as a single large trader, able to successfully manipulate prices."[87]

---

85.     Putniņŝ (2012) at 956.

86.     Harris, Larry, *Trading and Exchanges – Market Microstructure for Practitioners* (Oxford University Press, 2003) at 256.  Another article states that if a heavily shorted stock experiences a price increase for any reason, "it can quickly turn into a buying frenzy as the short sellers trip over one another to buy the shares…Panic-buying begets more panic-buying, egged on by speculators who *know* the situation the short sellers are in and actively try to put the screws to them.  This is a short squeeze in action.  And it's exactly what happened in the shares of GameStop."  (Emphasis in original.)  *See* "What Exactly Is a Short Squeeze?" *Kiplinger.com*, January 28, 2021.

87.     Costola, Iacopini and Santagiustina (2021) at 1 & 6.

45.     As demonstrated below, commentary from potential class members suggests that some, if not many, who were purchasing BBBY shares during the Class Period were doing so in the hopes of manipulating BBBY's share price higher to create a short squeeze.  This has important implications for determining whether potential Class members relied on the integrity of the market price in an efficient market on a class-wide basis.

**B.  Commentary from Potential Class Members Demonstrates that Some, if Not Many, Potential Class Members Did Not Rely Upon the Integrity of the Market Price**

46.     During the period leading up to and throughout the Class Period, there was evidence of extreme social media enthusiasm on the Reddit platform for retail investors to participate in a BBBY short squeeze.  For example, retail investors posted:

- "BBBY 30% short float let's squeeze em. Really cheap stock market cap at 450MM."[88]

- "Happy you're eyeing $bbby, but it isn't a pump and dump. Those here believe it's massively undervalued and Gamma and short squeeze are catalyst to help Ignite that."[89]

- "In this very extreme example, if the short sellers got margin called then they would need to either buy back the share it's declare bankruptcy. But the reality is that most of the hedge funds taking short positions have wayyyy too much capital to worry about margin calls and will end up getting stopped out anyway. Even GME, which was the craziest thing to happen in years, only managed to take out a small hedge fund.

  BBBY is a risky play but it could very well pay off (and already has for a lot of people). Retail buying pressure is through the roof and the shorts who haven't covered yet will probably be forced to buy back if the price continues to rise rapidly. The big risk is that a major institutional investor or two decides to dump. Market makers have definitely caught on as well and they have a lot of tools at their disposal to prevent a squeeze. I just really don't like it when people who don't know shit about the stock market start screeching about naked shorts and crime the second they see a number that doesn't make sense to them.

---

88.     2022-08-05 08:59:09 ET WallStreetBets Subreddit post by user: Piano-Calm (accessed May 17, 2024).
89.     2022-08-05 09:14:11 ET WallStreetBets Subreddit post by user: lil_Dik_ThRoBn_stock (accessed May 17, 2024).

Also shorting in general absolutely needs to be legal. It's essential in order for markets to fairly price stocks."[90]

- "I heard BBBY is about to go to moon, let's gamble that remaining 2625.02. U either win everything back or leave this sub with $0 balance."[91]

- "Just in time to yolo it in the BBBY squeeze 🚀 🤪."[92]

- "I'm seriously thinking this could be much bigger than GME short squeeze. These yolos are insane and BBBY is just getting started. Plus the fact this sub now has like X5 the members since GME squeeze 2021 January. Could just keep going parabolic!!! Buy and hold! Buy any dip! Keep it up Apes!!! ❤️ 💎 🙌."[93]

- "Why is everyone freaking out about Cohen selling? He never had anything to do with this movement. The stock was heavily shorted in the $5-9 range and hedge fund brokers are sitting on hundreds of millions of dollars in losses and paying interest on it everyday. Last indicator I saw was 55% of the float was shorted as of yesterday. This was always the play and with the amount of option activity going on there is a real opportunity for a GAMMA ringer. Cohen selling changes none of this. Stay the course Apes!"[94]

47.     As the quotes above make clear, some and perhaps many market participants (i.e. potential Class members), may not have been buying in reliance of the integrity of the market price of BBBY but rather may have been buying in reliance on a *lack of integrity* in the market price, purchasing at inflated prices in the hope of being able to sell at even higher prices.[95]

---

90.     2022-08-06 00:29:27 ET WallStreetBets Subreddit post by user: [deleted user] (accessed May 17, 2024).

