# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re VAXART, INC. SECURITIES LITIGATION. | Case No. 20-cv-05949-VC<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 380 |

The motion for class certification is granted. This order assumes the reader's familiarity with the facts, governing legal standards, arguments made by the parties, and order denying the first motion for class certification.

The plaintiffs have fixed the problems with their first motion and satisfied Rule 23(b)(3)'s predominance requirement. Unlike in the first motion, the plaintiffs have explained how price impact and loss causation (as well as the other elements of their claims) can be determined as to all class members, regardless of when in the class period they purchased or sold their Vaxart stock. They have also presented a damages model that can account for the fact that the degree of artificial inflation in the stock price may have varied over the class period—and for different findings regarding the amount of any inflation at each point in the period. In other words, the plaintiffs have shown that, whether the jury finds no liability, finds that the truth leaked out gradually, or finds that the truth was revealed in a series of discrete corrective disclosures, liability can be resolved and damages apportioned on a class-wide basis. And the other Rule 23 requirements are easily satisfied.

*The plaintiffs' damages model.* The defendants' main argument against class certification

is that the plaintiffs' damages model is inadequate and inconsistent with their theory of liability in both its treatment of artificial inflation of Vaxart's stock price on the front end and its treatment of loss causation on the back end.

On the front end, the defendants argue that the plaintiffs' damages model fails to disaggregate the price impact of the undisputedly true portions of the press releases from the impact of the allegedly fraudulent parts, and thus incorrectly attributes all of the increase in Vaxart's stock price on June 25 and 26 to the alleged misrepresentations. But the plaintiffs' expert, Dr. Cain, did consider the true portions of the press releases and conclude that they were not material. Whether or not Cain is right that the true portions of the press releases were not confounding, there are at least factual bases for his conclusions. *Cf. In re Tesla, Inc. Securities Litigation*, 2022 WL 7374936, at *11 (N.D. Cal. Oct. 13, 2022). More importantly, even if the defendants are right that some portion of the increase in Vaxart's share price on those two days is attributable to the true portions of the press releases, that is a merits issue that doesn't defeat class treatment—the jury's findings regarding the degree to which Vaxart's price increased because of the press releases' true portions can simply be factored into the damages calculation. *Cf. Glickenhaus & Co. v. Household International, Inc.*, 787 F.3d 408, 417–18 (7th Cir. 2015) (describing how the jury found different amounts of artificial price inflation on different days); *see also* ECF No. 420 at 6–7 (plaintiffs' proposed verdict form).

On the back end, the defendants argue that the plaintiffs' damages model attributes every decline in Vaxart's stock price to revelation of the alleged fraud, rendering the model both implausible and inconsistent with their leakage theory of liability. Again, it's not clear that the defendants are right and the model wrong: Cain considered and rejected the possibility that other news about Vaxart contributed to its price declines on the dates he considers to be "corrective disclosure events." And he states that he controlled for other possible contributors to Vaxart's price declines (such as market- and industry-wide trends). But even if Cain is wrong, the defendants' argument still fails because it amounts to an argument that the plaintiffs have failed to establish loss causation, and "plaintiffs do not need to prove loss causation at the class

certification stage." *Sayce v. Forescout Technologies, Inc.*, 2024 WL 2750003, at *11 (N.D. Cal. May 28, 2024). Here too, if the jury finds that some or all of Vaxart's price declines were not the result of corrective disclosures or leakage of the truth, that finding can be factored into the damages calculation. So whether or not the plaintiffs are right that revelation of the truth caused all of the stock price declines they point to, that issue can be resolved (and damages adjusted accordingly) on a class-wide basis.

The defendants' argument that Armistice's stock sales and Form 4 disclosures could not have been corrective fails for similar reasons. Whether or not these sales signaled to the market that Armistice was trading on insider information (and thus that the press releases were a head fake), that issue can also be resolved as to everyone in the class. So even if the plaintiffs might "face substantial hurdles in actually proving loss causation" on the basis of those sales and disclosures, that does not prevent class certification. *Sheet Metal Workers National Pension Fund v. Bayer Aktiengesellschaft*, 2023 WL 3569981, at *8 (N.D. Cal. May 19, 2023).

Nor does the fact that the plaintiffs' damages model estimates that price inflation fluctuated on June 26 and 29 render the model "inconsistent with reality" or the plaintiffs' theory of liability. The plaintiffs assert that the level of inflation varied during those days as analysts and investors tried to make sense of the press releases and sort out what was really going on with Vaxart. That is what the model reflects. And it's not implausible that some investors (who read and understood the details of the press releases) sold the stock on June 26 for a lower price than what some other investors (who read only the headlines or did not understand the press releases' details) paid for the stock on June 29. To the extent that the jury sees things differently, its findings can be factored into its damages calculation.

*Options.* Traders of Vaxart options can also be included in the class definition. An efficient options market can be presumed where the market for the security's common stock is efficient. *See, e.g.*, *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 2023 WL 4981716, at *4 (D.N.J. Aug. 3, 2023) (quoting *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 503 (3d Cir. 1988)). And the defendants do not appear to dispute that the market for Vaxart

3

common stock is efficient. That the complaint does not include options in its class definition does not preclude their inclusion now, especially given that the defendants had ample notice that the plaintiffs sought to include them. *See Savanna Group, Inc. v. Trynex, Inc.*, 2013 WL 66181, at *2–3 (N.D. Ill. Jan. 4, 2013).

*Section 20A damages.* Because the defendants' attacks on the plaintiffs' price-inflation method for calculating section 10(b) damages fail, so does their criticism of the plaintiffs' price-inflation method for calculating section 20A damages. And contrary to the defendants' assertion, Cain clearly did more than just summarize the statutory damages provision. Indeed, the defendants do not appear to contest his calculation of Armistice's profits (and thus of the cap on the plaintiffs' possible section 20A damages). So nothing about the plaintiffs' calculation of section 20A damages defeats class certification.

*The class period.* The defendants' arguments for a shorter class period than the one sought by the plaintiffs fail for similar reasons as their attacks on the plaintiffs' damages model. First, there is some reason to believe that the truth had not fully come to light before the July 25 *New York Times* article and HHS tweets. Some analysts identified Vaxart as an Operation Warp Speed participant—without mentioning that its participation was limited to the non-human primate study—as late as July 15 and 22. Second, if it becomes clear that any price inflation had in fact dissipated at some earlier point, there would just be no loss causation or damages as to anyone who purchased Vaxart stock after that point. So again, any problem with the plaintiffs' ability to prove that the truth was not fully known to the market by July 25 is a problem for the merits stages of the case, not for class certification.

\* \* \*

The proposed class of all persons or entities who purchased or otherwise acquired publicly traded Vaxart common stock, or purchased call options or sold put options thereon, between June 25, 2020, and July 24, 2020, inclusive, and were damaged thereby—and the proposed subclass of all persons or entities who purchased publicly traded Vaxart common stock contemporaneously with the June 26 and 29, 2020, sales of Vaxart common stock by the

Armistice defendants and were damaged thereby—are certified. Wei Huang, Langdon Elliott, and Ani Hovhannisyan are appointed as class representatives, and Hagens Berman Sobol Shapiro and Scott+Scott Attorneys at Law are appointed as class counsel.

**IT IS SO ORDERED.**

Dated: December 17, 2024

VINCE CHHABRIA
United States District Judge