UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRATYA SPRL,<br><br>               Plaintiff,<br><br>               v.<br><br>BED BATH & BEYOND<br>CORPORATION, *et al*.<br><br>               Defendants. | Case No. 1:22-cv-02541 (TNM) |

### MEMORANDUM ORDER

Once more, this Court must comb out a snarl in the securities fraud case against Bed Bath and Beyond investor Ryan Cohen. The Court previously denied class certification to the investors who claim they were defrauded by Cohen. Lead Plaintiff Bratya now moves for reconsideration of that order. Bratya insists that the Court erroneously required it prove reliance for a handful of its claims that require no such showing. And it argues that the Court wrongly concluded shares for Bed Bath did not trade on an efficient market during the class period.

But Bratya's arguments run the gamut from forfeited to recycled. Neither type of claim is proper in a motion for reconsideration. In short, the Court finds no reason to depart from its previous holdings.

### I.

Only a brief background is necessary, as the relevant facts are found in the Court's prior order. *See Bratya SPRL v. Bed Bath & Beyond Corp.*, --- F. Supp. 3d ---, 2024 WL 4332616, at *1–*3 (D.D.C. Sept. 27, 2024). Cohen became a significant investor in Bed Bath and Beyond stock ("BBBY") at a time when the company was flailing. *Id.* at *1. But Cohen's efforts to revitalize the organization did not work. *Id.* Stock prices continued to fall—until, suddenly, and

seemingly inexplicably, the trend reversed itself. *Id.* at *2. The share price soared in the summer of 2022, although no positive information about the company was released. *Id.* Many analysts contributed this rise to a short squeeze on the stock, consistent with a pattern of "meme stock" investing. *Id.*

Cohen, a meme stock veteran, was active online at the time. On August 12, he retweeted an article from CNBC that argued the price of BBBY was disconnected from its fundamental value. *Id.* The article displayed a cover photo of a woman pushing a shopping cart stuffed with Bed Bath merchandise. *Id.* In his retweet, Cohen retorted: "At least her cart is full 🌝" *Id.*

To meme stock investors, this moon emoji is meaningful: It can suggest that a stock is going "to the moon" and serve as "a rallying cry" to buy a certain stock. *Id.* In the days following the tweet, the stock price continued to increase.

After the markets closed on August 15, Cohen and his investment firm filed an SEC Form 3 that mirrored the Schedule 13D they had filed in March. *Id.* It noted their ownership share in BBBY. *Id.* Before the market opened the next morning, Cohen and his firm filed an amendment to the March Schedule 13D, noting that their share had increased "solely due to a change in the number of outstanding Shares of the Issuer." *Id.* The stock price continued to climb.

But then Cohen swerved. On August 17, the Securities and Exchange Commission published Cohen's Form 144. *Id.* This form was backdated August 16 and revealed a "proposed sale" of Cohen's entire BBBY position. *Id.* And indeed, by market close that day, Cohen and his firm had sold all their stock in the company. *Id.* The liquidation became public on August 18 when Cohen and his firm filed a Schedule 13D amendment disclosing that they had sold their

entire position on August 16 and 17.  *Id.*  After Cohen's departure, the heyday was over.  By August 23, the stock was trading at less than a third of its peak price.  *Id.*

This suit followed, alleging various violations of federal securities laws resulting from the BBBY collapse.[1]  After a round of motions briefing, these claims stood against Cohen and his investment firm: violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) promulgated thereunder; as well as violations of Sections 20(a), 9(a)(3), 9(a)(4), 9(f), and 20A of the Exchange Act.  *See* Order on Mot. Dismiss, ECF No. 92; Second Am. Compl., ECF No. 66.