91.     2022-08-06 19:52:40 ET WallStreetBets Subreddit post by user: hitpopking (accessed May 17, 2024).

92.     2022-08-12 16:02:58 ET WallStreetBets Subreddit post by user: NitrousXpress (accessed May 17, 2024).

93.     2022-08-12 19:10:51 ET WallStreetBets Subreddit post by user: spicy_chimp5 (accessed May 17, 2024).

94.     2022-08-18 16:46:54 ET WallStreetBets Subreddit post by user: BIRDZILLA26 (accessed May 17, 2024).

95.     "Here's What Investment Gurus Including Michael Steinhardt And Jeremy Siegel Say About The Meme Stock Bubble," *Forbes*, January 31, 2021 ("GameStop is nowhere near worth what it was trading at [in January 2021] but it's a perfect example of the greater fools theory where it's possible to make money on something if it's overvalued so long as there's someone willing to pay a higher price….").

Because of this possibility, reliance on the integrity of the market price cannot be determined on a class-wide basis and individualized inquiry is necessary.[96]

## VII. DR. CAIN'S CONCLUSIONS ARE FUNDAMENTALLY FLAWED AND UNRELIABLE BECAUSE HE FAILS TO ACCOUNT FOR THE CHANGED CIRCUMSTANCES AROUND THE PROPOSED CLASS PERIOD

48.     Dr. Cain offers two principal conclusions: (i) the markets for BBBY stock and options were efficient throughout the proposed Class Period; and (ii) "[d]amages in this matter can be calculated on a class-wide basis subject to standard, common methodologies for each of Plaintiffs' pending claims."[97]  His conclusions are fundamentally flawed and unreliable because he fails to account for the changed circumstances around the proposed Class Period documented above.

### A. Dr. Cain Does Not Reliably Establish That the Market for BBBY Stock and Options Was Efficient Because He Fails to Account for the Changed Circumstances Around the Proposed Class Period

49.     In his report, Dr. Cain includes a section explaining that he "considered the general information environment regarding BBBY during the Class Period."[98]  Dr. Cain states:

> In my evaluation of the efficiency factors for BBBY's Common Stock, I considered whether the efficiency conclusion from these factors was undermined by other aspects of BBBY's public information environment such as retail investor interest, potential meme stock status, and short squeeze dynamics.  If any of these aspects caused BBBY's Common Stock to be informationally inefficient, I would expect this inefficiency to be reflected in the various *Cammer*, *Krogman*, and other efficiency factors I evaluated.  For example, if a short squeeze caused BBBY's stock to no longer be informationally efficient, I would expect to observe the absence of any relation between relevant news and corresponding stock price movements.

---

96.     The class is defined as investors who purchased BBBY stock or calls during the Class Period and subsequently sold at a loss after Mr. Cohen "dumped" his stake. *See* Plaintiff's Memo at 5, 9-11. Plaintiff's Class definition therefore includes investors who knowingly purchased at artificially inflated prices as a result of – or in the hopes of creating – a short squeeze in the hope of being able to sell at even more inflated prices but were unable to do so.

97.     Cain Report ¶ 3.e.

98.     Cain Report ¶ 102.

> Yet, as explained above, my *Cammer* 5 analysis identified a statistically significant difference between returns on News Days versus those on No News Days.  Moreover, these results were present prior to the Class Period, during the Analysis Period when retail and other investors considered BBBY's status as a potential meme stock and short squeeze candidate.  Because the *Cammer* and *Krogman* factors weigh in favor of market efficiency despite the status of BBBY as a potential meme stock and short squeeze candidate, I conclude that the market for BBBY's Common Stock was efficient throughout the Class Period.[99]

Dr. Cain's "consider[ation]" of the "general information environment" regarding BBBY during the Class Period, including "short squeeze dynamics," is fundamentally flawed and unreliable for several reasons, and does not support his opinion of market efficiency during the Class Period.

50.     First, nowhere in Dr. Cain's report does he analyze the "short squeeze dynamics" present during the proposed Class Period.  Rather, for the only instance in which Dr. Cain reports discrete data relevant to short squeeze dynamics specifically during the Class Period – stating that "[t]he average weekly trading volume over the Analysis Period was 75.8% of BBBY's Common Stock shares outstanding, and the trading volume during the one-week Class Period was 1,346.6% of shares outstanding" (i.e., 18 times higher than the average[100]) – he simply concludes that "[t]his level of trading volume exceeds both the 1% and 2% thresholds established by the *Cammer* court,"[101] ignoring the obvious implication of his own analysis that trading during the Class Period was substantially different from the period beforehand and indicative of a rumored short squeeze.