Investor Bratya SPRL then moved to certify a class of investors in BBBY common stock and long call options who acquired the securities between August 12 and August 18, 2022.  *Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *3.  This Court denied that motion.  *Id.* at *21.  Although the Court found that Bratya satisfied the requirements of Rule 23(a), it concluded that Bratya failed to show that common questions of law or fact would "predominate over any questions affecting only individual members," as required by Rule 23(b)(3).  *Id.* at *4–*8, *21.  More specifically, the Court concluded that Bratya could not invoke the presumption put forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), because it did not show that BBBY traded in an efficient market during the stock period.  *Id.* *19.  And because Bratya could not lean on *Basic*, it could not prove reliance—an essential element of its Exchange Act claims—on a class wide basis.  *Id.* at *9.  Consequently, individual questions would swamp common ones.  *Id.*  So resolution through a class action would be improper.

---

[1] The original suit was against Cohen, his investment firm, Bed Bath & Beyond, and Bed Bath's CEO, Sue Gove. Gove's Motion to Dismiss was granted in full.  *In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F. Supp. 3d 1, 8 (D.D.C. 2023).  And the case was stayed against Bed Bath because it declared bankruptcy.  *Id.*

Bratya objects to that conclusion. It urges the Court to redo its work. Bratya offers four reasons why the Court got it wrong the first time. First, it insists that its Section 20A claims do not require reliance or, by extension, the *Basic* presumption, so the Court erred in throwing these claims out along with the others. Pl.'s Mot. Recons., ECF No. 133, at 2–3. Second, it argues that the defense failed to meet its burden of showing a lack of price impact, so the *Basic* presumption was unrebutted. *Id.* at 3–5. Third, it contends that the Court wrongly assessed questions of loss causation at the class certification stage, when that inquiry is only proper on the merits. *Id.* at 5–8. And finally, it argues that the Court's previous factual analysis of short-selling constraints in the market for BBBY was erroneous. *Id.* at 8–10.

Cohen disagrees. Opp'n Recons., ECF No. 136. He argues that Bratya's claims are inappropriate for reconsideration because they are either forfeited or frivolous. *Id.* at 2–9. The motion is now ripe for review.

## II.

Rule 59(e) of the Federal Rules of Civil Procedure allows a court to alter or amend a prior judgment, "but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised" beforehand. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (cleaned up). Such relief "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006). A "clear error" means that the prior judgment is "dead wrong"—that is, it "strike[s] [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). In short, a motion for reconsideration is not a vehicle for a litigant to rehash its

4

grievances or raise arguments it should have raised before. Instead, a motion for reconsideration should be granted only when something new and salient has surfaced, or when the previous judgment seriously stinks.

### III.

Start with Bratya's claim that its Section 20A allegations do not require an underlying showing of reliance, rendering the *Basic* presumption nugatory. These claims are forfeited, and therefore are improper for the present motion. And even if they were not forfeited, they are wrong.

The Court and parties dedicated considerable resources to resolve the motion for class certification. Bratya itself filed four briefs totaling 88 pages in support of its motion. And it participated in hours of in-person testimony and argument to help clarify the complex issues. A substantial fraction of this paper and presentation was spent belaboring the applicability of the *Basic* presumption. Yet at no point did Bratya posit that "[r]eliance or the *Basic* presumption is not necessary for" its Section 20A claim. Mot. Recons. at 2. Indeed, this is the first time the Court is hearing the claim. But "Rule 59(e) motions are aimed at reconsideration, not initial consideration." *District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010). Because Bratya "could have made" this argument at several points earlier "but elected not to do so," the argument is forfeited. *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012).

Even if the argument had been preserved, it would still fail. Section 20A of the Exchange Act provides that "[a]ny person who violates any provision of this chapter or the rules and regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information" is liable to contemporaneous traders of securities of the same class. 15 U.S.C. § 78t-1. Thus a plaintiff must allege that the defendant (1) committed an underlying

5

violation of the Exchange Act or its rules and regulations (2) "*by* purchasing or selling a security" (3) while having insider information. *Id.* (emphasis added). In effect, this means "there can only be § 20A liability if the predicate violation of the Exchange Act was an act of insider trading." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 665 (S.D.N.Y. 2007); *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 362 (1991) ("The language of § 20A makes clear that the 100th Congress sought to alter the remedies available in insider trading cases, and *only* in insider trading cases."). More, a plaintiff must prove a *violation* of the underlying Exchange Act provision, meaning it must establish that each element of that predicate offense is satisfied. *Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007).