51.     Second, Dr. Cain's "*Cammer* 5 analysis" (i.e., the "cause-and-effect relationship between new Company disclosures and resulting Common Stock price movements" using the results of an event study[102]) – which is the only analysis he conducted for which he describes

---

99.     Cain Report ¶ 105 (footnote omitted).
100.    1,346.6 / 75.8 = 17.8.
101.    Cain Report ¶ 37.
102.    Cain Report ¶¶ 3.c., 57 & 59.

how he "considered" it before reaching his conclusion regarding short squeeze dynamics during the Class Period – fails to analyze *any* days during the proposed Class Period.[103] Consequently, the only analysis he uses to support his opinion does nothing to account for the changed circumstances during the Class Period that I document above, and his conclusion is unfounded.[104]

52.     Finally, the limited and rote analyses Dr. Cain does conduct appear to be designed to minimize the fundamental changes leading into the proposed Class Period that I document above.  Specifically, as explained *supra* ¶ 16, his market efficiency opinion regarding BBBY stock is based on his analysis of eleven factors during the Cain Analysis Period, i.e., from August 12, 2021 through August 18, 2022.  Aside from his analysis of stock trading volume, Dr. Cain does not distinguish the Class Period, conflating the results of his analyses over the entire Cain Analysis Period.[105]  Because this period consists of 257 trading days of which the proposed Class Period comprises only the five days at the end, *95%* of the Cain Analysis Period lies outside the Class Period as well as the period shortly beforehand during the rumored short squeeze.[106]

---

103.     Dr. Cain's "*Cammer* 5 analysis" purports to compare the behavior of BBBY Common Stock on four "News Days," which he defines as "dates of BBBY's quarterly earnings announcements during the Analysis Period," none of which occurred during the proposed Class Period, versus "No News Days," which he defines as "the 132 trading days where there were no headlines from Dow Jones or SEC filings," none of which occurred during the Class Period.  Cain Report ¶¶ 72-75 & Exhibit 6a (showing that the last "News Day" Dr. Cain analyzed occurred on June 29, 2022).

104.     Even if Dr. Cain had analyzed the days during the Class Period, his event study of these days is fundamentally flawed and the results from it are unreliable because he fails to account for the fundamental change in the volatility of BBBY's stock price that occurred shortly beforehand.  *See infra* ¶ 53.

105.     I note that although Dr. Cain claims that he "considered" "the various *Cammer*, *Krogman*, and other efficiency factors" in reaching his conclusion about the impact of short squeeze dynamics during the Class Period, most of the eleven factors – including the presence of analyst coverage, market makers, institutional ownership, an appropriately sized public float, and options trading, as well as the eligibility to file SEC Form S-3 – do not allow him to analyze discrete periods within the Cain Analysis Period and thus are incapable of supporting his conclusion.

106.     (257 - 5) / 257 = 98.1%.  There are 14 trading days from August 1, 2022 through August 18, 2022, the last day of the Cain Analysis Period.  (257 - 14) / 257 = 94.6%.

Analyzing such a lengthy period to make inferences about a shorter period within it may be appropriate if the period is relatively stable throughout, i.e., there is not a fundamental shift in relevant metrics during the period.  However, as demonstrated *supra* § IV and by Dr. Cain's own analysis of trading volume, this is not the case for BBBY stock.  Consequently, the vast majority of Dr. Cain's analysis regards a period prior to the occurrence of the fundamental changes described above and so his conflation of the Class Period with the entire Cain Analysis Period does not support his conclusion regarding short squeeze dynamics and market efficiency during the Class Period.  In other words, Dr. Cain's assumption that the Cain Analysis Period is an appropriate barometer for the Class Period – upon which his entire analysis of market efficiency is based – is incorrect.