Bratya's allegations fail for a couple of reasons. First, because it points to Sections 13(d) and 16(a) of the Exchange Act, as well as SEC Rules 144 and 13d-1, as predicate violations supporting its Section 20A claim. This will not do. All four of these provisions impose disclosure and reporting requirements on investors. 15 U.S.C. § 78m(d); 15 U.S.C. § 78p(a); 17 C.F.R. § 230.144; 17 C.F.R. § 240.13d-1. Flouting these registration obligations is not insider trading. That is, the failure to accurately fill out a form is different from the buying and selling of securities based on nonpublic and material information—even *if* the form were willfully manipulative. *See* 4 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* 292 (8th ed., 2024).

Under the plain language of Section 20A, Cohen did not violate these reporting obligations "by purchasing or selling a security." 15 U.S.C. § 78t-1. If he did violate the requirements, he did so by giving false information to the SEC. Thus these disclosure provisions cannot serve as predicate violations for a Section 20A claim. *See Jackson Nat. Life Ins. Co. v.*

6

*Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir. 1994) ("Congress added § 20A . . . to remedy the very specific problems inherent in prosecuting insider trading cases.").

Bratya also argues that violations of Sections 9 and 10(b) of the Exchange Act undergird its Section 20A assertion. Mot. Recons. at 2. These predicates fail for a different reason: Contrary to Bratya's claims, proving a Section 20A infraction requires a showing that each element of the predicate violation is met. *Aljian*, 490 F.3d at 781 (holding that "violates" as used in § 20A "mean[s] that a person has satisfied the essential elements of the proscribed act."). And because Sections 9 and 10(b) both require a showing of reliance, so too does a Section 20A claim based on them. *Id.* at 782 (holding that a plaintiff using § 10(b) as a predicate violation must prove reliance); *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 433 (S.D.N.Y. 2010) (§ 9(a)). But this Court already found that Bratya failed to demonstrate class wide reliance. *Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *19. So the Section 20A claim based on Sections 9 and 10(b) still fails. *Accord Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 663 F. Supp. 3d 334, 379 (S.D.N.Y. 2023) (dismissing Section 20A claim premised on implausible Section 10(b) claim, and collecting cases in which Section 20A claims were dismissed for failure to allege elements of underlying violation).

Move now to Bratya's next line of attack. Bratya asserts that Cohen failed to meet his burden of showing a lack of price impact and thus the *Basic* presumption went unrebutted. Mot. Recons. at 3–4. Bratya points to the drop in stock price on August 19, the day the market learned of Cohen's wholesale liquidation. *Id.* at 3–4; *see also Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *20. Bratya contends the statistical significance of this "corrective disclosure" undermines Cohen's duty to show a lack of price impact of the earlier misrepresentations. Mot. Recons. at 3.

7

There are a few problems with Bratya's challenge. True, back-end price reductions when a truth is revealed can show that front-end misrepresentations were previously factored into a stock price. *See FindWhat Inv. Grp. v. FindWhat.com,* 658 F.3d 1282, 1310 (11th Cir. 2011) ("If and when the misinformation is finally corrected by the release of truthful information (often called a 'corrective disclosure'), the market will recalibrate the stock price to account for this change in information, eliminating whatever artificial value it had attributed to the price."). This theory is often called the inflation-maintenance theory of price impact. *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 612 (7th Cir. 2020); *but see Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 120 n.1 (2021) ("Although some Courts of Appeals have approved the inflation-maintenance theory, this Court has expressed no view on its validity or its contours.").

But the Court has seen this film before. Bratya already pressed the Court at length about the salience of the purported corrective disclosure. *Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *20; *see also* Pl.'s Suppl. Memo., ECF No. 129, at 2, 3, 8, 9, 17, 22; Tr. Evid. Hr'g, ECF No. 127, 202:21–203:25. The Court did not find Bratya's arguments compelling then. *Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *20. Bratya may not now use its motion for reconsideration to paddle in water under the bridge.