53.     In particular, Dr. Cain's event study analysis uses a rolling 120-day estimation period prior to the event date, i.e., he determines statistical significance based upon the residual returns of BBBY stock during the 120 days prior to the day being measured.[107]  As explained *supra* ¶ 38, this estimation period fails to account for the considerable increase in volatility that began shortly before the Class Period because the volatility of BBBY's stock price during the substantial majority of his estimation period was much lower than it was in August.  To illustrate, Bloomberg reports that the implied volatility on August 11, 2022 is 207.7 while the average implied volatility during Dr. Cain's estimation period for this date is only 132.5, hence the volatility had increased by 1.57 times (= 207.7 / 132.5) before the beginning of the Class Period relative to his estimation period.  By using a period of lower volatility to test for statistical significance in a period of higher volatility, Dr. Cain's event study is highly likely to find false

---

107.     Cain Report ¶ 64.

positives, i.e., determinations that residual returns are statistically significant when they are in fact not unusual in the context of an increase in stock price volatility.

**B. Dr. Cain's Claim That Alleged Damages in This Matter Can Be Calculated on a Class-Wide Basis Subject to Standard, Common Methodologies Fails to Account for the Changed Circumstances Around the Proposed Class Period**

54.     I understand that Dr. Cain described in his deposition how in working on pump and dump schemes at the SEC, he observed increases in stock prices.  Because there is no reliable, scientific evidence to support Plaintiff's claim that the Tweet caused BBBY's stock price to increase as explained *supra* ¶ V, Dr. Cain cannot establish that a "pump" occurred hence there is no predicate for a "dump" and so he cannot calculate alleged damages on a class-wide basis under Plaintiff's claims.

55.     Dr. Cain further claims that the damages methods he describes "are flexible and able to incorporate alternative findings regarding the quantification, as well as the timing, of artificial inflation and how it evolves over the Class Period" because, among other things, "the appropriate percentage of abnormal return that can be attributed to the release of corrective versus confounding information" and how "the true economic inflation evolved over the Class Period" determined by the finder of fact "can simply be incorporated into the damages calculation."[108]  However, he fails to provide any methodology for the finder of fact to determine the "appropriate" amount of alleged artificial inflation net of confounding information or how the "true" amount of alleged artificial inflation evolved over the Class Period.

56.     The ability to reliably determine the "appropriate" and "true" amount of alleged damages is an exceptionally difficult issue given the facts and circumstances of this case. Because a rumored short squeeze had begun before the first alleged misstatement on August 12,

---

108.     Cain Report ¶¶ 137-141.

2022, all price movements during the proposed Class Period are confounded by the distortions caused by the short squeeze.  In other words, the finder of fact needs a reliable model that can distinguish the amounts of artificial prices caused by the short squeeze from the amounts purportedly caused by the alleged misstatements, if any.  But Dr. Cain has not provided any methodology that allows the finder of fact to distinguish the price increases, if any, caused by the alleged affirmative misstatements or the price declines, if any, caused by the alleged corrective disclosure from those caused by the distortions in the price from the rumored short squeeze.[109]

57.     I am not aware of any methodology, let alone a "standard, common" one, that could be applied in this case to differentiate price movements caused by allegedly misstated information from the distorted price movements caused by the rumored short squeeze. Accordingly, even if Dr. Cain could establish that BBBY's stock price increased by a statistically significant amount on August 12, 2022 contrary to the economic evidence presented above, he could not establish that any of it was caused by the Tweet as opposed to the pre-existing rumored short squeeze.

58.     For the same reason, Dr. Cain cannot reliably estimate alleged damages under the method he proposes.  Specifically, he states that he would employ an event study to calculate alleged artificial inflation based on the "stock price reactions to corrective disclosures which revealed the relevant truth that was concealed by alleged material omissions and/or misrepresentations."[110]  However, Dr. Cain cannot establish that any price declines that coincide with alleged corrective disclosures were anything more than an indication that the rumored short squeeze – which, as explained *supra* ¶ 33, typically is short-lived – was ending.

---

109.    This conclusion holds true for any information that may have been disclosed during the Class Period.
110.    Cain Report ¶ 123.

59.      Finally, Dr. Cain's claim that the market for BBBY stock does not have to be fundamentally efficient to be informationally efficient[111] contradicts his claim that he can reliably calculate alleged inflation in this matter.  He proposes to measure alleged inflation based on changes in the stock price.  However, if the market for BBBY stock was somehow informationally efficient but not fundamentally efficient during the putative Class Period, then changes in the stock price are not reliable measures of the value of the information related to Plaintiff's allegations.  Consequently, Dr. Cain cannot simultaneously opine that the market was informationally efficient but not fundamentally efficient *and* that he can reliably estimate alleged inflation.

Daniel R. Fischel

May 17, 2024

---

111.     Cain Report ¶¶ 103-105.