More, Bratya misunderstands the relevant sequence of events. Cohen would only need to show a lack of price impact had Bratya established the *Basic* presumption. *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 125 (2021) ("[D]efendants may rebut the *Basic* presumption at class certification by showing that the particular misrepresentation at issue did not affect the stock's market price."). But Bratya did not fulfill its burden to show that it was entitled to the presumption in the first place. *Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *19. So Cohen never needed to explain away the "corrective disclosure."

8

Bratya alludes to a subtler argument about the alleged corrective disclosure that merits mention. It hints that *Basic* may not have been required to show reliance at all, since the effect of the corrective disclosure establishes price impact directly. This is unusual; overwhelmingly, class certification seekers in a securities fraud cases depend on *Basic*. But still, the route may remain available for plaintiffs who opt to take it. The Supreme Court suggested as much when it acknowledged that "the *Basic* presumption hinges on price impact" but is an "imperfect proxy for price impact." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278 (2014) ("*Halliburton II*"); *see also Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 126, (2021) ("[P]laintiffs need not directly prove price impact.").

Still, even if a viable path forward, Bratya could not walk down it. The Court already credited Professor Daniel R. Fischel's conclusion that the so-called corrective disclosure was untethered to the earlier misrepresentations. *Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *20. Fischel cogently explained that the August 12 Tweet did not introduce artificial price inflation into the stock price. Fischel Rep., ECF No. 117-1, at ¶ 39. And thus the deflation on August 19 did not signal the Tweet's apparent falsity had been impounded in the stock price all along. *Id.* ¶ 36. Instead, Fischel concluded that short squeeze dynamics confounded all price movements during the class period, rendering any clean link between the "corrective disclosure" and the alleged misrepresentations tenuous at best. *Id.* ¶¶ 56, n.109. So any price drop that coincided with Cohen's exit was, to Fischel and the Court, more of an indication of a short squeeze bubble bursting than a showing that the stock price had been incorporating the alleged misrepresentations. *Id.* ¶ 58; *see also* ¶ 33 ("The economic literature establishes that short squeezes are typically brief and end with a sharp price decline.").

9

More, the Court had stressed that Bratya's expert, Dr. Matthew D. Cain, failed to show that value-relevant information impacted the price of BBBY stock for any day within the class period. *Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *18. Bratya argues now that Cain's second event study proves that there was a statistically significant price decrease on August 19. Mot. Recons. at 4. But the Court already discredited this study as being "flawed," with Cain's methods "cast[ing] doubt on the accuracy of his conclusions." *Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *19. So even putting aside the thought that the aftermath of the so-called corrective disclosure was likely just the bubble bursting, Cain failed to reliably establish that there was a statistically significant price decline on August 19 at all. *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 208 n.15 (2d Cir. 2008) ("An event study may be rejected . . . if it is methodologically unsound or unreliable."). Yet the burden of showing that a stock price incorporated a defendant's misrepresentations—either by showing an entitlement to the *Basic* presumption or by proving direct price impact—falls on the plaintiff. *Haliburton II*, 573 U.S. at 268. Bratya failed to do either, so it cannot show that the issue of reliance can be determined class wide. In short, Bratya's reclanging of the corrective disclosure gong still falls flat.

Bratya's third objection is related. It contends that the Court erred in noting that "the price collapse following Cohen's exit" was not "the result of the 'truth' about Cohen's 'full cart' tweet finally surfacing." *Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *20. Bratya insists that this was a ruling on loss causation — an improper determination at the class certification stage. Mot. Recons. at 5; *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011) ("*Halliburton I*") (holding that loss causation is not a precondition for invoking *Basic*.).

10

But Bratya is mistaken. To start, even if this *had* been a comment on loss causation, the stray remark would not alter the bottom line: Bratya never demonstrated it was entitled to the *Basic* presumption, nor did it establish price impact directly, so it failed to show that reliance could be proven on a class wide basis. The Court's "even if" reasoning cannot change the fact that Bratya failed to meet its threshold burden.

And besides, the Court was not commenting on loss causation—it was properly assessing reliance. That is, the Court was not asking whether Cohen's misrepresentations precipitated the fall in stock price or whether "the drop could instead be the result of other intervening causes, such as changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events." *Halliburton I*, 563 U.S. at 812–13 (cleaned up). No, the Court was querying whether the price plunge following Cohen's liquidation revealed that his previous misrepresentations had been artificially buoying the stock during the class period such that investors could be presumed to have relied on those misrepresentations. *See Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 80 (2d Cir. 2023) ("[In an inflation-maintenance scenario,] the misrepresentation prevents preexisting inflation in a stock price from dissipating, but does not cause a price uptick. Instead, the back-end price drop—what happens when the truth is finally disclosed—operates as an indirect proxy for the front-end inflation, or the amount that the misrepresentation fraudulently propped up the stock price."). And it determined that several factors rendered a proportional link between the events doubtful. *Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *20. The Court had already noted that short squeeze dynamics were pervasive during the class period, which impeded informational efficiency and thus disrupted any potential "communication" between the class period misrepresentations and later disclosures. *Id.* at *16, *18. More, the Court expressed skepticism

that "the specific disclosure *actually corrected*" the alleged misrepresentation, musing that the price decline was likely the result of Cohen's liquidation and the short squeeze bubble bursting instead.  *Id.* at 20; *Goldman Sachs Grp., Inc.*, 594 U.S. at 123 (emphasis added).

In short, the Court concluded that there was "a mismatch between the contents of the misrepresentation and the corrective disclosure" and thus the inference "that the back-end price drop equal[ed] front-end inflation" collapsed.  *Goldman Sachs Grp., Inc.*, 594 U.S. at 123. Without a yin-and-yang relationship between the misrepresentations and Cohen's liquidation, there was no evidence that the misrepresentations had been built into the stock price all along. So there was no evidence that investors had relied on the misrepresentations in purchasing the stock.  *See Halliburton I*, 563 U.S. at 812 ("[A]n investor presumptively relies on a defendant's misrepresentation if that information is reflected in the market price of the stock at the time of the relevant transaction.") (cleaned up).

This is a perfect question for the class certification stage, even if the evidence is similar to that used for issues at the merits stage.  *Goldman Sachs Grp., Inc.*, 594 U.S. at 124 (instructing that courts "must take into account *all* record evidence relevant to price impact, regardless whether that evidence overlaps with materiality or any other merits issue."); *see also Dura Pharm. v. Broudo*, 544 U.S. 336, 343 (2005) (noting that a loss causation analysis takes a "tangle of factors" into account such as "changed economic circumstances" and cannot rest on a finding that the stock price was inflated at the time of purchase).  After all, it is a question of *reliance*— that is, is there enough of a fit between the alleged corrective disclosure, its concomitant price decline, and the purported misrepresentations to assume that the stock price subsumed the misinformation during the class period?  Or is there some reason that the logical link has "br[oken] down"?  *Goldman Sachs Grp., Inc.*, 594 U.S. at 123.  These are questions to be

12

answered "aided by a good dose of common sense." *Id.* at 122. The Court is confident that it did so here.

Finally, consider Bratya's assertion that the Court's previous analysis of short-selling constraints was factually erroneous. Mot. Recons. at 8–10. Again, the significance of the short-selling constraints was hotly litigated and extensively discussed by the experts at the evidentiary hearing. *See* Pl.'s Suppl. Memo. at 17–19; Def.'s Suppl. Memo., ECF No. 128, at 13–14; Evid. Hr'g Tr. at 23–29, 93–103. Bratya's "mere disagreement" with the Court's ultimate factual determination "does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir.1993). Bratya offers no new facts in support of its position, nor does it contend the Court made a clear error of law. *Nat'l Ctr. for Mfg. Scis. v. Dep't of Def.*, 199 F.3d 507, 511 (D.C. Cir. 2000). Thus Bratya's purely factual disagreement with the Court's resolution of a disputed issue in the record is improperly before the Court.

## IV.

In short, Bratya's arguments are either too little or too late. It is therefore

**ORDERED** that Bratya's Motion for Reconsideration is **DENIED.**

Dated: March 6, 2025                                      TREVOR N. McFADDEN, U.S.D.J.